UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: MCCORMICK & COMPANY,
INC., PEPPER PRODUCTS MARKETING
AND SALES PRACTICES LITIGATION

MDL Docket No. 2665
Misc. No. 15-1825 (ESH)

This Document Relates To:
*Watkins Incorporated v. McCormick & Company, Inc.*
No. 1:15-cv-2188 (ESH)

**MEMORANDUM OPINION**

Plaintiff Watkins, which produces black pepper, alleges that its largest competitor, defendant McCormick, deceptively "slack-filled" its black pepper containers, thereby confusing consumers and proximately causing a loss in Watkins' pepper sales. Watkins asserts five causes of action: violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count One), violations of three state statutes punishing unfair trade practices (Counts Two, Three, and Four); and the common law tort of unfair competition (Count Five). (*See* Am. Compl., ECF No. 32, ¶¶ 56-89.) Watkins seeks both monetary and injunctive relief.

Watkins filed its initial complaint in the District of Minnesota on June 9, 2015. After several consumer class actions against McCormick followed—each alleging deception by the same "slack-filled" pepper containers—the Judicial Panel on Multi-District Litigation consolidated all of the "slack-fill" lawsuits against McCormick and transferred them to this Court on December 8, 2015. Once plaintiff was before this Court, it filed an amended complaint on March 2, 2016, referencing the allegations in the parallel consumer actions. (*See* Am. Compl. ¶¶ 50-55.) After the parties had begun briefing the present motion to dismiss, plaintiff filed a second amended complaint on July 10, 2016. (*See* Second Am. Compl., ECF No. 57.)

The consumer class actions and this lawsuit all rely upon the allegation that consumers were deceived by McCormick's pepper packaging and believed they were buying more pepper than they ended up receiving. (*See* Am. Compl. ¶¶ 52-55.) Watkins claims that the fraudulently induced choices of these duped consumers inflated McCormick's sales to the detriment of Watkins' sales.

Defendant filed its motion to dismiss on March 30, 2016, arguing that: (1) plaintiff enjoys neither constitutional standing under Article III nor statutory standing under the Lanham Act; (2) plaintiff fails to state a claim under either the Lanham Act, the state statutes, or common law; and (3) Minnesota choice-of-law rules[1] preclude plaintiff's claims under the California and Florida statutes; and (4) unfair competition is not an independently existing tort under Minnesota law. (*See* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 5-7.) Plaintiff filed its opposition on April 27, 2016. (*See* Pl.'s Mem. Opp. Def.'s Mot. Dismiss, ECF No. 42 ("Pl.'s Opp.").) Defendant filed its reply on May 18, 2016. (*See* Def.'s Reply, ECF No. 46.) Defendant also filed a supplemental memorandum in support of its motion to dismiss on July 10, 2016, and plaintiff filed its response on July 12, 2016. This Court held a hearing on July 20, 2016.

For the reasons stated below, defendant's motion to dismiss Watkins' amended complaint is granted in part and denied in part.

---

[1] The procedural history of this case demands that Minnesota's choice-of-law rules govern the state law claims: In its amended complaint, Watkins asserts both diversity and federal question jurisdiction because it brings claims under both the Lanham Act and state law. (Am. Compl. ¶ 4.) "In a diversity action transferred pursuant to 28 U.S.C. § 1407(a), the transferee court applies the choice-of-law rules of the state where the transferor court sits." *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 68 (D.D.C. 2003) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 518-19 (1990)). Because Watkins originally filed this action in the District of Minnesota and that court transferred the case to this Court pursuant to the MDL Order, Minnesota choice-of-law rules apply.

**FACTUAL ALLEGATIONS**

According to Watkins, McCormick has been the dominant wholesaler of black pepper for decades and is now responsible for approximately 70% of domestic black pepper sales. (Am. Compl. ¶¶ 7-14.) It sells its pepper in distinctively branded red and white metal containers in three sizes: small (full capacity of two ounces of pepper), medium (full capacity of four ounces of pepper), and large (full capacity of eight ounces of pepper). (*Id.* ¶ 11.) In addition, McCormick sells black peppercorn grinders, which—until recently—contained 1.24 ounces of whole black peppercorns. (*Id.* ¶¶ 14, 28.) Watkins claims that other pepper manufacturers often model their tins on McCormick's, and pepper manufacturers use the packaging, appearance, size, and shape of their tins to advertise their products. (*Id.* ¶ 12.) Consumers cannot see the amount of pepper inside McCormick's containers because the tins are not transparent and the grinders are covered on the top and sides by a plastic seal and product label. (*Id.* ¶¶ 16, 28.)

Plaintiff alleges that, in early 2015, McCormick reduced the amount of actual pepper in each of its pepper tins by 25% but "misleadingly continued to use the same traditional-sized tins" and reduced the quantity of peppercorns in its grinders from 1.24 ounces to 1 ounces, again without changing the size of the containers. (*Id.* ¶¶ 15, 28.) The photographs included with plaintiff's complaint show that McCormick did print the reduced quantity on the containers, even though the size of the containers did not change. (*See id.* at 7-9 (Photos A, B, and C).) Plaintiff alleges on information and belief that McCormick "maintained the price" of each tin size, although plaintiff does not specify whether "price" refers to the wholesale or retail price. (*Id.* ¶ 21.) According to plaintiff, this reduction in the product within McCormick's well-known and recognizable containers amounts to what regulators have termed "nonfunctional slack-fill." (Pl.'s Opp. at 2 (citing 21 C.F.R. § 100.100 ("A container that does not allow the consumer to

fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.")).)

Because McCormick's consumers had become accustomed to the size of McCormick's containers (and those of its competitors) and relied on them to advertise the amount of pepper being sold, plaintiff alleges that the reduction in pepper quantity and resulting slack-fill has "led to widespread confusion and deception of the consuming public." (Am. Compl. ¶¶ 13, 26, 50-55.)[2] Watkins claims that McCormick's decision to change the amount of pepper sold without changing the size of the tins or their price amounted to a willful attempt to mislead consumers. (*Id.* ¶ 71.)

Finally, Watkins alleges that McCormick's practice of slack-filling is disadvantaging Watkins' sales. As plaintiff explains, "[w]hen McCormick's slack-filled tins and grinders are positioned on a grocery store shelf next to competitors, including Watkins, McCormick tried to induce consumers to buy McCormick pepper because it appears — falsely — that the McCormick container is equivalent to, or larger than, the Watkins containers and those of other competitors." (*Id.* ¶ 37.) Watkins claims that if consumers had actually known that McCormick's various tins contained 25% less pepper than usual, they would have bought pepper produced by McCormick's competitors, including Watkins.

---

[2] The plaintiffs in the consumer class action complaint allege that if they had known the actual amount of pepper in McCormick's containers, they would not have bought the products. (*See* Consol. Am. Class Action Compl., ECF No. 34, ¶ 90.)

**ANALYSIS**

McCormick argues that this Court should dismiss all five counts of Watkins' amended complaint.  First, it challenges Watkins' standing to bring a claim for injuries which McCormick believes to be speculative.  Second, it maintains that Watkins has not alleged all elements of a Lanham Act claim.  Third, it argues that Watkins' state statutory claims should be dismissed for failure to state a claim or on the basis of choice-of-law analysis.  And finally, McCormick maintains that, under Minnesota law, unfair competition is not an independently existing tort.  The Court considers each of these arguments seriatim.

**I.   ARTICLE III STANDING**

"To survive a motion to dismiss for lack of [constitutional] standing, a complaint must state a plausible claim that the plaintiff has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  On such a motion to dismiss, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  The Court must "'presum[e] that general allegations embrace those specific facts that are necessary to support [a contested] claim,'" and thus "general factual allegations of injury resulting from the defendant's conduct may suffice" to survive a motion to dismiss for lack of Article III standing. *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

For Lanham Act claims, Article III standing requires "the familiar trio of injury in fact, causation, and redressability." *TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 825 (9th Cir. 2011).  In a false advertising suit, a plaintiff can demonstrate injury by showing that "'some

consumers who bought the defendant's product under a mistaken belief' fostered by the defendant 'would have otherwise bought the plaintiff's product.'" *Id.* (citing *Joint Stock Soc'y v. UDVN Am., Inc.,* 266 F.3d 164, 177 (3d Cir. 2001)).  Defendant cites *Joint Stock Soc'y*, 266 F.3d at 176, for the proposition that a plaintiff's claimed injury is too speculative if the defendant's false advertising would harm other competitors in addition to the plaintiff.  (*See* Def.'s Reply at 3.)  That court actually found the plaintiff's injury speculative because it had never sold its product in the United States and stated that the plaintiff likely would have established an injury if it had done so.  *Joint Stock Soc'y*, 266 F.3d at 176-77.

As Judge Bazelon once explained, "all claims of competitive injury are to some extent speculative, since they are predicated on the independent decisions of third parties; *i.e.*, customers.  However, . . . it is the stuff of the most elementary economic texts that if two firms are offering a similar product for different prices, the firm offering the lower price will draw away customers from its competitor."  *Am. Soc'y of Travel Agents, Inc. v. Blumenthal*, 566 F.2d 145, 157 (D.C. Cir. 1977) (Bazelon, C.J., dissenting).  Although the majority in that case denied standing because it was concerned about allowing a private business "to contest the tax treatment of a competitor," *id.* at 151, the Lanham Act exists precisely "to protect persons engaged in . . . commerce against unfair competition," 15 U.S.C. § 1127.  Therefore, this Court agrees with the Ninth Circuit that "[a] plaintiff who can't produce lost sales data may . . . establish an injury by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business." *TrafficSchool.com*, 653 F.3d at 825; *see also Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980) (A plaintiff in a Lanham Act case can recover damages by showing "a logical causal connection between the alleged false advertising and its own sales

position" rather than being required to "come forward with specific evidence that [the defendant's] ads actually resulted in some definite loss of sales.").

That is what plaintiffs have done here. Given that the Court must assume at this stage that Watkins' allegations of consumer confusion are true, Watkins' inference that some of the deceived customers would have purchased Watkins' pepper products instead of McCormick's (had they been aware of the slack-fill) is an adequate allegation of injury. (*See* Am. Compl. ¶¶ 53-55, 80.) In the Court's view, Watkins has plainly alleged injuries that are fairly traceable to McCormick's conduct. It therefore enjoys Article III standing.

## II. STATUTORY STANDING UNDER THE LANHAM ACT

The Supreme Court's decision in *Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), created a two-part test to determine whether a plaintiff can bring a cause of action under the Lanham Act. First, plaintiff's interest must be within the zone of interests that the Act is intended to protect, *id.* at 1388; and second, plaintiff must allege that its injuries were proximately caused by defendant's deceptive practices, *id.* at 1390. Watkins' claims easily fall within the Act's zone of interests because it has "allege[d] an injury to a commercial interest in reputation or sales." *Id.* While consumer claims are thus excluded from the scope of the Lanham Act, *see id.*, injuries to a business competitor are precisely the type of harm Congress intended to protect.

To allege proximate causation, a plaintiff must allege that defendant's "deception of consumers cause[d] them to withhold trade from the plaintiff." *Id.* at 1391. Even though proving causation and damages at trial can be difficult, the *Lexmark* Court noted that "potential difficulty in ascertaining and apportioning damages is not . . . an *independent* basis for denying

standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects." *Id.* at 1392.

Defendant proposes an irrational reading of *Lexmark* when it suggests that, because plaintiff cannot provide evidence that McCormick's deceptive packaging impacted Watkins with a "direct injury" — rather, it involved a chain of actions by third parties — *Lexmark* denies them standing. (*See* Def.'s Mem. at 9-11.)  On the contrary, a deceptive act will virtually always first influence consumers, whose resulting actions affect a competitor's business interests.  That is not remote and speculative; it is the intended scope of the statute.  Indeed, the *Lexmark* Court's test for proximate cause—that "deception of consumers causes them to withhold trade from the plaintiff"—explicitly assumes that deception will injure a competitor because of the intermediate actions of consumers.  *See Lexmark*, 134 S. Ct. at 1391.  Although *Lexmark* does caution that indirect injuries may not support a finding of probable cause, "diversion of sales to a direct competitor [is] the paradigmatic direct injury from false advertising." *Id.* at 1393-94.  Such diversion of sales is what Watkins claims here.

Watkins has alleged a logical causal connection between its lost sales and McCormick's slack-filling.  Watkins' pepper was available on store shelves beside McCormick's pepper. (Am. Compl. ¶ 37.)  Therefore, there is no reason to infer that all confused consumers would have — if enlightened — chosen a different pepper alternative instead of Watkins'.  The Court thus finds that plaintiff has plausibly alleged consumer confusion that proximately caused it to lose sales.  Because plaintiff's complaint satisfies both prongs of *Lexmark*, it has statutory standing to pursue claims under the Lanham Act.

**III. THE LANHAM ACT**

Defendant alternatively argues that Watkins has not adequately stated a claim for false advertising under the Lanham Act. The Court disagrees. The Lanham Act states:

> Any person who, on or in connection with any goods or services, or *any container for goods*, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or *false or misleading representation of fact*, which . . . . *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities,* or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added). McCormick maintains that Watkins has failed to state a claim under the statute for four reasons: (i) McCormick's slack-fill packaging does not constitute "commercial advertising or promotion"; (ii) the slack-fill packaging does not satisfy the falsity requirement of the Act; (iii) Watkins has not adequately alleged consumer confusion; and (iv) Watkins has failed to plead facts showing an injury. The Court will now address these arguments.

   **A. Advertising**

McCormick's insistence that the size of its containers does not constitute advertising or promotion defies common sense and the law. Courts have defined "commercial advertising or promotion" under the Lanham Act as "(1) commercial speech; (2) made by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendant's goods or services[; and] (4) . . . disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 734-35 (9th Cir. 1999) (quoting *Gordon & Breach Science Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996); *see also*

9

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56-58 (2d Cir. 2002) (adopting the first, third, and fourth elements of the quoted test while reserving judgment on the second element). Without addressing the full four-part test, the D.C. Circuit has agreed that the Lanham Act applies only to commercial speech. *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).

Because the D.C. Circuit has stated that the core of commercial speech is speech that does "'no more than propose a commercial transaction,'" *Nat'l Assoc. of Mfrs. v. S.E.C.*, 800 F.3d 518, 523 n.12 (D.C. Cir. 2015) (quoting *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 385 (1973)), defendant claims that the size of McCormick's containers does not propose a commercial transaction and therefore is not commercial speech. (*See* Def.'s Mem. at 12-13.) In making this argument, defendant ignores the fact that advertising includes statements about the product to be sold, not merely a proposal to sell. For example, statements on product packaging are advertising. *See, e.g.*, *Telebrands Corp. v. Wilton Indus., Inc.*, 983 F. Supp. 471, 473-75 (S.D.N.Y. 1997). Images on product packaging can also support a claim of false and misleading advertising. *See, e.g.*, *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 812-13 (D. Minn. 2011) (denying summary judgment where images on the defendants' packaging made their products appear 20% larger).

Federal courts do not appear to have considered whether a slack-filled container constitutes a false statement under the Lanham Act, but one court *did* hold that "the limited authority on point suggests that excessive slack fill states a claim for false advertising" under New York's consumer protection statute. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010) (analyzing N.Y. Gen. Bus. Law § 350-a). There is no relevant

distinction between the language of New York's consumer protection statute and that of the Lanham Act that counsels against following *Waldman*'s lead here.

McCormick argues that *size* of its pepper tins is not commercial speech, but it is difficult to understand how the size of a package or container could possibly not be considered a form of "advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). The size of a package signals to the consumer vital information about a product and is as influential in affecting a customer's choices as an explicit message on its surface. Moreover, in this case, "[t]he size of McCormick's containers is exactly what makes them misleading, because consumers cannot see the amount of their contents." (Pl.'s Opp. at 13.)

### B. Falsity

Watkins has properly alleged falsity under the Lanham Act. "Statements that are literally true or ambiguous but which nevertheless have a tendency to mislead or deceive the consumer are actionable under the Lanham Act." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1182 (8th Cir. 1998). As a matter of federal law, "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." *See* 21 C.F.R. § 100.100, which was promulgated under the authority of 15 U.S.C. § 1454(c)(4). It is true that McCormick's containers state the actual weight of the contents on the front corner, but the slack-fill regulations do not include an exception for containers which accurately state the product amount. *See id.* An accurate statement of weight does not necessarily correct a consumer's misimpression of product quantity based on the size of a container, because consumers are accustomed to seeing how much space a product occupies but may not know how that relates to its weight. Moreover, as plaintiff has alleged, the history and iconic, recognizable size of the McCormick containers creates a misleading impression.

(Am. Compl. ¶¶ 50-55.) If the size of McCormick's containers had a tendency to mislead or deceive, as plaintiff claims, that is enough to satisfy the Lanham Act's falsity requirement.

### C. Consumer Confusion

Watkins has also adequately alleged consumer confusion. Defendant argues that Watkins has not pleaded "facts showing that identifiable consumers were actually confused," and "as a matter of law, such confusion cannot be presumed." (Def.'s Mem. at 14.) But Watkins has referred to various consumer allegations in the parallel consumer class actions against McCormick. (*See* Am. Compl. ¶¶ 51-55 (stating that specific consumers were confused and deceived by McCormick's packaging).) Moreover, as stated above, nonfunctional slack-fill is considered deceptive as a matter of law, so there is nothing implausible about allegations of actual, widespread deception among McCormick's customers. *See* 21 C.F.R. § 100.100.

### D. Injury

The Court has discussed the adequacy of Watkins' allegations of injury in the context of analyzing standing. (*See supra* Sections I & II.) As explained above, Watkins has made sufficient allegations to establish that McCormick's slack-fill packaging caused Watkins to lose sales. Plaintiffs are not required to allege specific losses. *See Johnson & Johnson*, 631 F.3d at 190-91.

### IV. STATE LAW CLAIMS

Watkins has made claims under the Minnesota Deceptive Trade Practices Act, Minn. Stat. §§ 325D.44, *et seq.*, the California Unfair Competition and Business Practices Act, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. §§ 501.201, *et seq.* (Am. Compl. ¶¶ 65-86.) Watkins' principal place of business is in Minnesota, and it sells products throughout the United States. (Am. Compl. ¶ 1). McCormick

argues that all three state unfair trade practices claims should be dismissed for failure to state a claim, yet it has conceded that the state statutes are co-extensive with the Lanham Act with respect to liability. (Def.'s Mem. at 18-19.) Because the Court finds that plaintiff has adequately stated a claim under the Lanham Act, it can also reject defendant's argument that the state law claims should fail for the same reasons as the Lanham Act.

Defendant makes other arguments about why Watkins has failed to state claims under the state statutes, but none of those other arguments has merit. First, defendant cites a federal case for the proposition that a business entity does not have standing to sue under FDUTPA. (Def.'s Mem. at 19 n.9 (citing *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349-50 (S.D. Fla. 2009)).) However, a more recent opinion from a Florida state court held that non-consumers do have standing. *See Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty.*, 169 So.3d 164, 169 (Fl. Ct. App. 2015). Second, defendant argues that Watkins' claim under the MDTPA fails because it does not involve mistaking one product for another. (*See* Def.'s Mem. at 20-21.) Contrary to defendant's claim, the plain language of the statute covers deception about the "characteristics" or "quantities" of a product. Minn. Stat. § 325D.44(5).

Finally, the Court declines to dismiss any of the state statutory claims on the basis of choice-of-law analysis at this stage, because it does not have a complete factual record or adequate briefing. When there is a conflict between different states' laws, Minnesota selects the applicable law by considering five factors: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Jepson v. Gen. Cas. Co. of Wisc.*, 513 N.W.2d 467, 470 (Minn. 1994). The Minnesota Supreme Court has explained that "[t]hese factors were not intended to spawn the evolution of set mechanical rules but instead

to prompt courts to carefully and critically consider each new fact situation." *Id.* As a result, courts often decline to complete the choice-of-law analysis on a motion to dismiss, when they do not possess all of the relevant facts. *See, e.g.*, *P.L. Banks, Inc., v. Organized Fishing, Inc.*, No. 14-cv-3013, 2015 WL 420288, at *6 (D. Minn. Feb. 2, 2015); *Smith v. Questar Capital Corp.*, No. 12-cv-2669, 2013 WL 3990319, at *10 (D. Minn. August 2, 2013).

Defendant argues for the application of Minnesota law (and dismissal of claims under California and Florida law) by presenting a rule that a corporation is deemed to have suffered an economic injury at its principal place of business, but it derives that rule from opinions that did not apply Minnesota's choice-of-law analysis. (*See* Def.'s Mem. at 17-18.) Furthermore, defendant ignores the fact that this is an unfair competition case, and so one might argue that the injury occurred where the plaintiff lost sales. *See, e.g.*, *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002) (noting that "a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business"). Indeed, because of this ambiguity, the most recent *Restatement* explains that "the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising . . . as in the case of other kinds of torts. Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight . . . ." *Restatement (Second) of Conflict of Laws* § 145 cmt. f (1971). Since the parties have failed to offer an adequate discussion of the applicable choice-of-law rules, how they apply to the facts of this case, or whether factual development is necessary for the analysis, the Court will not dismiss plaintiff's claims under California and Florida law at this time.

## V.  UNFAIR COMPETITION

Because plaintiff failed to contest defendant's motion to dismiss its common law claim of unfair competition, it has conceded defendant's argument.  *See Rosenblatt v. Fenty,* 734 F. Supp. 2d 21, 22 (D.D.C. 2010).  The Court will therefore dismiss Count Five of the amended complaint.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is granted in part and denied in part.  A separate Order accompanies this Memorandum Opinion.


/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge


Date:   October 17, 2016