**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

IN RE: MCCORMICK & COMPANY, INC.,
PEPPER PRODUCTS MARKETING AND
SALES PRACTICES LITIGATION

*This Document Relates To:*
ALL CLASS ACTIONS

MDL Docket No. 2665
Misc. No. 15-1825 (ESH)

**PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL**

REDACTED VERSION FILED ON PUBLIC DOCKET
UNREDACTED VERSION FILED UNDER SEAL PURSUANT TO STIPULATED
PROTECTIVE ORDER (DKT. # 48)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .......................................................................................................1

II.   THE PROPOSED CLASSES .....................................................................................3

III.  SUMMARY OF FACTS COMMON TO THE ENTIRE CLASS .....................................7

    A.    Background on Black Pepper....................................................................................7

    B.    Defendants Knowingly Sold Black Pepper in Non-Transparent Containers
          Containing Non-Functional Slack-Fill.....................................................................8

    C.    Plaintiffs and the Classes Conferred Benefits Upon Defendants and
          Suffered Monetary Damage As A Result of Defendants' Slack-Fill Scheme........11

        1.    Every Class Member purchased Slack-Filled Pepper Products and the
             experiences of Plaintiffs are typical of the Class. .....................................11

        2.    McCormick intended to sell pepper in the same containers to
             minimize or eliminate consumers' ability to notice the change. ...............11

        3.    Plaintiffs and the Class Members were damaged. .....................................14

IV.   LEGAL STANDARDS FOR CLASS ACTIONS ...........................................................15

V.    ARGUMENT ..........................................................................................................16

    A.    All Four Prerequisites Under Rule 23(a) Are Satisfied Here. ...............................17

        1.    The Class is sufficiently numerous and joinder would be
             impracticable...............................................................................................18

        2.    Commonality exists given numerous common questions of law
             and fact........................................................................................................19

        3.    Defendants' same package, less weight strategy means Plaintiffs'
             claims are typical of the claims of the class...............................................22

010546-12  968453 V1

4.       Plaintiffs and their counsel readily satisfy the adequacy requirement, having common interests with the Classes. ...........................24

B.      The Requirements of Rule 23(b)(3) Are Satisfied Because Common Questions of Law and Fact Predominate and a Class Action Is Superior to Other Methods of Adjudication. ...........................................................................26

      1.       Common questions of law and fact predominate.......................................26

           a.      Common questions of law predominate for Plaintiffs' consumer protection act claims in 20 jurisdictions.......................27

           b.      Common questions of law will predominate for the unjust enrichment claims of the Unjust Enrichment (Restatement) Multi-State Class and the Unjust Enrichment (Appreciation) Multi-State Class.........................................................................31

           c.      Common questions of law will also predominate for Plaintiffs' alternative single state classes......................................34

      2.       Common questions of fact also predominate............................................35

      3.       Plaintiffs' damages model satisfies the *Comcast* standard. ......................37

      4.       A class action is superior to adjudicating tens of thousands of separate individual cases involving the same issues.................................39

C.      The Class Is Adequately Defined. ........................................................................42

D.      Hagens Berman Sobol Shapiro LLP and KamberLaw LLC Should Be Appointed Class Counsel Under Fed. R. Civ. P. 23(g)..........................................43

VI.      CONCLUSION.............................................................................................................44

010546-12  968453 V1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
  Nos. C 04-1511-CW, C 04-4203 CW, 2007 WL 1689899
  (N.D. Cal. June 11, 2007) ...................................................................................................32

*Amchem Prods v. Windsor*,
  521 U.S. 591 (1997)..............................................................................................................15

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
  568 U. S. 455 (2013)........................................................................................................16, 26

*In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*,
  701 F. Supp. 2d 356 (E.D.N.Y. 2010) .................................................................................38

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) .............................................................................................42

*Bynum v. District of Columbia*,
  214 F.R.D. 27 (D.D.C. 2003)...............................................................................................19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. 1917, 2013 WL 5429718 (N.D. Cal. June 20, 2013) .....................................................34

*Ceccone v. Equifax Info. Servs. LLC*,
  No. 13-cv-1314 KBJ, 2016 WL 5107202 (D.D.C. Aug. 29, 2016).......................................26

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
  795 F.3d 380 (3d Cir. 2015).................................................................................................19

*Coleman through Bunn v. D.C.*,
  306 F.R.D. 68 (D.D.C. 2015)........................................................................................ *passim*

*Comcast Corp. v. Behrend*,
  133 S.Ct. 1426 (2013)......................................................................................................37, 39

**In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) .........................................................................20, 23, 31

*In re Copley Pharm., Inc.*,
  161 F.R.D. 456 (D. Wyo. 1995) ...........................................................................................28

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   256 F.R.D. 82 (D. Conn. 2009)..........................................................................39

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*,
   446 U.S. 318 (1980)..........................................................................................18

*Hall v. Best Buy Co., Inc.*,
   274 F.R.D. 154 (E.D. Pa. 2011).........................................................................34

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................................28

*Hardy v. D.C.*,
   283 F.R.D. 20 (D.D.C. 2012)..............................................................................19

*Harnish v. Widener Univ. Sch. of Law*,
   833 F.3d 298 (3d Cir. 2016)...............................................................................38

*Harris v. Koenig*,
   271 F.R.D. 383 (D.D.C. 2010)............................................................................24

*\*Hendricks v. StarKist Co.*,
   No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ...............20, 24, 31, 40

*Jarvaise v. Rand Corp.*,
   212 F.R.D. 1 (D.D.C. 2002)................................................................................19

*Keilholtz v. Lennox Hearth Prods.*,
   268 F.R.D. 330 (N.D. Cal. 2010).......................................................................32

*Lavie v. Procter & Gamble Co.*,
   129 Cal. Rptr. 2d 486 (Ct. App. 2003)...............................................................30

*Little v. Washington Metro. Area Transit Auth.*,
   No. CV 14-1289 (RMC), 2017 WL 1403122 (D.D.C. Apr. 18, 2017)...................20

*Lockwood v. ConAgra Foods, Inc.*,
   597 F. Supp. 2d 1028 (N.D. Cal. 2009) .............................................................36

*In re Lorazepam Antitrust Litig.*,
   289 F.3d 98 (D.C. Cir. 2002)..............................................................................17

*Manpower, Inc. v. Ins. Co. of Pa.*,
   732 F.3d 796 (7th Cir. 2013) .............................................................................39

*\*In re: McCormick & Co., Inc.*,
   217 F. Supp. 3d 124 (D.D.C. 2016)....................................................................27

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.,
148 F. Supp. 3d 1364 (J.P.M.L. 2015) ............................................................................35, 41

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.,
215 F. Supp. 3d 51 (D.D.C. 2016) .........................................................................3, 21, 29, 35

McKinney v. U.S. Postal Serv.,
292 F.R.D. 62 (D.D.C. 2013) .............................................................................................41

Mullins v. Direct Digital, LLC,
795 F.3d 654 (7th Cir. 2015) .............................................................................................42

*Nat'l Veterans Legal Servs. Program v. U.S.,
No. CV 16-745 (ESH), 2017 WL 354084 (D.D.C. Jan. 24, 2017) .................................. passim

Overka v. Am. Airlines, Inc.,
265 F.R.D. 14 (D. Mass. 2010) ..........................................................................................32

In re Pharm. Indus. Average Wholesale Price Litig. ("In re AWP"),
252 F.R.D. 83 (D. Mass. 2008) ..........................................................................................28

Phillips Petroleum Co. v. Shutts,
472 U.S. 797 (1985) .........................................................................................................15

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,
148 F.3d 283 (3d Cir. 1998) ...............................................................................................28

Rikos v. Procter & Gamble Co.,
799 F.3d 497 (6th Cir. 2015) .........................................................................................23, 42

*Schumacher v. Tyson Fresh Meats, Inc.,
221 F.R.D. 605 (D.S.D. 2004) .......................................................................................31, 32

Shady Grove Orthopedic Assoc. v. Allstate Ins. Co,
559 U.S. 393 (2010) .........................................................................................................17

Suchanek v. Sturm Foods, Inc.,
764 F.3d 750 (7th Cir. 2014) .............................................................................................20

In re Terazosin Hydrochloride Antitrust Litig.,
220 F.R.D. 672 (S.D. Fla. 2004) ........................................................................................32

*Thorpe v. District of Columbia,
303 F.R.D. 120 (D.D.C. 2014) ......................................................................................16, 42

Trombley v. Nat'l City Bank,
826 F. Supp. 2d 179 (D.D.C. 2011) ................................................................................22, 23

*Twelve John Does v. Dist. Of Columbia*,
  117 F.3d 571 (D.C. Cir. 1997) ................................................................25

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ...................................................................42

*In re Vitamins Antitrust Litig.*,
  No. MDL 1285, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) ..........27

*\*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002) ......................................................... *passim*

*\*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................... *passim*

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ..........................................................20, 28

*In re XM Satellite Radio Holdings Sec. Litig.*,
  237 F.R.D. 13 (D.D.C. 2006) .................................................................23

## Statutes

15 U.S.C. § 41 ............................................................................................27

15 U.S.C. § 1454(c) ................................................................................1, 29

Cal. Bus. & Prof. Code § 12606.2 .......................................................29, 34

Colo. Rev. Stat. Ann. § 25-5-419 ..............................................................29

Minn. Stat. Ann. § 31.103 ..........................................................................29

## Other Authorities

*21 C.F.R. § 100.100 ..........................................................................1, 21, 29

*58 Fed. Reg. 2960 (Jan. 6, 1993) ..............................................................29

*58 Fed. Reg. 64123-01 (Dec. 6, 1993) ......................................................36

Fed. R. Civ. P. 23 ............................................................................16, 17, 41, 42

Fed. R. Civ. P. 23(a) ...................................................................... *passim*

Fed. R. Civ. P.  23(a)(1) ........................................................................18, 19

Fed. R. Civ. P.  23(a)(2) ........................................................................19, 21

Fed. R. Civ. P. 23(a)(3) ................................................................................................2, 22

Fed. R. Civ. P. 23(a)(4) ............................................................................................2, 24, 25

Fed. R. Civ. P. 23(b) ................................................................................................. *passim*

Fed. R. Civ. P. 23(g) .............................................................................................3, 43, 44

Fed. R. Civ. P. 23(g)(1) ..................................................................................................43

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ................................................................................44

Fed. R. Civ. P. 23(g)(1)(B) ...........................................................................................44

Fed. R. Civ. P. 23(g)(4) ................................................................................................44

Fed. R. Civ. P. 49 ..........................................................................................................41

Vincent A. Kleinfeld, *Legislative History of the Federal Food, Drug, and
   Cosmetic Act*, 50 Food & Drug L.J. (1995) ............................................................1

## I.    INTRODUCTION

For over 50 years, Congress has recognized that packaging has the capacity to deceive consumers or complicate value comparisons for consumer commodities.  *See* 15 U.S.C. § 1454(c).  Packages with nonfunctional slack-fill—that is, with a substantial amount of empty space that serves no purpose—"'create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label.'"  Vincent A. Kleinfeld, *Legislative History of the Federal Food, Drug, and Cosmetic Act*, 50 Food & Drug L.J. 65, 82 (1995) (quoting Report of the Senate Committee on Commerce (Senate Report No. 361, Seventy-Fourth Congress, First Session)).  Charged by Congress with preventing this practice, the FDA prohibits nonfunctional slack-fill in food products, because "[a] container that does not allow the consumer to fully view its contents [is] considered to be filled as to be misleading if it contains nonfunctional slack-fill." 21 C.F.R. § 100.100.  Taking direction from (and outright copying) federal law, forty-nine states (and the District of Columbia) have also enacted laws establishing that packages cannot be filled misleadingly.[1]  In short, both federal and state lawmakers have taken efforts to prohibit the practices relevant here precisely because of their inherently deceptive nature.

███████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

---

[1] A number of jurisdictions (including California, Colorado, Delaware, District of Columbia, Idaho, Illinois, Michigan, Minnesota, New Hampshire and New Mexico) specifically prohibit misrepresentations regarding goods including quantities of goods.  *See* Ex. 13 (Survey of State Consumer Protection Law Prohibitions, Table 4).  All Exhibit references in this document are attached to the Declaration of Elizabeth A. Fegan.  Exhibits starting at Exhibit 1 have been filed publicly while exhibits starting at Exhibit 100 have been filed under seal.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Because Defendants successfully pulled ██████████ that affected all purchasers of the relevant pepper products, this case is ripe for class treatment and the Court should grant class certification under Fed. R. Civ. P. 23(a) and (b)(3).  First, the case meets Rule 23(a)(1)'s numerosity prerequisite as joinder of all potential class members is neither practicable nor even possible where Defendants sold hundreds of thousands of units of black pepper in stores nationwide.  *See infra* § V.A.1.  Second, the case meets Rule 23(a)(2)'s commonality prerequisite since the harms alleged by Plaintiffs and the class members were created by one common, corporate initiative: the '████████████████████████ and Defendants' uniform and deceptive efforts to overcharge customers by decreasing the net weight of pepper.  *See infra* § V.A.2.  Third, the case meets Rule 23(a)(3)'s typicality requirement since each

- 2 -

named Plaintiff, like each absent class member, was subjected to and financially damaged by

Defendants' "'same package…less weight' strategy.'" *See infra* § V.A.3.  And the case meets

Rule 23(a)(4)'s adequacy prerequisite where Plaintiffs have the same interests as the unnamed

members of the class and will vigorously prosecute the interests of any class through qualified

counsel.  *See infra* § V.A.4.

Furthermore, Rule 23(b)(3) is the appropriate type of class action for the common

deceptive and unfair conduct challenged by Plaintiffs here.  Common questions of law and fact

predominate, given the common fact pattern and common legal requirements of the state laws

under which Plaintiffs seek to certify the Classes and because "nonfunctional slack-fill is

considered deceptive as a matter of law."  *See infra* § V.B.1-2.  *See also In re McCormick & Co.,*

*Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 215 F. Supp. 3d 51, 61 (D.D.C. 2016).

Finally, class treatment is not merely superior to individual treatment, it is the only method for

the fair and efficient adjudication of the issues before the Court where each individual claim

involves small dollar amounts.  *See infra* § V.B.4.  Accordingly, Plaintiffs respectfully request

that the Court grant their motion for class certification, appoint them as class representatives

under Rule 23(a) and (b)(3), and appoint their counsel as class counsel under Rule 23(g).

## II.     THE PROPOSED CLASSES

Plaintiffs seek to certify several classes on behalf of purchasers of black pepper in non-

transparent containers containing non-functional slack-fill, i.e., "Slack Filled Black Pepper

Products."[2]  As used herein, "Slack Filled Black Pepper Products" includes the following

---

[2] For ease of reference, Plaintiffs refer to all of the pepper containers at issue as "non-transparent."  Plaintiffs acknowledge that the pepper grinders at issue are in transparent containers.  However, because the fill level of the grinders is entirely obscured by the placement of an opaque label, it is as if the containers are non-transparent for purposes of determining the fill level.  *See* Second Amended Consolidated Class Action Complaint ("2d. Am. Compl.") ¶¶ 40-45 (Dkt. # 129).

McCormick and Private Label branded products supplied by McCormick, as identified by UPC

code below.

| Table 1: McCormick Brand Slack Filled Black Pepper Products | | |
|---|---|---|
| Description | Size (oz) | UPC |
| BLACK PEPPER GROUND | 1.50 | 5210002992 |
| BLACK PEPPER GROUND | 3.00 | 5210002996 |
| BLACK PEPPER GROUND | 6.00 | 5210003010 |
| BL PEPPER GRINDER | 1.00 | 5210003026 |
| PEPPERCORN GRINDER MED | 2.50 | 5210003065 |

| Table 2: McCormick Supplied Private Label Slack Filled Black Pepper Products | | |
|---|---|---|
| Description | Size (oz) | UPC |
| ███████████ | ██ | ███ |
| ███████████ | ██ | ███ |
| ███████████ | ██ | ███ |
| ████████████ | ██ | ███ |
| ███████████ | ██ | ███ |
| █████████████ | ██ | ███ |
| ████████████ | ██ | ███ |
| ███████████ | ██ | ███ |
| ███████████ | ██ | ███ |
| ██████████ | ██ | ███ |
| ██████████ | ██ | ███ |
| ██████████ | ██ | ███ |
| █████████ | ██ | ███ |
| ████████████ | ██ | ██ |
| ███████████ | ██ | ███ |
| █████████ | ██ | ███ |
| ████████ | ██ | ███ |
| ███████████ | ██ | ███ |
| ██████████ | ██ | ███ |
| ██████████ | ██ | ███ |

| Table 2: McCormick Supplied Private Label Slack Filled Black Pepper Products | | |
|---|---|---|
| **Description** | **Size (oz)** | **UPC** |
| ███████████████ | ██ | ██████ |
| ███████████████ | ██ | ██████ |
| █████████████████ | ██ | ██████ |
| ████████████████ | ██ | ██████ |

First, as to their claims for violations of state consumer protection statutes against Defendants McCormick and Walmart, Plaintiffs Deborah Esparza (California), Holly Marsh (California), Cynthia Fernandez (Connecticut), Catherine Grindel (Missouri), Paula Jones (DC), Carmen Pellitieri (Florida), Carmen Pellitieri (Florida), Alexander Liberov (Illinois),[3] Scott Bittle (Illinois), Brenda Theis (Illinois) and Julia Vladimirskiy (Illinois) seek appointment to serve as class representatives for the <u>Consumer Protection Multi-State Class</u> defined as follows:

> All persons residing in Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Idaho, Illinois, Iowa,  Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New Mexico, New York, North Dakota, or Washington who purchased Slack Filled Black Pepper Products for their personal or household uses.

Next, for their unjust enrichment claims, Plaintiffs seek to certify two classes.  First, against Defendants McCormick and Walmart, Plaintiffs Cynthia Fernandez (Connecticut), Paula Jones (DC), Scott Bittle (Illinois), Alexander Liberov (Illinois), Brenda Theis (Illinois), Julia Vladimirskiy (Illinois), and Catherine Grindel (Missouri), seek appointment to serve as class representatives for the <u>Unjust Enrichment (Restatement) Multi-State Class</u> as defined as follows:

> All persons residing in Arkansas, Colorado, Connecticut, District of Columbia, Hawaii, Illinois, Iowa, Missouri, New Mexico, New York, Oklahoma, or West Virginia who purchased Slack Filled

---

[3] For all proposed classes asserted against Walmart, only Plaintiff Liberov seeks appointment as a class representative on behalf of purchasers with claims against Walmart.

Black Pepper for their personal or household use.

Additionally, against Defendant McCormick, Plaintiffs Deborah Esparza (California), Holly

Marsh (California), Sandra Robinson (Maryland), and Hubert Gerstnecker (Pennsylvania) seek

appointment to serve as class representatives for the <u>Unjust Enrichment (Appreciation) Multi-</u>

<u>State Class</u> as defined as follows:

> All persons residing in Alaska, California,  Kansas, Kentucky,
> Maine, Maryland, Massachusetts, Nevada, Pennsylvania, Rhode
> Island, South Carolina, South Dakota, Tennessee, Utah, Vermont,
> Washington, or Wisconsin who purchased Slack Filled Black
> Pepper, for their personal or household use.

In the alternative, Plaintiffs seek appointment to serve as class representatives for single state

classes under the consumer protection and/or unjust enrichment law of Plaintiffs' respective

home states as follows:

> All persons residing in California who purchased Slack Filled
> Black Pepper for their personal or household use (Class
> Representatives Deborah Esparza and Holly Marsh under CAL.
> BUS. & PROF. CODE § 12606, CAL. BUS. & PROF. CODE §
> 12606.2, and CAL. BUS. & PROF. CODE § 17200, and CAL.
> CIV. CODE § 1770, and Unjust Enrichment Law against
> Defendant McCormick);

> All persons residing in Connecticut who purchased Slack Filled
> Black Pepper for their personal or household use (Class
> Representative Cynthia Fernandez under CONN. GEN. STAT. §
> 42-110b, *et seq*., including § 42-110(a)(3), and Unjust Enrichment
> Law against Defendant McCormick);

> All persons residing in District of Columbia who purchased Slack
> Filled Black Pepper for their personal or household use (Class
> Representative Paula Jones under D.C. CODE § 28-3901, *et seq*.,
> including § 28-3904 and Unjust Enrichment Law against
> Defendant McCormick);

> All persons residing in Florida who purchased Slack Filled Black
> Pepper for their personal or household use (Class Representative
> Carmen Pellitieri under FLA. STAT. § 501.201, *et seq*. against
> Defendant McCormick);

All persons residing in Illinois who purchased Slack Filled Black Pepper for their personal or household use (Class Representatives Scott Bittle, Alexander Liberov, Brenda Theis and Julia Vladimirskiy under 815 Ill. Comp. Stat. § 501/1, *et seq*. and Unjust Enrichment Law against Defendants McCormick and Walmart);

All persons residing in Maryland who purchased Slack Filled Black Pepper for their personal or household use (Class Representative Sandra Robinson under Unjust Enrichment Law against Defendant McCormick);

All persons residing in Missouri who purchased Slack Filled Black Pepper for their personal or household use (Class Representative Catherine Grindel under MO. REV. STAT. § 407.010, *et seq*. and Unjust Enrichment Law against Defendant McCormick); and

All persons residing in Pennsylvania who purchased Slack Filled Black Pepper for their personal or household use (Plaintiff Hubert Gerstnecker under Unjust Enrichment Law against Defendant McCormick).

Excluded from any proposed class are (i) Defendants, any entity in which any Defendant has a controlling interest or which has a controlling interest in Defendants, and (ii) the Court and its staff.

## III.   SUMMARY OF FACTS COMMON TO THE ENTIRE CLASS

As set forth in the accompanying Declaration of Elizabeth A. Fegan, the evidence that Plaintiffs will use to prove the claims of the class is common to the Class and predominates over any individual issues.  A summary of this common evidence follows:

**A.    Background on Black Pepper.**

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

- 7 -



**B.**   **Defendants Knowingly Sold Black Pepper in Non-Transparent Containers Containing Non-Functional Slack-Fill.**

010546-12  968453 V1



010546-12  968453 V1



**C.**     **Plaintiffs and the Classes Conferred Benefits Upon Defendants and Suffered Monetary Damage As A Result of Defendants' Slack-Fill Scheme.**

**1.**     **Every Class Member purchased Slack-Filled Pepper Products and the experiences of Plaintiffs are typical of the Class.**

Plaintiffs' experiences were typical of the class members' experiences.  Each of the named Plaintiffs purchased a tin or grinder of black pepper during the Class Period, and believed—at the time of their purchase—that they were purchasing a product that was full, rather than one that contained as much as 25% non-functional slack-fill.  *Id.* ¶¶ 84-95.

**2.**     **McCormick intended to sell pepper in the same containers to minimize or eliminate consumers' ability to notice the change.**



010546-12  968453 V1



010546-12  968453 V1



### 3. Plaintiffs and the Class Members were damaged.

Having each purchased Defendants' non-transparent containers containing non-functional slack fill, Plaintiffs and the class members were damaged.  Fegan Decl. ¶¶ 84-85.

 Thus, damages can be calculated on a class-wide basis.

## IV.   LEGAL STANDARDS FOR CLASS ACTIONS

Class actions allow plaintiffs to combine claims that would not be economical to litigate on an individual basis, allowing them to right wrongs that "would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *see also Amchem Prods v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the

incentive for any individual to bring a solo action prosecuting his or her rights."). *See also Thorpe v. District of Columbia,* 303 F.R.D. 120, 143 (D.D.C. 2014) (Huvelle, J.) ("A principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner.") (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982)).

At the class certification stage, the court is required to engage in a "rigorous analysis" of whether plaintiffs have satisfied Rule 23's requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). However, this rigorous analysis should be tempered by the recognition that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U. S. 455, 466 (2013). The Court should consider merits questions only to the extent that such questions are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. The wrongs that Plaintiffs seek to right through this litigation present precisely the sort of "small recovery" contemplated by Rule 23, thus Plaintiffs' claims are ideally suited to satisfy Rule 23's requirements for class certification.

## V.      ARGUMENT

"Rule 23 sets forth two sets of requirements for a suit to be maintained as a class action." *Nat'll Veterans Legal Servs. Program v. U.S.,* No. CV 16-745 (ESH), 2017 WL 354084 at *3 (D.D.C. Jan. 24, 2017) (Huvelle, J.) (citing Fed. R. Civ. P. 23). "First, under Rule 23(a), all class actions must satisfy the four requirements of numerosity, commonality, typicality, and adequacy." *Id.* "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes,* 564 U.S. at 349. Under Rule 23(a), a suit may be maintained as a class action when:

(1) the class is so numerous that joinder of all members is

> impracticable; (2) there are questions of law or fact common to the
> class; (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the
> interests of the class.

*National Veterans Legal Services,* 2017 WL 354084 at *3 (quoting Fed. R. Civ. P. 23(a)).

"Second, the suit must fit into one of the three types of class action outlined in Rule 23(b)(1),

(b)(2), and (b)(3)." *Id.* Following Rule 23(b), courts certify classes:

> where (1) separate actions would risk "establish[ing] incompatible
> standards of conduct for the party opposing the class" or individual
> adjudications "which would as a practical matter be dispositive of
> the interests" of nonparty members or "substantially impair or
> impede their ability to protect their interests"; (2) injunctive or
> declaratory relief is sought and "the party opposing the class has
> acted or refused to act on grounds generally applicable to the
> class"; or (3) "the court finds that the questions of law or fact
> common to the members of the class predominate over any
> questions affecting only individual members, and that a class
> action is superior to other available methods for the fair and
> efficient adjudication of the controversy."

*In re Lorazepam Antitrust Litig.*, 289 F.3d 98, 107 (D.C. Cir. 2002) (citing *Amchem*, 521 U.S. at

614–616).  Once Plaintiffs satisfy the criteria of Rule 23(a) and (b), they are categorically

entitled to pursue their claim as a class action.  *See Shady Grove Orthopedic Assoc. v. Allstate

Ins. Co*, 559 U.S. 393, 398 (2010) (Rule 23 "creates a categorical rule entitling a plaintiff whose

suit meets the specified criteria to pursue his claim as a class action").

## A.      All Four Prerequisites Under Rule 23(a) Are Satisfied Here.

To start, Plaintiffs satisfy the four Rule 23(a) prerequisites for class certification:

numerosity, commonality, typicality, and adequacy for all Classes, because: (1) the classes are so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the classes; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the classes; and (4) the representative parties will fairly and adequately

protect the interests of the classes.  *See* Fed. R. Civ. P. 23(a).  As explained more fully below,

Plaintiffs easily satisfy each of these requirements.

**1.      The Class is sufficiently numerous and joinder would be impracticable.**

Rule 23(a)(1) requires that the proposed classes be "so numerous that joinder of all

members is impracticable."  Fed, R. Civ. P. 23(a)(1). "The numerosity requirement requires

examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel.*

*Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  "Arguably, 'as few as 25–30

class members should raise a presumption that joinder would be impracticable.'" *Coleman*

*through Bunn v. D.C.,* 306 F.R.D. 68, 76 n.2 (D.D.C. 2015) (quoting *EEOC v. Printing Indus. of*

*Metropolitan Wash.*, 92 F.R.D. 51, 53 (D.D.C. 1981)).  Impracticability in turn requires only that

joinder of all class members would be merely "difficult or inconvenient," not impossible.  *Id.* at

76 (citing *Bond v. Fleet Bank,* No. Civ. A. 01-177 L., 2002 WL 31500393 at *4 (D.R.I. Oct. 10,

2002)).  Plaintiffs must provide some evidentiary basis of the existence of numerous class

members, *see Dukes*, 564 U.S. at 350, but the court may draw "reasonable inferences from the

facts presented to find the requisite numerosity," *Coleman*, 306 F.R.D. at 76 (certifying class

containing 34 members).

Here, joinder of all potential class members is neither practicable nor even possible.[5]  Far

more than 40 consumers purchased the black pepper products at issue during the class period.

████████████████████████████████████████████████████

████████████████████████████████████████████  *See* Fegan

---

[5] Notably, Defendants did not attempt to challenge the numerosity of the Classes in their
Motion to Dismiss Plaintiffs' consumer-protection and unjust enrichment claims, even though
Defendants' argument for dismissal of those claims amounted to their assertion that Classes for
those claims could not be certified.  *See* Mem. of Points and Authorities in Support of
McCormick's Mot. to Dismiss the Consumer Pls.' Consol. Class Action Compl. ("McCormick
MTD") at 13-39.

Decl. ¶ 112.  These class members are also geographically distributed across the country, further making joinder impracticable.  *See Jarvaise v. Rand Corp.*, 212 F.R.D. 1, 3 (D.D.C. 2002) (class members worked in both California and the District of Columbia, making joinder impracticable). The Classes clearly satisfy the numerosity requirement of Rule 23(a)(1).

> **2.      Commonality exists given numerous common questions of law and fact.**

Plaintiffs also satisfy Rule 23(a)(2) because there are numerous "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Dukes*, 564 U.S. at 349–350 (internal quotation omitted).  Plaintiffs' claims must also be based on a "common contention" that is "capable of classwide resolution" such that a "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350. The commonality threshold is not particularly high.  *See In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 259 (D.D.C. 2002).  Indeed, "even a single common question" can satisfy the commonality requirement, *Dukes*, 564 U.S. at 338.  Thus, because the commonality requirement may be satisfied by a single common question, the requirement is "often easily met."  *In re Vitamins Antitrust Litig.*, 209 F.R.D. at 259. At its core, the commonality inquiry focuses on whether the defendant's conduct was the same with regard to all class members.  *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015), *cert. denied sub nom. PNC Bank v. Brian W.*, 136 S. Ct. 1167 (2016).  Importantly, "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members."  *Bynum v. District of Columbia,* 214 F.R.D. 27, 33 (D.D.C. 2003); *accord Hardy v. D.C.*, 283 F.R.D. 20, 24 (D.D.C. 2012).

Courts evaluating class certification under state consumer protection statutes have

frequently found commonality in questions that turn on a defendant's uniform conduct toward the class.  *See, e.g., In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 973 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) and *aff'd sub nom. Briseno v. ConAgra Foods Inc.*, 674 F. App'x 654 (9th Cir. 2017) (commonality requirement was met where all class members were exposed to defendant's allegedly misleading "100% Natural" labeling and marketing because class claims arose from "a common core of salient facts" and posed a common question: "whether [defendant's] '100% Natural' marketing and labeling of Wesson Oil products was false, unfair, deceptive, and/or misleading").  *See also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) (reversing finding of no commonality and holding "that the question whether the [defendant's] packaging was likely to deceive a reasonable consumer is common" adding, "[t]he claims of every class member will rise or fall on the resolution of that question"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 248 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) (commonality satisfied where class claims were "clearly focused on the allegedly deceptive conduct of defendant . . . ; it is not focused on the conduct of individual class members").  Commonality is readily satisfied "when 'harm alleged by each class member was the result of the same corporate-wide policies,' because a question common to all members will be whether that policy was unlawful." *Little v. Washington Metro. Area Transit Auth.,* No. CV 14-1289 (RMC), 2017 WL 1403122 at *16 (D.D.C. Apr. 18, 2017) (quoting *DL v. District of Columbia*, 713 F.3d 120, 127 (D.C. Cir. 2013)).  And in the context of under-filling products, the court in *Hendricks v. StarKist Co.* opined that "the proposed class satisfies the commonality requirement because, at a minimum, the issue of Defendant's alleged under-filling of tuna cans and its defenses apply to the class as a whole." *Hendricks v. StarKist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *3 (N.D. Cal.

July 23, 2015).

Here, the operative facts and law applicable to Plaintiffs' claims are clearly common. The harm alleged by Plaintiffs and the classes result from the same corporate decision: the ███████████████████████████████████, a uniform and allegedly unlawful decision to covertly raise prices to every consumer by decreasing the amount of pepper in packages containing substantial non-functional slack fill; a practice deemed to be misleading as a matter of law.  *See generally* 2d Am. Compl. ¶¶ 33-45, 117-118.  The first—and most important—common question is thus whether the slack fill was functional or non-functional.  This question is central to the state consumer-protection claims brought on behalf of the Consumer Protection Subclass.[6]  *Id.* ¶¶ 113-125.  Assuming the trier of fact finds the slack fill to be non-functional, the question whether non-functional slack fill in non-transparent containers violates state consumer protection statutes is answered class-wide by reference to the FDA's prohibition on non-functional slack-fill because it is objectively misleading. 21 C.F.R. §100.100.

Similarly, the unfair and deceptive nature of Defendants' decision to reduce the amount of pepper in their non-transparent containers makes Defendants' enrichment from consumer purchases of these products unjust.  *Id.* ¶¶ 126-129.  Finally, Defendants' decision to reduce the fill of their products establishes the class-wide measure of damages suffered by the Class for unjust enrichment and Defendants' violation of state consumer protection statutes.  ████████ ████████████████████████████████████████████████████████████ ██████████████████████████████  Plaintiffs need only establish a "single common question" to satisfy Rule 23(a)(2), *see Dukes*, 564 U.S. at 359, and that requirement is plainly met in this case.

---

[6] And it can be shown on a class-wide basis since "nonfunctional slack-fill is considered deceptive as a matter of law."  *In re McCormick,* 215 F. Supp. 3d at 61.

In addition, there are many other common questions that will help determine Defendants' liability to Plaintiffs and the Class, and thus "resolve an issue that is central to the validity of [Plaintiffs'] claims in one stroke." *Id.* at 338. These include, but are not limited to:

- Whether and when McCormick began under-filling black pepper containers sold to consumers;

- Whether the slack fill is functional or non-functional;

- Whether Defendants' conduct caused injury to Plaintiffs and class members;

- Whether Defendants' conduct violated state consumer protection statutes;

- Whether Defendants were unjustly enriched by the underfilling and misbranding of their products; and

- Whether Plaintiffs and the class are entitled to recover damages, whether actual, statutory or punitive, restitution, and/or equitable relief from Defendants based on the conduct alleged herein.

These common questions arise because Defendants' conduct toward all Class members was the same: it was the Defendants' unilateral decision to deceptively reduce the fill of their products, which caused the injuries alleged by Plaintiffs. Plaintiffs and the Class have unquestionably satisfied the commonality requirement.

> **3.      Defendants' same package, less weight strategy means Plaintiffs' claims are typical of the claims of the class.**

Typicality, the third element of Rule 23(a), is also satisfied in this case. Rule 23(a)(3) requires that claims of the proposed class representatives be "typical" of the claims of the absent class members. Fed. R. Civ. P. 23(a)(3). Fundamentally, the typicality requirement tests whether an action can be efficiently maintained on a class basis, and whether the class representatives' incentives are aligned with those of the other class members. *Trombley v. Nat'l*

*City Bank*, 826 F. Supp. 2d 179, 193 (D.D.C. 2011).  Typicality is satisfied when the named

plaintiffs' claims "arise from the same course of conduct, series of events, or legal theories as the

claims of other class members."  *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 18

(D.D.C. 2006); *accord Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015), *cert.*

*denied*, 136 S. Ct. 1493 (2016).  Indeed, in many such cases the "'commonality and typicality

requirements of Rule 23(a) tend to merge.'"  *Rikos*, 799 F.3d at 509 (quoting *Dukes*, 564 U.S. at

349 n. 5).  As this Court recently observed, "'typicality focuses on the similarities between the

class representative's claims and those of the class… .'"  *Nat. Veterans,* 2017 WL 354084 at *5

(quoting William B. Rubenstein, NEWBERG ON CLASS ACTIONS 3.32 (5th ed. 2016)).  The

typicality requirement is "liberally construed."  *In re Vitamins Antitrust Litig.,* 209 F.R.D. at 260.

     While the element focuses on similarities of claims, it must be stressed that the claims of

Plaintiffs and those of the other class members need not be identical.  *Trombley*, 826 F. Supp. 2d

at 193; *see In re Vitamins Antitrust Litig.*, 209 F.R.D. at 260 (the typicality "requirement has

been liberally construed by courts").  *See also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 973

("Typicality, like commonality, is a permissive standard.").  For example, typicality can be

satisfied even where "'there are differences among class members in the amount of damages

each is claiming.'"  *Coleman*, 306 F.R.D. at  83 (quoting NEWBERG ON CLASS ACTIONS § 3:43

(5th ed. 2014)).  Such is the case here.

     While the claims of the named Plaintiffs need not be identical to those of the absent Class

members, *Trombley*, 826 F. Supp. 2d at 193, in this case the claims of the Plaintiffs and the

absent class members are functionally the same.  As noted above, Plaintiffs allege common

wrongdoing by Defendants directed toward all class members, including Plaintiffs: Defendants'

████████████████████████████ which covertly raised prices to every single

Plaintiff and Class member by decreasing the amount of pepper in their non-transparent tins and grinders.  Here, all Plaintiffs and class members were victims of Defendants' █████ ██████████████ strategy: they all purchased pepper products that contained less black pepper than such products previously had contained, even though the size of the package remained the same.  *See* 2d Am. Compl. ¶¶ 5, 7, 9, 10-21, 33-45.  Nor are named Plaintiffs' claims subject to any unique defenses because the success of Plaintiffs'—and the Classes'— claims depends on proof of Defendants' wrongful conduct.  Plaintiffs' claims arise from the same course of conduct and legal theories as those of the other class members, and Plaintiffs' claims are therefore typical even though they (and the absent class members) may have purchased different brands (e.g. McCormick vs. private label), varieties (e.g. ground vs. whole pepper), and sizes (e.g. 1.5 oz, 2 oz, 6 oz) of pepper.  *See In re Vitamins Antitrust Litig.*, 209 F.R.D. at 260–61 (typicality found where plaintiffs' "cause of action arises from a common wrong," even though class members purchased "various products").  *See also Hendricks*, 2015 WL 4498083 at *3 (finding typicality requirement met when "like the rest of the settlement class, Hendricks alleges that he purchased cans of StarKist tuna during the time period when StarKist allegedly underfilled its product").  Plaintiffs carry the typicality requirement.

> **4.      Plaintiffs and their counsel readily satisfy the adequacy requirement, having common interests with the Classes.**

The final requirement of Rule 23(a) - adequacy - requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement "seeks to uncover conflicts of interest between the named parties and the putative class."  *Harris v. Koenig*, 271 F.R.D. 383, 391 (D.D.C. 2010).  Courts generally recognize two criteria for determining the adequacy of representation: "1) the named representative must not have antagonistic or conflicting interests with the unnamed members of

the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. Dist. Of Columbia*, 117 F.3d 571, 575–76 (D.C. Cir. 1997) (internal quotation omitted); *accord Nat'l Veterans,* 2017 WL 354084 at *6.

These requirements are met here and Plaintiffs will fairly and adequately protect the interests of the class.  Plaintiffs are members of the class(es) they seek to represent: each Plaintiff is a resident of a state within a particular grouping of states with similar laws and purchased black pepper for his or her personal or household use.  2d Am. Compl. ¶¶ 10-21; Fegan Decl. ¶¶ 84-85.  There are no conflicts of any kind between Plaintiffs' interests and the interests of the Classes.  Plaintiffs, like the members of the proposed Classes, have an interest in obtaining compensation from Defendants for the unfair, deceptive, and misleading conduct of under-filling their pepper products.  Plaintiffs' claims can only be successful if the claims of all Class members are successful, so there is no conflict of interest.  Moreover, the proposed representatives of the Classes have demonstrated their commitment to pursuing these claims on behalf of absent class members. Plaintiffs' counsel explained the duties and obligations of being a class representative to each named Plaintiff, and each named Plaintiff understood and accepted their duties to the proposed Classes prior to involving themselves in this litigation. Each Plaintiff has responded to written discovery requests, and each Plaintiff sat for a deposition.  Plaintiffs have demonstrated a significant level of interest, commitment, and knowledge in and of this case and are plainly adequate.

Finally, Plaintiffs' Interim Co-Lead Counsel are qualified to lead a certified class.  *See* Section V.D, *infra*.

Accordingly, as Plaintiffs are adequate representatives of the Class and have selected competent counsel to protect the Class's interests, Rule 23(a)(4) is satisfied.

**B.      The Requirements of Rule 23(b)(3) Are Satisfied Because Common Questions of Law and Fact Predominate and a Class Action Is Superior to Other Methods of Adjudication.**

After analyzing the Rule 23(a) prerequisites, courts determining whether a class action may be maintained turn next to Rule 23(b).  Fed. R. Civ. P. 23(b).  "Rule 23(b) describes three types of class action and requires every class action to match one or more of the three types." *Nat'l Veterans,* 2017 WL 354084 at *8 (citing Fed. R. Civ. P. 23(b)).  Here, Plaintiffs seek certification under Rule 23(b)(3), and thus must demonstrate "'that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.'"  *Id.* (quoting Fed. R. Civ. P. 23(b)(3)) (emphases added).  The twin prongs of predominance and superiority are met here.

**1.      Common questions of law and fact predominate.**

This case satisfies Rule 23(b)(3)'s requirement that questions of law or fact common to class members predominate over any questions affecting only individual members.  "The predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Coleman,* 306 F.R.D. at 85 (quoting *Amchem*, 521 U.S. at 623).  Rule 23(b)(3) "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen,* 568 U.S. at 459(emphasis in original).  Thus, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the metho[d] best suited to adjudication of the controversy fairly and efficiently."  *Id.* (alteration in original, internal quotation omitted). "[C]ourts routinely find that common questions of law and fact predominate in the context of consumer challenges to standardized practices."  *Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314 KBJ, 2016 WL 5107202 at *7 (D.D.C. Aug. 29, 2016) (collecting cases). And, "[i]n

determining whether common questions of law or fact predominate, liability issues are the primary focus." *In re Vitamins Antitrust Litig*., No. MDL 1285, 2001 WL 856292, at *4 (D.D.C. July 25, 2001).

As the Court previously opined in this case "[o]n a motion for class certification, the D.C. Circuit has explained that 'to establish the commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles' because the 'variations can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines.'" *In re: McCormick & Co., Inc*., 217 F. Supp. 3d 124, 140 (D.D.C. 2016) (quoting *Walsh v. Ford Motor Co*., 807 F.2d 1000, 1017 (D.C. Cir. 1986)). Following this guidance, rather than seeking nationwide class certification, Plaintiffs seek to certify a group, a subset of states for which the questions of law are similar and thus will predominate. This approach ensures that, for each of the classes Plaintiffs seek to certify, common questions of law will predominate.

> **a.    Common questions of law predominate for Plaintiffs' consumer protection act claims in 20 jurisdictions.**

To start, Plaintiffs Bittle, Esparza, Fernandez, Grindel, Jones, Liberov, Marsh, Pellitieri, Robinson, Theis and Vladimirskiy seek certification of one Consumer Protection Multi-State Class on behalf of consumers in 20 jurisdictions. These jurisdictions apply substantially similar—and in many instances identical—laws on key issues. Consumer protection statutes, which generally prohibit unfair or deceptive trade practices, are based on the Federal Trade Commission Act ("FTCA"). *See* 15 U.S.C. § 41 *et seq*. These so-called "little FTC Acts" have been enacted in all fifty states and the District of Columbia. Jack E. Karns, *State Regulation of Deceptive Trade Practices Under "Little FTC Acts": Should Federal Standards Control?*, 94

Dick. L. Rev. 373, 373 (1990).  Given their common source, the existence of a group of

jurisdictions with similar legal requirements is not surprising.

Here, Plaintiffs' consumer protection claims arise from Defendants' deceptive unfair and

deceptive sales of black pepper in non-transparent containers containing non-functional slack fill.

To prove their claims, Plaintiffs will be required to present evidence as to the following common

elements: (1) Defendant(s) engaged in an act or practice prohibited by state statute; (2) the

Plaintiffs suffered damage; and (3) the challenged act or practice caused that damage.  *See* Ex. 13

(Survey of State Consumer Protection Law Prohibitions).  Because all states in the proposed

class contain these common elements of proof, common questions of law predominate for the

Consumer Protection Multi-State Class.[7]

First, common issues of law will predominate as to whether Defendants engaged in an act

or practice prohibited by statute.  The jurisdictions within the Consumer Protection Multi-State

Class all prohibit deceptive and/or unconscionable acts or practices.  *See* Ex. 13 (Survey of Laws

Prohibiting Deceptive Certain & Practices).  In addition, the states within the Consumer

---

[7] *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) (affirming settlement class in case alleging breach of state consumer fraud statutes, noting where multistate claims apply in a class action any "differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998) ("Variations in state law do not necessarily preclude a 23(b)(3) action," and any such "idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims"); *In re Pharm. Indus. Average Wholesale Price Litig. ("In re AWP")*, 252 F.R.D. 83, 94 (D. Mass. 2008) (certifying 36 state consumer protection class of end payors of pharmaceuticals); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 250 (D. Del. 2002) (certifying settlement class in which variations of state consumer protection and antitrust laws did not defeat predominance where "these issues can be minimized by grouping state statutes and common law that share common elements of liability or common defenses"), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *In re Copley Pharm., Inc.*, 161 F.R.D. 456, 469 (D. Wyo. 1995) ("If the law of a particular state appears to be idiosyncratic, the residents from that state can be excised from the class" and "[e]ven if such idiosyncrasies remove half the jurisdictions in the United States, which the Court believes is highly unlikely, the application of common issues concerning the other twenty-five states should conserve judicial and litigation resources for all involved").

Protection Multi-State Class each mirror or incorporate federal slack-fill regulations which confirm that non-functional slack-fill is objectively misleading. *See* Ex. 14 (Survey of Slack Fill Laws). Indeed, the FDA passed 21 C.F.R. § 100.100 to expressly "define the circumstances in which [non-functional] slack-fill is misleading" to consumers. Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 2960 (Jan. 6, 1993). The FDA implemented § 100.100 to further "differentiate between functional and nonfunctional slack-fill," with the latter definition describing a scenario that is inherently misleading to consumers. *See id.* at 2961; *see also id.* at 64128 ("In the misleading container proposal, the agency proposed [§100.100] that would: (1) Repeat the misleading container provisions of section 403(d) of the act, and (2) define the circumstances in which the slack-fill within a package is nonfunctional and, therefore, misleading."). *Cf. In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 215 F. Supp. 3d at  60 ("As a matter of federal law, '[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill.' *See* 21 C.F.R. § 100.100, which was promulgated under the authority of 15 U.S.C. § 1454(c)(4)."); *see also id.* at 61 ("nonfunctional slack-fill is considered deceptive as a matter of law"). Thus, given that federal and state law—as well as the law of those states that have adopted versions of § 100.100[8]— define Defendants' conduct as deceptive to consumers as a matter of law, no inquiry into whether any consumer was in fact deceived is needed. As a result, the issue of Defendants' deception will predominate.

Common issues of law will also predominate as to the second and third legal requirements of Plaintiffs' consumer protection claims, i.e., that the damage be proximately caused by the challenged conduct. Each of the jurisdictions within the Consumer Protection

---

[8] *See, e.g.*, Cal. Bus. & Prof. Code § 12606.2(c); Colo. Rev. Stat. Ann. § 25-5-419(4)(a)(IV); Minn. Stat. Ann. § 31.103, Subd. 4(d). *See also* Ex. 14 (Survey of Slack Fill Laws).

Multi-State Class require a showing of damage or injury in order to assert a claim under the consumer protection law. *See* Ex. 15 (Damage and Proximate Cause Requirements by Jurisdiction). Similarly, common issues of law will predominate as to whether the challenged act or practice caused that damage since each jurisdiction implements the general legal requirement that the damage was proximately caused by the challenged conduct. *See id.*

In addition to the basic elements of proof, Plaintiffs' counsel has filtered the states within the Consumer Protection Multi-State Class to exclude those states with elements that may be uncommon or might otherwise serve as an impediment to class certification. Plaintiffs have thus ensured that each of the 20 jurisdictions in the Consumer Protection Multistate Class provides a private right of action to consumers,[9] utilizes objective (rather than subjective) standards for deception,[10] and does not require individual reliance.[11]

Plaintiffs acknowledge that some courts have declined to certify classes pursuing claims under consumer protection statutes for similar violations, but those cases are neither controlling, nor persuasive. For example, in *Turcios v. Carma Labs., Inc.*, evaluating California law, the Court did not certify the class in a slack-fill case involving lip balm because Defendants submitted evidence that the misrepresentation was not material to all consumers. *See* 296 F.R.D. 638, 646 (C.D. Cal. 2014). In particular, the "evidence show[ed] that some consumers were aware of the particular dimensions and design of the [lip balm jar], and continued to purchase" it anyway. *Id.* But this overly demanding view of materiality does not comport with California law, which only "requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*

---

[9] Ex. 16 (Survey of Private Rights of Action by Jurisdiction).

[10] Ex. 17 (Survey of Reasonable Consumer Standards).

[11] Ex. 18 (Survey of Reliance Standards).

*v. Procter & Gamble Co.,* 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003).  Thus, "Plaintiffs need not prove at this stage that every . . . customer would find the [misrepresentation] material . . . . Rather, they need only demonstrate that a reasonable consumer would . . . find it material."  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1019 (certifying class).  In contrast to *Turcios*, the court in *Hendricks* found "the common questions raised by Plaintiff's claims predominate over questions affecting only individual members of the proposed class" where "Plaintiffs allege that StarKist's Samoa facility systematically underfilled certain types of 5 oz. cans of StarKist tuna, and that its press weight testing procedures systematically overrepresented the pressed weight readings of StarKist products."  *Hendricks*, 2015 WL 4498083 at *4.  It recognized that "[w]hether these alleged systematic deficiencies have a basis in fact is a common question that would largely resolve the claims of all class members."  *Id.*  Certification of the Consumer Protection Multi-State Class is appropriate because common issues of law will predominate.

> **b.     Common questions of law will predominate for the unjust enrichment claims of the Unjust Enrichment (Restatement) Multi-State Class and the Unjust Enrichment (Appreciation) Multi-State Class.**

Plaintiffs seek to certify two classes as to their unjust enrichment claims: an Unjust Enrichment (Restatement) Multi-State Class and an Unjust Enrichment (Appreciation) Multi-State Class.

As noted by the District Court in *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605 (D.S.D. 2004), a court certifying unjust enrichment claims "must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs," which the court correctly characterized as "a universal thread throughout all common law causes of action for unjust enrichment."  *Id.* at 612.  While "[t]here are some differences between or among the states," the court explained, "[t]here are also many states where the common law is the same" such that "[s]ub-classes can be identified … to group residents of

- 31 -

various states with identical common law requirements into sub-classes." *Id.* at 613. "In other

words, the problems are manageable." *Id.* Similar legal doctrines exist within the unjust

enrichment classes[12] and the states comprising these two sets of Unjust Enrichment Classes take

into account potentially relevant differences in state law.

First, Plaintiffs Bittle, Fernandez, Grindel, Jones, Liberov, Theis and Vladimirskiy seek

to certify a class of 12 states that follow the Restatement (First) of Restitution's definition of

unjust enrichment as to their elements of a cause of action for unjust enrichment (Arkansas,

Colorado, Connecticut, District of Columbia, Hawaii, Illinois, Iowa, Missouri, New Mexico,

New York, Oklahoma, and West Virginia). The jurisdictions within the Unjust Enrichment

---

[12] *See, e.g, Overka v. Am. Airlines, Inc*., 265 F.R.D. 14, 19 (D. Mass. 2010) ("Courts have noted that unjust enrichment claims in different states are substantially similar … In the present case, having analyzed the laws of thirty-four jurisdictions, the Court rules that they are substantially common and the differences between them manageable."); *Keilholtz v. Lennox Hearth Prods.,* 268 F.R.D. 330, 341 (N.D. Cal. 2010) (concluding Common questions of law predominated regarding unjust enrichment claims and noting that while "[l]aws concerning unjust enrichment do vary from state to state," "the variations among some states' unjust enrichment laws are not material because they do not significantly alter the central issue or the manner of proof in this case. Common to all class members and provable on a class-wide basis is whether Defendants unjustly profited from the sale of their fireplaces."); *In re Abbott Labs. Norvir Anti-Trust Litig*., Nos. C 04-1511-CW, C 04-4203 CW, 2007 WL 1689899, at *10 (N.D. Cal. June 11, 2007) (finding unjust enrichment claims predominated and explaining that the "failure to certify the unjust enrichment claims could result in class members having to file thousands of individual suits in which the discovery and factual issues would be nearly identical," and adding that "sub-classes can be identified to group residents of various States with identical common law requirements [such that these] problems are manageable and, therefore, a class action is the superior method of resolving the unjust enrichment claims"); *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) (certifying multi-state class under unjust enrichment law where "[c]ourts have recognized that state claims of unjust enrichment are 'universally recognized causes of action that are materially the same throughout the United States,'" and explaining that some states "expressly followed or cited with approval the Restatement [(First) of Restitution]'s definition of unjust enrichment," while other states "mirror those of the Restatement, only adding the additional element of 'realization,' 'appreciation,' or some kind of knowledge on the part of the Defendants of the conferral of the benefit by the Plaintiff" [citation omitted]. The court concluded that because the plaintiffs "have indicated that they will present common evidence establishing this additional 'appreciation' element, the absence of such a requirement under the Restatement (and the law of the states that follow it) presents no obstacle to class certification").

(Restatement) Multi-State Class require proof that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant retained the benefit and (3) that the defendant's retention of the benefit would be unjust.  *See generally* Ex. 19 (Unjust Enrichment (Restatement) Multi-State Class: Survey of State Law).  In addition, Plaintiffs Esparza, Gerstnecker and Marsh seek to certify a class of 17 states that follow the Restatement's definition of unjust enrichment but have the added element that the defendant "appreciate," realize, or know about the conferral of a benefit by Plaintiffs (Alaska, California, Kansas, Kentucky, Maine, Maryland, Massachusetts, Nevada, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, and Wisconsin).  Thus, the states within the Unjust Enrichment (Appreciation) Multi-State Class require that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant retained the benefit, (3) that the defendant's retention of the benefit would be unjust, *and* (4) the defendant's appreciation or knowledge of the benefit.  *See generally* Ex. 20 (Unjust Enrichment (Appreciation) Multi-State Class: Survey of State Law).

The states within the Unjust Enrichment classes have been filtered to exclude states that: (1) require privity of contract between a purchaser and the Defendants[13] and (2) require a misconduct showing, i.e., wrongdoing or fraud on the part of the defendant in order to recover for unjust enrichment.  *See id.*  Thus, certification of the two sets of multi-state Unjust Enrichment Classes is appropriate because common issues of law will predominate within each.

---

[13] The privity requirement looks to whether there is a direct relationship between a plaintiff and a defendant. *See generally* Exs. 19-20.  While privity exists between Plaintiff Liberov and Walmart because he purchased Walmart's private label Slack Filled Black Pepper from Walmart, Plaintiff Liberov does not seek certification of unjust enrichment claims on behalf of purchasers in privity states because Illinois, Plaintiff Liberov's home state, does not require privity and is thus potentially dissimilar to the law of other states.

### c.   Common questions of law will also predominate for Plaintiffs' alternative single state classes

While multi-state grouping remains appropriate given the similar legal doctrines in the states within Plaintiffs' multi-state classes, in the alternative, Plaintiffs would seek to certify single state classes under the law of their six respective home states.[14]  With the application of only one state's law to the claims of Plaintiffs and a single state class, common questions of law necessarily predominate because only one state's law can apply to the members of the alternative single-state classes.  Thus, the application of one state's law raises common questions of law. *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2013 WL 5429718 at *23 (N.D. Cal. June 20, 2013), *report and recommendation adopted*, No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) (recommending certification of statewide damages classes, noting "there may be some variations in how different states handle antitrust and consumer protection claims, these variations can be readily managed by grouping the indirect-purchaser states in accordance with their approaches to those claims" and concluding that "each of the 22 proposed statewide classes is separately manageable, as are the classes as a whole"); *Hall v. Best Buy Co., Inc.,* 274 F.R.D. 154, 167 (E.D. Pa. 2011) ("The predominant issue in this case is whether Defendants, as a matter of policy, refused to pay employees for off-the-clock time worked, in violation of Pennsylvania's wage and labor laws.  That question of liability is thus susceptible to common proof and requires application of just one state's law.").  Thus, common questions of law will predominate for Plaintiffs' alternative classes.

---

[14] Single state certification on behalf of class members in California is particularly appropriate given California's slack-fill laws.  Under California law, "[s]lack fill is the difference between the actual capacity of a container and the volume of product contained therein" and "a container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill."  Cal. Bus. & Prof. Code § 12606.2(c).

2.     **Common questions of fact also predominate.**

In addition, common questions of fact predominate.  "There is no definitive test for
determining whether common issues predominate, however, in general, predominance is met
'when there exists generalized evidence which proves or disproves an element on a
simultaneous, class-wide basis, since such proof obviates the need to examine each class
members' individual position.'"  *In re Vitamins*, 209 F.R.D. at 262 (quoting *In re Potash
Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

Here, as previously discussed with regard to commonality and typicality, all class
members share a common legal grievance arising from Defendants' sale of black pepper in non-
transparent containers containing non-functional slack-fill.  Common factual questions—
particularly the questions of (1) whether a reasonable consumer would have been deceived by
McCormick's alleged misrepresentations and omissions and (2) whether it would be unjust for
Defendants to retain the benefits of the ███████████████████████████—are
central to all class members' claims and predominate over any individual questions that may
exist.  *Cf. In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*
("*McCormick JPML*"), 148 F. Supp. 3d 1364, 1365–66 (J.P.M.L. 2015) (recognizing correctly
that Plaintiffs' allegations regarding Defendants' slack-fill strategy "share factual questions
about the propriety of McCormick's pricing and packaging of its pepper products under various
federal and state laws. Plaintiffs allege that, although the weights of the product were accurately
disclosed on the product labels, McCormick has wrongfully 'slack-filled' its black pepper
containers and that consumers have either been confused or deceived into believing that they
have bought more pepper than they have actually received").  Common questions of fact will
predominate as to whether Defendant(s) engaged in an act or practice prohibited by state statute
particularly where "nonfunctional slack-fill is considered deceptive as a matter of law." *In re*

*McCormick,* 215 F. Supp. 3d at 61.  Indeed, whether each Plaintiff and class member were damaged as a result of Defendants' practice of selling black pepper in non-transparent containers containing non-functional slack-fill will not vary from class member to class member. Furthermore, because a reasonable consumer standard applies, no individual inquiries into whether any one consumer found the reduction in fill deceptive to any one class member will be required.  *See, e.g., Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) ("[E]very day courts decide whether conduct is misleading.").  And, according to federal law, Defendants' actions in slack-filling their pepper is deceptive to a reasonable consumer.  *See also* Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01 (Dec. 6, 1993) ("[I]t is incumbent on manufacturers, knowing the physical characteristics of their products and the capabilities of their packaging equipment, to ensure that any slack-fill in their packages is there to perform one or more valid functions.  Slack-fill whose only function is to make the product container larger, and thus to deceive the consumer as to the quantity of food in the container, is nonfunctional slack-fill and, therefore, misleading."); *id.* ("Congress stated (S. Rept. 361, supra at 9) that 'Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label.'").  Common questions of fact will also predominate as to whether Plaintiffs and the class members were damaged as a result of Defendants' slack-fill.

Moreover, Defendants' affirmative defenses confirm that common questions of fact will predominate.  For example, McCormick's Fourth Affirmative Defense, which asks whether "Plaintiffs' and the putative class members' claims are preempted by the federal Food, Drug, and Cosmetic Act (FDCA) and/or other applicable federal law," is a question the answer to which will not vary among class members.  *See* Dkt. # 151 at 25.  Similarly, whether "McCormick has

complied with all applicable federal and state regulations," as asserted in its Fifth Affirmative

Defense, will be resolved in a common fashion with each class member.  *Id.*  Whether

McCormick complied with the applicable regulations or it did not, the answer will be common to

each class member.  Because common issues regarding Defendants' conduct can be proven

simultaneously using generalized evidence, common issues of fact will predominate.

> **3.** **Plaintiffs' damages model satisfies the *Comcast* standard.**

Here, "damages are capable of measurement on a classwide basis."  *Comcast Corp. v.*

*Behrend*, 133 S.Ct. 1426, 1433 (2013).  Moreover, Plaintiffs' damages theory is tied to their

theory of liability.  *Coleman,* 306 F.R.D. at 85 n.7. Plaintiffs propose a model that can be used to

calculate, on a classwide basis, the damages sustained by Class members as a result of

Defendants' conduct.  *See Comcast*, 133 S.Ct. at 1435 ("The first step in a damages study is the

translation of the legal theory of the harmful event into an analysis of the economic impact of

that event.").





This formula can be used for multi-state consumer fraud damages, under an out-of-pocket-loss[16] or benefit of the bargain measure.[17]  Courts accept "both theories of damages…in state consumer protection actions to put defrauded consumers in the position they would have been had they received that which they bargained for."  *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.,* 701 F. Supp. 2d 356, 383 (E.D.N.Y.

---

[16] The out-of-pocket rule is defined as:  "The principle that a defrauded buyer may recover from the seller as damages the difference between the amount paid for the property and the actual value received."  BLACK'S LAW DICTIONARY (8th ed. 2004).  *See, e.g., Harnish v. Widener Univ. Sch. of Law,* 833 F.3d 298, 307 (3d Cir. 2016) (discussing in the consumer fraud context that "[u]nder the out-of-pocket rule, a plaintiff's damages are the difference between the price paid and the actual value of the property acquired") (quotation and citation omitted).

[17] The benefit-of-the-bargain rule is defined as:  "The principle that a defrauded buyer may recover from the seller as damages the difference between the value of the property as represented and the actual value received."  BLACK'S LAW DICTIONARY (8th ed. 2004).  *See, e.g., Harnish*, 833 F.3d at 308 (discussing in the consumer fraud context that a plaintiff can claim damages under the benefit-of-the bargain rule, which is "equal to that which [the] plaintiff would have received had the representation been true") (quotation and citation omitted, alteration in original).

2010). 

Accordingly, Plaintiffs have satisfied *Comcast.*

### 4. A class action is superior to adjudicating tens of thousands of separate individual cases involving the same issues.

This case also satisfies Rule 23(b)(3)'s superiority requirement as proceeding by class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy before the Court. "The superiority requirement is intended to ensure[ ] that

resolution by class action will achieve economies of time, effort, and expense and promote ...

uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or

bringing about other undesirable consequences." *Coleman,* 306 F.R.D. at 87 (internal citations

omitted, alteration in original). "The Rule directs the Court to consider, in analyzing the

alternatives to class-action treatment, the following factors: 'the class members' interests in

---

[18] Dr. Levy's class-wide calculations included certain UPC codes that Plaintiffs subsequently excluded from the list of Slack Filled Black Pepper Products for which they now seek class certification. The class-wide calculations also included certain states under which Plaintiffs do not now seek class certification. These changes do not impact Dr. Levy's methodology because the inputs, i.e., states or products, can be added or subtracted without a change in methodology. *See, e.g., Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 807 (7th Cir. 2013) (vacating the district court's exclusion of expert where "[t]he district court thought [the expert] should have selected different data, covering a longer period, as the base for his projection, but the selection of data inputs to employ in a model is a question separate from the reliability of the methodology reflected in the model itself" and ultimately a jury question); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,* 256 F.R.D. 82, 96 (D. Conn. 2009) (recognizing that the focus at class certification is on "the use of the methodology itself, not the results of the methodology"). Thus, the formula to calculate overcharges for slack-filled products or "model purporting to serve as evidence of damages ... measure[s] only those damages attributable to the plaintiff's theory of liability." *Comcast,* 133 S.Ct. at 1433 (quotation omitted, alterations in original).

010546-12  968453 V1

individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).  In a similar context, the *Hendricks* court confirmed the superiority of class litigation to individual litigation over a retail food product (under-filled tuna cans).  *Hendricks*, 2015 WL 4498083 at *4. The same analysis and result should apply here.

First, "'the class members' interests in individually controlling the prosecution or defense of separate actions' are limited because their 'claims [are] so closely related to the claims of [Plaintiffs] that litigation by [Plaintiffs] will achieve their ends without the need for their involvement.'"  *Coleman,* 306 F.R.D. at 88 (quoting NEWBERG ON CLASS ACTIONS § 4:69 (5th ed. 2014)).  Given the small dollar value of retail black pepper purchases, "[a]llowing this action to proceed as a class action is superior to requiring individual actions, both for reasons of efficiency and to enable individuals to pursue small claims."  *Nat'l Veterans,* 2017 WL 354084 at *9.  "As the Supreme Court has explained, '[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"  *Id.* (quoting *Amchem*, 521 U.S. at 617).

Second, regarding the extent and nature of any litigation concerning the controversy, numerous class actions have been filed challenging Defendants' slack-fill practices.  The Judicial Panel on Multidistrict Litigation ("JPML") consolidated cases filed across the country before this Court and agreed that concentrating all claims in this District was appropriate because all cases transferred "involve common questions of fact" such "that centralization in the District of the

District of Columbia will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *McCormick JPML*, 148 F. Supp. 3d at 1365.  Thus, the second and third factors are satisfied.

Finally, there does not exist "any risk that the classes will be particularly unmanageable," particularly "given the extent to which class members raise common issues." *Coleman*, 306 F.R.D. at 88.  While "manageability is one aspect of the Court's calculus under Rule 23(b)(3)," it "cannot be viewed in isolation" since it "'is only one of the elements that goes into the balance to determine the superiority of a class action in a particular case'" and "'[o]ther factors must also be considered, as must the purposes of Rule 23, including: conserving time, effort, and expense; providing a forum for small claimants; and deterring illegal activities'" *McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 66 (D.D.C. 2013) (quoting NEWBERG ON CLASS ACTIONS § 4:32, at 277 (4th ed. 2002)).  Here, Plaintiffs have demonstrated with their exhaustive research on state law and refinement of the class definitions to ensure the uniformity of the law to be applied that a class trial will be manageable.[19]

Moreover, the Court remains aided by competent counsel who can address management concerns if they arise.  *In re Vitamins*, 209 F.R.D. at 270 ("The Court is confident that with the assistance of able attorneys on both sides, management issues will be successfully resolved.").  As explained by Justice Sotomayor when sitting on the Second Circuit, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and

---

[19] *See* Ex. 13-20 (state law charts); Ex. 21 (sample special verdict forms).  *See also* Fed. R. Civ. P. 49; Manual for Complex Litigation (Fourth) § 11.633 (2009) ("Special verdict forms or interrogatories may help the jury focus on the issues, reduce the length and complexity of the instructions, and minimize the need for, or scope of, retrial in the event of reversible error. [They] may also be used in connection with a procedure by which issues are submitted to the jury sequentially. The jury may be asked to consider a threshold or dispositive issue and return its verdict before submission of other issues, which may be rendered moot by the verdict.").

should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001), *overruled on other grounds, In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006).

## C.     The Class Is Adequately Defined.

Additionally, Plaintiffs' proposed classes are clearly and adequately defined.  As this Court opined in *Thorpe v. D.C.,* 303 F.R.D. 120, 139 (D.D.C. 2014), "[t]he requirement of 'definiteness' has been imposed by courts as an 'implied requirement' for class certification, in addition to the express requirements in Rule 23.  *Id.* (citing *DL v. District of Columbia*, 302 F.R.D. 1, 16 (D.D.C. 2013)).  "The common-sense requirement that plaintiffs establish that a class exists is not designed to be a particularly stringent test, but rather requires plaintiffs to be able to establish [that] the general outlines of the membership of the class are determinable… ." *Id.* (internal citation and quotations omitted, first alteration in original).  *See also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017) ("The language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification.").  Additionally, this Court has expressed concern regarding the ascertainability of any Class.  Generally, so long as the class members can be defined by objective criteria, a class is ascertainable.  *See, e.g., Rikos,* 799 F.3d at 526(affirming district court's judgment granting class certification in class action involving consumer retail dietary supplement and finding that "[t]he proposed class is defined by objective criteria: anyone who purchased Align in California, New Hampshire, Illinois, North Carolina, or Florida"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660–61 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161(2016) (affirming district court's certification under Rule 23(b)(3) of "a class of consumers 'who purchased Instaflex within the applicable statute of limitations of the respective Class States for personal use until the date notice is disseminated'" since the class definition "is

- 42 -

not vague" because "[i]t identifies a particular group of individuals (purchasers of Instaflex) harmed in a particular way (defrauded by labels and marketing materials) during a specific period in particular areas" and "is not based on subjective criteria" since it "focuses on the act of purchase and Direct Digital's conduct in labeling and advertising the product").

Here, the class definition at issue here focuses on the Slack Filled Pepper Products - a particular subset of readily-identifiable products in particular geographic areas for a limited time period - in satisfaction not only of this District's definiteness requirement but also any ascertainability requirement.  Furthermore, with an eye toward providing notice to class members and/or direct distribution of refunds upon a successful judgment to class members, Plaintiffs engaged in significant efforts to secure data that identifies individual consumers who purchased Slack Filled Pepper Products.  To that end, Plaintiffs have secured preservation agreements from major McCormick retailers for the preservation of customer-identifying information (and their black pepper purchases) to the extent it was collected through store loyalty or rewards-card programs.  Each of these retailers, including Amazon.com, BI-LO, BJ's Wholesale Club, Costco, D&W Fresh Market, Kroger, Safeway, Supervalu, Target, Tops Markets, Wegmans Food Markets and Weis Markets, has signed a declaration agreeing to preserve this data until the conclusion of the litigation.  *See* Exs. 22-32, 144 (collecting retailer declarations).  As a result, the class is adequately defined and also ascertainable.

**D.      Hagens Berman Sobol Shapiro LLP and KamberLaw LLC Should Be Appointed Class Counsel Under Fed. R. Civ. P. 23(g).**

Finally, Plaintiffs respectfully request that the Court appoint Elizabeth A. Fegan of Hagens Berman Sobol Shapiro LLP and Scott A. Kamber of KamberLaw LLC as Class Counsel. Rule 23(g) requires that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  In appointing class counsel, this Court "must consider" four factors: "(i) the work

counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Moreover, the Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel will continue to "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).  Plaintiffs' counsel has performed substantial work to date litigating claims against Defendants.  Plaintiffs' counsel has invested thousands of hours prosecuting claims on behalf of the class members, defeating Defendants' motions to dismiss and aggressively pursuing class discovery.  Moreover, Plaintiffs' counsel possesses extensive experience in prosecuting complex class actions, including in consumer class actions like this. *See* Firm Resume of Hagens Berman Sobol Shapiro LLP (Ex. 33); Firm Resume of KamberLaw LLC (Ex. 34).  And, as evidenced by the fact that they have already devoted substantial time and effort to the prosecution of this proceeding, there can be no doubt that Plaintiffs' counsel will continue to devote the necessary resources necessary to representing the Class following appointment as Class Counsel.  Since Plaintiffs' counsel will continue to fairly and adequately represent the interests of the class members throughout the remainder of the litigation, Plaintiffs request that the Court appoint Elizabeth A. Fegan of Hagens Berman Sobol Shapiro LLP and Scott A. Kamber of KamberLaw LLC as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## VI.   CONCLUSION

For the reasons provided above, Plaintiffs respectfully request that this Court (1) certify the Classes as detailed above, (2) appoint Plaintiffs as Class representatives, (3) appoint Hagens

Berman Sobol Shapiro LLP and KamberLaw as Class Counsel, (4) direct that notice be sent to

the Classes, and (5) grant them such other relief as the Court deems necessary and appropriate.


DATED: July 21, 2017                         Respectfully submitted,

                                             By:   _/s/ Elizabeth A. Fegan_____
                                             Elizabeth A. Fegan
                                             Daniel J. Kurowski
                                             Mark T. Vazquez
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             455 N. Cityfront Plaza Drive, Suite 2410
                                             Chicago, IL 60611
                                             Telephone: (708) 628-4949
                                             Facsimile: (708) 628-4950
                                             beth@hbsslaw.com
                                             dank@hbsslaw.com
                                             markv@hbsslaw.com

                                             Steve W. Berman
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             1918 Eighth Avenue, Suite 3300
                                             Seattle, WA 98101
                                             Telephone: (206) 623-7292
                                             Facsimile: (206) 623-0594
                                             steve@hbsslaw.com

                                             Jennifer Fountain Connolly
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             1701 Pennsylvania Ave. NW, Suite 300
                                             Washington, D.C. 20006
                                             Telephone: (202) 248-5403
                                             Facsimile: (202) 580-6559
                                             jenniferc@hbsslaw.com

                                             *Co-Lead Counsel and Counsel for Class Plaintiffs*

                                             Scott A. Kamber
                                             KAMBERLAW LLC
                                             142 W. 57th St., 11th floor
                                             New York, NY  10019
                                             (212) 920-3072
                                             (212) 202-6364 (fax)
                                             skamber@kamberlaw.com

- 45 -

Deborah Kravitz
KAMBERLAW LLP
401 Center Street, Suite 111
Healdsburg, CA 95448
(707) 820-4247
dkravitz@kamberlaw.com

*Co-Lead Counsel and Counsel for Class Plaintiffs*

010546-12  968453 V1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on July 21, 2017.  Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.  Copies of unredacted documents were served on Counsel of Record for the parties by electronic mail at the following addresses:

| Counsel for McCormick & Company, Inc. | Counsel for Wal-Mart Stores, Inc. |
|---|---|
| David H. Bamberger<br>Edward S. Scheideman<br>Paul D. Schmitt<br>DLA Piper LLP (US)<br>500 Eighth Street, N.W.<br>Washington, D.C. 20004<br>David.bamberger@dlapiper.com<br>Edward.scheideman@dlapiper.com<br>Paul.schmitt@dlapiper.com | Andrew G. Klevorn<br>Yoni Rosenzweig<br>Kristin L. Coveney<br>Patricia Warren<br>Katten Muchin Rosenman LLP<br>525 W. Monroe Street<br>Chicago, IL 60661-3693<br>andrew.klevorn@kattenlaw.com<br>yoni.rosenzweig@kattenlaw.com<br>kristin.coveney@kattenlaw.com<br>patricia.warren@kattenlaw.com |

By:   */s/ Elizabeth A. Fegan*
Elizabeth A. Fegan