UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: MCCORMICK & COMPANY, INC.,
PEPPER PRODUCTS MARKETING AND
SALES PRACTICES LITIGATION

THIS DOCUMENT RELATES TO:

All Consumer Cases

MDL Docket No. 2665
Misc. No. 15-1825 (ESH)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION
TO EXCLUDE THE REPORT AND OPINIONS OF DR. ARMANDO LEVY**

## **TABLE OF CONTENTS**

**ARGUMENT**..................................................................................................................1

    1.    Dr. Levy's "Model" and Opinions Will Not Assist The Trier of Fact....................2

    2.    Dr. Levy's Opinions Are Not Based On Sufficient Facts or Data.........................4

    3.    Dr. Levy's Approach Is Not The Product of Reliable Principles and Methods...................................................................................................................4

    4.    Dr. Levy Did Not Reliably Apply His Methods to The Facts of This Case. ...................................................................................................................6

**CONCLUSION** ...........................................................................................................7

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ............................................................. 3, 8

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ............................................... 1, 3, 6

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ........................................................................ 6

*Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274 (S.D.W. Va. 2015) ................................... 7

*Groobert v. President and Directors of Georgetown Coll.*,
  219 F. Supp. 2d 1 (D.D.C. 2002) ..................................................................................... 5, 6

*Heller v. Dist. of Columbia*, 952 F. Supp. 2d 133 (D.D.C. 2013) ................................................ 5

*Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16 (D.D.C. 2012) .............................................. 2

*Kumho Tire Co., Ltd. v. Carmichael* 526 U.S. 137 (1999) ............................................................ 4

**OTHER AUTHORITIES**

Federal Rule of Evidence ("Fed. R. Evid.") 403 ........................................................................... 3

Fed. R. Evid. 702 ..................................................................................................................... 1, 3

Federal Rule of Civil Procedure 23 ............................................................................................. 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MCCORMICK & COMPANY, INC., PEPPER PRODUCTS MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*All Consumer Cases* | MDL Docket No. 2665<br>Misc. No. 15-1825 (ESH) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO EXCLUDE THE REPORT AND OPINIONS OF DR. ARMANDO LEVY

Defendants McCormick & Company, Inc. and Wal-Mart Stores, Inc. file this Memorandum in support of their Motion to Exclude the Report and opinions of Plaintiffs' expert, Dr. Armando Levy.[1] Plaintiffs submitted Dr. Levy's Report with their Motion for Class Certification, to provide a purported "model" for determining classwide damages in this matter. Defendants are moving to exclude Dr. Levy's Report and opinions because they are not based upon sufficient facts or data, are not reliable, do not fit the facts of this case and would not be useful to help the trier of fact understand the evidence or determine an issue.

### ARGUMENT

Federal Rule of Evidence 702 provides that an expert witness's testimony will be admitted only if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Rule 702 also reflects the Supreme Court's holding in *Daubert v. Merrell Dow Pharm.,*

---

[1] Dr. Levy's Report ( Ex. 100 to Plaintiffs' Motion for Class Certification) is also attached hereto as Exhibit A for convenience.

1

*Inc.*, 509 U.S. 579, 592 (1993), that "the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."[2]  These criteria are not satisfied here.

### 1. Dr. Levy's "Model" and Opinions Will Not Assist The Trier of Fact.

Dr. Levy's "model" and opinions would not be helpful and could only confuse a fact finder.  His simplistic methodology was to calculate "overcharges" in essentially two steps:  (1) he used sales data from IRI, a third-party vendor, to calculate average retail prices of certain McCormick products (Levy Report at ¶¶ 25-28, 35) and sales data from a handful of retail chains to calculate average retail prices for certain private label products (Levy Report at ¶ 30).  (2) He then multiplied those average unit prices by 25 %, because that was the difference in "ounces" on the container labels.  Levy Report at ¶ 32-33, 35-36; *see also* Levy Deposition at 53-58.[3]  Notably, Dr. Levy was not even sure whether the "ounces" indicated weight or volume, despite the term "NET WT" on the labels.  Dep. at 53-58.[4]

Dr. Levy did no actual work to arrive at the 25 percent figure; he simply compared the differences in net weights stated on the labels for each product (*e.g.*, 3 ounces vs. 4 ounces).  But, in relying on those differences in **weights**, he did not use the correct metric.  Plaintiffs' legal theory asserts a misleading diminution in the fill level (**volume**) of the pepper tins.  There is no

---

[2] Further, as this Court has previously explained, at the class certification stage, Federal Rule of Civil Procedure 23 "calls for careful and searching analysis of all evidence with respect to whether Rule 23's certification requirements have been met, including expert opinions." *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 26 (D.D.C. 2012).

[3] Excerpts from Dr. Levy's deposition are attached hereto as Ex. B.  They are referenced in this Memorandum as "Dep. at __."

[4] Dr. Levy accepted on faith Plaintiffs' allegation that **all** consumers were "deceived" (Levy Dep. at 74-75) and, therefore, once Dr. Levy had computed the per-unit "overcharges" (25% x average prices), he simply multiplied that by the number of **all** products sold, in order to generate his "classwide damages."  Levy Report at ¶¶ 35-36.

contention that the weights of the products were misrepresented.  Dr. Levy's approach is thus fundamentally flawed, as a matter of law, due to the disconnect between his damages "model" and Plaintiffs' theory of liability.  The Supreme Court made clear in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) that a plaintiff's damages model "must be consistent with its liability case" and must "measure only those damages attributable to that theory."  Moreover, there is no way that Dr. Levy's use of weight as a metric could serve as some sort of classwide proxy for any alleged difference in fill level.  As explained in the Declaration of James Michael Hester submitted with Defendants' Memorandum in opposition to Plaintiffs' Motion for Class Certification ("Hester Declaration", attached as Exhibit C), the fill levels of pepper containers vary widely, even when the weight of the pepper is the same.  Hester Decl. at ¶¶ 2, 7.  Moreover, the fill levels of the black pepper products at issue were subject to overfilling, so that the net weight exceeded the label weight in varying degrees.  *Id.* at ¶¶ 5, 11-12.  In other words, the relationship between weight and volume is not precisely correlated, and, therefore, a theoretical 25% reduction in weight would not necessarily mean a corresponding 25% reduction in fill level, contrary to the implicit assumption underlying Plaintiffs' claims.  Dr. Levy offers no methodology, nor could he, for translating his assumed weight changes into a calculation of the volume of pepper in any container.  There is thus no factual basis to support Dr. Levy's opinions.

Even if a court finds that proposed expert testimony comports with Fed. R. Evid. 702 (which Dr. Levy's does not), an expert's testimony may nonetheless be excluded under Fed. R. Evid. 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  *Daubert*, 509 U.S. at 595 (internal quotation marks and citation omitted).  Moreover, because "[e]xpert evidence can be both

powerful and quite misleading," a court has greater leeway in excluding expert testimony under Rule 403 than it does lay witness testimony.  *Id*.  Here, Dr. Levy's opinions are not helpful in understanding any issue, and his unsupported and inaccurate conflation of weight and volume metrics have a high likelihood of confusing a fact finder.

### 2. Dr. Levy's Opinions Are Not Based On Sufficient Facts or Data.

Dr. Levy reviewed no depositions of the named Plaintiffs; in fact, he did not even know that they had been deposed.  Dep. at 29-30.  He relied only on general resource material about black pepper, the Consolidated Amended Class Action Complaint, this Court's Memorandum Opinion dated November 11, 2016, some McCormick Annual Reports and the shipment/sales data. (Levy Report at B-1, B-2).  He made no effort to investigate or understand the fill levels (**volume**) of the various products or any of the circumstances surrounding the Plaintiffs' purchases of them, *i.e.*, the basic facts on which Plaintiffs' claims are premised.  Instead he focused on the differences in **weights** stated on the labels, which would not correlate to the actual volumes in the containers, as explained in the Hester Declaration.

### 3. Dr. Levy's Approach Is Not The Product of Reliable Principles and Methods.

Dr. Levy conducted no studies, no statistical modeling, no surveys or any sort of truly scientific analysis.  His damages "calculation" is something that any person with basic math skills could do on their own.  Allowing Plaintiffs to offer this rudimentary exercise as "scientific" evidence developed by an "expert" would be of no assistance to the fact finder and easily could confuse or mislead a jury.

In deciding the admissibility of expert testimony, a court must examine whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field[.]"  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).  "[T]he unremarkable observation that an expert may be qualified by experience

4

does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express[.]'" *Heller v. Dist. of Columbia*, 952 F. Supp. 2d 133, 141 (D.D.C. 2013) (quoting *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (emphasis in original). Expert testimony may be "unreliable when an expert chooses to utilize [his] own unique methodology rather than the proper analysis which is well-known and respected." *Groobert v. President and Directors of Georgetown Coll.*, 219 F. Supp. 2d 1, 9 (D.D.C. 2002).

It is certainly true that the "method" used by Dr. Levy to calculate "classwide damages," *i.e.*, basic arithmetic, can be reliable in many contexts.[5] In the context of this case, however, Dr. Levy's work is superficial and woefully insufficient. In particular, his testimony at deposition shows that:

- He conducted no analysis or study regarding whether any putative class members were deceived. (Dep. at 40-41)

- He did not make any determination that customers make purchasing decisions based upon their "expectations." He simply repeated what he understood to be the Plaintiffs' theory and did not try to ascertain if that theory is factually correct. (Dep. at 74-75)

- He made no determination as to how many of the purchasers were repeat purchasers or were persons who had heard about the lawsuit or allegations of "slack-filling" in advance. (Dep. at 89-90)

- He did not administer any sort of well-designed random sampling, even though he agrees that one cannot extrapolate from a few consumers to thousands or millions of others without that. (Dep. at 90)

- He did not survey any consumers. (Dep. at 115)

---

[5] Dressing up Dr. Levy's rudimentary and factually unsupported "model" with a "scientific"-looking formula "$P(\frac{W-Ws}{W})$" (Pls. Class Cert Brief at 38; Levy Report at 15) does not disguise the fact that this is just "Price x ($\frac{100-75}{100}$)" = 25% of the price.

5

- He did not investigate the differences between brick-and-mortar and online purchases. (Dep. at 120)[6]

- He made no effort to analyze which consumers purchased which products or what size products. (Dep. at 108)

- He made no effort to develop a method for calculating individual damages. (Dep. at 113)

- His damages methodology includes some of the same people in both of the putative classes he included in his Report (Dep. at 43), thereby duplicating proposed damages for vast numbers of purchasers.

- He agrees that consumers' preferences vary among the millions of putative class members (Dep. at 76-77), but he made no effort to account for that.

It is not Defendants' burden to proffer an alternative "proper" methodology for this case. Indeed, given the facts, it is Defendants' view that no such methodology exists. What can be said, however, is that, in the context of this case, Dr. Levy has not applied "intellectual rigor" and has failed in his attempt to provide a reliable methodology for determining class-wide damages.

**4.    Dr. Levy Did Not Reliably Apply His Methods to The Facts of This Case.**

Under *Daubert*, "[p]roposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." 509 U.S. at 590. A court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may refuse to admit expert testimony if it concludes that 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Groobert*, 219 F. Supp. 2d at 6 (quoting *Gen. Elec. Co.*, 522 U.S. at 146).

Dr. Levy made no effort to fit his damages "model" to the facts of this case. Indeed, he entirely ignored the alleged differences in volume (fill levels) that are the supposed foundation of

---

[6] This case is about consumers who supposedly were misled by the appearance of a physical tin on a brick-and-mortar store shelf, not images on a computer screen.

Plaintiffs' claims and focused his attention only on the weight of the products. *See, e.g., Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274, 292 (S.D.W. Va. 2015) (rejecting expert's aggregate calculation of damages because a determination of actual damages suffered "is necessarily tied up in individual factors unique to each [class member]"). Here, Dr. Levy testified at deposition:

- Despite the graphic depiction of a pre-weight-reduction tin in his Report (at 15) showing a tin filled 100% to the brim, he actually assumed that these products had some amount of "air space" at the top, although he did not know how much. He believed it varied with the size of the container, but he made no effort to measure it. (Dep. at 51-53)

- As to the containers sold after the weight reduction program was implemented, he did not conclude that there was any particular percentage of air space at the top. (Dep. at 59-60)

- Notably, he was not even sure whether "ounces" on the label meant ounces by weight or by volume, insisting that his calculation methodology "would apply to either." (Dep. at 55-58)[7]

It is evident that Dr. Levy had only superficial familiarity with the facts of this case. He understood at some level Plaintiffs' **theory** that all of the black pepper containers contained 25 percent "less pepper" (apparently without regard to whether that was by weight or volume) and, after adding up aggregate sales data from several sources, he simply multiplied that by 25 percent. The rest of his work is essentially window-dressing.

## CONCLUSION

Dr. Levy's "methodology" is unreliable, as applied to the facts of this case, as well as confusing and not useful to assist in the determination of any issue. Beyond that, it is inconsistent with Plaintiffs' liability theory and does not measure only those damages

---

[7] Of course, there is no claim of deception in this case in regard to the weight of the pepper, which is clearly stated on the label. Dr. Levy's apparent confusion is all the more shocking, given that the labels clearly state "NET WT" and provide the quantity in both ounces and grams.

7

attributable to that theory, in violation of the Supreme Court's holding in *Comcast*. Dr. Levy's Report and opinions should be excluded.

Dated:  August 28, 2017                          By   /s/ David H. Bamberger

David H. Bamberger (DC Bar No. 362285)
Edward S. Scheideman (DC Bar No. 475128)
Paul D. Schmitt (DC Bar No. 1007680)
Julie A. Gryce (DC Bar No. 988319)
DLA Piper LLP (US)
500 Eighth Street NW
Washington, DC  20004
Telephone:   202.799.4000
Facsimile:    202.799.5000
david.bamberger@dlapiper.com
edward.scheideman@dlapiper.com
paul.schmitt@dlapiper.com
julie.gryce@dlapiper.com

*Attorneys for Defendant
McCormick & Company, Inc.*

/s/ Andrew G. Klevorn
Andrew G. Klevorn
Yoni Rosenzweig
Kristin L. Coveney
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, Illinois 60661-3693
Tel: (312) 902-5200
Fax: (312) 902-1061
andrew.klevorn@kattenlaw.com
yoni.rosenzweig@kattenlaw.com
kristin.coveney@kattenlaw.com

*Counsel for Defendant Wal-Mart Stores, Inc.*