# Exhibit No. 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JULIA VLADIMIRSKY and BERNARD ORTIZ, individually and on behalf of all others similarly situated, | No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MCCORMICK AND COMPANY, INCORPORATED, WAL-MART STORES. INC. and JOHN DOES 1-100, | |
| Defendants. | |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................... 1

II. THE PARTIES.......................................................................................................... 2

III. JURISDICTION AND VENUE ................................................................................ 3

IV. FACTUAL BACKGROUND.................................................................................... 4

    A. The Rising Price of Black Pepper Put Pressure On McCormick's Promise to Its Shareholders To Cut Costs ................................................. 4

    B. McCormick Responds To The Rising Price of Black Pepper by Reducing the Amount of Pepper In the Tins and Grinders Sold to Consumers While Maintaining Prices ...................................................... 5

        1. McCormick's Non-Transparent Tins Hide the Non-Functional Slack-Fill........................................................................ 5

        2. McCormick's Black Peppercorn Grinders Hide the Non-Functional Slack-Fill........................................................................ 8

    C. McCormick and Certain Private Label Retailers Agree that McCormick Will Supply Store-Branded Pepper Containers With Non-Functional Slack-Fill ..................................................................... 11

V. RELEVANT MARKET............................................................................................ 14

VI. CLASS ACTION ALLEGATIONS ........................................................................ 14

VII. CAUSES OF ACTION ........................................................................................... 16

    COUNT I CLAIM FOR VIOLATIONS OF 15 U.S.C. § 1............................... 16

    COUNT II VIOLATIONS OF STATE CONSUMER PROTECTION ACTS ....................................................................... 18

    COUNT III UNJUST ENRICHMENT............................................................. 23

VIII. PRAYER FOR RELIEF ......................................................................................... 23

DEMAND FOR JURY TRIAL ....................................................................................... 25

010546-11 010546-11 807044 V1

Plaintiffs Julia Vladimirsky and Bernard Ortiz, on behalf of themselves and all others similarly situated, alleges those facts as to their own purchases based upon personal knowledge and all other facts based upon the investigation of counsel:

## I.     INTRODUCTION

1.     The clear market leader in the sale of spices (including black pepper) in the United States, McCormick and Company, Incorporated's ("McCormick") logo is immediately recognizable and relied upon by American consumers:



2.     Until 2015, McCormick seemingly took its promise to be an American company with "integrity and ethical values" to heart.  For decades, McCormick leveraged its iconic brand to market and sell its McCormick® Pure Ground Black Pepper in non-transparent, red and white tins and its McCormick® Black Peppercorn Grinders covered by non-transparent labels.

3.     McCormick also took steps to ensure that its dominant market share of the spice market was not undercut by retailers' private label brands by establishing itself as the leading provider of private label spices and herbs.  In fact, Wal-Mart Stores, Inc. ("Walmart") is one of McCormick's largest customers, including for Walmart's store brand, Great Value, spices.

4.     However, faced with rising raw material costs and promising its shareholders cost-savings that would improve its bottom line, on or about January 1, 2015, McCormick reduced the amount of black pepper in its iconic red and white spice tins (among other containers) by 25 percent, while leaving the size of and price for the tins exactly the same. McCormick also reduced the fill in its black peppercorn grinders, while maintaining size and price.

- 1 -

5.     McCormick also agreed with its retail customers, including but not limited to Walmart, to reduce the fill in their store-brand pepper tins, while McCormick maintained the size of the tins and the retail stores maintained the prices.

6.     In reducing the pepper in the McCormick and store-branded tins by 25 percent (as well as the grinders), McCormick did not plainly or adequately disclose the material fact that it reduced the amount of pepper. Rather, McCormick and the retailers continued to market the tins and grinders as full, and consumers reasonably expected that the tins and grinders were full. By implementing a scheme to short-change customers, McCormick and the retailers were able to effectuate a de facto price increase and thus maintain or increase revenues without disclosing that they were raising prices.

7.     Moreover, through McCormick's and the retailers' agreements to reduce the pepper in the retailers' private label tins while the retailers maintained the prices at which the tins were sold to pre-reduction rates, McCormick and the retailers entered into an agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, maintain, and stabilize prices for black pepper sold at retail stores in the United States and in the various States.

8.     As a result of Defendants' actions, Plaintiffs and the Class were deceived, paid for full containers of pepper that in fact contained just 75% pepper and 25% air, and thus were overcharged, did not receive the benefit of the bargain and/or suffered out-of-pocket loss. Moreover, Defendants were unjustly enriched at the expense of Plaintiffs and the Class. Plaintiffs thus bring claims for violation of Section 1 of the Sherman Act, state consumer protection statutes, and unjust enrichment.

## II.     THE PARTIES

9.     Plaintiff Julia Vladimirsky is a citizen of the State of Illinois and resident of Chicago, Illinois. Plaintiff purchased a tin of McCormick black pepper from the Jewel store in

Evanston, Illinois during 2015. Plaintiff reasonably expected that the tin was full of black pepper, did not know that in fact the tin contained just 75% of the pepper that the tin was designed to hold, and was actually deceived. As a result of Defendant's actions, Plaintiff was overcharged, did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10.     Plaintiff Bernard Ortiz is a citizen of Iowa and resident of Altoona, Iowa. Plaintiff purchased a tin of black pepper sold under the private label brand Great Value from Walmart store in Altoona, Iowa in 2015. Plaintiff reasonably expected that the tin was full of black pepper, did not know that in fact the tin contained just 75% of the pepper that the tin was designed to hold, and was actually deceived. As a result of Defendants' actions, Plaintiff was overcharged, did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11.     Defendant McCormick is a Maryland corporation with its principal place of business in Sparks, Maryland.

12.     Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas.  Defendant Walmart markets and sells its own line of herbal spices, including black pepper, under the brand name "Great Value" in the United States.

13.     Defendants John Does 1-100 include various persons that are not expressly named as defendants but that have participated in the violations alleged herein and have performed acts and made statements in furtherance thereof. Plaintiffs reserve the right to name some or all of these persons as defendants at a later date. There are a finite number of co-conspirators and Plaintiffs believe that their identities can be ascertained through Defendants' own records.

### III.     JURISDICTION AND VENUE

14.     Plaintiffs bring this action to obtain injunctive relief and to recover damages, including treble damages, costs of suit, and reasonable attorneys' fees arising from Defendants'

- 3 -

violations of Section 1 of the Sherman Act (15 U.S.C. § 1). This Court has jurisdiction over this

action pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1367.

15.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28

U.S.C. § 1391(b) and (c), in that at least one of the Defendants resides in this judicial district, is

licensed to do business or is doing business in this judicial district.

16.     Alternatively, this Court has jurisdiction over the subject matter presented by this

Class Action Complaint because it is a class action arising under 28 U.S.C. § 1332(d), which,

under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005),

explicitly provides for the original jurisdiction of the Federal Courts of any class action in which

any member of the plaintiff class is a citizen of a state different from any defendant, and where

the amount in controversy exceeds the aggregate sum of $5,000,000, exclusive of interest and

costs. Plaintiffs allege that the total claims of the individual members of the Plaintiff Class in this

action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by

28 U.S.C. § 1332(d)(2).

## IV.     FACTUAL BACKGROUND

**A.     The Rising Price of Black Pepper Put Pressure On McCormick's Promise to Its Shareholders To Cut Costs.**

17.     Black pepper is grown in India, Brazil, Indonesia, Malaysia, Sri Lanka, Vietnam

and certain other locations in the world today. The United States is the largest importer of pepper

spice.

18.     Recently, the commodity price of black pepper substantially increased worldwide.

The increase in prices clashed with McCormick's promise to its shareholders that it would

continuously work on cost savings through its long-running Comprehensive Continuous

- 4 -

Improvement program. In fact, McCormick had promised $85 million or more in cost savings for its 2015 fiscal year.

19.     Apparently unable to meet these targets due to rising commodity prices without a substantial reduction in other costs or increase in prices, in 2015, McCormick began shipping millions of pepper tins and grinders to retail stores containing 25% less black pepper than the containers were designed to hold.

**B.     McCormick Responds To The Rising Price of Black Pepper by Reducing the Amount of Pepper In the Tins and Grinders Sold to Consumers While Maintaining Prices.**

**1.     McCormick's Non-Transparent Tins Hide the Non-Functional Slack-Fill**

20.     For decades, McCormick has sold ground black pepper in non-transparent metal tins that have become widely recognized by consumers. These non-transparent metal tins came in different sizes: (i) a small metal tin measuring approximately 3 1/16" tall, 1 5/16" deep, and 2 5/16" wide, which (until 2015) was substantially filled to capacity consistent with industry norms with 2 ounces of ground black pepper (the "Small Tin"); (ii) a medium metal tin measuring approximately 3 10/16" tall, 1 9/16" deep, and 2 13/16" wide, which (until 2015) was substantially filled to capacity consistent with industry norms with 4 ounces of ground black pepper (the "Medium Tin"); and (iii) a large metal tin measuring approximately 4 10/16" tall, 2 4/16" deep, and 3 5/16" wide, which (until 2015) was substantially filled to capacity consistent with industry norms with 8 ounces of ground black pepper (the "Large Tin").

21.     However, in or about January 2015, McCormick intentionally began shipping millions of these same-sized tins of ground black pepper with 25 percent reduced fill. Rather than change the size of the tin from the traditional size to a new size that reflected the reduced fill, McCormick deceptively and misleadingly continued to use the same traditional-sized tins that had been used for decades, giving the false impression that nothing had changed.

- 5 -

22.     McCormick's non-transparent tins of ground black pepper are now approximately 25% empty, which constitutes nonfunctional "slack-fill:"

| Tin Size | McCormick Traditional Fill | McCormick Slack-Fill |
|----------|---------------------------|---------------------|
| Small | 2 ounces | 1.5 ounces |
| Medium | 4 ounces | 3 ounces |
| Large | 8 ounces | 6 ounces |

23.     For example, Photo A below shows the traditional McCormick Small Tins with the 1.5-ounce slack-fill (on the left) and the traditional 2-ounce fill (on the right). Although the tins note the weight in small print, the tins are the exact same size. McCormick fails to disclose that, in fact, the tins now contain a significant void. Rather, the McCormick Small Tin with the 1.5-ounce slack-fill (on the left) falsely appears to contain the same amount of ground black pepper as the other tins with 2-ounce fills.

- 6 -

**Photo A**



24.    Photo B below depicts the traditional McCormick Medium Tins with the 3-ounce slack-fill (on the right) and the traditional 4-ounce fill (on the left). Although the tins note the weight in small print, the tins are the exact same size. McCormick fails to disclose that, in fact, the tins now contain a significant void. Rather, the McCormick Medium Tin with the 3-ounce slack-fill falsely appears to contain the same amount of ground black pepper as the other tins with 4-ounce fills.

**Photo B**



- 7 -

25.     Photo C below shows the traditional McCormick Large Tins with the 8-ounce traditional fill (on the left) and the 6-ounce slack-fill (on the right). The McCormick Large Tins with an 8-ounce fill (on the left) was marketed for decades. McCormick's use of the same McCormick Large Tin with a 6-ounce fill with nonfunctional slack-fill (on the left) gives the deceptive and misleading impression that it is full.

**Photo C**



26.      In a statement to the Associated Press, McCormick has admitted that it reduced the fill of pepper in its traditional tins, claiming it followed "industry standard procedures." However, neither the law nor industry standard permits companies to sell products in packaging containing non-functional slack-fill, as Defendant has done here.

**2.     McCormick's Black Peppercorn Grinders Hide the Non-Functional Slack-Fill**

27.     McCormick also sells its branded McCormick® Black Peppercorn Grinder in bottles with a non-transparent, built-in grinder and substantially covered by a non-transparent label.

28.     Bottles of McCormick® Black Peppercorn Grinder have been marketed and sold to consumers in the United States in two different package sizes: a small bottle with a built-in

grinder (the "Small Grinder") and a large bottle with a built-in grinder (the "Large Grinder"). Prior to early 2015, these bottles were substantially filled to capacity.

29.     The Small Grinder currently holds 1 ounce of black peppercorn. Prior to early 2015, however, McCormick substantially filled the Small Grinder to capacity with 1.24 ounces of black peppercorn. Although the amount of black peppercorn in the Small Grinder has been reduced by 19% since early 2015, the actual size of the Small Grinder has, at all relevant times, remained the same.

30.     Photo D below shows the current bottle now holding 1 ounce, but with the non-transparent label that conceals to consumers whether the bottle is filled to capacity.

**Photo D**



31.     Photo E below shows the original bottle holding 1.24 ounces (on the right) and the current bottle now holding 1 ounce (on the left). Only the nontransparent label has been removed to show the contents of the bottles.

- 9 -

**Photo E**



32.    The Large Grinder currently holds 2.5 ounces of black peppercorn (Photo F below). Prior to early 2015, McCormick substantially filled the Large Grinder to capacity with 3.1 ounces of black peppercorn. Although the amount of black peppercorn in the Larger Grinder has been reduced by 19% since early 2015, the actual size of the Large Grinder has, at all relevant times, remained the same.

**Photo F**



- 10 -

**C.  McCormick and Certain Private Label Retailers Agree that McCormick Will
Supply Store-Branded Pepper Containers With Non-Functional Slack-Fill.**

33.  McCormick produces about half of store-brand spices sold annually in the United

States, and store brands account for a significant share of spices like pepper, generally 36

percent. McCormick agrees to supply store-branded tins of pure ground black pepper to retailers,

including the Great Value brand sold in Walmart and other John Doe unnamed co-conspirators

("Retailers"). The Retailers agree on all aspects of the store-branded product to be supplied by

McCormick, including container, type and amount of product in the container, and the labels or

representations on the containers. In this case, the store-branded tins of pure ground black pepper

are non-transparent and are similarly sized and shaped as McCormick® Pure Ground Black

Pepper.

34.  As with its branded McCormick® Pure Ground Black Pepper, prior to early 2015

and pursuant to its agreements with the private-label Retailers, McCormick substantially filled to

capacity the store-branded tins of pure ground black pepper that it supplied.

35.  However, effective since early 2015, McCormick and the Retailers agreed that

McCormick would reduce the amount of ground black pepper contained in the McCormick-

supplied, store-branded tins, even though the actual size of the store-branded tins has, at all

relevant times, remained the same. Moreover, the Retailers maintained the prices of the store-

branded tins constant.

36.  For example, Walmart's Great Value-branded pepper tins were underfilled in the

identical manner as the McCormick-branded pepper tins: *e.g*., traditional 4 ounce tins are now

filled with only 3 ounces of pepper; traditional 8 ounce tins are now filled with only 6 ounces.

Pursuant to the agreement between McCormick and Walmart, the Great Value brand pepper fill

practices thus were exactly the same, at approximately the same exact time, with McCormick's

- 11 -

pepper fill practices. Moreover, just as with the McCormick prices, the prices for the Great Value brand also remained constant.

37.     As a result of Defendants' blatantly misleading and deceptive use of traditional-sized, non-transparent metal tins and grinders with illegal slack-fill, Plaintiffs and the Class have been deceived into believing that the containers contain the amount of ground black pepper for which the containers are designed to hold.

38.     In fact, in many instances, McCormick acts as a "Category Captain" for Retailers throughout the country. As a Category Captain, McCormick is responsible for designing and managing the spice module layouts at a particular retailer, including the manner in which the different brands are stocked and marketed within the module by sizes and brands.

39.     Both the tins and grinders are a form of advertisement that, together with strategic placement on the shelf, is one of the most effective methods to induce sales. When McCormick's slack-filled tins and grinders (as well as the concomitant store-branded containers) are positioned on a grocery store shelf next to competitors, Defendants induce consumers to buy their pepper because it appears – falsely – that their containers are equivalent to, or larger than, the non-conspiring competitors.

40.     There is substantial evidence showing that McCormick agreed with the Retailers to the "Slack-Fill Scheme." That evidence includes the following.

41.     *Industry Structure Conducive to Collusion*. McCormick controls as much as 70% of the black pepper retail market, as well as 50% of the store-branded spice market.

42.     *Opportunities to Conspire*. Given that McCormick contracted directly with the Retailers to manufacture and provide their store-branded pepper, McCormick and each of the

- 12 -

Retailers had regular opportunities to meet, exchange information, and agree with one another as to the fill of the pepper containers.

43.     *Information Exchanges*. The exchange among competitors of competitively sensitive, non-public information can be indicative of a price-fixing conspiracy and this conduct itself can violate the antitrust laws. The opportunity for such exchanges occurred in the context of negotiations by and between McCormick and the Retailers under the rubric of their contracts for McCormick to supply the store-branded pepper and spice containers to the Retailers.

44.     *Motive to Conspire, Including Assurances That Competitors Will Also Act*. Each of McCormick and the Retailers had a motive to maintain their profit margins even while facing the rising price of pepper in the global market. They were concerned that the high price of pepper in the global market would put pressure on them to increase their retail prices and lose customers or market share. Thus, by reducing the fill of pepper sold while maintaining retail prices, McCormick and the Retailers protected their retail prices and profit margins. Moreover, McCormick was in a position to act as the "hub" in a "hub-and-spoke" conspiracy. That is, McCormick was in a position to communicate to each Retailer before they agreed to and implemented the Slack-Fill Scheme.

45.     *Abrupt, Near-Contemporaneous and Fundamental Shift in Pricing Policies*. Before January of 2015, McCormick, Walmart and the Retail co-conspirators sold black pepper tins and grinders filled with the amount of pepper the containers were designed to hold. However, once McCormick instigated the Slack-Fill Scheme, the Retailers agreed with and permitted McCormick to roll out the scheme with respect to their store-branded containers also. At the same time, McCormick and the Retailers maintained the retail prices of the slack-filled

- 13 -

black pepper containers. Thus, Defendants were able to effectuate the Slack-Fill Scheme near or at the same time.

## V.    RELEVANT MARKET

46.    The product market is the retail market for black pepper. The geographic market is the United States.

## VI.    CLASS ACTION ALLEGATIONS

47.    Plaintiffs bring this action both on behalf of themselves, and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following class. The "Nationwide Class" shall be defined as:

> All persons in the United States who purchased McCormick-brand black pepper, Walmart's Great Value-brand black pepper and/or John Does' store-brand black pepper between January 1, 2015, and the present for their personal or household use.

48.    Plaintiffs do not know the exact number of Class members because such information is in the exclusive control of Defendants. Plaintiffs believe that, due to the nature of the trade and commerce involved, there are most likely hundreds of thousands of Class members, geographically dispersed throughout the United States such that joinder of all Class members is impracticable.

49.    Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs all purchased black pepper packaged by McCormick. All Class members were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

50.    Numerous questions of law or fact arise from Defendants' anticompetitive conduct that is common to the Class, including but not limited to:

> a.    Whether and when McCormick began under-filling black pepper containers sold to consumers;

- 14 -

b. The nature of the agreements between McCormick and its Retailer co-conspirators, including Walmart;

c. Whether Defendants misrepresented or failed to disclose to Plaintiffs and the Class that the pepper containers were under-filled;

d. Whether the misrepresented and undisclosed facts were material to Plaintiffs and the Class;

e. Whether Defendants were unjustly enriched;

f. Whether McCormick and its retail customers, including Walmart, engaged in a contract, combination, agreement, arrangement, and or conspiracy to fix, maintain, control, or stabilize the prices of pepper by selling under-filled containers;

g. The operative time period of the alleged conspiracy;

h. Whether Defendants' conduct caused an increase in the effective price of pepper sold in under-filled containers;

i. Whether Defendants' conduct caused injury to the business or property of Plaintiffs and Class members;

j. Whether Defendants' conduct violated federal antitrust law;

k. Whether Defendants' conduct violated state consumer protection statutes, including but not limited to by virtue of having violated so-called "slack-fill" laws;

l. Whether Plaintiffs and the Class are entitled to recover damages, whether actual, statutory or punitive, restitution, and/or equitable relief from Defendants based on the conduct alleged herein.

These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

51. Plaintiffs' claims are typical of the claims of the Class because they arise out of the same conduct by Defendants.

52. Plaintiffs will fairly and adequately represent the interests of the Class in that they have no conflict with any other members of the Class. Furthermore, Plaintiffs have retained competent counsel experienced in antitrust, class action, and other complex litigation.

- 15 -

53.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

54.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

55.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## VII.    CAUSES OF ACTION

### COUNT I

### CLAIM FOR VIOLATIONS OF 15 U.S.C. § 1

56.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

57.     Beginning in 2015 and continuing through the filing of this Complaint, McCormick and its co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, maintain, and stabilize prices for pepper in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

58.     In formulating and carrying out the alleged agreement, understanding, or conspiracy to under-fill pepper tins and grinders, McCormick and its co-conspirators effectively fixed, raised, maintained, and stabilized the price of pepper tins and grinders.

59.     The combination and conspiracy alleged herein has had the following effects, among others:

            a.     Price competition in the sale of pepper has been restrained or suppressed

in the United States;

b.     Prices for pepper sold by McCormick and its co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

c.     Those who purchased pepper, directly or indirectly, from McCormick and its co-conspirators have been deprived of the benefits of free and open competition.

d.     Plaintiffs and Class members paid supra-competitive, artificially inflated prices for pepper.

60.     Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business or property by Defendants' antitrust violations. Their injury consists of receiving less pepper in a pepper tin or grinder and thus effectively paying higher prices for their pepper purchases than they would have paid in the absence of those violations.

61.     Plaintiffs and the Class, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 18 U.S.C. § 2201(a), hereby seek a declaratory judgment that Defendants' conduct as described herein violates Section 1 of the Sherman Act.

62.     Plaintiffs and the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

63.     As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class have been injured in their businesses and property in that they have paid more for black pepper than they otherwise would have paid in the absence of that conduct.

64.     Plaintiffs seek injunctive relief, actual damages, compensatory relief, treble damages and attorneys' fees and costs.

- 17 -

## COUNT II

### VIOLATIONS OF STATE CONSUMER PROTECTION ACTS

65.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

66.     Plaintiffs and the members of the Class are individuals that paid for purchases of black pepper for personal, family, or household purposes.

67.     Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the promotion and sale of McCormick black pepper.

68.     Defendants violated this duty by selling black pepper in non-transparent containers containing non-functional slack-fill.

69.     McCormick's and the Retailers' actions constitute violations of the Federal Food, Drug and Cosmetic Act ("FDCA") Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 343(d)); the Code of Federal Regulations Title 21 part 100, *et seq*.; the Lanham Act, 15 U.S.C § 1125; and those similar deceptive and unfair practices and/or consumer protection state laws in all fifty states.

70.     Specifically, Defendants' actions violate 21 C.F.R. § 100.100, which prohibits nonfunctional slack-fill:

> In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading. (a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:
>
> (1) Protection of the contents of the package;
>
> (2) The requirements of the machines used for enclosing the contents in such package;

- 18 -

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

71.     Defendants' deceptive representations and material omissions to Plaintiffs and the proposed Class members were, and are, unfair and deceptive acts and practices.

72.     Defendants' actions, as complained of herein, constitute unfair compensation or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of various state consumer protection statutes listed below.

73.     Individually, Plaintiffs seek to recover under the laws of their home states of Illinois and Iowa, respectively.  At class certification, Plaintiffs will seek redress for Class members under the following consumer protection statutes:

a.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. § 44 1522, *et seq*.;

b.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE § 48 88 101, *et seq*., including § 4 88 113(f), and § 4 88 102(5);

c.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE § 12606, CAL. BUS. & PROF. CODE § 17200, and CAL. CIV. CODE § 1770, *et seq*.  At this time, Plaintiffs seeks injunctive relief only on this claim. A letter

- 19 -

pursuant to CAL. CIV. CODE § 1782 was sent to Defendants, and Plaintiffs will amend if needed to seek damages;

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of COLO. REV. STAT. § 6 1 105, *et seq.*, including § 6 1 113(1)(c) and § 6 1 102(b);

e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42 110b, *et seq.*, including § 42 110(a)(3);

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 DEL. CODE § 2511, *et seq.*, including 6 DEL. CODE § 2512;

g.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. CODE § 28 3901, *et seq.*, including § 28 3904;

h.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. § 501.201, *et seq.*;

i.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48 601, *et seq.*, including § 48 602;

j.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS § 501/1, *et seq.*;

k.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IOWA CODE § 714H.1, *et seq.*,

l.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT. 51:1401, *et seq.,*

m.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CONN. LAW CODE § 13 101, *et seq.*, including § 13 101(h);

n.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. STAT. § 445.901, *et seq.*, including § 445 902(c);

o.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 325F.67, *et seq.*, including § 407.010(5);

p.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, *et seq*.;

q.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59 1601, *et seq*., including § 59 1601(1);

r.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. § 598.0903, *et seq*.;

s.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. § 358 A:1, *et seq*., including § 358A:1(1);

t.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. STAT. ANN. § 57:8 1, *et seq*., including § 56:8 1(d);

u.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57 12 1, *et seq*.;

v.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, *et seq*.;

w.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75 1.1, *et seq*.;

x.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51 15 01, *et seq*., including § 51 15 01(4);

y.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OHIO REV. STAT. § 1345.01, *et seq*., including § 1345.01(B);

z.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OKLA. STAT. Tit. 15 § 751, *et seq*.;

aa.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, *et seq*., including § 646.605(4);

bb.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. STAT. § 201 1, *et seq*., including § 201 2(2);

cc.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE LAWS § 39 5 10, *et seq.*, including § 39 5 10(9);

dd.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODE LAWS § 37 24 1, *et seq.*, including § 37 24 1(8);

ee.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE ANN. § 13 1 1 1, *et seq.*;

ff.     Defendants have engaged in unfair competition or unfair, deceptive acts or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, *et seq.*, including § 19.86.010(1); and

gg.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, *et seq.*

74.     Plaintiffs and members of the Class were directly and proximately injured by Defendants' conduct and would not have paid for Defendants' black pepper had they known that the containers were under-filled.

75.     As a proximate result of Defendants' misrepresentations and omissions, Plaintiffs and the proposed Class members have suffered an ascertainable loss and are entitled to relief, in an amount to be determined at trial.

76.     Plaintiffs and Class members are entitled to damages, restitution, disgorgement, and/or such orders or judgments as may be necessary to restore to any person in interest, any money which may have been acquired by means of such unfair practices and to the relief set forth below.

77.     Plaintiffs have provided notice to the Attorney General where required by state statute and have sent pre-suit demand letters where appropriate.

- 22 -

## COUNT III

## UNJUST ENRICHMENT

78.     Plaintiffs reallege and incorporate by reference the preceding allegations as if fully set forth above.

79.     Defendants have unjustly retained a benefit to the detriment of Plaintiffs and members of the Class. Defendants sold black pepper to Plaintiffs and the Class, in containers that included non-functional slack-fill while maintaining price levels for full containers. Defendants did so for the purpose of enriching themselves. Thus, Defendants continue to possess money paid by Plaintiffs and the Class to which they are not entitled.

80.     Defendants' retention of the benefit violates the fundamental principles of justice, equity and good conscience. Defendants did not disclose to Plaintiffs and the Class that the black pepper containers contained non-functional slack-fill.

81.     As a direct and proximate result of the Defendants' misrepresentations and/or omissions with respect to the non-functional slack-fill in the pepper tins and grinders, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class members request that the Court enter an order or judgment against the Defendants including the following:

A.     Declaring that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure, Rule 23, and for an order certifying this case as a class action and appointing Plaintiffs as Class representatives;

B.     Finding that Defendants have engaged in a contract, combination, and conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and that Plaintiffs and the members

of the Class have been injured in their business and property as a result of Defendants'
violations;

C.  Finding that Plaintiffs and the members of the Class recover damages sustained
by them, as provided by the federal antitrust laws, and that a judgment in favor of Plaintiffs and
the Class be entered against the Defendants in an amount to be trebled to the extent such trebling
is permitted pursuant to such laws;

D.  Enjoining Defendants, their subsidiaries, affiliates, successors, transferees,
assignees, and the respective officers, directors, partners, agents, and employees thereof and all
other persons acting or claiming to act on their behalf from (1) continuing and maintaining the
combination, conspiracy, or agreement alleged herein; and (2) continuing to sell black pepper
containers containing non-functional slack-fill;

E.  Declaring that the Defendants' practice of advertising and selling their black
pepper tins and grinders as being full – when they are not – was wrongful and unfair;

F.  Awarding restitution of all purchases of black pepper by Plaintiffs and the Class,
in an amount to be determined at trial;

G.  Granting disgorgement of the ill-gotten gains derived by the Defendants from
their misconduct;

H.  Awarding actual damages in an amount according to proof, punitive damages,
compensatory damages caused by the Defendants' unfair or deceptive practices; along with
exemplary damages to Plaintiffs and each Class member for each violation; and pre-judgment
and post-judgment interest at the maximum rate permitted by applicable law;

I.  Awarding Plaintiffs and the Class their attorney's fees and costs and expenses
incurred in connection with this action; and

J.      Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of

Civil Procedure, of all issues so triable.

DATED: September 15, 2015                    Respectfully submitted,

                                             By: */s/ Elizabeth A. Fegan*
                                                  Elizabeth A. Fegan
                                             Daniel J. Kurowski
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             455 N. Cityfront Plaza Drive, Suite 2410
                                             Chicago, IL 60611
                                             Telephone: (708) 628-4949
                                             Facsimile: (708) 628-4950
                                             E-mail: beth@hbsslaw.com
                                                      dank@hbsslaw.com

                                             Steve W. Berman
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             1918 Eighth Avenue, Suite 3300
                                             Seattle, Washington 98101
                                             Telephone: (206) 623-7292
                                             Facsimile: (206) 623-0594
                                             E-mail: steve@hbsslaw.com

                                             J. Barton Goplerud (*pro hac vice* forthcoming)
                                             HUDSON, MALLANEY, SHINDLER &
                                             ANDERSON, P.C.
                                             5015 Grand Ridge Drive, Suite 100
                                             West Des Moines, Iowa 50265
                                             Telephone: (515) 223-4567
                                             E-mail:  jbgoplerud@hudsonlaw.net

                                             David Freydin
                                             Timothy A. Scott
                                             FREYDIN LAW OFFICES
                                             8707 Skokie Blvd. # 305
                                             Skokie, IL 60077
                                             Telephone: (866) 308-0051
                                             E-mail: david.freydin@freydinlaw.com
                                                      Timothy.scott@freydinlaw.com

                                             *Counsel for Plaintiffs*

- 25 -