# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE: MCCORMICK & COMPANY, INC., PEPPER PRODUCTS MARKETING AND SALES PRACTICES LITIGATION** | MDL Docket No. 2665<br>Case No. 15-1825 (ESH) |
| ***This Document Relates To*: ALL CLASS ACTIONS** | |

## PLAINTIFFS' REPLY TO THE SEPARATE RESPONSE OF WAL-MART STORES, INC. TO THE MOTION OF PLAINTIFFS FOR CLASS CERTIFICATION

# Table of Contents

I.      Introduction ............................................................................................................................1

II.     Argument ...............................................................................................................................2

        A.      Individual reliance is not required. ............................................................................2

        B.      As Mr. Liberov has the same interests and asserts the same injury as all Class
                members in the relevant states, he is a proper class representative. ........................6

        C.      Mr. Liberov had neither actual nor constructive "notice" of Walmart's and
                McCormick's deceptive slack-filling practices before purchasing Great Value
                pepper, and has "standing" to bring his claims.......................................................8

III.    Conclusion ...........................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997).................................................................................8

*Beneficial Corp. v. FTC,*
  542 F.2d 611 (3d Cir. 1976)......................................................................11

*Bynum v. D.C.,*
  214 F.R.D. 27 (D.D.C. 2003)......................................................................8

*Cirone–Shadow v. Union Nissan of Waukegan,*
  955 F. Supp. 938 (N.D. Ill. 1997)................................................................3

*Connick v. Suzuki Motor Co.,*
  675 N.E.2d 584 (Ill. 1996).........................................................................3

*Diacakis v. Comcast Corp.,*
  No. C 11−3002 SBA, 2013 WL 1878921 (N.D. Cal. May 3, 2013) ....................................3, 4

*F.T.C. v. US Sales Corp.,*
  785 F. Supp. 737 (N.D. Ill. 1992).................................................................12

*Fallick v. Nationwide Mut. Ins. Co.,*
  162 F.3d 410 (6th Cir. 1998).......................................................................7

*Gratz v. Bollinger,*
  539 U.S. 244 (2003)................................................................................8

*Grp. Health Plan, Inc. v. Philip Morris Inc.,*
  621 N.W.2d (Minn. 2001)...........................................................................2

*Hughes v. Vanderbuilt Univ.,*
  215 F.3d 543 (6th Cir. 2000) .....................................................................9, 10

*Kraft, Inc. v. F.T.C.,*
  970 F.2d 311 (7th Cir. 1992) ...................................................................11, 12

*Lightfoot v. D.C.,*
  246 F.R.D. 326 (D.D.C. 2007).......................................................................8

*In re: McCormick & Co., Inc.,*
  217 F. Supp. 3d 124 (D.D.C. 2016)..............................................................1, 6, 7

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.,
   215 F. Supp. 3d 51 (D.D.C. 2016) ........................................................................4

Muir v. Playtex Prod., LLC,
   983 F. Supp. 2d 980 (N.D. Ill. 2013) ...............................................................11, 12

Nicpon v. Goehausen III,
   No. 89 C 5674, 1991 WL 5866 (N.D. Ill. Jan. 15, 1991) ..................................9, 10

Oshana v. Coca-Cola Co.,
   472 F.3d 506 (7th Cir. 2006) ........................................................................3, 4, 5

Removatron Intern. Corp. v. F.T.C.,
   884 F.2d 1489 (1st Cir. 1989) ............................................................................12

Singh v. George Washington Univ.,
   383 F. Supp. 2d 99 (D.D.C. 2005) ........................................................................7

Solomon v. Univ. of S. Cal.,
   255 F.R.D. 303 (D.D.C. 2009) ..............................................................................6

Suchanek v. Sturm Foods, Inc.,
   311 F.R.D. 239 (S.D. Ill. 2015) ............................................................................5

*Suchanek v. Sturm Foods, Inc.,
   764 F.3d 750 (7th Cir. 2014) ............................................................................3, 5

Williams v. Gerber Prods. Co.,
   552 F.3d 934 (9th Cir. 2008) ................................................................................4

Yordy v. Plimus, Inc.,
   No. C12-0229 TEH, 2013 WL 5832225 (N.D. Cal. Oct. 29, 2013)........................4

In re Zurn Pex Plumbing Prods. Liab. Litig.,
   644 F.3d 604 (8th Cir. 2011) ................................................................................4

**Statutes**

FTC Act, 15 U.S.C. § 45 (a)-(m) ...............................................................................11

**Other Authorities**

Anthony P. Dunbar, Comment, Consumer Protection: The Practical Effectiveness
   of State Deceptive Trade Practices Legislation, 59 Tul. L. Rev. 427, 488
   (1984).....................................................................................................................11

Fed. R. Civ. P. 23 ................................................................................................ passim

Fed. R. Civ. P. 59(e) .................................................................................................6

Jonathan Sheldon et al., *Unfair and Deceptive Acts and Practices* §§1.1 ....................................11

010546-12 987987 V1

## I.       Introduction

Walmart's separate brief does not raise issues of law or fact that preclude certification.[1]

First, Walmart attempts to re-engineer an individual reliance standard by arguing that the class

definition is overly broad because it could include people who were not deceived.  However, the

consumer protection statutes permit recovery by all purchasers based on an objective reasonable

consumer standard and classwide evidence is available to prove consumer deception.

Second, Walmart challenges the law of the case by arguing that Mr. Alexander Liberov

lacks "standing" to represent consumers purchasing Great Value pepper containers in states other

than Illinois.[2]  However, the Court already held that the issue of whether Plaintiffs could represent

class members in other states is properly answered by Rule 23, not under Article III "standing."

*In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 144 (D.D.C. 2016).  Walmart does nothing to

address Rule 23's elements, and merely cites case law purportedly supporting its already-rejected

"standing" argument. In fact, Plaintiffs' groupings analysis supports Mr. Liberov's representation

of persons similarly situated in the Consumer Protection Multi-State Class and the Unjust

Enrichment (Appreciation) Multi-State Class.

Finally, Walmart argues that Mr. Liberov must be charged with "constructive notice" of

Walmart's slack-fill practices based on the mere filing of a lawsuit against Walmart in September

2015.  But such a standard has never been adopted in the context of a deceptive product labeling

case, and it must fail here.  Any alleged "disclosure" tending to make a product label less

deceptive is merely a fact to be considered by the fact finder.  Furthermore, Walmart fails to

---

[1] Walmart joined and incorporated by reference McCormick's opposition to Plaintiffs' Motion for Class Certification.  *See* Walmart Mem. at 1 n.1.  Plaintiffs reply to McCormick's opposition separately.

[2] Walmart does not separately dispute that Mr. Liberov purchased Great Value pepper in a slack-filled tin or that he was actually deceived by the challenged slack filling practices.

provide *any* evidence that consumers were aware of the September 2015 filing against Walmart.
Accordingly, the Court should grant Plaintiffs' motion for class certification.

## II.     Argument

### A.     Individual reliance is not required.

None of the laws of the proposed Consumer Protection Multi-State Class require proof of
individual reliance. *See* Pls.' Mem. at 30; Fegan Decl., Ex. 18.[3]  Rather, Plaintiffs may rely on
common evidence showing that Defendants' deceptions were material to reasonable consumers in
general or that common, circumstantial evidence of reliance by reasonable consumers exists,
satisfying the elements of causation in each state. *Id.*  McCormick's separately filed response
brief largely concurs,[4] and Walmart does not independently challenge the similarity of these
elements.[5]  Nor does Walmart assert that any of the jurisdictions requires individual reliance.

Rather, Walmart attempts to force individual reliance through the back-door of
"identifying" all class members who were actually deceived.  But back-dooring an individualized
reliance standard into the laws of the Consumer Protection Multi-State Class states runs afoul of
the remedial goals of their enactors.  *See, e.g.*, *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621
N.W.2d at 15 (Minn. 2001) ("To impose a requirement of proof of individual reliance in the guise
of causation would reinstate the strict common law reliance standard that we have concluded the
legislature meant to lower for these statutory actions.").

---

[3] All references to the "Fegan Decl." refer to the previously filed Declaration of Elizabeth A.
Fegan Compiling Common Evidence in Support of Plaintiffs' Motion for Class Certification and
Appointment of Class Counsel. "Pls.' Mem." refers to Plaintiffs' Memorandum of Points &
Authorities in Support of Their Motion for Class Certification and Appointment of Class Counsel.

[4] *See* Dkt. 161 at 29-30.  And where it does not, McCormick's contentions are wrong.

[5] *See generally* Walmart Mem.  Walmart's response focuses on consumer protection law,
mentioning unjust enrichment just once in connection with its defective argument that Mr. Ivanov
"does not have standing to bring claims relating to his purchase under the consumer protection or
unjust enrichment laws of any state." *Id.* at 9.

- 2 -

Walmart's entire argument about the purported necessity under Rule 23 to identify every purchaser who was "deceived" hinges on two cases, *Oshana v. Coca-Cola Co.,* 472 F.3d 506 (7th Cir. 2006), and *Diacakis v. Comcast Corp.*, No. C 11−3002 SBA, 2013 WL 1878921, at *1 (N.D. Cal. May 3, 2013).  Walmart Mem. at 3.  But these federal cases do not forge sweeping reinterpretations of Rule 23's class definition requirements.

Under the Illinois Consumer Fraud Act, to establish deception, a plaintiff need only show that the representation is "material," using an objective, reasonable person standard.  *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014) ("The question whether the GSC packaging was likely to mislead a reasonable consumer is common to the claims of every class member. (Note that this is an objective question, not one that depends on each purchaser's subjective understanding of the package.)"); *Cirone–Shadow v. Union Nissan of Waukegan,* 955 F. Supp. 938, 944 (N.D. Ill. 1997).  A representation or omission is material if it concerns "the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 595 (Ill. 1996).

In *Oshana v. Coca-Cola Co.*, the Seventh Circuit was confronted with a theory of deception that did not objectively appear to conjure materiality.  There, the Plaintiff alleged that Coke tricked her into believing that fountain Diet Coke had the same formula as bottled Diet Coke, when in reality the fountain beverage contained saccharin and aspartame whereas the bottled version contained only aspartame.  *Oshana,* 472 F.3d at 509.  The court held that no class was viable for that theory because "some putative class members may have known about the presence of saccharin and bought fountain Diet Coke anyway".  *Id.* at 510.  In other words, the information Coke provided (or failed to provide) was not the type upon which a buyer would be expected to rely in making a purchasing decision.  Notably, the Seventh Circuit later noted the plaintiff in *Oshana* was "idiosyncratic." *Suchanek,* 764 F.3d at 758.  Here, in contrast, applicable

regulations make it clear that non-functional slack-fill is misleading as a matter of law.  *See* Fegan

Decl., Ex. 14 (Survey of Slack Fill Laws).  *See also In re McCormick & Co., Inc., Pepper Prod.*

*Mktg. & Sales Practices Litig.,* 215 F. Supp. 3d 51, 61 (D.D.C. 2016) ("nonfunctional slack-fill is

considered deceptive as a matter of law.").  Therefore, the non-material type of deception that was

alleged in *Oshana* is not present here.

      As to *Diacakis v. Comcast Corp*., the court incorrectly stated, "[l]ike the ICFA claim in

*Oshana*, Plaintiff's [California consumer statutory] claims against Comcast require a showing of

consumer deception."  *Diacakis,* 2013 WL 1878921 at *4 (citing *Williams v. Gerber Prods. Co*.,

552 F.3d 934, 938 (9th Cir. 2008)).  To the contrary, the *Williams* decision correctly notes, "these

laws prohibit not only advertising which is false, but also advertising which, although true, is

either actually misleading or which has a *capacity, likelihood or tendency to deceive* or confuse

the public," i.e., the objective "reasonable consumer test."  *Williams*, 552 F.3d at 938-39

(emphasis added).  Therefore, the *Diacakis* court misapprehended the test for establishing a

violation of the California statute.  Additionally, the deception at issue in *Diacakis* was

communicated orally to the plaintiff and there was no evidence that all class members would have

would have received the same information.  *See Yordy v. Plimus, Inc.*, No. C12-0229 TEH, 2013

WL 5832225, at *2 (N.D. Cal. Oct. 29, 2013) (distinguishing *Diacakis* on this basis).  In this case,

all the applicable tests for deception are objective and all consumers of Walmart's slack-filled

pepper received the same deceptive canisters.

      Finally, Walmart argues "some consumers will continue to purchase the product even in

the face of a price increase." Walmart Mem. at 3.  However, this bald statement does not

constitute evidence, and conjecture is inappropriate in the context of a class certification motion.

*See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 (8th Cir. 2011) (holding,

defendant's argument that "individual water conditions or faulty installation *might have* caused

the alleged failures" of pipes was insufficient to defeat class certification because "the relevance of [individual] defenses must be subjected to the same rigorous inquiry as plaintiffs' claims," and "there was not sufficient evidence" of individual factors) (emphasis added).

Significantly, the same appellate court that decided *Oshana v. Coca-Cola Co.* later held:

> Every consumer fraud case involves individual elements of reliance or causation. … [A] rule requiring 100% commonality would eviscerate consumer-fraud class actions. And because few if any injured parties would bring suit to recover the paltry individual damages available in most consumer fraud cases, such a rule would undermine enforcement against tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits, in direct contradiction of Rule 23(b)(3)'s purpose.

*Suchanek*, 764 F.3d at 759-60.  In *Suchanek*, the court reversed a denial of class certification where the plaintiffs proffered evidence showing consumer deception.  *Id.* at 758.[6]  Similarly, the court in *In re ConAgra Foods, Inc.*, certified a consumer fraud class after applying a reasonable consumer standard, noting that "Plaintiffs need not prove at this stage that every ConAgra customer would find the '100% Natural' claim material… ."  90 F. Supp. 3d at 1018-19.

On top of the law (which confirms Defendants' slack-fill is deceptive as a matter of law), ample, common evidence of deception satisfies the relaxed causation standards adopted by the relevant states.  *See, e.g.,* Fegan Decl., ¶¶ 18-25, 33-38.  In contrast, Walmart provides *no* evidence that consumers were not confused by the oversized tins.  Defendant merely cites to an economics book discussing price elasticity to declare that, despite receiving less pepper than expected, some consumers may have wanted to pay more anyway.  Walmart Mem. at 3-4.

---

[6] It bears noting that, on remand, the district court granted class certification under the consumer protection laws of Alabama, California, Illinois, New Jersey, New York, North Carolina, South Carolina, and Tennessee.  *Suchanek v. Sturm Foods, Inc.,* 311 F.R.D. 239, 264 (S.D. Ill. 2015), *reconsideration denied,* No. 11-CV-565-NJR-PMF, 2015 WL 12670382 (S.D. Ill. Nov. 19, 2015).

Walmart's mere reference to economic theory does not pass Rule 23's "rigorous analysis" requirement, particularly in the face of contrary, common evidence.  *See In re ConAgra*, *supra*.

**B.      As Mr. Liberov has the same interests and asserts the same injury as all Class members in the relevant states, he is a proper class representative.**

Under Rule 23, Mr. Liberov's ability to act as a representative of other consumers has nothing to do with his "standing" or whether he "or any other named plaintiff made any purchases of Wal-Mart's Great Value brand black pepper outside of the state of Illinois."  Walmart Mem. at 6.  This Court has ***already*** held, "[i]t is more logical to consider named plaintiffs' ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, ***rather than a question of standing***."  *In re McCormick*, 217 F. Supp. 3d. at 144 (emphasis added).  Walmart ignores the Court's ruling, arguing that Mr. Liberov does not have "standing" to represent others who made purchases outside of Illinois.

In doing so, Walmart's argument amounts to a tardy and impermissible motion to reconsider.  *See generally* Fed. R. Civ. P. 59(e).  Walmart fails to show that the Court patently misunderstood the standing argument, that the argument was outside of the adversarial issues presented in the motion to dismiss, that the Court made an error of apprehension rather than reasoning, or that there has been a controlling or significant change in the law or facts.  *See Solomon v. Univ. of S. Cal.*, 255 F.R.D. 303, 305 (D.D.C. 2009) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)), *aff'd* 360 Fed. Appx. 165 (D.C. Cir. 2012) (discussing reconsideration standards).  In such circumstances, the Court's "discretion to reconsider a non-final ruling is … limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without

- 6 -

good reason permitted, to battle for it again." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotations omitted).[7]

Walmart again misapprehends the "standing" requirement.  Even if everyone in the class purchased their oversized Great Value pepper tins in Illinois, Mr. Liberov would not have **standing** to assert their claims.  Mr. Liberov asserts no claim but his own. Once he filed his own valid claim, **Rule 23** permits the court to join others—who have their own standing—to the action if their claims are similar.  *See In re McCormick,* 217 F. Supp. 3d at 143 (D.D.C. 2016) (noting "the Court has declared that a conclusion about the named plaintiff's individual standing 'shift[s] the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.' Rule 23(a).'") (quoting *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure").

The Court's ruling that multi-state representation is resolved by Rule 23 rather than standing principles sets in motion the remaining analysis.  Rule 23 speaks in terms of common "questions of law or fact," typical "claims or defenses," and adequate protection of class "interests."  It says nothing about purchase location, or the ability of courts to identify the elements of similar state laws.  Thus, a plaintiff is a proper class representative where the

---

[7] Walmart also improperly attempts to renew the argument that the issue of whether Mr. Liberov has "standing … to bring claims in states in which he does not reside" should be decided "before" addressing class certification.  Walmart Mem. at 6 n.5.  One questions the logic of lodging this argument in an opposition to a motion for class certification.  But more importantly, the Court, again, expressly addressed this argument, rejected it, and in fact received concessions from Defendants that this issue is moot.  *See In re McCormick*, 217 F. Supp. 3d at 144 ("Defendants have conceded that the Court has discretion to wait until class certification to evaluate the differences among state laws.").

- 7 -

defendant's conduct "does not implicate a significantly different set of concerns" across class members. *Gratz v. Bollinger*, 539 U.S. 244, 265–68 (2003); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotations omitted). A class representative need only establish that she or he "suffered a similar injury from the same course of conduct." *Bynum v. D.C.*, 214 F.R.D. 27, 34 (D.D.C. 2003).

This District makes clear that Rule 23 does not require the claims and legal elements of the named plaintiff to be identical to those of the class, but rather they need only be similar. *See*, *e.g.*, *Lightfoot v. D.C.*, 246 F.R.D. 326, 338 (D.D.C. 2007) ("The facts and *claims* of each class member *do not have to be identical* to support a finding of typicality …. The typicality requirement is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes *similar legal arguments* to prove the defendant's liability.") (emphasis added; internal quotations omitted).

Here, the essential elements of the statutes at issue are the same. *See* Pls.' Mem. at 30; Fegan Decl., Exs. 16-18. McCormick and Walmart subjected Mr. Liberov to identical, reduced fill practices in Illinois, just as they did with an absent class member in California or Minnesota. The legal elements in the states at issue are materially the same. This similarity of conduct, injury, and legal theories ensures that Mr. Liberov's service as a class representative will also necessarily constitute "acts on behalf of, and safeguard[s in] the interests of, the class." *Bynum v. D.C.*, 214 F.R.D. 27, 34 (D.D.C. 2003). This is all that Rule 23 requires.

**C.     Mr. Liberov had neither actual nor constructive "notice" of Walmart's and McCormick's deceptive slack-filling practices before purchasing Great Value pepper, and has "standing" to bring his claims.**

Mr. Liberov purchased a tin of Great Value pepper from Walmart in 2015 or early 2016. Supp. Fegan Decl., Ex. 1 at Liberov Tr. 11, 23. He did not "ever see any sort of publicity or

- 8 -

notices or press words about this pepper dispute" before he saw a message on Facebook about it around the ***summer of 2016***.  *Id*. at 9, 17.  He made it clear that he wanted to join the lawsuit because, ***after*** he spoke with his attorney, he had felt "cheated."  *Id*. at 16.  He explained:

> So I just look at the can, I see how big it is, and I see other cans about this size.
> And I just look at the cheapest.  So I would like mention it's full, like it's a full
> can. So I see other cans of this size, I just pick the cheapest one. So I found out that
> it's not full, so it's somewhat misleading.

*Id.* at 26.  Clearly, Mr. Liberov had no knowledge of Walmart's reduced filling practices prior to his purchase, and testified that he was misled by the size of the tin he bought.

Yet, without basis, Walmart argues that Mr. Liberov does not have "standing" to sue because he had "constructive knowledge" of the deceptive conduct, based solely on the fact that a lawsuit had been filed in September 2015.  Walmart Mem. at 8.  Putting aside the fact that Mr. Liberov's testimony does not foreclose the possibility that he purchased his pepper prior to the lawsuit being filed (*see* Supp. Fegan Decl., Ex. 4 at Liberov Tr. 23 (testifying he could not say with certainty it would have been late in 2015)), there exists no authority for the proposal that the filing of a lawsuit, disputing a deceptive practice, constructively forecloses consumers from making a consumer fraud claim for illegal conduct that continues after start of the action.  While Walmart cites *Nicpon v. Goehausen III* and *Hughes v. Vanderbuilt University* in a tenuous effort to generate such a rule, those cases have nothing to do with "constructive knowledge" of consumer labeling deception.  Walmart Mem. at 8.  Rather, both cases analyzed when the plaintiffs should have been on notice of their claims for purposes of timely filing their lawsuits within the applicable *statutes of limitations*.  No one disputes Mr. Liberov timely filed his claim. Furthermore, the courts in both *Nicpon* and *Hughes* found that each plaintiff had *actual* knowledge of the facts giving rise to their claims.  *See Nicpon v. Goehausen III*, No. 89 C 5674, 1991 WL 5866, at *1-2 (N.D. Ill. Jan. 15, 1991) (finding that because plaintiffs' law firm had filed

- 9 -

the related action, they were on actual notice of the obligation to investigate and file their claim);

*Hughes v. Vanderbuilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000) (although court found that

plaintiff should have been on notice to conduct an investigation into her claim in part because of

wide-spread news reports of defendants' having fed an experimental, radioactive cocktail to

children, court also (1) held that plaintiff's own complaint admitted that the claim accrued earlier

(i.e., actual notice) and (2) noted that plaintiff should have started investigating her claim even

decades earlier, when defendant "intentionally forced plaintiff to ingest radioactive iron by

forcibly holding her mouth open and instilling the radioactive substance into her mouth against

her will, ignoring her protests").  Thus, unlike in *Nicpon*, despite the fact that Mr. Liberov's

lawyers began the instant action in September 2015, he never met or spoke to them until well after

his Great Value purchase.  And unlike in *Hughes*, there is no evidence that Mr. Liberov knew or

had reason to know of the lawsuit prior to purchasing his pepper.

These distinguishing facts alone end Walmart's "standing" argument.  But another

distinction draws an even more compelling picture of why the "constructive knowledge"

argument fails in this case.  The inquiry in the statute of limitations cases—which can be strict in

their application—centers on whether sufficient facts were present so that the plaintiff ***could or***

***should have discovered*** the facts giving rise to the suit through reasonable diligence.  *See Nicpon*,

1991 WL 5866 at *1 (limitations period commences when plaintiff "in the exercise of reasonable

diligence could have discovered" the facts); *Hughes*, 215 F.3d at 548 (limitations period

commences when plaintiff "should have discovered it through the exercise of reasonable

diligence").  In other words, statute-of-limitations rules put the onus on the potential plaintiff to

investigate a legal claim when certain information is merely ***available*** to them.[8]

---

[8] Moreover, common evidence exists that McCormick kept the product packaging the same size to mitigate the danger that consumers would notice the reduction.  *See* Fegan Decl. ¶ 79.

- 10 -

That is not the case with consumer protection statutes, which are broadly drafted to protect consumers, and which contain no obligation on the part of consumers to actively ferret out labeling deception, prior to making routine purchases, by, for instance, perusing the latest legal trade circulars to see what lawsuits may have been filed related to items on their grocery lists. "Constructive knowledge" that certain representations are false is simply incompatible with the overwhelming body of jurisprudence evaluating deceptive labeling claims.

More specifically, attempts to snuff out unfair or deceptive labeling claims based on the presence of information tending to clear up any confusion have met with repeated judicial rejection, even where such information is placed in close proximity to the deceptive label.  Rather, in such cases, the jury evaluates all the information presented to consumers at the time of the sale, including the representations at issue and any alleged disclaimers or disclosures.  Thus, in determining whether a defendant's conduct was deceptive or misleading in a material way, courts "examine the overall net impression of an ad."  *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 326 (7th Cir. 1992);[9] *see also Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976) ("[t]he tendency of the advertising to deceive must be judged by viewing it as a whole, without emphasizing isolated words or phrases apart from their context."); *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 988 (N.D. Ill. 2013) ("an allegedly deceptive statement must be considered in light of *the total mix of information* provided to the consumer") (emphasis added).

---

[9] Virtually every UDAP law in the nation traces its origin to the FTC Act, 15 U.S.C. § 45 (a)-(m) or one of two contemporaneous model consumer acts that were developed and promulgated in the 1960s.  Jonathan Sheldon et al., *Unfair and Deceptive Acts and Practices* §§1.1; 3.4.2.2 and Appendix "A" (listing statutes) (6th Ed. 2005) ("*Sheldon*"); Anthony P. Dunbar, Comment, *Consumer Protection: The Practical Effectiveness of State Deceptive Trade Practices Legislation*, 59 Tul. L. Rev. 427, 488 (1984).  Depending upon how one classifies the various UDAPs, the FTC Act and the FTC's UTPCPA served as the basis for as many as 44 states' consumer protection laws.

There are no "constructive" disclosure exceptions to the "overall net impression" analysis. Rather, disclosures that allegedly qualify or cure a deceptive or misleading statement creating an inaccurate impression must be "prominent, unambiguous." *Kraft, Inc.*, 970 F.2d at 314; *see also Removatron Intern. Corp. v. F.T.C.*, 884 F.2d 1489, 1497 (1st Cir. 1989) (citations omitted) ("Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression.  Anything less is only likely to cause confusion by creating contradictory double meanings."); *F.T.C. v. US Sales Corp.*, 785 F. Supp. 737, 740 & 742 n.4 (N.D. Ill. 1992) (advertisement found deceptive despite presence of express disclosure where "the court was able to read the 'fine print' disclosures only after viewing the commercials repeatedly and 'pausing' the videotape"); *Muir*, 983 F. Supp. 2d at 988-89 (fine print disclosure on back of package created fact issue as reasonable inference was that consumers were likely to focus their attention on package front and more prominently featured deceptive statement).

To be generous, even if Walmart's only evidence—the existence of a lawsuit disputing Walmart's pepper fill practices—conceivably could be considered a remote, third party "disclaimer," the prominence or likelihood of that fact being realized would have to be evaluated and compared to the Great Value pepper labels and packaging as presented to consumers.  But Walmart presents absolutely no evidence of how many, if any, consumers of its pepper were aware of the lawsuit.  Therefore, Walmart has failed to provide *any* evidence of the "prominence" of the information as required by the "net impression" standard.  Mr. Liberov testified that he was deceived and did not hear anything about the lawsuit or Walmart's slack-filling pepper before his purchase.  He thus has standing to bring his own claim.  He also may adequately represent other, similarly situated class members in the Consumer Protection Multi-State Class and the Unjust Enrichment (Appreciation) Class.

- 12 -

### III.     Conclusion

For the reasons provided above and in their other class certification papers, Plaintiffs respectfully request that the Court grant their motion for class certification in its entirety and grant them all such other relief that the Court deems necessary and appropriate.


DATED: September 28, 2017                    Respectfully submitted,

                                             By:   */s/ Elizabeth A. Fegan*
                                             Elizabeth A. Fegan
                                             Daniel J. Kurowski
                                             Mark T. Vazquez
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             455 N. Cityfront Plaza Drive, Suite 2410
                                             Chicago, IL 60611
                                             Telephone: (708) 628-4949
                                             Facsimile: (708) 628-4950
                                             beth@hbsslaw.com
                                             dank@hbsslaw.com
                                             markv@hbsslaw.com

                                             Steve W. Berman
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             1918 Eighth Avenue, Suite 3300
                                             Seattle, WA 98101
                                             Telephone: (206) 623-7292
                                             Facsimile: (206) 623-0594
                                             steve@hbsslaw.com

                                             Jennifer Fountain Connolly
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             1701 Pennsylvania Ave. NW, Suite 300
                                             Washington, D.C. 20006
                                             Telephone: (202) 248-5403
                                             Facsimile: (202) 580-6559
                                             jenniferc@hbsslaw.com

                                             *Co-Lead Counsel and Counsel for Class Plaintiffs*

010546-12 987987 V1

Scott A. Kamber
KAMBERLAW LLC
142 W. 57th St., 11th floor
New York, NY  10019
(212) 920-3072
(212) 202-6364 (fax)
skamber@kamberlaw.com

Deborah Kravitz
KAMBERLAW LLP
401 Center Street, Suite 111
Healdsburg, CA 95448
(707) 820-4247
dkravitz@kamberlaw.com

*Co-Lead Counsel and Counsel for Class Plaintiffs*

010546-12 987987 V1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on September 28, 2017.  Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

By:  _/s/ Elizabeth A. Fegan_____
Elizabeth A. Fegan

010546-12 987987 V1