# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: MCCORMICK & COMPANY, INC.,
PEPPER PRODUCTS MARKETING AND
SALES PRACTICES LITIGATION


This Document Relates to:

ALL CONSUMER CASES

MDL Docket No. 2665
Misc. No. 15-1825 (ESH)

## MEMORANDUM OPINION

Before the Court are several motions relating to the sealing and redaction of documents.

Plaintiffs filed a Motion to Unseal Opening Class Certification Papers (ECF No. 174 ("Mot. to

Unseal")), arguing that defendants' confidentiality designations as to materials produced during

discovery are overly broad, and since defendants have failed to justify these designations, all

documents should be unsealed and unredacted in full.[1]  Also at issue are defendants' several

motions to seal documents (ECF Nos. 160, 163, 177, and 179), which plaintiffs oppose, as well

as plaintiffs' two motions to seal documents (ECF Nos. 157 and 172), which plaintiffs filed in

compliance with the parties' Stipulated Protective Order (ECF No. 48), but they argue against

the sealing of these documents.

The question is whether defendants' confidentiality designations justify allowing

significant redactions to pleadings and related declarations, in addition to the complete sealing of

hundreds of pages of exhibits.  Last year, this Court addressed potential redactions in a judicial

opinion related to plaintiffs' amended complaint.  *See In re McCormick & Co., Inc., Pepper*

---

[1] Defendants are McCormick & Co. ("McCormick") and Wal-Mart Stores, Inc. ("Wal-Mart").

*Prods. Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 218 (D.D.C. 2017). The Court, concluding that the public interest in access to judicial records outweighed McCormick's interest in avoiding reputational harm, overruled McCormick's objections and published its opinion without redactions. *In re McCormick & Co., Inc.*, No. 15-mc-1825, 2017 WL 2560911, at *1 (D.D.C. June 13, 2017). Now, pleadings and declarations associated with the plaintiffs' motion for class certification, the motion to unseal, and the joint motion to exclude plaintiffs' expert, Armando Levy, are at issue. In addition to the extensive redaction of multiple pleadings and declarations, defendants ask that hundreds of pages of exhibits attached to these declarations remain under seal.

## BACKGROUND

Plaintiffs, who are purchasers of defendant McCormick's black pepper, allege in their complaint that defendants "had a statutory duty to refrain from unfair or deceptive acts or practices in the promotion and sale of McCormick black pepper or store-branded black pepper," (Second Am. Compl. Consol. Class Action Compl. ¶ 115, ECF No. 128), and that they "violated this duty by selling black pepper in non-transparent containers containing nonfunctional slack-fill." (*Id.* ¶ 116.)

## I.  CLASS CERTIFICATION

On July 21, 2017, plaintiffs moved to certify three multistate classes under the consumer protection and unjust enrichment laws of more than thirty states and the District of Columbia, claiming that McCormick and Wal-Mart violated these laws when they knowingly sold black pepper in non-transparent containers containing non-functional slack fill, intending to minimize or eliminate consumers' ability to notice the reduced quantity of pepper by maintaining the same price and container size. (*See* Mot. for Class Cert. at 1–15, ECF No. 157-2.)

## A. Redacted Pleadings

When plaintiffs filed their memo in support of class certification, they moved to file it under seal (ECF No. 157) pursuant to the parties' Protective Order, and they filed a redacted version on the public docket as well. (ECF No. 159.) Redactions appear in the Table of Contents and on the following pages: 1–2, 4–5, 7–15, 18, 21, 23–24, 35, and 37–39. McCormick also filed a redacted version of its opposition to class certification (ECF No. 161) and moved to file an unredacted version under seal.[2] (ECF No. 160.) These redactions appear on the following pages: 1 n.2, 4–6, 10, 19, 23–25, and 25 n.29. Finally, plaintiffs filed a redacted reply to McCormick's opposition to class certification (ECF No. 168) and moved to file an unredacted version under seal. (ECF No. 172.) Plaintiffs' reply includes redactions on the following pages: 8–9 & n. 10, and 10.

Apart from the class certification pleadings, Wal-Mart filed its opposition to plaintiffs' motion to unseal with redactions and attached two redacted exhibits (ECF No. 180) and moved to file an unredacted version under seal. (ECF No. 179.) Exhibit A is the letter Wal-Mart's attorney Andrew Klevorn wrote in response to plaintiffs' initial challenge to defendants' confidentiality designations. ("Klevorn Letter," ECF No. 179-1.) Exhibit B is the Declaration of Wal-Mart employee Kassie Keeter, which identifies and explains commercially sensitive information that appears in Wal-Mart's exhibits. ("Keeter Decl.," ECF No. 179-1.)

In sum, three redacted class certification pleadings are at issue—plaintiffs' motion, McCormick's opposition, and plaintiffs' reply to McCormick—as well as Wal-Mart's opposition

---

[2] Defendants filed separate oppositions to class certification. Wal-Mart's opposition (ECF No. 165) and plaintiffs' reply thereto (ECF No. 169) are not redacted and therefore are not at issue.

to plaintiffs' motion to unseal and the two exhibits attached to the opposition. Plaintiffs

challenge all redactions.[3]

**B. Declarations and Reports**

Both plaintiffs and McCormick attach declarations, reports, and exhibits to their class

certification pleadings. Several of these documents are heavily redacted or filed entirely under

seal.

### i.    Fegan Declaration

Plaintiffs' Fegan Declaration—describing plaintiffs' underlying merits case—was filed as

an affidavit in support of the class certification motion. (ECF No. 157-3.) Large swathes of the

Fegan Declaration are redacted (ECF No. 158), including portions of pages 2, 5–17, 20–26, and

30–32. Most of the redacted information comes from defendants' documents, produced in

discovery, which were filed as Exhibits 101–143 to the Fegan Declaration. (*See* ECF No. 157.)

Defendants say very little about the Fegan Declaration.

### ii.    Levy Report

Plaintiffs also filed a sealed copy of the report written by their damages expert, Armando

Levy, as Exhibit 100 to the Fegan Declaration. ("Levy Report," ECF No. 157-4). McCormick

does not object to unsealing the Levy Report so long as "any references . . . to confidential

materials [are] appropriately redacted." (McCormick Opp. to Unseal at 3 n.2, ECF No. 176.)

Wal-Mart appears to adopt a similar position, but expresses concern that the report shows how

many "units of select McCormick-supplied black pepper products" Wal-Mart sold in each state

for each month over the course of more than two years, as well as "Wal-Mart's net sales of those

---

[3] *See* Mot. to Unseal; Pls.' Opp. to McCormick's Mot. to File Opp. to Class Certification Under
Seal, ECF No. 173 ("Opp. to Sealing McCormick Opp."); Pls.' Opp. to Wal-Mart's Mot. to File
Opp. to Unseal Under Seal, ECF. 183 ("Opp. to Sealing Wal-Mart Opp.").

products in each state for the same period." (Wal-Mart Opp. to Unseal at 3, ECF No. 179-1; *see also id.* at 7 (requesting that the Court maintain under seal "Wal-Mart documents attached to Plaintiffs' Motion for Class Certification and referenced in Dr. Levy's report").)

### iii. Schmitt Declaration Exhibits

McCormick filed the Schmitt Declaration as an affidavit in support of its opposition to class certification. (ECF No. 162.) Though the Schmitt Declaration itself contains no redacted material, McCormick moved to file three attachments to it under seal. (ECF No. 160.) These include the Hester Declaration as Exhibit 16 (ECF No. 160-3 (hereinafter "Hester Decl.")); the Johnson Expert Report as Exhibit 19 (ECF No. 160-4 (hereinafter "Johnson Report")); and selected Levy Deposition Excerpts as Exhibit 20. (ECF No. 160-5 (hereinafter "Levy Deposition Excerpts").)

### a. Hester Declaration

To support its argument that the Hester Declaration contains confidential business information, McCormick relies on the Declaration of Richard M. Morse, McCormick's Vice President of Global Customers. (ECF No. 176-6.) McCormick cites Morse to show that the Hester Declaration contains "information regarding the sourcing and density of McCormick pepper, packaging processes and strategy, and historical filling practices" (McCormick's Reply to Seal Opp. to Class Cert. at 4), and argues that its disclosure "could harm McCormick" (McCormick Opp. to Unseal at 10), and that "none of this information is already available to the public." (*Id.* at 6.) Plaintiffs respond that the Hester Declaration "is devoid of any information that could harm Defendants," characterizing it as containing "general, historical discussions." (Opp. to Sealing McCormick Opp. at 7.)

### b. Johnson Report

The Johnson Report receives limited attention from the parties. Plaintiffs oppose the motion to file it under seal and lump together their analysis of the Levy Report, the Johnson Report, and the Hester Declaration. (*See, e.g.*, Opp. to Sealing McCormick Opp. at 5 (referring to all three documents and explaining that they "were filed with the Court and introduced into evidence as part of the class certification briefing").) Plaintiffs describe "Dr. Johnson's report [as] focused on refuting the conclusions in Dr. Levy's report." (*Id.* at 7.) McCormick states that the Johnson Report refers to "market research on changes to the pepper containers and reaction to those changes, third-party sales data, McCormick documents discussing the qualities and sourcing of pepper, and filling practices, and fill weights of McCormick pepper containers." (McCormick's Reply in Supp. of Mot. to Seal Opp. to Class Certification at 5, ECF No. 175 ("McCormick's Reply to Seal Opp. to Class Cert.").)

Plaintiffs argue that no redactions to these documents (the Fegan Declaration, the Hester Declaration, the Levy Report, and the Johnson Report) are justified.[4]

### C. Fegan Declaration Exhibits 101–143

Attached to the Fegan Declaration, plaintiffs filed 45 sealed exhibits consisting of more than 200 pages. Forty-three of these are company documents that defendants produced in discovery and designated as "confidential" or "highly confidential." (McCormick Opp. to Unseal at 4–5; Wal-Mart Opp. to Unseal at 2.) McCormick produced forty of these documents, and Wal-Mart produced three.[5] (McCormick Opp. to Unseal at 2.) As above, plaintiffs argue

---

[4] *See* Mot. to Unseal; Opp. to Sealing McCormick Opp.

[5] Wal-Mart identifies these three documents as WALBPL00000760, WALBPL00000760, WALBPL00000765, which correlate to Fegan Declaration Exhibits 127–129. Wal-Mart also identifies a fourth document (WALBPL00030103) as containing transactional data incorporated in the Levy Report. (Klevorn Letter.)

that defendants have failed to demonstrate that these documents are properly designated as confidential and therefore challenge all designations and oppose sealing all Fegan Declaration Exhibits. (Mot. to Unseal ¶¶ 1, 9.)

## II. MOTION TO EXCLUDE EXPERT REPORT & OPINIONS

On August 28, 2017, defendants jointly moved to exclude the report and opinions of plaintiffs' expert, Dr. Armando Levy. (ECF No. 164 ("Mot. to Exclude").) Plaintiffs retained Levy to calculate class-wide damages. He relied on facts and data in defendants' documents to draw conclusions about pepper sales and fill levels in the pepper containers and to explain his damage calculations. (*See, e.g.*, *id.* ¶ 20 n.16 & Ex. B-2.)

### A. Redacted Pleadings

Defendants filed a redacted version of their memo in support of the motion to exclude the Levy Report (ECF No. 164-1) and moved to file the unredacted version under seal. (ECF No. 163.) Redactions appear on the following pages: 2 & n.4, 3–7. Plaintiffs filed a redacted version of their opposition (ECF No. 170) and moved to file an unredacted version under seal. (ECF No. 172.) These redactions appear on the following pages: 2–3, 5, 7 & n.2, 9, 14. Finally, defendants filed a redacted reply (ECF No. 178) and moved to file an unredacted version under seal. (ECF No. 177.) Defendants' reply includes redactions on the following pages: 3–4, 7 n.6. As a result, three redacted pleadings relating to the motion to exclude are at issue. Plaintiffs oppose all redactions. (Pls.' Opp. to Defs.' Mot. to File Mot. to Exclude Under Seal, ECF No. 173.)

### B. Levy Deposition Excerpts

Defendants also filed three sealed exhibits as attachments to the motion to exclude. Two of these are the Levy Report and the Hester Declaration.[6] As for the deposition excerpts, certain excerpted pages were filed as Exhibit B to the motion to exclude (ECF No. 163-4) and narrower, but overlapping, excerpts were filed as Exhibit 20 to the Schmitt Declaration.[7] (ECF No. 160-5.) Together, the sealed exhibits include the following excerpts from the Levy Deposition: 29–30, 40–41, 43, 51–60, 65–66, 74–77, 89–90, 108, 113, 115, and 120. As with the Levy Report, McCormick does not object to unsealing the deposition excerpts "subject to the provision that any references . . . to confidential materials be appropriately redacted." (McCormick Opp. to Unseal at 3 n.2.) Wal-Mart has not clearly articulated its position as to the deposition excerpts.

## III. THE PARTIES' POSITIONS

In their motion to unseal, plaintiffs argue that defendants' designations "(1) contain[] information already available to the public, (2) concern[] business protections no longer applicable given the passage of time, and/or (3) [do] not fall under one or more of the categories permitted under the Stipulated Protective Order." (Mot. to Unseal ¶ 8.) McCormick and Wal-Mart filed separate oppositions to the motion to unseal, and they maintain that their confidentiality designations are appropriate. Specifically, they argue that the confidentiality

---

[6] The Levy Report appears on the docket as both Exhibit 100 to the Fegan Declaration and Exhibit A to defendants' motion to exclude. (ECF No. 163-3.) The Hester Declaration appears as both Exhibit 16 to the Schmitt Declaration and Exhibit C to defendants' motion to exclude. (ECF No. 163-5.)

[7] Exhibit B includes pages 29–30, 40–41, 43, 51–60, 74–77, 89–90, 108, 113, 115, and 120 of the deposition. Exhibit 20 includes pages 53–58, 65–66, 74–77, 90, and 115. In other words, the deposition excerpts included with the Schmitt Declaration only add pages 65 and 66 to the excerpts included with the motion to exclude.

designations are appropriate under the protective order[8] (McCormick Opp. to Unseal at 6; Wal-Mart Opp. to Unseal at 3–4), that plaintiffs' objections are untimely (McCormick's Opp. to Unseal at 3, 4; Wal-Mart's Opp. to Unseal at 1–2), and that there is no heightened presumption of public access in the class action context.  (McCormick Opp. to Unseal at 6–8; Wal-Mart Opp. to Unseal at 7.)

To support its confidentiality designations of the forty sealed McCormick documents attached to the Fegan Declaration, McCormick relies on an index that lists each document and provides a description of the document and a generic explanation for the confidentiality designation.  (McCormick Opp. to Unseal at 5; *see id.* Ex. D.)[9]  McCormick argues that this index, in combination with the Morse Declaration, shows that the materials in question "clearly contain information which, if disclosed, (1) would reveal a trade secret or other research, development, or financial information that is commercially sensitive and/or (2) would cause McCormick to suffer a significant competitive or commercial disadvantage by revealing trade

---

[8] The Stipulated Protective Order defines confidential materials as those the producing party "reasonably believes may reveal a trade secret or other research, development, or financial information that is commercially sensitive or is personal information relating to an identified or identifiable natural Person that is protected from disclosure by statute, regulation, or otherwise is entitled to protection from public disclosure."  (Stipulated Protective Order ¶ 19(a).)  Highly confidential materials are those the producing party "reasonably believes contains or reflects trade secrets, 'know-how,' customer information, financial and marketing information, or other competitively sensitive commercial information (including, but not limited to, cost information, pricing, or sales information), the disclosure of which to another Party or non-party would create a substantial risk of causing the Producing Party to suffer a significant competitive or commercial disadvantage."  (*Id.* ¶ 19(b).)  It is the producing party's burden "to demonstrate the appropriateness of its confidentiality designation."  (*Id.* ¶ 21(b).)

[9] McCormick characterizes the motion to unseal as being about "internal and confidential business documents," and distinguishes the arguments plaintiffs make on that basis, explaining that it is easier to justify disclosure of a judicial opinion than confidential business documents.  (McCormick's Opp. to Unseal at 7 n.3.)  As a result, McCormick does not separately address redactions in the briefs or the Fegan Declaration, though they are also the subject of plaintiffs' motion to unseal.

secrets, 'know-how,' customer information, financial and marketing information, or other competitively sensitive commercial information (including, but not limited to, cost information, pricing, or sales information)." (*Id.* at 6.) McCormick repeats that "the documents in question contain confidential and proprietary business information, the disclosure of which could harm McCormick" (*id.* at 10) and which is not already public. (*Id.* at 6.) (*But see infra* note 3.)

By contrast, Wal-Mart has provided more detailed reasons to support the sealing of its three documents—Fegan Declaration Exhibits 127–29 (ECF Nos. 157-31–157-33). For example, Wal-Mart explains that these documents "contain highly sensitive information about Wal-Mart's internal processes and systems for executing product changes; the names of Wal-Mart personnel who are involved in the aforementioned process; and the individuals with whom Wal-Mart transacts [business]." (*Id.* at 2–3.) Moreover, Wal-Mart argues that if its "internal processes are disclosed, competitors might be able to replicate or improve upon such processes to Wal-Mart's detriment." (*Id.* at 3.) Wal-Mart uses the Keeter Declaration to support the contention that "disclosure of these materials might cause Wal-Mart to suffer a significant competitive or commercial disadvantage." (*Id.* at 6.)

Plaintiffs characterize both oppositions as insufficient and conclusory and argue that defendants have failed to overcome the presumptive public right of access to judicial records. (Pls.' Reply to Defs.' Opps. to Unseal at 1, ECF No. 181 ("Reply to Unseal").)

## IV. The Court's Conclusions

Having reviewed the relevant unredacted documents and the parties' arguments, and for the reasons discussed herein, the Court concludes that many of defendants' confidentiality designations have resulted in overbroad redactions that do not comport with the presumptive right of public access. Accordingly, the Court will grant in part and deny in part plaintiffs'

motion to unseal (ECF No. 174) and one of plaintiffs' motions to seal (ECF No. 157), but will deny the remaining motions to seal (ECF Nos. 160, 163, 172, 177, and 179).

Specifically, the Court will require the unsealing of the pleadings related to class certification, plaintiffs' motion to unseal, and defendants' motion to exclude. With respect to the Fegan Declaration, the Hester Declaration, the Levy Report, the Johnson Report, and all Levy Deposition Excerpts, the defendants will be required to file, by June 29, 2018, these documents with limited redactions and more detailed justifications of the proposed redactions. Finally, the Court will deny without prejudice plaintiffs' motion to unseal (ECF No. 174), insofar as it relates to Fegan Declaration Exhibits 101–143, to be revisited after the underlying motion for class certification has been resolved.

## ANALYSIS

## I.    GOVERNING PRINCIPLES OF LAW

As this Court has explained previously, *see In re McCormick*, 2017 WL 2560911, at *1, there is a "strong presumption in favor of public access to judicial proceedings." *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)). "This right extends to judicial records[;] . . . whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, at 6 (D.D.C. 2013) (quoting *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)). "A court proceeding . . . is in its entirety and by its very nature a matter of legal significance; all of the documents filed with the court . . . are maintained as the official 'record' of what transpired." *Wash. Legal Found. v.*

*U.S. Sentencing Comm'n*, 89 F.3d 897, 906 (D.C. Cir. 1996). "Indeed, the meaning and legal import of a judicial decision is a function of the record upon which it was rendered." *Id.*

In "cases involving motions to seal or unseal judicial records, the *Hubbard* test . . . serves . . . [to] ensure[] that we fully account for the various public and private interests at stake." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017). Under *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), courts consider six factors that may act to overcome the presumption in favor of public access to judicial proceedings:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Nat'l Children's Ctr.*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317–22).

Public access to judicial records is not limitless, however, and may be denied "to protect trade secrets . . . and to minimize the danger of an unfair trial by adverse publicity." *Hubbard*, 650 F.2d at 315; *cf. Press-Enterprise Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 510 (1984) ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."). "Protecting an entity's 'competitive standing' through retained confidentiality in business information has been recognized as an appropriate justification for restriction of public or press access." *New York v. Microsoft Corp.*, No. 98-cv-1233, 2002 WL 1315804, at *1 (D.D.C. May 8, 2002) (quoting *Nixon v. Warner Comms.*, 435 U.S. 589, 598 (1978)); *see Metlife*, 865 F.3d at 671 ("For documents containing sensitive business information and trade secrets, those factors often weigh in favor of sealing and . . . courts commonly permit redaction of that kind of information.").

The burden to rebut the presumption of disclosure rests with the objecting party. *Grynberg v. BP P.L.C.*, 205 F. Supp. 3d 1, 3 (D.D.C. 2016). And, "a party seeking to seal court documents must 'come forward with specific reasons why the record, or any part thereof, should remain under seal.'" *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 58 (D.D.C. 2009) (quoting *Johnson*, 951 F.2d at 1278).[10]

**A. The Role of a Protective Order**

"'[T]he District Court cannot abdicate its responsibility to . . . determine whether filings should be made available to the public' by allowing the parties to control public access pursuant to a protective order." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 20 (D.D.C. 2010) (quoting *Procter & Gamble v. Bankers Trust*, 78 F.3d 219, 227 (6th Cir. 1996)); *cf. Gynber v. BP PLC*, 205 F. Supp. 3d 1, 3 (D.D.C. 2016) ("Although confidentiality agreements between private parties may weigh against disclosure, they do not dictate whether documents can be filed under seal."); *United States v. ISS Marine Servs., Inc.* 905 F. Supp. 2d 121, 141 (D.D.C. 2012) ("[T]he mere fact that a case was, at one time, placed under seal is not a reason, in and of itself, to indefinitely maintain that seal and thus negate the public's access to judicial records, which the D.C. Circuit has described as 'fundamental to a democratic state.'") (quoting *Hubbard*, 650 F.2d at 315 n.79).

Though defendants rely on the protective order to justify their confidentiality designations, that order preserves only "legitimate proprietary and privacy interests" and protects

---

[10] McCormick appears incorrectly to fault plaintiffs for failing to carry their burden. (*See, e.g.*, McCormick Opp. to Unseal at 6; Wal-Mart Opp. to Unseal at 6); *see also*, *United States v. ISS Marine Servs.*, Inc. 905 F. Supp. 2d 121, 140–41 (D.D.C. 2012) ("It is not the Government's burden to proffer a need for public access; the burden is instead the respondent's to demonstrate the *absence* of a need for public access because the law presumes that the public is entitled to access the contents of judicial proceedings.").

only "confidential business and trade secret information . . . consistent with the public's right of access to the Court's records and processes." (Stipulated Protective Order ¶ 17.) Indeed, it advises the parties not to "seek to file under seal any more of the papers than is reasonably necessary to protect Confidential Information from disclosure." (*Id.* ¶ 28.)

### B. The Class Action Context

The parties argue over whether the presumption in favor of public access is heightened in the class action context. The Third and Sixth Circuits have concluded, for example, that "[t]he right of public access is particularly compelling . . . [where] many members of the 'public' are also plaintiffs in the class action." *In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir. 2001); *see Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("[I]n class actions—where by definition some 'members of the public are also parties to the [case]'—the standards for denying public access to the record 'should be applied . . . with particular strictness.'") (quoting *Cendant*, 260 F.3d at 194). The D.C. Circuit has not expressly embraced a heightened standard, but the fact that a case is a class action is not irrelevant under *Hubbard*. By applying the *Hubbard* factors, courts can assess whether and how class action status weighs in evaluating the public interest in access to the judicial records. There "is a stronger presumption of transparency in some judicial proceedings than in others," *Friedman*, 672 F.2d at 57, and by its nature, a class action may create a greater need for public access. *See, e.g.*, *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 730 (M.D. N.C. 2013) (noting that class actions offer "public benefits" and that once certified, class actions "bind members of the class, even if they are not named parties" and may "affect the rights of persons who are not parties to the case").

## II.    WHICH DOCUMENTS SHOULD BE UNSEALED

### A.  Class Certification Papers & the Motion to Unseal

#### i.    Class Certification Pleadings

As described above, plaintiffs moved to unseal the class certification pleadings either through their motion to unseal or by opposing defendants' motions to seal.  Plaintiffs also oppose Wal-Mart's motion to file under seal its opposition to the motion to unseal.  The *Hubbard* factors weigh heavily in favor of unsealing each of these pleadings.

Defendants make only conclusory arguments about the proprietary nature of the redacted information in the class certification pleadings.  To carry their burden under *Hubbard*, defendants must specifically identify the commercially sensitive information contained in the redactions and explain why its disclosure would harm their competitive standing.[11]  *See, e.g.*, R&R, *United States v. Aetna Inc.*, No. 16-cv-01494 (JDB), 2016 WL 8739257, at *4 (D.D.C. Dec. 4, 2016) (summarizing defendant's declaration which asserts which exhibits contain "core sensitive commercial information," describes the information specifically, and explains the type of harm defendant would suffer if it were disclosed).  In *Friedman v. Sebelius*, plaintiffs asked the court "to maintain a blanket seal of the case rather than requesting only that the allegedly damaging portions of the record remain under seal—despite the fact that the purported harm

---

[11] McCormick makes some effort to argue that information in its opposition to class certification derived from the Hester Declaration is "confidential business information regarding the sourcing and density of McCormick pepper, packaging processes and strategy, and historical filling practices."  (McCormick's Reply to Seal Opp. to Class Cert. at 4.)  The Hester Declaration may contain some sensitive business information, but the Court remains skeptical that the same argument applies with equal force to McCormick's opposition.  By way of example, the fact that "there are various types of black pepper" is not a business secret nor is the fact that weight and volume are not always precisely correlated.  (*See* Opp. to Class Cert. at 4.)  In other words, McCormick's redactions are overbroad.  Moreover, McCormick has not identified in its opposition the specific language that reveals proprietary information.

[would] be caused by the release of only a few documents in the record." 672 F. Supp. 2d at 58. Here, defendants fail to specifically identify commercially sensitive information, but instead, they make overbroad requests to maintain information in confidence that is relevant to the Court's decision-making, and which should therefore be presumptively accessible to the public.

Based on the record before it, the Court concludes that the *Hubbard* factors favor disclosure of the class certification pleadings. The first factor is the need for public access to the documents at issue. Pleadings are the clearest expression of relevant evidence and argumentation on any given disputed issue and necessarily influence a Court's decision. *See Metlife*, 865 F.3d at 668 ("Without access . . . it is impossible to know which . . . materials persuaded the court and which failed to do so."). The second factor considers prior public access. *See Hubbard*, 650 F.2d at 318. Some redacted information is already available through the Court's prior opinion. For example, the motion for class certification quotes extensively from previously disclosed language. *See, e.g.*, *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 218, 222 (D.D.C. 2017) ("McCormick also 'feared that a unilateral reduction [in quantity of pepper in a tin] might be 'deceptive and could very well back fire on us.'"); (June 13, 2017 Mem. Op., ECF No. 148 at 2 ("Plaintiffs alleged that '[s]ince 2010 the cost of raw black pepper has increased by approximately 500%.' . . . Although the containers noted the new weight, they were the 'exact same size' as before."). Defendants make no effort to distinguish what is publicly available from what is not. So, factors one and two weigh in favor of disclosure. By virtue of defendants' opposition to the motion to unseal and various motions to seal, the third factor, which considers the identity of a party objecting to disclosure, weighs in favor of closure. *Hubbard*, 650 F.2d at 320.

*Hubbard*'s fourth factor considers the strength of the property and privacy interests asserted in the class certification papers, *id.*, and points in favor of disclosure in large part because neither defendant gives any reason why particular redactions in the pleadings are necessary. The fifth "considers whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal." *Friedman*, 672 F. Supp. 2d at 60. Wal-Mart does not address this factor and McCormick argues that it favors McCormick "because there is no prejudice to Plaintiffs." (McCormick's Opp. to Seal at 10.) The correct question is whether *defendants* will be prejudiced in future litigation if the class certification pleadings are unsealed. Nothing suggests defendants will be prejudiced. The sixth factor looks to "the purposes for which the documents were introduced during the judicial proceedings." *Nat'l Children's Ctr.*, 98 F.3d at 1409. Though documents obtained through discovery "are afforded a stronger presumption of privacy," *Friedman*, 672 F. Supp. 2d at 61, briefing relating to a potentially dispositive motion that is intended to play a crucial role in a court's analysis should be accessible to the public unless an overriding privacy interest controls. *See, e.g.*, *Hardaway v. Dist. of Columbia Housing Auth.*, 843 F.3d 973, 980–81 (D.C. Cir. 2016) (reversing the district court's denial of a motion to seal the "complaint, all medical records, and all non-dispositive materials," explaining that the "public has no need for access to documents that describe [plaintiff's] disability" and that "descriptions of [her] disability contained in any filing—including appellate briefs and appendices—should be or remain redacted"). Accordingly, the fourth, fifth, and sixth factors weigh in favor of disclosing the parties' class certification briefing in full.

Given the weight of the *Hubbard* factors and defendants' failure to identify any specific information in the pleadings that might cause them competitive harm, the Court will unseal the class certification pleadings.

### ii. Wal-Mart's Opposition to the Motion to Unseal

Wal-Mart argues that its opposition to plaintiffs' motion to unseal should remain redacted because it refers to the existence of confidential materials. (*See* Wal-Mart Opp. to Unseal.) The Court disagrees.

Arguing that it "has a strong privacy interest in the contents of the Opposition and might be harmed competitively if it were disclosed to the public," Wal-Mart cites the Keeter Declaration for the idea that disclosure, "even by reference, poses a business risk." (*Id.* at 4.) But the Keeter Declaration states only that "[i]f the information contained in the four sealed Wal-Mart documents were released to the public, Wal-Mart's business and competitive standing would likely be harmed. Competitors and suppliers would be able to gain insights . . . which they could utilize to Wal-Mart's competitive disadvantage." (Keeter Decl. ¶ 5.) The law does not support the proposition that mere references to the existence of information should be sealed. Even in the cases Wal-Mart cites, courts do not redact non-substantive descriptions of the confidential information. *See Onex Credit Partners, LLC v. Atrium 5 LTD.*, No. 13-cv-5629, 2017 WL 4284490, at *3 (D.N.J. Sept. 27, 2017) (granting a motion to seal certain documents and describing in specific terms what plaintiff sought to seal or redact); *Gaudin v. Saxon Mortgage Servs, Inc.*, No. 11-cv-01663, 2013 WL 2631074, at *2 (N.D. Cal. June 11, 2013) (granting a motion to seal and describing generally the material to be sealed).

As the Supreme Court has noted, there is "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597. While the Court finds Wal-Mart has shown that its four documents labeled "highly confidential," contain "sensitive commercial information, the disclosure of which could threaten Wal-Mart's competitive standing" (Wal-Mart's Reply in Supp. of its Mot. for Leave to File Opp. to Pls.'

Mot. to Seal Under Seal at 2, ECF. No. 184 ("Wal-Mart's Reply to File Opp. Under Seal")), non-substantive references to or general discussions of those documents are not similarly protected. *Cf. ISS Marine Servs.*, 905 F. Supp. 2d at 141 ("[R]espondent relies entirely on the privacy interests that would be implicated by revealing the fact that it is the subject of some kind of government investigation, but these nebulous privacy interests are unavailing.").

Accordingly, Wal-Mart's motion to seal (ECF No. 179) is denied and its opposition to the motion to unseal, including exhibits,[12] will be unsealed.

### iii. Declarations and Reports

This category of documents consists of the Fegan Declaration, the Hester Declaration, the Levy Report, and the Johnson Report. As explained herein, defendants have indiscriminately redacted far more than is necessary to protect confidential information in each of these documents; they have failed to identify the specific proprietary information that should remain under seal and have failed to give particularized reasons for the withholdings. Without such a showing, defendants cannot overcome the presumption in favor of public access. Therefore, defendants will be required to refile these documents with limited redactions and an accompanying supplemental memorandum of law, consistent with this Memorandum Opinion, that justifies their withholdings.

### a. The Fegan Declaration

Defendants offer little justification to support the sealing of the Fegan Declaration. For many of the reasons described above in relation to the class certification pleadings, the Court finds that the redactions of the Fegan Declaration are far greater than are necessary.

---

[12] The Court notes that the information redacted in the attached exhibits does not reveal confidential information, and that the Klevorn Letter is already unsealed elsewhere on the docket. (*See* McCormick Opp. to Seal Ex. C, ECF No. 176-4.)

Two differences, however, place the Fegan Declaration in a category separate from the pleadings.  First, while the Fegan Declaration provides support for plaintiffs' reasoning and arguments in favor of class certification, it may be less crucial to the Court's certification decision.  Second, though both defendants defend the Fegan Declaration redactions without specificity, the declaration draws from the attached exhibits extensively, portions of which arguably contain confidential information.

Some of the Fegan Declaration redactions are obviously overbroad.  (*Compare In re McCormick*, 275 F. Supp. 3d at 222 ("McCormick also 'feared that a unilateral reduction [in quantity of pepper in a tin] might be 'deceptive and could very well back fire on us[,]' since the private label competitors would likely 'advertise '10% more vs [McCormick]'' and thus 'point[] this deception out to our loyal branded customer.'") *with* Fegan Decl. ¶ 37 (beginning with exactly the same sentence).); *see also Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 135 (D.D.C. 2009) (weighing the fifth *Hubbard* factor and commenting that defendants' proposed redacted statements "do not reveal any substantive information that is not already discernable from other, public portions" of the opinion).  Other portions appear to contain proprietary information that might harm defendants' competitive standing if disclosed, but redactions must be narrowly tailored and specifically supported.[13]  *See, e.g.*, *In re Document Techs. Litig.*, 282 F. Supp. 3d 743, 747 (S.D.N.Y. 2017) ("Documents may nonetheless be sealed or redacted 'if specific, on the record findings are made demonstrating that closure is essential to

---

[13] Exhibit D to McCormick's opposition to the motion to unseal is the index "listing each document and providing a description of the document and the basis for the confidentiality designation."  (McCormick Opp. to Unseal at 5.)  This index is conclusory and not specifically tailored to the information it seeks to redact in contrast to the description of the parties' filings in *Apple Inc. v. Samsung Electronics Co., Ltd.*, 727 F.3d 1214, 1223–24 (Fed. Cir. 2013).

preserve higher values and is narrowly tailored to serve that interest.'") (quoting *Lugosch v. Pyramid Co. of Onandaga*, 435 F.3d 110, 120 (2d Cir. 2006)).

### b. The Hester Declaration

The Hester Declaration, as noted above, was filed as an exhibit to the Schmitt Declaration, which was in turn filed in support of McCormick's opposition to class certification. The Hester Declaration was, in other words, filed to oppose class certification in the same way the Fegan Declaration was filed to support it.

McCormick explains that the Hester Declaration "contains confidential business information regarding the sourcing and density of McCormick pepper, packaging processes and strategy, and historical filling practices (not just for the relevant period)" (McCormick's Reply to Seal Opp. to Class Cert. at 4), and provides the Morse Declaration as support for its assertion that "public disclosure of such information would be harmful to McCormick's business." (*Id.*) While the Morse Declaration suffices to establish that the Hester Declaration contains "confidential and proprietary business information [that] . . . would not be made available to the public in the ordinary course of business" or shared with competitors (Morse Decl. ¶ 7), it does not specifically identify that information. *See In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 602, 603 (S.D.N.Y. 2011) (denying plaintiffs' motion to file under seal without prejudice because the redactions were overbroad); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, Nos. 08-cv-1331, 08-cv-2137(DMC), 2010 WL 2710566, at *5–6 (D.N.J. July 7, 2010) (denying a motion to redact a transcript where the requests to seal were 'not supported by a brief or particularized argument,' were 'overbroad and only supported by general allegations of harm,' and left 'unexplained how the disclosure of this type of information could result in a specific and serious injury').

### c. The Levy & Johnson Reports

McCormick does not object to unsealing the Levy Report so long as "any references . . . to confidential materials be appropriately redacted." (McCormick Opp. to Unseal at 3 n.2.) Wal-Mart implies a similar position. (Wal-Mart Opp. to Unseal at 7.) The Johnson Report refutes many of the findings in the Levy Report and McCormick discusses it only briefly. In fact, where McCormick mentions the Johnson Report, it specifically cites only six paragraphs and Appendix C as referring to potentially sensitive commercial information. (McCormick Opp. to Unseal at 5 (describing confidential information in the Johnson Report at ¶¶ 22–23, 26–27, 30–31, and Appendix C).) While mere references to confidential materials cannot, as explained above, be redacted, the Court will accept defendant's offer to refile the reports with limited redactions and, consistent with this Memorandum Opinion, particularized argument explaining why the redactions are necessary.

### B. Motion to Exclude

#### i. Pleadings

The parties have filed three pleadings in conjunction with defendants' joint motion to exclude Levy as an expert. Defendants suggest that these pleadings should remain redacted. (McCormick's Reply to Seal Opp. to Class Cert. at 2.) McCormick notes that the Hester Declaration is referred to twice in the motion to exclude (*id.* at 4), and argues that the three redactions in defendants' reply in support of the motion to exclude constitute information derived from the Hester Declaration. (Defs.' Mot. to File Reply to Mot. to Exclude Under Seal at 1–2, ECF No. 177.) Otherwise, defendants offer no justifications for the redactions.

The same reasoning applies to these pleadings as applied to the class certification pleadings. *See In re Fort Totten*, 960 F. Supp. 2d at 14 (explaining that the documents at issue

were "judicial records subject to the common law right of access because they . . . were filed with the Court and were the subjects of judicial action"). Accordingly, the Court will unseal the pleadings related to the motion to exclude.

### ii. Levy Deposition Excerpts

The sealed excerpts of the Levy Deposition include the following pages as exhibits under seal : 29–30, 40–41, 43, 51–60, 65–66, 74–77, 89–90, 108, 113, 115, and 120. As with the Levy Report, McCormick does not object to unsealing the deposition excerpts "subject to the provision that any references . . . to confidential materials be appropriately redacted." (McCormick Opp. to Unseal at 3 n.2.) Wal-Mart has not made clear its position as to the deposition excerpts.

Again, while mere references to confidential materials should not be redacted, defendants shall file the deposition excerpts with limited redactions and particularized justifications for these redactions.

### C. Fegan Declaration Exhibits 101–143

Defendants argue that the company documents attached as Fegan Declaration Exhibits 101–143 should remain under seal. Although the Court does not find these arguments wholly persuasive, at this stage the Court lacks the necessary information to apply the *Hubbard* factors to these documents and will therefore deny plaintiffs' motion to unseal as to the exhibits. *See* R&R, *Aetna Inc.*, 2016 WL 8739257, at *1 ("With respect to the first and final [*Hubbard*] factors, namely, the need for public access to the documents at issue and the purposes for which the documents were introduced during the judicial proceedings, the Special Master lacks sufficient information to conclude that either factor outweighs the Defendants' interests in maintaining the confidentiality of these documents because the documents have not yet been

used at trial.").  Should it later become apparent that these documents are necessary to the

Court's class certification decision, plaintiffs may renew their motion to unseal.

The Court is aware, however, that these exhibits include some information that will be

disclosed as a result of the Court's other rulings herein.  But these documents present a more

complicated question than do the pleadings and documents already discussed.  First, significant

portions appear to include sensitive business information (*see, e.g.*, Fegan Decl. Ex. 132, at 4),

while other portions are not proprietary.  (*See, e.g.*, Fegan Decl. Ex. 104, at 5–7 (copies of news

reports).)  Second, much of the proprietary and non-proprietary information is interspersed—

especially in emails—such that redaction would be inefficient and ineffectual.  *See, e.g.*, *Sullivan

v. Prudential Ins. Co. of Am.*, No. 2:12-cv-01173, 2012 WL 3783904, at *1 (E.D. Cal. Aug. 12,

2012) (finding that the parties' joint representation that "the Administrative Record 'is replete'

with personal identifying information . . . and that redacting such information would be too

burdensome, is considered sufficient to justify granting the parties' request under the good cause

standard at this stage of the proceedings"); *cf. Matter of Search of Office Suites for World &

Islam Studies Enter.*, 925 F. Supp. 738, 743–44 (M.D. Fla. 1996) (finding that "[r]edaction might

protect the parties named in the affidavits, however, it offers no shield against revealing the other

aspects of the Government's investigation" and so maintaining the documents under seal for the

time being).  Third, many of the documents refer to details of internal operations that may not be

revealing to a layperson's eye, but may be of use to defendants' competitors.

Finally, and importantly, disclosing original source documents, as opposed to pleadings

and declarations, may be of less value to public's understanding of the judicial process.  *See

Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017) (concluding that "having reviewed

proposed redactions—including the Court's rulings on dispositive motions—the Court notes that

[the first *Hubbard*] factor weighs heavily in favor of disclosing the Court's orders and those materials relied upon by the Court . . . [but] it does not weigh as heavily for disclosing confidential patent information ancillary to the Court's orders or the parties' briefs").

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part plaintiffs' motion to unseal (ECF No. 174) and plaintiffs' related motion to seal (ECF No. 157), and will deny the remaining motions to seal (ECF Nos. 160, 163, 172, 177, and 179) as detailed in the Order accompanying this Memorandum Opinion.

Specifically, the Court finds that the presumptive right of public access in pleadings outweighs any privacy interest articulated by defendants. Accordingly, all of the pleadings described above—related to class certification, plaintiffs' motion to unseal, and defendants' motion to exclude—will be unsealed. The Court will also require defendants to file narrowly redacted or unredacted versions of the following documents: the Fegan Declaration, the Hester Declaration, the Levy Report, the Johnson Report, and all Levy Deposition Excerpts. In other words, none of these shall remain entirely under seal, and only narrowly tailored, specifically supported redactions shall be permitted. In addition, the Court will grant motions to seal Fegan Declaration Exhibits 101–143 (ECF Nos. 157-5 through 157-47), without prejudice to revisiting that decision after the Court resolves the substantive motion to which these exhibits relate.

/s/   Ellen Segal Huvelle
ELLEN SEGAL HUVELLE
United States District Judge

Date:   June 11, 2018