Case No. 19-8003

# In the United States Court of Appeals for the District of Columbia Circuit

———————————————

IN RE: MCCORMICK & COMPANY INC. PEPPER PRODUCTS
AND SALES PRACTICES LITIGATION

MDL DOCKET NO. 2665
MISC. NO. 15-1825 (ESH)

———————————————

On Petition for Interlocutory Appeal from an Order
of the United States District Court for the District of Columbia
Hon. Ellen S. Huvelle, U.S. District Judge

## DEFENDANT MCCORMICK & COMPANY, INC.'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

David H. Bamberger (DC Bar No. 362285)
Edward S. Scheideman (DC Bar No. 475128)
Paul D. Schmitt (DC Bar No. 1007680)
DLA PIPER LLP (US)
500 Eighth Street NW
Washington, DC 20004
(202) 799-4500
david.bamberger@dlapiper.com
edward.scheideman@dlapiper.com
paul.schmitt@dlapiper.com

*Counsel for Petitioner*
*McCormick & Company, Incorporated*

July 24, 2019

## **TABLE OF CONTENTS**

**PAGE**

QUESTIONS PRESENTED.................................................................................1

PRELIMINARY STATEMENT ........................................................................2

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ....................5

SUMMARY OF ARGUMENT ..........................................................................7

ARGUMENT ....................................................................................................9

    I.    The District Court Manifestly Erred in Ruling That The Question of Whether There Was a Uniform Reduction in Fill Levels Was "Solely" a Merits Issue and "Not Relevant" to Class Certification....................9

        A.    There Is No Evidence of Uniform Class-wide "Slack-Filling"..9

        B.    The Proposed Classes Also Would Include Numerous Persons Who Could Not Have Any Claim to Injury, For Additional Reasons Beyond The Absence of "Slack Fill". ........................11

        C.    There Is No Reliable Means to Calculate Class-Wide Damages.................................................................................12

    II.    The District Court Manifestly Erred in Certifying the Single State Classes. .......................................................................................15

        A.    The District Court Manifestly Erred in Certifying the California Class. ......................................................................................15

        B.    The District Court Manifestly Erred in Certifying the Florida Class. ......................................................................................19

        C.    The District Court Manifestly Erred in Certifying the Missouri Class. ......................................................................................20

CONCLUSION ................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)......................................................................17, 19

*Bradach v. Pharmavite LLC*,
    735 F. App'x 251 (9th Cir. 2018) .................................................18

*Bratton v. Hershey Co.*,
    No.: 2:16–cv–4322–C–NKL, 2018 WL 934899 (W.D. Mo. Feb.
    16, 2018) .....................................................................................20

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..........................................................7, 12, 13, 15

*Hess v. Chase Manhattan Bank, USA, N.A.*,
    220 S.W.3d 758 (Mo. 2007) ........................................................20

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
    Case No. ML 13-2438 PSG, 2017 WL 2559615 (C.D. Cal. June 7,
    2017) ...........................................................................................16

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
    No. 08-1967-MD-W-ODS, 2011 WL 6740338 (W.D. Mo. Dec. 22,
    2011) ...........................................................................................21

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    289 F.3d 98 (D.C. Cir. 2002).........................................................1

*In re Rail Freight Fuel Surcharge Litig.*,
    725 F.3d 244 (D.C. Cir. 2013)......................................................11

*Jones v. ConAgra Foods, Inc.*,
    No. C 12–01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13,
    2014) ...........................................................................................16

*Kosta v. Del Monte Foods, Inc.*,
    308 F.R.D. 217 (N.D. Cal. 2015)..................................................16

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011) ...................................................................16

*Owen v. Gen. Motors Corp.*,
    533 F.3d 913 (8th Cir. 2008) .............................................................20

*State ex rel Coca-Cola Co. v. Nixon*,
    249 S.W.3d 855 (Mo. Banc. 2008) ....................................................20

*Steroid Hormone Prod. Cases*,
    104 Cal. Rptr. 3d 329 (Cal. Ct. App. 2010)......................................18

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018) .............................................16

*Trazo v. Nestle USA, Inc.*,
    No.: 5:12–CV–2272 PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9,
    2013) ...................................................................................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .......................................................................11

*Victor v. R.C. Bigelow*,
    No. 13–cv–02976–WHO, 2014 WL 1028881 (N.D. Cal. Mar. 14,
    2014) ...................................................................................................16

*Victor v. R.C. Bigelow*,
    No. 13–cv–02976–WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29,
    2016) ...................................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................................12

*White v. Just Born, Inc.*,
    No. 2:17-cv-04025-NKL, 2018 WL 3748405 (W.D. Mo. Aug. 7,
    2018) ..............................................................................................20, 21

**Statutes**

Consumer Legal Remedies Act, Cal. Civil Code §§ 1750 *et seq* .................8, 15, 18

Florida Deceptive and Unfair Trade Practices Act, Florida's Deceptive
    and Unfair Trade Practices Act (FDUTPA),
    Fla. Stat.§501.201 *et seq* ..................................................................................9, 19

Missouri Merchandising Practices Act,
    Mo. Rev Stat § 407.025 *et seq*. .....................................................................9, 20

**Rules**

Federal Rule of Civil Procedure Rule 23 .........................................................*passim*

## QUESTIONS PRESENTED

This Court may grant a petition to appeal a class certification decision under Federal Rule of Civil Procedure 23(f) where that decision (1) presents "an unsettled and fundamental issue of law relating to class actions . . . that is likely to evade end-of-the-case review," (2) is "manifestly erroneous," or (3) creates a "death-knell" situation. *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 99-100, 105 (D.C. Cir. 2002). This Court should grant permission to appeal under Rule 23(f) to resolve one or more of the following issues:

1.      Whether the district court manifestly erred in finding that plaintiffs had met their burden to satisfy the predominance requirement of Rule 23(b) where there was no class-wide common evidence of a uniform reduction in the fill level of McCormick's pepper containers and there was uncontroverted evidence to the contrary, *i.e.*, there was wide variation in fill levels above the level alleged by plaintiffs.[1]

2.      Whether the district court also manifestly erred in certifying classes of "all purchasers," despite plaintiffs' failure to proffer any method whatsoever of excluding uninjured class members, such as (a) those who knew about the issue from publicity and therefore could not have been "deceived" or suffered injury, and (b)

---

[1] Many of the points raised in this Petition also undermine Plaintiffs' arguments for typicality and adequacy under Rule 23(a). McCormick also challenged class certification on the basis of ascertainability.

purchasers, like many of the named plaintiffs, who would have purchased for other reasons, regardless of fill level.

3.      Whether the district court also manifestly erred in finding that the plaintiffs satisfied the predominance requirement of Rule 23(b), where the above deficiencies also leave the plaintiffs with no reliable means of calculating damages on a class-wide basis.

4.      Whether as a result of the above deficiencies and additional rulings contrary to the applicable states' laws, the district court manifestly erred in certifying three single-state classes.

## PRELIMINARY STATEMENT

This case arises from allegations that Petitioner McCormick & Company, Incorporated ("McCormick") "slack-filled" its ground black pepper tins and black pepper grinders, purportedly by reducing the volumetric fill level of the pepper in the containers by 25%.[2]  As explained in an uncontroverted sworn Declaration by McCormick's Materials Manager, Michael Hester, McCormick was aware of the *potential* impact of the weight reduction on fill levels, and therefore measures were taken (such as using less dense pepper, raising McCormick's internal visual fill

---

[2] The label *weight* of the pepper tins was reduced, but there is no claim that the resulting net weight on the labels was stated inaccurately.  Plaintiffs merely *assumed* that the volume/fill (the relevant measure in a "slack-fill" case) was reduced in commensurate fashion, but, as explained below, uncontroverted evidence shows that is not the case.

standard and "overfilling" the tins) to ensure that there was no "slack-fill" problem.[3]

McCormick employees also checked the fill levels of tins coming off the production

line every 20 minutes during the relevant time period to confirm an adequate fill.

ECF No. 195.  Notably, as Mr. Hester explained:

> [I]t is impossible to know what the fill level was of any tin of black
> pepper purchased by particular consumers either before or after the
> weight reduction program, unless the consumer purchasing it actually
> examined and measured its contents.  Given the high degree of
> variability in the density of black pepper and McCormick's minimum
> fill requirements, the only assumption one can fairly make is that any
> given tin of black pepper would have had a fill level somewhere
> between 75-100% before the weight reduction program and between
> 80-100% once the weight reduction program began.  Additionally, for
> those consumers who purchased multiple tins of black pepper made by
> McCormick over the years, due to the highly variable density of black
> pepper, the fill levels of those tins of black pepper inevitably would
> have varied substantially within the ranges stated above.

ECF No. 160-2 at 20 (quoting ECF No. 160-3 ¶ 13) (redacted version at ECF No.

188-2 to protect confidential sourcing and manufacturing information, attached as

Exhibit 1).  In other words, as a result of McCormick's measures, the pepper tins

purchased by consumers had varying fill levels, but, at all relevant times, they were

within a range of 80-100%.  There is also uncontroverted sworn testimony that, of

---

[3] "Overfilling" means adding free pepper beyond the label weight to ensure adequate
fill.  As a result of these measures, the label weight of every tin was met and, in
almost all cases, exceeded.

*20.9 million tins of pepper* sold nationwide in the relevant time frame, McCormick received *fewer than 100 complaints* about the fill level (less than 0.000478%).

The named Plaintiffs are various consumers who claim that they bought McCormick pepper during the relevant time frame and that they were "deceived" and "injured" by the alleged "slack-filling" of the containers.  Plaintiffs make these claims despite the fact that the weight of the pepper was accurately stated on the label, not a single plaintiff observed any fill levels, and many of the named plaintiffs have testified that they would have bought the pepper regardless of the fill level, for example due to brand loyalty or taste preference.

The district court denied certification of all of Plaintiffs' proposed multi-state classes and the majority of their proposed single-state classes.  But the district court certified three single-state classes under the consumer protection laws of California, Florida, and Missouri.  The district court did so even though Plaintiffs failed to provide any evidence to show that they could prove class-wide injury by common evidence (*e.g.*, no fact witness testimony, no expert testimony or opinion, no studies or surveys), nor did they provide any reliable means of calculating class-wide damages attributable to the alleged "slack-filling."

These errors are fatal to any class under Rule 23.  Additionally, in assessing what was required under each state's consumer protection laws, the district court ignored relevant legal authority and applied other authority in contravention of the

overwhelming majority of decisions in the field.  These were manifest errors by the district court, and for that reason, this Court's interlocutory intervention pursuant to Rule 23(f) is warranted and necessary.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

In June of 2015, one of McCormick's competitors brought suit against McCormick in the U.S. District Court for the District of Minnesota on claims alleging that McCormick "slack-filled" its black pepper containers.   Shortly thereafter, and following extensive coverage in the national press, multiple class action lawsuits alleging similar "slack-fill" claims were filed against McCormick in federal courts throughout the United States.  All of those cases were eventually consolidated by the Judicial Panel on Multidistrict Litigation in December 2015 into an MDL in the U.S. District Court for the District of Columbia.  After the cases were consolidated, the consumer plaintiffs filed an amended complaint bringing state law claims for consumer fraud and unjust enrichment, as well as a federal antitrust claim.  ECF No. 128.  The Court dismissed the antitrust claim (ECF Nos. 97 and 146), and the plaintiffs then sought class certification of multi-state classes for their consumer protection claims (20 states) and unjust enrichment claims (29 states).  In the alternative, the plaintiffs sought certification of six single-state consumer protection classes, but they eventually withdrew two of those claims, leaving only proposed single-state classes for California, Florida, Illinois, and

Missouri. They also sought certification for seven single-state unjust enrichment classes. ECF Nos. 156 and 157. Briefing was submitted in late summer 2017, and a hearing was held in July 2018. The court then requested supplemental briefing, and a second hearing was held in October 2018.

On July 10, 2019, the district court issued its ruling on the Plaintiffs' motion for class certification. ECF No. 212. The court declined to certify the multi-state classes for either the consumer protection or unjust enrichment claims, reasoning that there were too many variations in the various states' laws to group the state law claims into a single class. *Id.* at 36-43. As to the single-state classes, the court declined to certify the unjust enrichment claims, because they would require consideration of individual purchasers' knowledge and motivations regarding the pepper they had purchased. *Id.* at 102-106. However, the Court certified three of the four single-state consumer protection classes – California, Florida, and Missouri. The court declined to certify a class for Illinois consumers, notably because plaintiffs could not show that any representations by McCormick were material to purchasers or caused class-wide injury. *Id.* at 88-95. The Court held, however, based upon differences in the Court's interpretations of the state laws of California, Florida, and Missouri, that such concerns could be overcome in those three states. *Id.* at 80-88, 95-102.

## SUMMARY OF ARGUMENT

*First*, Plaintiffs' theory in this case has always been that the fill level in McCormick's pepper containers was uniformly 25% below what is legally required. But throughout, Plaintiffs submitted no evidence that there was such a class-wide 25% reduction in fill. Indeed, as noted, there is uncontroverted sworn testimony to the contrary, showing that fill levels varied widely, well above the level alleged by plaintiffs. The district court refused to consider that crucial evidence, ruling erroneously that whether plaintiffs will be able to prove the existence of uniform non-functional slack-fill is "solely a merits issue and has no relevance to class certification." ECF No. 212 at 71. That ruling is directly contrary to the legal standard prescribed by the Supreme Court for adjudicating motions for class certification, which requires consideration of merits questions when they are relevant to determining whether the requirements of Rule 23 have been satisfied. *See, e.g., Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The court wrongly ignored that it was *Plaintiffs'* burden to provide common evidence of class-wide injury at this stage, even if that means delving into the merits. Without evidence showing that fill levels were uniformly reduced, Plaintiffs cannot show that they

suffered a class-wide common injury and cannot calculate damages on a class-wide basis.[4]

*Second*, many of the named plaintiffs testified that they did not care about the fill levels in the containers, as they purchased for other reasons, such as brand loyalty or taste.[5]  Many others, as noted by the district court, may have known about the alleged fill level issue as a result of publicity.  None of those purchasers could have suffered from any "deception" or consequent injury.

*Third,* Plaintiffs' damages expert completely ignored the evidence showing that there was no class-wide "slack-filling" and merely assumed, without even considering any evidence of actual fill levels, that every single one of millions of purchasers was entitled to a refund of 25% of the purchase price.

*Finally*, as to the single-state classes certified by the Court:  (a) under the California Consumer Legal Remedies Act (CLRA) and the Unfair Competition Law (UCL), the Court erroneously held that Plaintiffs did not need to produce any

---

[4] The district court excused Plaintiffs from their burden and placed that burden on McCormick, stating that McCormick "chose not to keep [fill] records."  ECF No. 212 at 71.  But there is no regulatory or other requirement for generating, let alone maintaining, such records.  Nor would McCormick have any reason to do so, given the measures it was taking to ensure adequate fill levels.

[5] For example, Ms. Grindel, now the Missouri class representative, testified that she generally does not even look at the price and is "just brand loyal.  I just grab the McCormick."  Similarly, Mr. Pellitteri, now the Florida class representative, testified that he does not take price into account when he purchases pepper and if it's McCormick pepper, he buys it.  ECF No. 161 at 3-4.

empirical evidence (*e.g.*, a study, expert report or consumer surveys) showing that the pepper containers were material to class-wide purchasing decisions, as required by California law;  (b) under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the district court failed to apply relevant state authority, and instead relied on non-Florida authority and incorrectly determined Florida's causation requirements and (c) under the Missouri Merchandising Practices Act (MMPA), the court ignored the only Missouri federal case exactly on point and held erroneously that, to show causation and loss, it would not be necessary for plaintiffs to offer individualized proof.

## ARGUMENT

**I.    The District Court Manifestly Erred in Ruling That The Question of Whether There Was a Uniform Reduction in Fill Levels Was "Solely" a Merits Issue and "Not Relevant" to Class Certification.**

### A.    There Is No Evidence of Uniform Class-wide "Slack-Filling".

Plaintiffs sought certification of putative classes of "all persons residing in [State] who purchased Slack Filled Black Pepper" products.  Those products are defined by plaintiffs as "non-transparent containers containing non-functional slack-fill," which allegedly have 25% too much empty air space at the top of the container. ECF No. 157-2 at 3, 6-8.  Yet at no point has any evidence – much less class-wide evidence – been presented in the proceedings below of any such uniform "slack-fill."   The district court held that "whether plaintiffs will be able to prove the

existence of nonfunctional slack-fill is solely a merits issue[]" and thus "has no relevance to class certification."  ECF No. 212 at 71.  This was manifest error.

The uncontroverted sworn testimony submitted below by McCormick shows that: (1) due to variations in the density of pepper, fill levels have always varied significantly, even when the weight of the pepper is the same; (2) early concerns about the potential reduction of fill levels due to reducing the weight were addressed by McCormick through procuring less dense pepper, "overfilling" the containers and raising McCormick's internal standard for "minimum fill;"[6] and (3) as a result of these measures, the fill levels of pepper tins after the weight reduction varied but were still maintained at anywhere from 80% – 100% full.  *See* Exhibit 1.  The effectiveness of McCormick's measures to properly fill the pepper containers is demonstrated by the virtual non-existence of consumer complaints about fill levels -- less than 100 such complaints out of 20.9 million containers sold.  *See* Rochford Decl., ECF No. 162-17, attached as Exhibit 2.

None of the named Plaintiffs were able to testify as to the supposed "slack fill" in the containers they purchased.  Indeed, every single named plaintiff testified that he or she *never* observed the fill level of *any* tins of black pepper they purchased.

---

[6] The Court cited a few documents that showed McCormick's early concern about the *potential* for an impact on fill levels, but failed to acknowledge the measures that McCormick took months later, once production actually began, to successfully address those concerns.

*See* ECF No. 161 at 6.  Nor did Plaintiffs submit any common evidence to show that the pepper containers were "slack-filled" at all class-wide, let alone by 25% as alleged.  Thus, there is no evidence of class-wide injury.[7]

> **B.    The Proposed Classes Also Would Include Numerous Persons Who Could Not Have Any Claim to Injury, For Additional Reasons Beyond The Absence of "Slack Fill".**

The classes certified by the district court would include numerous purchasers who, like many named Plaintiffs, bought the pepper for reasons entirely unrelated to fill levels, such as brand loyalty or taste, and they would have made the same purchase in any event.  These classes also would include persons who could not have been "deceived" or injured, as they were already aware of the potential issue from publicity.  Neither Plaintiffs nor their damages expert has offered any method of excluding these uninjured persons, nor is any methodology possible without individual inquiries of every class member.

The inclusion of untold numbers of uninjured class members is fatal to class certification.  *See In re Rail Freight Fuel Surcharge Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts,

---

[7] The Court refers a number of times to a "uniformity of exposure," apparently analogizing the issue in this case to cases involving misleading statements on a label. *See, e.g.,* ECF No. 212 at 85, 87.  But this case is fundamentally unlike labeling cases in which the very same allegedly deceptive statement appears on every single item purchased.  The alleged "deception" here is a supposed factual discrepancy between the actual (and varying) fill level of each container, compared to its apparent fill level.

C.J. concurring (federal courts do not have the power to order relief for uninjured plaintiffs). As the Supreme Court has repeatedly held, to obtain class certification, plaintiffs must prove "**in fact**" that the requirements of Rule 23 have been met. *Comcast*, 569 U.S. at 33; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). But there is no common evidence, that all or virtually all of the class members were in fact deceived and, on that basis, purchased products with a 25% reduction in fill. Indeed, there is no evidence that any of them did. Instead of recognizing that, the district court justified its class certification decision by stating that whether such uniform slack-fill was established was "solely a merits issue" and not even "relevant" to class certification. ECF No. 212 at 71. But McCormick was not asking the district court to resolve once and for all whether slack-filling occurred "on the merits." Rather, the Court had a duty, under the controlling legal standard, to consider if there was such common evidence in order to determine whether the plaintiffs have met their burden to show that they can prove their claims of deception, causation and injury on a class-wide basis.

### C.   There Is No Reliable Means to Calculate Class-Wide Damages.

The district court also manifestly erred because there is simply no reliable way to calculate class-wide damages. First, as noted above, the classes certified by the district court necessarily include many plaintiffs who suffered no injury at all. Indeed, many of the named plaintiffs testified that they never cared about the fill

level and continued to purchase the pepper after knowing about the allegations of "slack-filling." ECF No. 161 at 17-18, 21. This has a fatal impact on plaintiffs' proffered damages. As the district court ruled, in denying certification of the proposed Illinois class:[8]

- "[T]here is no classwide evidence of materiality in the form of a consumer survey, market research or an expert opinion. . . .[T]he only evidence of actual consumer reaction comes from the plaintiffs' testimony which . . . demonstrates differing motivations for consumers' purchasing decisions. Therefore, this is not a case where the nature of the deception means that the only possible reason for the consumers' decision to purchase the product is deception." ECF No. 212 at 91.

- "[P]laintiffs failed to proffer any extrinsic evidence to support an inference that there existed common proof that the putative class members shared the two proposed class representatives' complaints about the Slack-Filled Pepper Products. . . . The limited evidence here shows that consumers of black pepper

---

[8] In determining whether the requirements for class certification have been met, Rule 23 is determinative, regardless of whether it is Illinois substantive law or that of another state – as the district court itself held. *See* ECF No. 212 at 31 ("A party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23.") (citing *Comcast*, 569 U.S. at 33); *id.* ("A court presented with a motion for class certification must engage in a 'rigorous analysis' to be certain that the requirements of Rule 23(a) and (b) are satisfied[.]") (citing *Comcast*, 569 U.S. at 33).

. . . are not necessarily a cohesive group when it comes to the reasons for purchasing the product at issue."  ECF No. 212 at 93-94.

- "[T]he Court concludes that *plaintiffs have failed to establish that individualized inquiries into causation and injury will not predominate over the common issues*."  ECF No. 212 at 94 (emphasis supplied).

Additionally, as noted by the district court, there is a "substantial possibility that more than a few class members already knew about" the alleged "slack-fill" issue as a result of publicity and bought McCormick's pepper anyway.  ECF No. 212 at 92 n.87.

Plaintiffs have not proffered any reliable means of calculating damages class-wide.  Nor, given the above findings, could they do so.  Their "damages expert," Armando Levy, merely *assumed* both that every single one of millions of purchases of pepper was caused by deception as to fill levels – fill levels that he did not even investigate – *and* that every consumer suffered a uniform injury equivalent to 25% of the previous fill level.  *See* ECF No. 163-2 at 5-6.  Yet, Dr. Levy conceded that consumer preferences would vary among the millions of putative class members and that one cannot simply extrapolate from a few individuals to thousands or millions of others without well-designed random sampling, which he did not do.  *See id*. at 5-6 and Ex B.  Dr. Levy also admitted that damages must be causally linked to the alleged wrongdoing, as a matter of sound methodology.  *See id.*, Ex. A (excerpts

from Dr. Levy's deposition).  But there is no proffered evidence to supply that required causal link between alleged "slack-filling" and Plaintiffs' damages.  *See Comcast, supra,* requiring that damages must be consistent with plaintiffs' theory of liability .

## II.    The District Court Manifestly Erred in Certifying the Single State Classes.

Although the court recognized that the plaintiffs submitted *no common evidence* as to materiality or causation regarding McCormick's black pepper containers (*see* ECF No. 212 at 73-80), it nevertheless held that predominance was satisfied as to the California, Florida and Missouri classes.  In so doing, the district court misconstrued or even ignored relevant legal authority.

### A.    The District Court Manifestly Erred in Certifying the California Class.

The district court conceded that Plaintiffs' evidence of materiality was "at best, meager."  ECF No. 212 at 75.  Despite this fatal flaw, the court certified the California class because it held that there was no requirement that the fill levels of the pepper containers were material to purchasing decisions, despite the fact that the overwhelming majority of similar cases in California have held that such evidence of materiality is required.

Both the UCL and the CLRA follow the "reasonable consumer" standard to satisfy materiality – *i.e.*, a plaintiff must show that a reasonable person would have

attached importance to the misrepresentation in determining his choice of action. *Kwikset Corp. v. Superior Court,* 246 P.3d 877, 892 (Cal. 2011).  Importantly, however, both statutes require a plaintiff to provide evidence showing how a reasonable consumer would have acted in relation to the misrepresentation.[9]  Such evidence typically takes the form of surveys, market research or expert testimony. *See, e.g., In re 5-Hour Energy Mktg. & Sales Practices Litig.*, Case No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *7-8 (C.D. Cal. June 7, 2017); *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 230 (N.D. Cal. 2015); *Jones v. ConAgra Foods, Inc.*, No. C 12–01633 CRB, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014). Indeed, a legion of cases makes clear that consumer surveys and/or market research are *necessary* to support a class-wide finding of materiality under California law. *See, e.g., Townsend v. Monster Beverage Corp*., 303 F. Supp. 3d 1010, 1045 (C.D. Cal. 2018) ("Absent a consumer survey or other market research to indicate how consumer[] reacted to the [challenged] statements, and how they valued these statements compared to other attributes of the product and the [relevant] market generally, Plaintiffs have not offered sufficient evidence of materiality across the

---

[9] Contrary to the district court's discussion of the federal slack-fill regulations, see ECF No. 212 at 87-88, simply citing an alleged regulatory violation is not sufficient. See *Victor v. R.C. Bigelow*, No. 13–cv–02976–WHO, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) (the ultimate question is "what a reasonable consumer expects, which may have absolutely no relation to FDA regulations."); *accord Trazo v. Nestle USA, Inc*., No.: 5:12–CV–2272 PSG, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013).

class.”); *Victor*, 2016 WL 4502528, at \*4 (“[a] plaintiff must ‘demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers.’”).

The district court essentially ignored this line of authority.  Instead, it drew an inaccurate distinction by holding that the aforementioned cases “involved allegations that statements on a product’s packaging were misleading, not that the packaging itself was misleading.”  ECF No. 212 at 84.  But this is a distinction without a difference, and the court provided no support for the theory that cases involving packaging require no showing of materiality.  Indeed, as noted previously, it would be far easier to find common evidence regarding the objectively identical statement on every label of a product, as compared to the varying contents of the containers in this case.  *Id.*

In holding that materiality was not required under California law, the court largely relied on what it described as a line of cases following the Supreme Court’s decision in *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455 (2013) holding that when specific representations are common to the class, “materiality is necessarily a common question for purposes of Rule 23(b)(3) because it is judged by an objective ‘reasonable person’ standard and, therefore, *no* evidence of materiality is necessary for purposes of class certification.”  ECF No. 212 at 81-82.  But this misses the point; here, there was no “specific” or “uniform” representation

by McCormick, as the weight of the pepper was clearly and accurately marked and the fill levels of the containers varied widely, as explained above.  Additionally, the district court mistakenly portrayed the Ninth Circuit's decision in *Bradach v. Pharmavite LLC*, 735 F. App'x 251 (9th Cir. 2018) as holding that "it is an error of law for courts at class certification to require extrinsic evidence of materiality to prove predominance."  ECF No. 212 at 85.  The Ninth Circuit's unreported decision in *Bradach* went to the issue of <u>reliance</u> (which is not required under the CLRA or UCL), not materiality.[10]  *See* 735 F. App'x at 255.

The district court also implied that the issue of materiality was one properly left until after the class certification stage, citing *Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329, 338-39 (Cal. Ct. App. 2010), for the proposition that "under California law, 'materiality is generally a question of fact…'"  ECF No. 212 at 87.  But in that ruling, (a review of a denial of class certification), the court did not decline to review materiality.  Instead, it answered the factual question regarding materiality "yes."  *Id.*  A factual determination as to the evidence of materiality was also warranted here.

In short, the weight of California authority demonstrates that evidentiary support for materiality is required under California law at the class certification

---

[10]  Because the decision in *Bradach* was unpublished – as the district court noted – it was  also not binding authority.

stage.  The district court manifestly erred by holding that predominance was satisfied even though the Plaintiffs presented no such evidence.

**B.    The District Court Manifestly Erred in Certifying the Florida Class.**

The District Court also manifestly erred in certifying the Florida class. Although acknowledging that a plaintiff must prove causation to recover damages under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), ECF No. 212 at 95, the district court inexplicably relied on the ruling in *Amgen*, as well as *California* cases applying *Amgen* to California's *materiality* standard, to conclude that *causation* is a "common question" and therefore a plaintiff has no evidentiary burden to show causation at the class certification stage.  *Id*. at 96.  The district court erred in its application of Florida law and again misapprehended the nature of the claims in the instant case.  Citing a number of cases in which the courts found that causation was not a class-wide common issue because "different representations were made to different class members," *id*. at 97, the court tried to contrast the instant case as one in which "purchasers were uniformly exposed to the same opaque, *allegedly* deceptively-filled containers."  *Id*. at 98 (emphasis supplied).  But the claimed "deception" in this case is not the opaque nature of the container in itself; it is the supposedly deficient fill level of the product inside.  Because the court refused to consider the uncontroverted evidence that purchasers class-wide had not been

19

exposed to uniform deceptive fill levels, the court manifestly erred in certifying the Florida class.

### C.   The District Court Manifestly Erred in Certifying the Missouri Class.

Under the Missouri Merchandising Practices Act (MMPA), a "causal connection" between the loss and the unfair practice is required. *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008) (citing Mo. Rev. Stat. § 407.025.1). "[W]here an MMPA violation occurs, if it does not *cause* an ascertainable loss of money or property—i.e. an injury—a plaintiff cannot sue for the violation." *White v. Just Born, Inc.*, No. 2:17-cv-04025-NKL, 2018 WL 3748405, at *3 (W.D. Mo. Aug. 7, 2018) (denying class certification in case involving allegedly slack-filled candy boxes). Thus, a plaintiff who did not care about an alleged MMPA violation, or who knew about the violation and purchased the product anyway, has not been injured under the MMPA. *Id.* (citing *State ex rel Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 862 (Mo. Banc. 2008)); *see also Bratton v. Hershey Co.*, No.: 2:16–cv–4322–C–NKL, 2018 WL 934899, at *3 (W.D. Mo. Feb. 16, 2018) (summary judgment for defendant granted where plaintiff was aware of slack-fill in candy boxes and continued to purchase). The MMPA also requires that a plaintiff show materiality, *i.e.*, that a reasonable consumer likely would consider the omission to be important in making a purchasing decision. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007). Materiality should be demonstrated through

class-wide evidence in MMPA class actions.  *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-1967-MD-W-ODS, 2011 WL 6740338, at \*4 (W.D. Mo. Dec. 22, 2011).

In *White*, the court denied certification because, *inter alia*, if the class were certified, "the litigation would be dominated by individual inquiries into whether each class member was deceived by any slack-fill in a box before purchasing it." *White*, 2018 WL 3748405, at \*4.  *White* is a Missouri federal case exactly on point. Nevertheless, the district court ignored *White* and held erroneously that, to show causation and loss, it would not be necessary for plaintiffs to offer individualized proof.  In so ruling, the district court distinguished *White* and other cases from cases where the purchasers received less value than what was represented based on an "objective characteristic" of the product and, therefore, individualized proof was unnecessary.  The district court characterized the instant case as one in the latter category, on the theory that the "value of the pepper as represented" was less than the "value of the pepper as received."  ECF No. 212 at 101-02.  But ironically, it is only because the district court refused to even consider the uncontroverted evidence regarding actual fill levels that it could entertain that manifestly erroneous conclusion.  There is no common evidence to show any such class-wide discrepancy, and that is fatal to the Missouri class under the MMPA and Rule 23.

## CONCLUSION

For the foregoing reasons, the Court should grant the petition for permission

to appeal and reverse the decision below certifying the single-state classes under the

California, Florida, and Missouri consumer protection statutes.


Dated:  July 24, 2019                    Respectfully submitted,



*/s/ David H. Bamberger*

David H. Bamberger (DC Bar #362285)
david.bamberger@dlapiper.com
Edward S. Scheideman  (DC Bar #475128)
edward.scheideman@dlapiper.com
Paul D. Schmitt (DC Bar #1007680)
paul.schmitt@dlapiper.com
DLA Piper LLP (US)
500 Eighth Street NW
Washington, DC 20004
T:  (202) 799-4500

***Counsel for Petitioner***
***McCormick & Company, Incorporated***

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), this document contains 5,198 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 font size and Times New Roman style.


Dated:  July 24, 2019                      */s/ David H. Bamberger*
                                           David H. Bamberger

## ADDENDUM A – Certificate of Parties

Pursuant to Circuit Rules 5(a) and 28(a)(1)(A), Petitioner McCormick & Company, Incorporated hereby submits the following Certificate of Parties.

**Parties and Amici:** The following is a list of all parties, intervenors, and amici who, to counsels' knowledge, have appeared in the district court in relation to this consolidated multi-district litigation:

Consumer Plaintiffs (putative class representatives)
1.   Angela Barnes
2.   Scott Allan Bittle
3.   Ryan Scott Bunting
4.   Patricia Fusco Coyne
5.   Rhonda Dupler
6.   Debbie Esparza
7.   Cynthia Fernandez
8.   Lillian Ferreri
9.   Saba Ganjineh
10.  Hubert L. Gerstnecker
11.  Brandon Grady
12.  Catherine Grindel
13.  Nicholas Hilla
14.  Paula Cole Jones
15.  Seung-Ho Jung
16.  Alexander Liberov
17.  Katrina Linker
18.  Anne Marron
19.  Holly Marsh
20.  Bernard Ortiz
21.  Carmen Pellitteri
22.  Sandra Robinson
23.  Brenda Theis
24.  Tina Thornton
25.  Tyler Underwood
26.  Julia Vladimirsky

24

<u>Other Plaintiff</u>
>    Watkins Incorporated (non-class plaintiff)

<u>Defendants</u>
>    McCormick & Company, Incorporated
>    Wal-Mart Stores, Inc.
>    Publix Super Markets, Inc.

<u>Interested Party:</u>
>    Nielsen Company (U.S.) LLC

## ADDENDUM B – Corporate Disclosure Statement

Pursuant to Circuit Rules 5(a) and 26.1, Petitioner McCormick & Company, Incorporated submits the following disclosures:

McCormick & Company, Incorporated, is a non-governmental business entity organized and existing under the laws of the State of Maryland with its principal place of business at Hunt Valley, Maryland.  McCormick & Company, Incorporated has no parent corporation, and no publicly held corporation owns 10% or more of its stock.  During the class period, McCormick & Company, Incorporated manufactured, sold, and distributed black pepper products, as well as other spices and food products.

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(c) and Circuit Rule 25(f),
I hereby certify that on July 24, 2019, I caused a true and correct copy of the
foregoing Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f), along
with all accompanying materials, to be served by UPS overnight mail and electronic
mail on the following:

> Elizabeth Fegan
> FEGAN SCOTT LLC
> 150 S. Wacker Drive, 24th Floor
> Chicago, IL 60606
> (312) 741-1019
> beth@feganscott.com
> Counsel for Consumer Plaintiffs
>
> Scott Kamber
> KAMBERLAW, LLC
> 201 Milwaukee Street
> Suite 200
> Denver, CO 80206
> (646) 964-9600
> skamber@kamberlaw.com
> Counsel for Consumer Plaintiffs
>
> Deborah Kravitz
> KAMBERLAW LLP
> 401 Center Street
> Suite 111
> Healdsburg, CA 95448
> (707) 820-4247
> dkravitz@kamberlaw.com
> Counsel for Consumer Plaintiffs

Sean K. Cronin
Donovan Rose Nester, P.C.
15 North 1st Street, Suite A
Belleville, IL 62220
(618) 212-6500
scronin@drnpc.com
Counsel for Plaintiff Scott Allan Bittle

Geoffrey P. Jarpe
MASLON LLP
90 South Seventh Street
3300 Wells Fargo Center
Minneapolis, MN 55402
(612) 672-8360
Geoffrey.jarpe@maslon.com
Counsel for Watkins Incorporated

Andrew Klevorn
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Suite 1900
Chicago, IL 60661
(312) 902-5200
andrew.klevorn@kattenlaw.com
Counsel for Wal-Mart Stores, Inc.

Dated:  July 24, 2019                          */s/ David H. Bamberger*
                                               David H. Bamberger