**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: MCCORMICK & COMPANY, INC., PEPPER PRODUCTS MARKETING AND SALES PRACTICES LITIGATION<br><br>*This Document Relates To*:<br>ALL CLASS ACTIONS | MDL Docket No. 2665<br>Case No. 15-1825 (ESH) |

**MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AND  MEMORANDUM OF LAW**

Plaintiffs respectfully submit this motion and memorandum in support of preliminary approval of the proposed settlement agreement ("Agreement") (attached hereto as Exhibit A) reached between the Plaintiffs, Debbie Esparza, Carmen Pellitteri, Holly Marsh, and Catherine Grindel (hereinafter "Plaintiffs" or Representative Plaintiffs"), and Defendant McCormick & Company, Incorporated (hereinafter "Defendant" or "McCormick") (collectively the "Parties"). The Agreement was reached after arms-length negotiations by experienced counsel over the course of several months, with the assistance of two different third-party neutrals.  As demonstrated below, the proposed Agreement plainly "falls within the range of possible judicial approval" and is "sufficiently within the range of reasonableness" that notice to the class and a hearing on final approval is warranted.  *See Richardson v. L'Oreal USA,* 951 F. Supp. 2d 104, 107 (D.D.C. 2013); *In re Vitamins Antitrust Litig.*, 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999).

Defendant has reviewed this Motion and the Proposed Order and consents to Preliminary Approval on the basis sought herein.  Accordingly, Plaintiffs hereby move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order (1) preliminarily approving the Agreement, appended as Exhibit A hereto; and (2) scheduling a hearing to determine whether to finally approve the Agreement and enter Judgment (the "Final Approval Hearing").

## BACKGROUND AND PROCEDURAL HISTORY OF THE LITIGATION

1.     On December 8, 2015, the United States Judicial Panel on Multidistrict Litigation

ordered that the then-pending cases in this Action:

- *Dupler v. McCormick & Company, Inc.,* No. 2:15-cv-3454 (E.D.N.Y.)
- *Jung v. McCormick & Company, Inc.,* No. 1:15-cv-01148 (D.D.C.)
- *Bunting v. McCormick & Company, Inc.,* No. 3:15-cv-1648 (S.D. Cal.)
- *Marsh v. McCormick & Company, Inc.,* No. 2:15-cv-1625 (E.D.N.Y.)
- *Pellitteri v. McCormick & Company, Inc.,* No. 9:15-cv-81521 (S.D. Fl.)
- *Vladimirsky v. McCormick & Company, Inc.,* No. 1:15-cv-08102 (N.D. Ill.)
- *Bittle v. McCormick & Company, Inc.,* No. 3:15-cv-00989 (S.D. Ill.)
- *Barnes v. McCormick & Company, Inc.,* No. 3:15-cv-01224 (S.D. Ill.)
- *Theis v. McCormick & Company, Inc.,* No. 3:15-cv-01228 (S.D. Ill.)
- *Linker v. McCormick & Company, Inc.,* No. 4:15-cv-01340 (E.D. Mo.)
- *Thornton v. McCormick & Company, Inc.,* No. 3:15-cv-00566 (Nev.)
- *Ferreri v. McCormick & Company, Inc.,* No. 7:15-cv-06760 (S.D.N.Y.)
- *Marron v. McCormick & Company, Inc.,* No. 1:16-cv-0104 (D.D.C.)
- *Fernandez v. McCormick & Company, Inc.*, No. 1:16-cv-0117 (D.D.C.)
- *Gerstnecker v. McCormick & Company, Inc.*, No. 2:15-cv-01671 (W.D. Pa.)

be centralized for pretrial purposes in the United States District Court for the District of Columbia.

*See* December 8, 2015 Transfer Order.  *See* Dkt No. 1.

2.     On March 2, 2016, Plaintiffs filed their Consolidated Amended Class Action

Complaint asserting that McCormick improperly implemented a price increase by decreasing the

quantity of pepper in both certain McCormick®-branded pepper containers and certain store-

branded pepper containers that were supplied by McCormick.   Plaintiffs also assert that

McCormick misled them about the reduction in quantity by keeping the non-transparent containers

the same size in violation of the Sherman Act (15 U.S.C. § 1); violations of the Federal Food, Drug

and Cosmetic Act (FDCA) Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 403(d); the

Code of Federal Regulations Title 21 part 100, *et seq*.; the Lanham Act, 15 U.S.C. § 1125, and

those similar deceptive and unfair practices and/or consumer protection state laws in twenty-five

states; and Unjust Enrichment.  *See* Dkt. No. 34.

3.      On March 30, 2016, McCormick filed its Motion to Dismiss the Consolidated Amended Class Action Complaint filed by Plaintiffs.  *See* Dkt No. 38.  In addition, then-Defendant Wal-Mart filed its Motion to Dismiss the Consolidated Amended Class Action Complaint filed by Plaintiffs.  *See* Dkt No. 40.

4.      On April 27, 2016, Plaintiffs filed their Consolidated Response in Opposition to McCormick and Walmart's Motions to Dismiss.  *See* Dkt No. 43.

5.      On May 18, 2016, Defendant McCormick, and then-Defendant Wal-Mart filed their respective Replies in Support of their Motions to Dismiss.  *See* Dkt Nos. 47 and 49.

6.      On September 7, 2016, Plaintiffs Marron, Hilla, Ortiz, and Ferreri voluntarily dismissed themselves from the above-captioned litigation without prejudice to any rights they may have individually and to their rights as unnamed members of the putative classes in the litigation. *See* Dkt No. 68.

7.      On November 11, 2016, the Court granted in part and denied without prejudice in part Defendants' Motions to Dismiss.  Specifically, Count I, the Sherman Act claim, was dismissed with prejudice.  *See* Dkt Nos. 97 and 98.

8.      On December 9, 2016, Plaintiffs filed their Motion for Reconsideration of the Court's Order on the Defendants' Motions to Dismiss, with the matter being fully briefed by the Parties.  *See* Dkt Nos. 105, 110, 112, 116.

9.      On March 21, 2017, the Court granted the Plaintiffs' Motion for Reconsideration, and amended its Order to reflect Count I is dismissed *without* prejudice and allowing the Plaintiffs to file their Second Amended Consolidated Class Action Complaint ("Second ACC").  *See* Dkt Nos. 126 and 127.

10.     On March 21, 2017, Plaintiffs filed the Second ACC.  *See* Dkt Nos. 128 and 129.

11.     On April 7, 2017, McCormick and Wal-Mart moved to dismiss the Second ACC. *See* Dkt Nos. 132 and 134.  Plaintiffs filed their Opposition on May 5, 2017, Dkt No. 138 and the Defendants filed their Replies on May 19, 2017.  *See* Dkt Nos. 140 and 141.

12.     On June 13, 2017, the Court dismissed Count 1, the Sherman Act claim, with prejudice. *See* Dkt Nos. 148.

13.     On July 5, 2017, McCormick and Wal-Mart each filed an Answer to the Second ACC, in which they respectively denied the material allegations of the Second ACC and any and all liability with respect to all facts and claims alleged therein, and further denied that any of the putative Class Members or anyone has suffered any harm or damage or is entitled to any monetary or relief whatsoever in connection with the Action.  *See* Dkt Nos. 151 and 153.

14.     On July 10, 2019, after a complete briefing of the issue of class certification by the Parties, the Court granted class certification to three single-state consumer protection classes, for the States of California, Florida, and Missouri, leaving McCormick the only remaining Defendant. *See* Dkt No. 212.

15.     On July 24, 2019, Defendant McCormick filed its Petition for Interlocutory Appeal from the Court's July 10, 2019 Order to the United States Court of Appeals for the District of Columbia Circuit and a Motion to Stay the proceedings.  *See* Dkt No. 215.

16.     On September 20, 2019, the United States Court of Appeals denied Defendant McCormick's petition.  *See* Dkt No. 220.

17.     Class Counsel represents that it conducted an examination and investigation of the facts and law relating to the matters in this Action, including, but not limited to, engaging in discovery, review and analysis of over 70,000 pages of documents of Defendants, and relevant

third parties' (including suppliers and retailers), documents and data, and conducting a damage analysis.

18.     Class Counsel also represents that they evaluated the merits of the Parties' contentions and evaluated this Settlement, as it affects all Parties, including Class Members.  The Class Representatives and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, represent that they are satisfied that the terms and conditions of this Settlement are fair, reasonable, and adequate, and that this Settlement is in the best interest of the Class Members.

19.     Defendant, while disclaiming all liability or wrongdoing with respect to all claims, considers it desirable to resolve the three certified state classes on the terms stated in the Agreement, in order to avoid further expense, inconvenience and burden and, therefore, has determined that the Agreement is in Defendant's best interests.

20.     The Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any Party of the truth of any allegation or the validity of any purported claim or defense asserted in any of the pleadings in the Action, or of any fault on the part of Defendant, and all such allegations expressly are denied.

21.     Substantial settlement negotiations have taken place between the Parties, including three (3) mediation sessions (on October 27, 2016 and November 29, 2017, and January 19, 2019, conducted with the assistance of Honorable James Robertson (Ret.), JAMS, in Washington DC; as well a mediation session on October 2, 2019, conducted with the assistance of Nancy Lesser of PAX ADR, in Washington, D.C.

## **MATERIAL TERMS OF PROPOSED SETTLEMENT**

### A.     **The Classes**

The proposed settlement has been reached on behalf of the three state Classes, that were

certified and are defined as follows:

> All persons residing in California, Florida, or Missouri who purchased any McCormick® brand or Private Label Brand Black Pepper Product(s) within the Class Period.

> Excluded from the Classes are (a) Defendant and all of its present and former, direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups, joint ventures, partnerships, and all of its and their present and former officers, directors, shareholders, partners, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives; (b) all persons and entities who sold Black Pepper Products, whether McCormick® brand or Private Label Brand, to any persons residing in the states of California, Florida or Missouri during the Class Period; (c) the Court, and its personnel; and (d) any person who timely and properly excludes himself or herself from the Classes in accordance with the procedures approved by the Court.

### B.     Benefits to Class Members

Defendant, solely for the purposes of settlement and without admitting or conceding any fault, wrongdoing or liability, and in order to avoid the inconvenience and expense of further litigation, has agreed to the establishment of a non-reversionary common fund with a total value of two million five hundred thousand dollars ($2,500,000), which will be used to: (1) pay claims to Class Members; (2) pay notice and administration costs, and attorneys' fees, costs, and expenses; and (3) any court-approved incentive compensation to the named Plaintiffs ("Settlement Fund").  A class member must submit a timely and valid proof of claim form, which is attached to the Class Notice, in order to receive a share of the Settlement Fund.

### C.      Notice

The Parties have agreed that Heffler Claims Group will serve as the Claims Administrator. Heffler will provide notice of the settlement to Class Members via the internet, printed media, and direct email notice (where such data is available).

#### 1.      Media and Publication Notice

The Parties have further agreed to a robust media and publication notice program for the three state classes.  Within twenty (20) days of preliminary approval by the Court of the attached Agreement (Exhibit A) as well as the Long Form Notice (Exhibit 4) and Short Form ("Media" or "Publication") Notice (Exhibit 3) attached thereto, Heffler will:  establish a settlement website with downloadable case documents, including the detailed Long Form Notice, online claims filing capability, frequently asked questions with responses, contact information for Class Counsel and Heffler, and other pertinent information.  A link to the settlement website will be disseminated in the Publication Notice described above. The Media Plan is appended to the declaration of Jeanne C. Finegan, attached to the Agreement as Exhibit 2.

#### D.      Opt-Out and Objections Procedure

After receiving notice, Class Members will have an opportunity to exclude themselves from the settlement or object to its approval.  The deadlines for filing opt-out requests and objections will be conspicuously listed in the Long Form Notice as well as on the settlement website.  The process for filing exclusions and objections will also be explained in the Long Form Notice and on the website.  With regard to objections, the Long Form Notice will inform Class Members of the date, time and location of the Final Approval Hearing, and that the Final Approval hearing provides them with an opportunity to appear and have their objections heard.

E.      **Release of Claims**

Subject to final approval by the Court, all members of the Classes who do not opt out of the Classes by the procedures required in the Long Form Notice, on behalf of himself or herself and on behalf of their respective present and former, direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups, partnerships, joint ventures and all of their respective present or former officers, directors, shareholders, partners, employees, agents, servants, assignees, heirs, successors, insurers, indemnitees, attorneys, transferees, and/or representatives (collectively, the "Releasing Parties"), for and in consideration of the terms and undertakings outlined in the attached Agreement (Exhibit A), the sufficiency and fairness of which are acknowledged, will release and forever discharge: (1) the Defendant and all of its present and former, direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups, joint ventures, partnerships, and all of its and their present and former officers, directors, shareholders, partners, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives, and (2) all persons and entities who sold Black Pepper Products, whether McCormick® brand or Private Label brand, to any person(s) residing in the states of California, Florida or Missouri during the Class Period, as well as all of their present and former direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups, joint ventures, partnerships, and all of their respective present and former officers, directors, shareholders, partners, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives (collectively the "Released Parties") from any and  all claims, demands, rights, liabilities, suits, or causes of action, known or unknown, as of the Effective Date, that (1) were or could have been asserted in the complaints filed for the three state certified classes, or (2) are based upon, arise out

of, or reasonably relate to, the subject matter of the Action or any part thereof (collectively, the "Released Claims").  Released Claims do not, however, include any claims for personal injury.

### F.    Incentive Award and Attorneys' Fees

Subject to final approval by the Court and the Parties' Agreement, Plaintiffs request to be awarded incentive compensation not to exceed $5,000 from the Settlement Fund, as compensation for their role as Class Representatives.  Subject to final approval by the Court and the Parties' Agreement, Plaintiffs request to be awarded attorneys' fees in the amount of $625,000, an amount equal to twenty-five percent (25%) of the Settlement Fund, in addition to reimbursement of reasonable litigation costs and expenses.  Defendant has agreed not to object to a request for these amounts.

### G.    Court Adoption and Jurisdiction

The attached Agreement is contingent upon entry of an order giving approval to the terms of the Agreement.  If the Court refuses to grant approval and/or materially modifies any of the terms of the Agreement or requests made therein, or if the Court's Approval Order is reversed or materially modified on appeal, then the attached Agreement shall be terminated (unless the Parties agree otherwise in writing) and neither the fact that this Agreement was made nor any stipulation, representation, agreement or assertion made in the attached Agreement may be used against any Party.

Moreover, the Court shall retain continuing jurisdiction over the matter and the Parties, including all members of the Classes, the administration and enforcement of the attached Agreement, and the benefits to Class Members.  Any dispute or controversy with respect to the interpretation, enforcement, or implementation of the attached Agreement shall be presented by motion to the Court.

**ARGUMENT**

**I.**     **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

**A.**     **Overview Of The Class Settlement Approval Process**

Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any proposed settlement of claims brought on a class basis.   Review of a proposed class action settlement generally involves a two-step process:  preliminary approval and a fairness hearing.  *See Manual for Complex Litigation, Fourth* § 21.632 (West 2004).   First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms.  *See id.*   Approval of a proposed settlement is a matter within the broad discretion of the district court.  *See Richardson v. L'Oreal USA, Inc.*, 2013 WL 3216061, *2 (D.D.C. Jun. 27, 2013) (quoting *In re Vitamins Antitrust Litig.*, 1999 WL 1335318 at *5.)  *See also Hubbard v. Donahoe*, 2013 WL 3943495, *2 (D.D.C. July 31, 2013) (same) (citing *Vista Healthplan v. Warner Holdings Co. III*, 246 F.R.D. 349, 357 (D.D.C. 2007)).

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."  *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004).   While the court generally has discretion to decide whether to approve or reject a proposed settlement, the court's decision is constrained by the "principle of preference" favoring and encouraging settlements in appropriate cases.  *Id.* at 103 (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999)).  This preferential treatment is a matter of public policy, which strongly favors and encourages settlements, particularly in the context of a class action, to avoid the inherent costs, delays and risks of continued litigation.  See *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Newberg on Class Actions* § 11:41, at 87 (4th ed. 2002) ("The compromise of complex

litigation is encouraged by the courts and favored by public policy."); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").  As this Court stated in an opinion granting preliminary approval of a class settlement, "[t]here is a longstanding judicial attitude favoring class action settlements."  *Prince v. Aramark Corp.*, No. 16-cv-1477, Dkt. 33 at 9 (D.D.C., March 14, 2017).

The court's primary concern should be whether the proposed settlement is fair, reasonable and adequate.  *See Cotton*, 559 F.2d at 1331.  If there are no obvious deficiencies, and the settlement falls within the range of possible approval, it should be preliminarily approved.  *See Richardson,* 961 F.Supp 2d at 106 (Courts "will general grant preliminary approval of a class action settlement if it appears to fall 'within the range of possible approval' and 'does not disclose grounds to doubt its fairness or other obvious deficiencies.'") (*quoting Trombley*, 759 F.Supp.2d at 23); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1017 (9th Cir. 2008).

**B.     The Settlement Is Entitled To A Presumption Of Fairness**

The determination of a settlement's fairness "calls for a comparative analysis of the treatment of class members vis-à-vis each other and vis-à-vis similar individuals with similar claims who are not in the class." *Manual* at § 21.62. A trial court has a duty under Fed. R. Civ. P. 23(e) to make sure that a proposed settlement is "fair, adequate, and reasonable and not the product of collusion between the parties."  *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000) (citations omitted).  *Cf. United States ex rel. Schweizer v. Océ North Am., Inc.* 2013 WL 3776260, *8 (D.D.C. July 19, 2013).  Generally, a court should grant preliminary approval of a class action settlement if it appears to fall "within the range of possible approval" and "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for

attorneys." *Trombley v. Nat'l City Bank*, 759 F.Supp.2d 20, 23 (D.D.C. 2011) (quoting *Newberg on Class Actions*, § 11:25 (4th ed. 2010)).

### C.    Applicable Factors Favor Preliminary Approval

Courts look to a number of factors in this analysis, including: "(1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of Plaintiffs' case; (3) the stage of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Hubbard* at *2 (quoting *Vista Healthplan*, 246 F.R.D. at 360); *Schweizer, supra*, at *8 (same) (quoting *In re LivingSocial Mktg. & Sales Practice Litig.*, 2013 WL 1181489, *7 (D.D.C. Mar. 22, 2013)).  As discussed in more detail below, the proposed Agreement satisfies these factors.

These factors more than support a preliminary approval threshold here.

### 1.    The settlement is the result of arm's-length negotiations

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms' length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104 (quoting *Manual for Complex Litig.*, at § 30.42).  The attached Agreement is the result of wide-ranging litigation conducted for over 4 years, and is the product of extensive, arms-length negotiations between experienced counsel, reached with the assistance of two neutral, third-party mediators (Hon. James Robertson (Ret.) of the mediation firm JAMS and Nancy Lesser of PAX ADR).  Over the course of four mediation sessions in three years, with the assistance of both Judge Robertson and Ms. Lesser, the parties eventually were able to reach the negotiated compromise memorialized in the Agreement. *See Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. Apr. 21, 2011) ("[T]he settlement is the product of serious, non-collusive, arms' length negotiations by experienced

counsel with the assistance of an experienced mediators at JAMS ... In sum, the court finds that viewed as a whole, the settlement is sufficiently 'fair, adequate, and reasonable' such that approval of the settlement is warranted").

Accordingly, this Court should apply a presumption that the settlement reached by the Parties is fair and reasonable. *See Equal Rights Center v. Washington Metropolitan Area Transit Authority*, 573 F. Supp. 2d 205, 212 (D.D.C. 2008) (class action settlement presumed reasonable where the parties engaged in six months of vigorous negotiations and the litigation was contentious); *see also Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."); *see also In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001) ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair."); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing *Manual for Complex Litigation, Third*, § 30.41 (West 1995)) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.")[1]

### 2. The terms of settlement reflect the strength of the Parties' positions and the risks of continued litigation

The proposed Agreement is in the best interest of Plaintiffs, the Class Members, and Defendant. It strikes a reasonable balance between the benefits the Class Members will receive

---

[1] Class Counsel further represents that, consistent with controlling law and the ethical standards promulgated by the District of Columbia Bar, no plaintiff attorneys have requested or been offered any compensation, appointment, or benefit by Defendant during negotiations related to the settlement of this case other than the proposed attorneys' fees and costs outlined above, which are subject to court approval.

under the Agreement on the one hand, and the fact that Defendant will vigorously oppose the claims asserted in the litigation if the settlement is not approved, and the attendant risks, costs, uncertainties and delays of litigation on the other hand.

"The most important factor in the Court's evaluation of a proposed class action settlement is how the relief secured by the settlement compares to the class members' likely recovery had the case gone to trial." *Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 9-10 (D.D.C. 2006). The benefits to the class members must be "considered in juxtaposition with the risks attendant to continued litigation of this matter." *Schweizer, supra*, at *12 (quoting *In re LivingSocial Mktg.*, 2013 WL 1181489, at *9).

The parties have extensively analyzed the strengths and weaknesses of their respective positions and the risks, time, and costs of continued litigation.  Here, because there is risk to both Parties in proceeding with the litigation, and costs in doing so, the proposed Agreement should be approved.  If the case proceeded further into litigation, Plaintiffs would have to overcome issues associated with prevailing on an inevitable Motion for Summary Judgment, trial and appeals – all of which offer potential stumbling blocks to securing a recovery for the Class Members.  As McCormick is represented by able counsel who would present a vigorous defense, there is no assurance that the Classes would prevail. Given the risks Plaintiffs would face at summary judgment and trial, in the eyes of Plaintiffs and Class Counsel, the proposed Settlement provides the Classes with an outstanding opportunity to obtain significant relief at this stage in the litigation, while abrogating the risks that might prevent them from obtaining relief should the litigation continue.

As discussed more fully below, the Agreement provides for the considerable benefit of a *pro rata* distribution of the non-reversionary $2,500,000 common fund to every Class Member

who submits a timely and complete claim form (that is verified and approved), while there is a material risk that continued litigation would result in a less favorable outcome for Class Members or increased liabilities for Defendant.  Providing $2,500,000 now, through this Agreement, avoids the potential barriers described above and offers the Classes a sure recovery.  For this reason, courts recognize that prompt payments in light of the obstacles inherent in litigating class actions weighs in favor of approving settlements."  *See, e.g., Stephens v. US Airways Group*, 102 F. Supp. 2d 222, 227 (D.C. 2015) ("The delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties."); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 195 (D.D.C. 2011) (same).

Moreover, as in many cases, "[t]he possibility of a large monetary recovery through future litigation is highly speculative, and any such recovery would occur only after considerable additional delay."  *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011).  The outcome of this litigation is far from certain, as is the level of recovery a class member might obtain if the case was litigated all the way to trial.  Because there are substantial risks to whether Plaintiffs could successfully get past a summary judgment, let alone prevail at trial, a settlement at this stage that reflects the substantial compensatory recovery, is a compromise well above the fair and reasonable bar.

### 3.    Settlement was only reached after meaningful litigation and negotiation

Settlement should come at a time when counsel has "sufficient information to adequately assess the risks of [continued] litigation."  *In re Lorazepam Clorazepate Antitrust Litig.*, 2003 WL 22037741, *5 (D.D.C. June 16, 2003); *see also Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 57-58 (D.D.C. 2008).  Here, Class Counsel, devoted substantial time and resources to investigating, litigating, and resolving this case.  *See* Kamber Decl. (Exhibit B).  Class

Counsel served and responded to discovery requests; reviewed approximately 70,000 pages of documents, served numerous third-party subpoenas, and noticed, prepared for, and conducted or defended over two dozen depositions. In addition to fact discovery, Class Counsel retained and consulted with an expert witness, and drafted and responded to multiple rounds of briefing on Plaintiffs' motion for class certification.

There has been a great deal of factual development and analysis to date.  As a result of the discovery described above, counsel for both Parties had ample foundation upon which to evaluate the proposed Agreement.  Each party, therefore, possessed the necessary information to evaluate the strengths and weaknesses of their respective cases in order to discuss settlement effectively. Armed with this information, the Parties were able to reach the Agreement only after extensive discovery, lengthy settlement discussions, and further negotiations over settlement terms and language.

### 4. The settlement is fair and reasonable

The opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *In re Lorazepam*, 2003 WL 22037741 at *6; *see also Radosti, Envision Emi, LLC*, 717 F. Supp. 2d 37, 57 (D.D.C. 2010).  The Parties' counsel has substantial experience litigating consumer-related class actions, and significant experience litigating class action matters of similar size, scope, and complexity to the instant action.  *See* Exhibit B, Kamber Decl. at ¶39, and Ex. 1 attached thereto.  Counsel strongly believe and represent that, given the risks attendant to further litigation, the terms of the proposed Agreement are fair, reasonable, and in the best interests of the Classes.  *Id.* at ¶¶ 19 & 37.  *See also Equal Rights Center*, 573 F. Supp. 2d at 213.

The attached Agreement provides Class Members with a substantial monetary recovery, as long as they submit a valid and timely claim in accord with the instructions in the Class Notice. While the exact per-claimant recovery will not be known until the conclusion of the claims period, each participating Class member is likely to receive approximately $4 per container or, in some cases more, after deducting requested attorneys' fees and expenses, administration costs, and incentive compensation to the named Plaintiffs.   The individual $4 recovery reflects a fair approximation of a full refund for each container purchased or, in other words, more than the actual 25% overcharge Plaintiffs allege in damages. Being made whole for the full purchase price represents an extraordinary recovery and thus the settlement is "eminently reasonable." *See, e.g., McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 811-812 (E.D. Wisc. 2009) (granting final approval to class settlement of $2.1 million fund where "claiming class members will be made whole for all ATM fees they paid to Chase during the period in question. Full reimbursement for ATM fees actually paid by the claimants appears eminently reasonable."). *See also* Reporter's Transcript of Proceedings, July 19, 2013 *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.,* No. 1:13-cv-5795 (C.D. Cal. July 19, 2013), at 38-39 (granting final approval to class settlement and stating: "It is extraordinary in that the claimants will receive 100 percent of the value of their claims, not as measured by the Court, not as measured on a litigated basis, but as measured by plaintiffs' own experts ….").

Moreover, the $2,500,000 Settlement Fund here is more than one third of the total compensatory damages that Plaintiffs calculated would be due to Class Members in the three certified states.  *See* Exhibit B, Kamber Decl. at ¶28; Dkt. 157-100 (Levy Declaration, under seal). This recovery on behalf of Class Members equals or exceeds amounts approved by courts in other class actions, and should be similarly approved here.  *See, e.g., Benitez v. W. Milling,* No. 1:18-

cv-01484-SKO, 2020 U.S. Dist. LEXIS 10848, *24-25 (E.D. Cal. January 21, 2020) (granting preliminary approval where $650,000 fund represented approximately 30% of estimated $2.1 million in damages); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (15% of damages); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705 (E.D. Pa. May 19, 2005) (11.4% of damages); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, *15 (E.D. Pa. June 2, 2004) (collecting cases approving anywhere from 5.35% to 28% of damages).

The award of incentive compensation to Plaintiffs promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits, and reflects the time, cost, and effort that they have committed to this matter in order to bring relief to the Classes, and is comparable to similar incentive awards.  The Class Representatives here have assisted Class Counsel in this litigation by expending time and resources (including missing work) to review key pleadings, preparing for their depositions and being deposed, responding to discovery requests, and reviewing and approving the terms of the Agreement.  *See* Ex. B, Kamber Decl. at ¶¶ 35-6. The $5,000 proposed incentive compensation that is payable to the Class Representatives is in line with those awarded by courts in other class action cases, and are common in the District of Columbia Circuit, often in amounts equal to or exceeding $5,000. *See, e.g., Ceccone v. Equifax Info. Servs. LLC*, 2016 WL 5107202, *14 (D.D.C. Aug. 29, 2016) (awarding $5,000 to the named plaintiff in FCRA class action); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, (D.D.C. 2011) (awarding $5,000 each to three class representatives as "fall[ing] within the range of reasonableness"); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 9 (D.D.C. 2008) (granting $10,000 incentive award to representative plaintiffs who actively participated in discovery and attended hearings); and *Cohen v. Warner Chilcott Pub. Ltd. C*o., 522 F. Supp. 2d 105, *124 (D.D.C. 2007)

(awarding $7,500 to each of two named plaintiffs who "fully complied with all demands placed on them during litigation and assisted in Class Counsel's investigation of this case").

As such, the Court should make a preliminary finding that the attached Agreement is fair, reasonable and adequate when the benefits to Class Members described above are weighed against the cost and uncertainty of future, protracted litigation regarding Plaintiffs' claims. As noted above, McCormick has indicated that it will vigorously oppose the claims asserted in this Action if the attached Agreement is not approved, and Plaintiffs and Class Counsel have carefully considered the risks inherent to litigation, and the defenses available to Defendant, in agreeing to the benefits described herein.

## II.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A.   The Proposed Class Notice Provides For The Best Notice Practicable Under The Circumstances

"If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *Manual for Complex Litigation, Fourth*, § 21.632-21.635 (West 2004); *see also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement, voluntary dismissal, or compromise]."); Fed. R. Civ. P. 23(c)(2)(B) (setting forth the requirements for notice). The standard for the adequacy of a settlement notice in a class action is measured by reasonableness. *See Faught*, 668 F.3d at 1239. "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to

them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (*quoting Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

Here, as described in the Agreement, the Parties propose that the Class Notice be provided by internet publication, as well as by printed media, website notice plan, and direct notice by email, where such data is available.

### B.    The Proposed Forms Of Class Notice Adequately Inform Class Members Of Their Rights

Any notice provided to Class Members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on Class members.  *See* Fed. R. Ci. P. 23(c)(2).

The proposed Long Form Notice submitted by the Parties clearly meets this reasonableness standard in all respects.  The attached Long Form Notice (1) describes the nature and status of the litigation; (2) sets forth a clear definition of the Classes; (3) sets forth the basic terms of the proposed Agreement; (4) advises members of the Classes that a Class Member may enter an appearance through an attorney if the member so desires, and of the appropriate methods to either submit a claim form, opt-out, or object to the proposed Agreement; (5) advises Class Members of the proposed time and manner for requesting exclusion and that the court will exclude from the Classes any member who requests exclusion; (6) informs Class Members of the identities of the Class Representatives, Class Counsel, and the compensation that each has applied for in this case; (7) provides members of the Classes with contact information for both Class Counsel and the Settlement Administrator; and (8) states the binding effect of a class judgment on Class Members under Rule 23(c)(3).

Moreover, the Notice Plan described above, to be effectuated by Heffler, is designed to reach as many potential Class Members as possible, and is the best notice practicable under the circumstances.  The internet publication, printed media, website, and direct notice plan (if such data is available) described above is consistent with other effective court-approved notice plans, and should easily satisfy the requirements of Rule 23 and Due Process.

Heffler is an extremely reputable class action administrator experienced in disseminating notice in similar class actions.  Moreover, the proposed Notice Plan mirrors similar plans developed and implemented by Heffler and approved by numerous federal courts in analogous cases.

In granting preliminary approval of the Agreement, the Court should also therefore approve the proposed form and method of providing notice to members of the Classes, as set forth in the attached Publication and Long Form Notices (Exhibits 3 and 4, respectively of the Agreement).

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the Parties jointly request that the Court grant the attached proposed Order, which provides:

(1) preliminary approval of the proposed settlement as set forth in the attached Agreement (Exhibit A);

(2) that members of the Classes be given notice of the pendency of this action and the proposed settlement in the form and manner proposed by the Parties in the attached Agreement (Exhibit A) and Class Notices (Exhibits 3 & 4);

(3) the scheduling of a Final Fairness Hearing, at which time the Court will consider final approval of the settlement and final entry of the attached Agreement; and

(4) such other and further relief as the Court deems just and reasonable.

DATED: January 24, 2020                    Respectfully submitted,

                                           KAMBERLAW, LLC


                    By:        */s/ Scott A. Kamber*_____
                               Scott A. Kamber
                               KAMBERLAW LLC
                               201 Milwaukee St., Ste 200
                               Denver, CO 80206
                               (212) 920-3072
                               (212) 202-6364 (fax)
                               skamber@kamberlaw.com

                               Deborah Kravitz
                               KAMBERLAW LLP
                               401 Center Street, Suite 111
                               Healdsburg, CA 95448
                               (707) 820-4247
                               dkravitz@kamberlaw.com

                               Elizabeth A. Fegan
                               150 S. Wacker Dr., 24th Floor
                               Chicago, IL 60606
                               Telephone: (312) 741-1019
                               Facsimile: (312) 264-0100
                               beth@feganscott.com

                               *Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on January 24, 2020.  Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.


By: */s/ Scott A. Kamber*
    Scott A. Kamber