# **EXHIBIT A**

## **Settlement Agreement**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MCCORMICK & COMPANY, INC., PEPPER PRODUCTS MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 2665 Case No. 15-1825 (ESH) |
| *This Document Relates To*: ALL CLASS ACTIONS | |

## SETTLEMENT AGREEMENT

This Settlement Agreement and attached exhibits (the "Settlement Agreement") dated as of January 16, 2020, is made by and among the following: on the one hand, Debbie Esparza, Carmen Pellitteri, Holly Marsh, and Catherine Grindel, ("Plaintiffs") on behalf of themselves, and on behalf of each of the Class Members of the three certified state classes (as defined herein); and on the other, Defendant McCormick & Company, Incorporated ("McCormick" or "Defendant") and, together with Plaintiffs, the "Settling Parties", by and through their respective counsel. This Settlement Agreement is intended by the Settling Parties to resolve, discharge and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Settlement Agreement.

1.      **DEFINITIONS**

In addition to the foregoing defined terms, the following terms shall have the meanings as set forth below:

1.1 The "Action" means Multi-District Litigation No. 2665 (*In Re: McCormick & Company, Inc., Pepper Products Marketing and Sales Practices Litigation,* 1:15-mc-1825 (ESH) (U.S. District Court for the District of Columbia) ("MDL 2665"). MDL 2665 includes the Consolidated Class Action Complaint (Dkt. No. 34) and any amendments thereto, and all individual actions transferred and coordinated with MDL 2665 by the Judicial Panel on Multi-District Litigation ("JPML") (collectively, the "Individual Actions"), specifically:

- *Dupler v. McCormick & Company, Inc.,* No. 2:15-cv-3454 (E.D.N.Y.)

- *Jung v. McCormick & Company, Inc.,* No. 1:15-cv-01148 (D.D.C.)

- *Bunting v. McCormick & Company, Inc.,* No. 3:15-cv-1648 (S.D. Cal.)

- *Marsh v. McCormick & Company, Inc.,* No. 2:15-cv-1625 (E.D. Cal.)

- *Pellitteri v. McCormick & Company, Inc.,* No. 9:15-cv-81521 (S.D. Fl.)

- *Vladimirsky v. McCormick & Company, Inc.,* No. 1:15-cv-08102 (N.D. Ill.)

- *Bittle v. McCormick & Company, Inc.,* No. 3:15-cv-00989 (S.D. Ill.)

- *Barnes v. McCormick & Company, Inc.,* No. 3:15-cv-01224 (S.D. Ill.)

- *Theis v. McCormick & Company, Inc.,* No. 3:15-cv-01228 (S.D. Ill.)

- *Linker v. McCormick & Company, Inc.,* No. 4:15-cv-01340 (E.D. Mo.)

- *Thornton v. McCormick & Company, Inc.,* No. 3:15-cv-00566 (Nev.)

- *Ferreri v. McCormick & Company, Inc.,* No. 7:15-cv-06760 (S.D.N.Y.)

- *Marron v. McCormick & Company, Inc.*, No. 1:16-cv-0104 (D.D.C.)

- *Fernandez v. McCormick & Company, Inc.*, No. 1:16-cv-0117 (D.D.C.)

- *Gerstnecker v. McCormick & Company, Inc.*, No. 2:15-cv-01671 (W.D. Pa.)

1.2  "Black Pepper Products" means the black pepper products marketed and sold by McCormick, whether under the McCormick® brand or a Private Label Brand, as set forth in Exhibit 1.

1.3  "Claim" has the meaning set forth at paragraph 4.2 below.

1.4  "Claim Form" means the document to be submitted by Class Members seeking compensation pursuant to this Settlement Agreement. The Claim Form will be available online at the Settlement Website (defined at paragraph 1.33 below) and the contents of the Claim Form will be approved by the Court in connection with the Court-Ordered Allocation Plan (defined below).

1.5  "Claimant" means a Class Member who submits a claim as described in paragraph 4.2 of this Settlement Agreement.

1.6  "Class Counsel" means Beth Fegan of Fegan Scott, LLC and Scott A. Kamber of KamberLaw LLC.

1.7  "Class Representatives" means Debbie Esparza, Carmen Pellitteri, Holly Marsh, and Catherine Grindel.

1.8  "Court" means the United States District Court for the District of Columbia.

1.9  "Defendant's Counsel" means David H. Bamberger and DLA Piper LLP (US).

1.10  "District Court Final Approval Date" means the day on which the Court's Settlement Approval Order and Final Judgment (defined at paragraph 1.28 below) is entered.

1.11  "Effective Date" means the first date after which all of the following events and conditions have been met or have occurred:  (a) the Settlement Agreement is executed and delivered by/to all Settling Parties and approved by the Court; (b) the Court enters the Final Judgment and Order Approving Settlement ("Final Judgment"); (c) the Final Judgment becomes

"Final," with "Final" meaning the occurrence of any of (i) the expiration of the time for an appeal or petition for review of the Final Judgment, or (ii) in the event an appeal or petition is filed, final affirmance of the Final Judgment following review, or final dismissal of any appeal or petition from the Final Judgment.  If the Final Judgment is set aside, materially modified, vacated or reversed by the Court or by an appellate court, and is not fully reinstated on further appeal, then the Final Judgment does not become "Final" and the Effective Date cannot occur.  The sole exceptions are if the Final Judgment is modified as to the amount of fees or costs payable to Plaintiffs' Counsel or a reduction in the incentive awards payable to Plaintiff.  A change in those amounts shall not preclude the Final Judgment from becoming Final.  In the event the Final Judgment is modified in a manner that would preclude the Final Judgment from becoming Final, the Settling Party or Parties aggrieved by such modification—"aggrieved" meaning, for Plaintiffs, a material reduction in benefits available to Class Members, and for Defendant, an increase in its monetary obligations or a material modification in the definition of Released Claims or the scope of the Classes—shall have the option, at its or their sole discretion, to accept the modification and allow the Final Judgment as so modified to become Final.  If such a Settling Party wishes to exercise this option, that Settling Party shall file a written notice of waiver with the Court within ten (10) days after such Settling Party is notified by applicable court process of the modification. The modified Final Judgment shall not become Final unless all aggrieved Settling Parties file such a waiver.  If all aggrieved Settling Parties file waivers, then the Final Judgment shall become Final on the later of the date all such waivers are filed, or all of the conditions of this paragraph are satisfied.

1.12  "Fairness Hearing" and/or "Final Approval Hearing" means the final hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy,

and reasonableness of the Settlement in accordance with applicable jurisprudence, to be held after notice has been provided to the Classes in accordance with this Settlement, and where the Court will:  ( (a) determine whether to grant final approval to the Settlement; (b) rule on Class Counsels' Application for a fee award and reimbursement of costs; and (c) consider whether to enter the Final Approval Order.

1.13  "Fee and Expense Award" means the amount awarded to Class Counsel by the Court for attorneys' fees, costs, and expenses, which shall be distributed by Class Counsel, in a manner consistent with counsels' contribution to the benefit obtained for the Classes.

1.14  "Incentive Award" means any award sought by application to and approved by the Court that is payable to the Class Representatives, paid from the Cash Settlement Fund, which shall be distributed by Class Counsel to the Class Representatives.

1.15  "Media Plan" means a constitutionally appropriate notice plan, substantially as described in Exhibit 2 hereto (Declaration of Jeanne C. Finegan), developed by the Settlement Administrator (defined at paragraph 1.26 below) to expose a majority percentage of the Classes to the Notice and to command the Class Members' attention when the Publication Notice appears on the internet or in printed media.

1.16  "Notice and Other Administrative Costs" means all costs and expenses actually incurred by the Settlement Administrator in the publication of class notices, establishment of the Settlement Website, and the processing, handling, reviewing, and paying of claims made by Claimants.

1.17  "Notice Date" means the date upon which notice is initially sent.

1.18  "Parties" means Debbie Esparza, Carmen Pellitteri, Holly Marsh, and Catherine Grindel ("Plaintiffs"), and McCormick & Company, Incorporated.

1.19 "Preliminary Approval" means the order to be entered by the Court that preliminarily approves the terms and conditions of this Settlement Agreement, , approves the Long Form Notice and the Short Form Notice, and sets the Fairness Hearing, as provided for in paragraph 6.1.

1.20 "Preliminary Approval Date" means the date on which the Court enters an Order granting Preliminary Approval.

1.21 "Private Label Brand" means the Black Pepper Products sold under the private labels of McCormick's retail customers, as set forth on the list attached hereto as Exhibit 1.

1.22 "Proof of Purchase" means acceptable documentation that provides proof of purchase of Black Pepper Products. Such acceptable documentation will consist of receipts, copies of receipts, loyalty card records, containers bearing the sku of Black Pepper Products defined by paragraph 1.2 and listed in Exhibit 1 or, alternatively, claim forms signed under penalty of perjury.

1.23 "Publication Notice" means the proposed short form notice, substantially in the form as that attached hereto and made a part hereof as Exhibit 3, to be approved by the Court and to be published in accordance with paragraph 6.1 of this Settlement Agreement.

1.24 "Released Parties" means those persons and entities identified as "Released Parties" in paragraph 8.1 of the Settlement Agreement.

1.25 "Releasing Parties" means those persons and entities identified as "Releasing Parties" in paragraph 8.1 of this Settlement Agreement.

1.26 "Settlement Administrator" means Heffler Claims Group and its successors and assigns. The Settlement Administrator shall be subject to and comply with this Settlement Agreement.

1.27 "Settlement Agreement" means this Settlement Agreement, including all attached exhibits.

1.28 "Settlement Approval Order and Final Judgment" means an order and judgment issued and entered by the Court, approving this Settlement Agreement as binding upon the Parties and the Class Members and dismissing all claims asserted in the Action by the three (3) certified state classes with prejudice, and setting the amount for an award of attorneys' fees. Class Counsel represents that it will not apply for attorneys' fees that exceed 25% of the $2.5 million value of the Settlement Fund as defined in paragraph 1.31 below, exclusive of any interest accumulated in the fund. Class Counsel may also seek an award of costs and expenses to be paid from the Settlement Fund. The Settlement Approval Order and Final Judgment shall constitute a judgment within the meaning and for purposes of Rule 54 of the Federal Rules of Civil Procedure. The Parties jointly shall request the Court to enter the proposed Settlement Approval Order and Final Judgment.

1.29 "Class Members" or "Classes" means:

All persons residing in California, Florida, or Missouri who purchased any McCormick® brand or Private Label Brand Black Pepper Product(s) within the Class Period. Excluded from this definition are the Released Parties, the Court, and its personnel. Class Members who exclude themselves from the Settlement, pursuant to the procedures set forth in paragraph 4.6 of the Settlement Agreement, shall no longer thereafter be Class Members and shall not be bound by this Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of this Settlement Agreement or object thereto.

1.30 "Class Period" means the period of time from January 1, 2015 through the Preliminary Approval Date.

1.31 "Settlement Fund" means the total cash commitment of Defendant for purposes of this settlement, as described in paragraph 4.1 of this Settlement Agreement, with a total value of two million five hundred thousand dollars ($2,500,000), paid by Defendant for purposes of effectuating the settlement for the Classes , the payment and disposition of which is subject to the provisions of this Settlement Agreement, including paragraphs 4.2 to 4.4 below.

1.32 "Settlement Notice" means the proposed long form notice substantially in the form as that attached hereto and made a part hereof as Exhibit 4, to be approved by the Court and to be disseminated in accordance with paragraph 6.1.6 of the Settlement Agreement.

1.33 "Settlement Website" means a website operated and maintained by the Settlement Administrator solely for purposes of making available to the Class Members the documents, information, and online claims submission process referenced in paragraphs 4.2 through 4.6 below.

1.34 "Valid Claim Form" means a Claim Form submitted by a Class Member that (a) is submitted in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement; (b) is accurately, fully and truthfully completed and executed with all of the information requested in the Claim Form by a Class Member on the initial submission; (c) is signed physically or by e-signature by a Class Member or Person with authority to sign for and bind a Class Member, subject to penalty of perjury; (d) is returned via mail and post-marked by the Claims Deadline or received by mail or on-line submission by midnight of the Claims Deadline Eastern Standard Time and is determined to be valid by the Settlement Administrator.

1.35 "Household" means any number of Persons cohabitating and related by blood or marriage in the same dwelling unit or physical address.

1.36 As used herein, the plural of any defined term includes the singular thereof and the singular of any defined term includes the plural thereof, as the case may be.

## 2.   LITIGATION BACKGROUND

2.1 On December 8, 2015, the United States Judicial Panel on Multidistrict Litigation ordered that the then-pending cases in this Action be centralized in the United States District Court for the District of Columbia. *See* December 8, 2015 Transfer Order. *See* Dkt No. 1.

2.2 On March 2, 2016, Plaintiffs filed their Consolidated Amended Class Action Complaint ("CAC") alleging that McCormick improperly implemented a price increase by decreasing the quantity in certain McCormick® brand black pepper containers and certain store-branded black pepper containers which were also supplied by McCormick. Plaintiffs also alleged that McCormick misled them about the reduction in quantity by keeping the non-transparent containers the same size in violation of the Sherman Act (15 U.S.C. § 1); violations of the Federal Food, Drug and Cosmetic Act (FDCA) Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 403(d); the Code of Federal Regulations Title 21 part 100, *et seq.*; the Lanham Act, 15 U.S.C. § 1125, and those similar deceptive and unfair practices and/or consumer protection state laws in twenty-five states;[1] and Unjust Enrichment. *See* Dkt. No. 34. Wal-Mart Stores, Inc. ("Wal-Mart") was named as an additional Defendant.

2.3 On March 30, 2016, McCormick filed its Motion to Dismiss the CAC filed by the consumer Plaintiffs. *See* Dkt No. 38. In addition, then-Defendant Wal-Mart filed its Motion to Dismiss the CAC filed by the consumer Plaintiffs. *See* Dkt No. 40.

2.4 On April 27, 2016, Plaintiffs filed their Consolidated Response in Opposition to Defendants' Motions to Dismiss. *See* Dkt No. 43.

2.5 On May 18, 2016, Defendant McCormick, and then-Defendant Wal-Mart, filed their respective Replies in Support of their Motions to Dismiss. *See* Dkt Nos. 47 and 49.

2.6 On September 7, 2016, Plaintiffs Marron, Hilla, Ortiz, and Ferreri voluntarily dismissed themselves from the above-captioned litigation without prejudice to any rights they may

---

[1] The CAC included unfair practices and/or consumer protection state law claims under the laws of the following jurisdictions: Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Idaho, Illinois, Iowa, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Pennsylvania, South Dakota, Washington, and Wisconsin.

have individually and to their rights as unnamed members of the putative classes in the litigation. *See* Dkt No. 68.

2.7  On November 11, 2016, the Court granted in part and denied without prejudice in part Defendants' Motions to Dismiss. Specifically, Count I - the Sherman Act claim was dismissed with prejudice. *See* Dkt Nos. 97 and 98.

2.8  On December 9, 2016, Plaintiffs filed their Motion for Reconsideration of the Court's Order on the Defendants' Motions to Dismiss, with the matter being fully briefed by the then-parties. *See* Dkt Nos. 105, 110, 112, 116.

2.9  On March 21, 2017, the Court granted the Plaintiffs' Motion for Reconsideration, and amended its Order to reflect Count I was dismissed without prejudice and allowing the Plaintiffs to file their Second Amended Consolidated Class Action Complaint. *See* Dkt Nos. 126 and 127.

2.10  On March 21, 2017, Plaintiffs filed their Second Amended Consolidated Class Action Complaint ("Second ACC"). *See* Dkt Nos. 128 and 129.

2.11  On April 7, 2017, McCormick and Wal-Mart moved to dismiss the Second ACC. *See* Dkt Nos. 132 and 134. Plaintiffs filed their Opposition on May 5, 2017, Dkt No. 138 and the Defendants filed their Replies on May 19, 2017. *See* Dkt Nos. 140 and 141.

2.12  On June 13, 2017, the Court dismissed Count 1 – the Sherman Act, with prejudice. *See* Dkt Nos. 148.

2.13  On July 5, 2017, McCormick and Wal-Mart each filed an Answer to the Second ACC, in which they respectively denied the material allegations of the Second ACC and any and all liability with respect to all facts and claims alleged therein, and further denied that any of the putative Class Members or anyone has suffered any harm or damage or is entitled to any monetary relief or any other relief whatsoever in connection with the Action. *See* Dkt Nos. 151 and 153.

2.14 Class Counsel represents that it conducted an examination and investigation of the facts and law relating to the matters in this Action, including, but not limited to, engaging in discovery, review and analysis of over 54,158 pages of documents of Defendants, and relevant third parties' (including suppliers and retailers), documents and data, and conducting a damage analysis.

2.15 On July 10, 2019, after a complete briefing of the issue of class certification by the Parties, the Court granted class certification to three state consumer protection classes, for the States of California, Florida, and Missouri, leaving McCormick the only remaining Defendant. *See* Dkt No. 212.

2.16 On July 24, 2019, Defendant McCormick filed its Petition for Interlocutory Appeal from the Court's July 10, 2019 Order to the District of Columbia Circuit Court of Appeals and a Motion to Stay the proceedings. *See* Dkt No. 215.

2.17 On September 20, 2019, the United States Court of Appeals denied Defendant McCormick's petition. *See* Dkt No. 220.

2.18 Class Counsel also represents that they evaluated the merits of the Parties' contentions and evaluated this Settlement, as it affects all Parties, including Class Members. The Class Representatives and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, represent that they are satisfied that the terms and conditions of this Settlement are fair, reasonable, and adequate, and that this Settlement is in the best interest of the Class Members.

2.19 Defendant, while disclaiming all liability with respect to all claims, considers it desirable to resolve the three certified classes on the terms stated herein in order to avoid further

expense, inconvenience and burden and, therefore, has determined that this Settlement on the terms set forth herein is in Defendant's best interests.

2.20  The Settlement Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any Party of the truth of any allegation or the validity of any purported claim or defense asserted in any of the pleadings in the Action, or of any fault on the part of Defendant, and all such allegations expressly are denied.

2.21  Substantial settlement negotiations have taken place between the Parties, including three (3) mediation sessions (on October 27, 2016 and November 29, 2017, and January 19, 2019), conducted with the assistance of Honorable James Robertson (Ret.), JAMS, in Washington DC; as well as a mediation session on October 2, 2019, conducted with the assistance of Nancy Lesser of PAX ADR, in Washington, D.C.

2.22  In consideration of the covenants and agreements set forth herein, and of the releases and dismissals of claims as described below, and other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged by each of the Parties, the Class Representatives, on behalf of themselves and the Class Members, and Defendant agree to the Settlement described herein, subject to Court approval, under the following terms and conditions.

3.      **BENEFITS OF THE SETTLEMENT**

3.1  Benefits to Classes.  As explained in detail below, McCormick will make the following benefits available to Class Members:

3.1.1  Defendant will pay the total sum of Two Million Five Hundred Thousand Dollars ($2,500,000) into a "common fund" (hereafter, the "Settlement Fund"), from which the costs of providing notice to the Classes and administering the settlement, including all Notice and Other Administrative Costs, and also the fees, costs and expenses

awarded to Class Counsel, shall be deducted, and the remainder of which shall be available for Class Members to claim according to the terms of this Settlement Agreement and for any court-approved incentive compensation to Representative Plaintiffs.

        3.1.2  The payment referenced in paragraph 3.1.1 shall be made to an escrow account pursuant to the terms and conditions of an escrow agreement to be entered into with Heffler Claims Group as escrow agent, subject to the approval of Plaintiffs and Defendant and the Court.  All funds held in the escrow account shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and/or further Order(s) of the Court.

    3.2  <u>Opinion of Class Counsel</u>.  Class Counsel have analyzed the benefits to be obtained under the terms of the proposed Settlement and have considered the costs, risks, and delays associated with the continued prosecution of the Action and likely appeals, as well as the merits of the defenses asserted by Defendant and the issues associated with sustaining class certification and prevailing on an inevitable Motion for Summary Judgment in this matter.  Class Counsel believe that, in consideration of all of the risks and circumstances, and after good faith, prolonged, serious, and contentious arms-length negotiations in multiple mediation sessions with Defendants with the assistance of two different mediators, the proposed settlement is fair, reasonable, adequate and in the best interests of the Classes.  In making these statements and submitting a declaration filed concurrently herewith, Plaintiffs' Counsel are not making any admission of fact or law in regard to liability, fault allocation, or damages with respect to the Action.

    3.3  <u>Opinion of Defendant</u>.  McCormick has concluded that it is in its best interests that the claims of the three certified classes be settled on the terms embodied in the Settlement Agreement.  Defendant reached that conclusion after:  (1) analyzing the factual and legal issues in the three

certified classes and considering the uncertainty of litigation; (2) determining that further conduct of the litigation through trial and any possible appeals would be protracted and expensive; and (3) considering the benefits of permitting McCormick to conduct its business unhampered by the distractions of continued litigation. McCormick does not admit, and it expressly denies, that it engaged in any wrongful conduct or violated any law, as alleged or otherwise.

**NOW, THEREFORE, IT IS HEREBY AGREED** by and between the Settling Parties, through their respective counsel, that the Action and the Released Claims be finally and fully settled, compromised and released, and the actions represented by the three certified classes shall be dismissed on the merits with prejudice, on the terms set forth herein.

4.    **MONETARY RELIEF AND PRODUCT RETURN**

4.1 <u>Monetary Fund</u>.  Within 30 days after the full execution of this Settlement Agreement, McCormick will establish a Settlement Fund in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000), as provided in paragraph 3.1.1 of this Settlement Agreement.

4.2 <u>Claims From the Settlement Fund</u>.    After deducting all Notice and Other Administration Costs, the payment of fees, costs and expenses to Class Counsel, and any court-approved incentive compensation paid to Representative Plaintiffs, the remainder, which shall be referred to herein as the "Available Settlement Funds," shall be available to be claimed by Class Members on the following terms:

4.2.1 Class Members possessing proof that they purchased Black Pepper Products—such proof consisting of receipts, copies of receipts, Black Pepper Products containers, loyalty card records, or similar indicia deemed acceptable by the Settlement Administrator in its sole discretion, may receive the greater of Four Dollars ($4.00) per container or their actual cost per container, for each container of Black Pepper Products for

which they have proof of purchase. These claims will be referred to herein as "Proof of Purchase Claims," and each claimant, a "Proof of Purchase Claimant."

4.2.2 Class Members lacking proof of purchase, but who attest under penalty of perjury on a claim form that they purchased one or more containers of Black Pepper Products and state the date(s) on which they purchased the container(s), may receive Four Dollars ($4.00) per container for up to two (2) containers of Black Pepper Products they claim to have purchased. These claims will be referred to herein as "No Proof Claims," and each claimant, a "No Proof Claimant."

4.2.3 Only one Claim per Household is eligible.

4.2.4 If the Available Settlement Funds are insufficient to pay all valid claims, then the Settlement Administrator will reduce claims *pro rata*, as follows:

(a)   Valid Proof of Purchase Claims shall be paid as provided in this sub-paragraph before the payment of No Proof Claims. If the full amount of valid Proof of Purchase Claims would consume no more than two-thirds of all Available Settlement Funds, then those Proof of Purchase Claims shall be paid in full. If the full amount of valid Proof of Purchase Claims would consume more than two-thirds of the Available Settlement Funds, then all valid Proof of Purchase Claims will be reduced *pro rata* so as to constitute no more than two-thirds of the Available Settlement Funds.

(b)   Available Settlement Funds remaining after valid Proof of Purchase Claims are paid as described in sub-paragraph 4.2.4 (a) above shall be divided *pro rata* among valid No Proof Claims on a per container basis, but not to exceed two containers per No Proof Claim.

4.2.5.  If Available Settlement Funds remain after paying all valid Proof of Purchase Claims and valid No Proof Claims in full, then any remaining Available Settlement Funds will be paid out pro rata to all claimants. *Only* if an amount of remaining funds is too small to warrant a supplemental distribution to claimants (*i.e.*, because a small number of checks issued in the initial or a supplemental distribution are uncashed by their expiration dates), an application shall be made to the Court by the Parties for authorization to distribute to case-related charitable organizations to be approved by the Court.   Under no circumstances, once this Settlement Agreement becomes Final, will any portion of the settlement funds be returned to Defendant.

4.3  Provisions for Direct Deposit and Electronic Transfer.  The Settlement Administrator will provide Class Members the option of receiving claimed benefits by check, direct deposit into such Class Member's bank account if the Class Member elects to furnish the Settlement Administrator with the necessary bank routing and account numbers, or other available e-payment options that may be feasible at the time of distribution and agreed to by the Parties at the time of distribution, such as Zelle, Venmo and/or Paypal.  The Settling Parties shall have no responsibility or liability in connection with the fulfillment of such requests.  The Claims Administrator shall have the discretion to incentivize electronic claims payments by providing an additional One Dollar ($1.00) payment per claimant who consents to receive electronic payment instead of a mailed check.

4.4  Uncashed Checks.  For Class Members who elect to receive their benefits by check, the checks will state on their face that they must be cashed or deposited within ninety (90) days of the date printed on the check, after which the checks will become void.  The funds from any uncashed or undeliverable checks will be returned to the Settlement Administrator for distribution as otherwise outlined above, in paragraph 4.2.

4.5 <u>Claim Forms</u>. Claim Forms shall be available from the Settlement Administrator, as set forth in the Notice to the Classes. The Settling Parties expect that the vast majority of claims will be completed online through a website to be set up by the Settlement Administrator, but the Settlement Administrator also will make hard-copy Claim Forms available to Class Members who request them. Completed Claim Forms shall be due to the Settlement Administrator by the date set by the Court in the Preliminary Approval Order and described in the Notice (the "Claims Deadline").

4.6 <u>Opt-Out Forms</u>. Class Members who wish to opt out of the settlement may submit an Opt-Out Form or letter to the Settlement Administrator prior to the deadline set by the Court for such action and described as such in the Notice and Summary Notice. If a Class Member submits both a Claim Form and an Opt-Out Form, the Settlement Administrator shall disregard the Opt-Out Form.

4.7 <u>Anti-Fraud Measures</u>. The claims process shall employ standard antifraud measures to be determined and implemented by the Settlement Administrator, which may include consideration of information provided by McCormick, if any, regarding Class Members' purchases of Black Pepper Products. The ultimate decision as to the validity and amount of any claim will be made by the Settlement Administrator to be construed liberally in favor of payment. However, if Class Counsel and defense counsel agree on the payment of a claim rejected by the Settlement Administrator, the Settlement Administrator shall pay such claims.

4.8 <u>Disbursement of Settlement Funds.</u> Upon the Settlement Agreement becoming Final, the Settlement Administrator will pay claims as soon as practicable after the Effective Date of the Settlement, per the terms of paragraph 1.11.

4.9 <u>Privacy</u>.  The Settlement Administrator shall take reasonable measures to the extent permitted by law to assert and to protect the privacy rights of Class Members, including by maintaining the confidentiality and security of and preventing the unauthorized access or acquisition of any financial or personal information submitted in connection with any claim for benefits pursuant to this Settlement Agreement.  In the event of any unauthorized access to or acquisition of personal information concerning any Class Member as a direct result of the intentional or negligent acts or omissions of the Settlement Administrator, the Settlement Administrator shall be responsible for complying with any privacy, data security, or breach notification obligations under state or federal law, and will be solely responsible for directly providing notice to state agencies, affected Class Members, and/or other persons or entities.

4.10 <u>Taxes on The Settlement Fund</u>.  The Settlement Fund shall constitute a qualified settlement fund within the meaning of Treasury Regulations Sections 1.468B-1 through 1.468B-5, 26 C.F.R. §§ 1.468B-1 through 1.468B-5 (1992).  The Settling Parties shall treat the Settlement Fund as qualified settlement funds for all reporting purposes under the federal tax laws.  For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the Settlement Administrator shall be the "Tax Escrow Agent".  As the Tax Escrow Agent, the Settlement Administrator shall timely and properly file all required federal and state informational and other tax and informational returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. Section 1.468B-2(k)).  Such returns shall be consistent with this paragraph and in all events shall reflect that all taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the income earned by the Settlement Fund.  Taxes and tax expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and paid without

prior order from the Court. The Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from the income earned by the Settlement Fund any funds necessary to pay such taxes, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. Section 1.468B2(1)(2)). The Settlement Administrator shall maintain accurate records of all expenditures made pursuant to this paragraph, and shall provide the records upon request to Class Counsel and Defendant's Counsel. None of the Settling Parties, or any of their counsel, shall have any responsibility for the payment of taxes described in this paragraph. The Settling Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph. The Settling Parties further agree that the costs of claims administration will be excluded from the Settlement Fund for tax purposes.

4.11 <u>Discretion of Settlement Administrator</u>. Heffler Claims Group shall have discretion to carry out the intent of the Settlement Agreement, subject to the terms of the escrow agreement described in paragraph 3.1.2 and applicable Orders of the Court.

4.12 <u>Continuing Jurisdiction Over Direct Relief</u>. Disputes regarding this Agreement or disbursement of the Settlement Fund shall be within the jurisdiction of the Court, *custodia legis*, until such time as the Settlement Fund has been distributed pursuant to this Settlement Agreement.

## 5. CORPORATE POLICIES

5.1 In addition to denying the allegations made in the Action, McCormick asserts that at all times, it has conducted its business in full compliance with all applicable United States federal and state laws governing its business.

**6.     ENTRY OF PRELIMINARY APPROVAL ORDER, NOTICE TO THE CLASSES, AND ENTRY OF FINAL JUDGMENT**

6.1     <u>Motion for Preliminary Approval</u>.  Promptly upon execution of this Settlement, Plaintiffs shall submit this Settlement Agreement to the Court and shall apply to the Court for entry of the Preliminary Approval Order, which includes provisions that, among other things, will:

6.1.1 Preliminarily approve the Settlement Agreement as being fair, reasonable, adequate and the product of good faith negotiations;

6.1.2 Approve the Claim Form substantially in the form attached as Exhibit 5, and approve Heffler Claims Group as the Settlement Administrator;

6.1.3 Approve the Long Form Notice and Short Form Notice substantially in the form attached as Exhibits 3 and 4;

6.1.4 Order that the Short Form Notice be disseminated in the manner set forth in the Media Program attached as Exhibit 2 and in accordance with the Preliminary Approval Order;

6.1.5 Provide that any person falling within the definition of the Classes who desires to be excluded from the Classes must request exclusion by submitting a timely and valid exclusion request, in compliance with the instructions in the Long Form Notice, to the Settlement Administrator by the date specified in the Preliminary Approval Order, which shall fall not later than thirty (30) days before the Fairness Hearing;

6.1.6 Provide that persons falling within the definition of the Classes who do not file valid and timely requests for exclusion will be:  (i) bound by the Final Judgment dismissing the Action on the merits and with prejudice; and (ii) permanently barred from commencing, prosecuting or participating in the recovery in any direct or representative

action, or any action in any other capacity, and from asserting any of the Released Claims, as further described in paragraph 8 of this Settlement Agreement;

6.1.7 Provide that, pending final determination of whether the Settlement Agreement should be approved, neither the Plaintiffs nor any Class Member, either directly, representatively, or in any other capacity, shall commence, continue to pursue, or prosecute any action or proceeding in any court or tribunal asserting or purporting to assert any of the Released Claims against Defendants or any other of the Released Parties;

6.1.8 Find that the Long Form Notice to be given in accordance with the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all members of the Class, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable law;

6.1.9 Order that notice to persons falling within the definition of the Classes shall be structured to be as efficient as possible and to make maximum use of notice by e-mail and other electronic means and that such notice shall be undertaken by the Settlement Administrator;

6.1.10 Schedule a Fairness Hearing, no earlier than the date permitted under the Class Action Fairness Act, 28 U.S.C. § 1715(d), to consider and determine whether the settlement proposed under the terms of this Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether the Final Judgment approving the Settlement Agreement and resolving the claims in the three certified classes should be entered, and to consider the request for an award of attorneys' fees and reimbursement of expenses;

6.1.11  Provide that the Fairness Hearing on this Settlement Agreement and any request for an award of attorneys' fees and reimbursement of expenses may, from time-to time and without further notice to the Classes other than Class Members who have timely submitted objections, be continued or adjourned by order of the Court;

6.1.12  Provide that objections by any Class Member to (i) the proposed Settlement, (ii) entry of Final Judgment, (iii) entry of an order approving the Settlement Agreement, or (iv) any proposed award of attorneys' fees and reimbursement of expenses to Class Counsel shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Fairness Hearing only if, by the date set forth in the Preliminary Approval Order, which shall be no later than thirty (30) days before the Fairness Hearing, such objector files with the Settlement Administrator a written notice of his, her, or its intention to appear, states the basis for the objections, and includes information identifying any prior class action objections filed by the objector or the objector's counsel;

6.1.13  Provide that, on and after the Effective Date, all Class Members, whether or not they file a Claim Form or sign a release, shall be barred from asserting any Released Claims against any of the Released Parties, and each and all Class Members shall conclusively be deemed to have released and forever discharged any and all such Released Claims as against all of the Released Parties, in the manner described in paragraph 8 of this Settlement Agreement.

6.2  Class Action Fairness Act Notices.  Within ten (10) days after Plaintiffs move the Court for preliminary approval of the settlement, McCormick shall provide or cause to be provided notices of the settlement to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

6.3 <u>Cooperation</u>.   McCormick shall cooperate in providing to the Settlement Administrator, to the extent reasonably available, information such as names, addresses, and e-mail addresses, or such other information as the Settlement Administrator requests, for the notice and settlement administration process, which shall be provided to the Settlement Administrator pursuant to a confidentiality agreement.

6.4 <u>Motion for Final Judgment</u>.   If, after the Fairness Hearing, the Court approves the Settlement Agreement, then counsel for the Settling Parties shall request that the Court enter Final Judgment, the text of which shall be agreed upon by Plaintiffs and Defendant before submission to the Court:

> (a) approving this Settlement Agreement and its terms as fair, reasonable and adequate within the meaning of Fed.R.Civ.P. 23;
> (b) reserving to the Court exclusive jurisdiction over this Settlement Agreement;
> (c) and dismissing the three certified Classes' claims with prejudice.

## 7.   NO ADMISSION OF FAULT, LIABILITY, OR WRONGDOING

7.1 <u>No Acknowledgement of Liability or Wrongdoing</u>.   McCormick enters into this Settlement Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind.  McCormick continues to deny all of the material allegations in the Action and to assert that Plaintiffs' claims are without merit.

7.2 <u>No Inference of Liability or Wrongdoing</u>.  Neither this Settlement Agreement, nor any of the negotiations or proceedings connected with them, nor any other action taken to carry out this Settlement Agreement by any of the Settling Parties, shall be construed as, or shall be used as, or shall raise any presumption or inference of, an admission or concession by or against or respecting the Defendant or any of the Released Parties as to the truth of any of the allegations in the Action, or of any liability, fault or wrongdoing.

7.3 <u>The Settlement is Not Evidence of Liability or Wrongdoing</u>.   This Settlement Agreement, its terms or provisions, and the negotiations or proceedings connected with them shall not be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or be used to create any inference or presumption of liability or an admission of any kind by the settling Defendant or any of the Released Parties, except as may be necessary to enforce the terms of this Settlement Agreement.

**8.     RELEASE**

8.1 As of the Effective Date and in consideration of this Settlement Agreement and the benefits extended to the Classes, (1) the Defendant and all of its present and former, direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups, joint ventures, partnerships, and all of its and their present and former officers, directors, shareholders, partners, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives, and (2) all persons and entities who sold Black Pepper Products, whether McCormick® brand or Private Label Brand, to any persons residing in the states of California, Florida or Missouri during the Class Period, as well as all of their present and former direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups, joint ventures, partnerships, and all of their respective present and former officers, directors, shareholders, partners, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives (collectively the "Released Parties") shall be released and forever discharged by the Representative Plaintiffs, for themselves and as the representatives of each Class Member, and by each Class Member, on behalf of himself or herself and on behalf of their respective present and former, direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups,

partnerships, joint ventures and all of their respective present or former officers, directors, shareholders, partners, employees, agents, servants, assignees, heirs, successors, insurers, indemnitees, attorneys, transferees, and/or representatives (collectively, the "Releasing Parties") from any and all claims, demands, rights, liabilities, suits, or causes of action, known or unknown, as of the Effective Date, that (1) were or could have been asserted in the complaints filed for the three state certified classes, or (2) are based upon, arise out of, or reasonably relate to, the subject matter of the Action or any part thereof (collectively, the "Released Claims"). Released Claims do not, however, include any claims for personal injury.

8.2   Except as excluded in paragraph 8.1, the Released Claims include any unknown claims that reasonably could have arisen out of the same facts alleged in the complaints filed on behalf of the three certified state classes that the Class Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement. With respect to the Released Claims only, the Class Members stipulate and agree that, upon the Effective Date, the Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

8.3   The Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, but

upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, for damages, injunctive relief, rescission, disgorgement, or restitution or any other right, remedy, or relief of every nature and description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule, or regulation, including the law of any jurisdiction outside the United States, that were brought or could have been brought in the complaints filed on behalf of the three certified state classes without regard to the subsequent discovery or existence of such different or additional facts.

8.4 <u>Continuing Jurisdiction</u>.  Except for the enforcement of the Final Judgment entered pursuant to this Settlement Agreement, the Releasing Parties shall be barred from prosecuting any proceeding against any of the Released Parties with respect to any Released Claim.  The Court shall retain jurisdiction to enforce the Final Judgment, releases, and bars to suits contemplated by this Settlement Agreement.  It is further agreed that the Settlement Agreement and the Final Judgment may be pleaded as a complete defense to any proceeding subject to this paragraph.

## 9.    EXCLUSION (OPTING-OUT) FROM THE CLASSES

9.1  Any person falling within the definition of the Classes who does not wish to participate in the settlement and be bound by the dismissals and releases provided for in this Settlement Agreement must request exclusion from applicable Classes.  A request for exclusion must state: (1) the name, address, and telephone number of the person requesting exclusion and (2) that the person wishes to be excluded from the Classes.  The exclusion request must be sent by mail or e-mail to the Settlement Administrator and postmarked or e-mailed on or before the date specified

in the Preliminary Order. The Settlement Administrator shall deliver copies of any and all requests for exclusion to Class Counsel and Defendants' Counsel. The Settlement Administrator shall make such deliveries on a weekly basis and shall ensure that the final such delivery is received by Class Counsel and McCormick's counsel at least thirty (30) days before the Fairness Hearing. Class Counsel shall file any and all such requests for exclusion with the Court at or before the Fairness Hearing. All persons who submit valid and timely requests for exclusion in the manner set forth in this paragraph 9 shall have no rights under this Settlement Agreement, shall not share in the distribution of the Settlement Fund, and shall remain subject to efforts to enforce any agreements with McCormick. All persons falling within the definition of the Classes who do not request exclusion in the manner set forth in this paragraph shall be Class Members and shall be bound by this Settlement Agreement and the Final Judgment. Any person falling within the definition of the Classes who timely requests exclusion shall, upon approval of the Court, be excluded from the classes certified pursuant to Fed. R. Civ. Proc. 23(b)(3).

**10.    ATTORNEYS' FEES AND DISBURSEMENT OF EXPENSES**

10.1 <u>Application for Attorneys' Fees and Expenses</u>.  Class Counsel may apply and anticipate applying to the Court at the Fairness Hearing for an award of attorneys' fees and reimbursement of their expenses and costs from the Settlement Fund in an amount to be determined by the Court as a percentage of the entire value of the settlement, and, as a common fund, in accordance with applicable law. The Long Form Notice shall include the amount of fees and costs that Class Counsel plan to seek, and Class Counsel will file a separate motion with the Court requesting an award of attorney fees and costs at least two weeks *prior to* the deadline for Class Members to object to the settlement. Plaintiffs and Class Counsel agree that they will not seek to collect any attorneys' fees, expenses, or costs from any source other than the Settlement Fund. To

the extent the Court may award fees to counsel for any class member appearing before the Court in connection with the approval or implementation of this Settlement Agreement, such fees also shall be payable solely from the Settlement Fund.  Under no circumstances shall Defendant have any monetary obligations to Class Members, and the monetary obligations of Defendant under this Settlement Agreement shall under no circumstances exceed its payment of the Settlement Fund.

10.2  Payment of Attorneys' Fees and Expenses Award.  The attorneys' fees, expenses, and costs approved by the Court to be distributed to Class Counsel shall be paid by the Settlement Administrator as provided for above.  Defendant shall not be liable for any costs, fees or expenses of any of Plaintiffs' attorneys, experts, advisors, agents or representatives, beyond its total cash commitment to the Settlement Fund of two million five hundred thousand dollars ($2,500,000), as defined in paragraph 1.31.

10.3  Plaintiffs' Incentive Compensation.  The Court may award reasonable incentive compensation to the Representative Plaintiffs for their service in the case, not to exceed $5,000 each, which shall come from the Settlement Fund.  Any such Court-ordered compensation shall be paid simultaneously with or following the payments made for No Proof Claims.  This shall be in addition to any benefits that the Representative Plaintiffs may claim as Class Members.

10.4  No Effect On Settlement.  Decisions by the Court with respect to Class Counsel's request for an award of attorneys' fees, costs, and expenses, or requests for incentive compensation to the Representative Plaintiffs, shall not operate to terminate or cancel this Settlement Agreement, and shall have no effect on the finality of the Final Judgment to be entered pursuant to this Settlement Agreement.

10.5  Released Parties Not Responsible for Allocation of Award.  The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among

Class Counsel, and any other Person who may assert some claim thereto, of any award of attorneys' fees, costs, or expenses that the Court may make.

## 11.    TERMINATION OF SETTLEMENT AGREEMENT

11.1 <u>Consequences of Termination</u>.   If the Effective Date does not occur, then this Settlement Agreement shall have no further force or effect and the Settling Parties shall revert to their respective positions as of the date that the Settlement Agreement was executed by the Settling Parties, as though this Settlement Agreement had never been executed.  The terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties, and to the extent permitted by law, no part of the Settlement Agreement or its exhibits shall be used in any action or proceeding for any purpose and any orders entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated *nunc pro tunc*. In that event, within five (5) business days after written notification of such event is sent by Defendants' Counsel or Class Counsel to the Settlement Administrator, the Settlement Fund, less expenses and any costs which already have been disbursed, shall be refunded by the Settlement Administrator to Defendant.  In such event, Defendant shall be entitled to any tax refund owing to the Settlement Fund.  At the request of Defendant, the Settlement Administrator or its designee shall apply for any such refund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for a refund, to Defendant.

11.2 Within 10 days after the deadline for final delivery of the requests for exclusion, as provided in paragraph 9 of this Settlement Agreement, if the total number of requests for exclusion exceeds 1000, then Defendant shall have the right and the option, but not the obligation, to rescind this Settlement Agreement; provided, however, that Defendant shall be obligated in the event it elects to rescind to first discuss with Class Counsel in good faith whether the Agreement can be

renegotiated rather than rescinded. In the event that the Settlement Agreement is rescinded pursuant to this paragraph 11.2, the effect of such rescission shall be in all respects the same as if the Agreement were terminated pursuant to paragraph 11.1.

11.3 <u>Inadmissible for Purposes of Litigation</u>. If the Settlement Agreement is terminated according to its terms or the Effective Date does not occur for any reason, the Settling Parties will not offer any part of this Settlement Agreement or its exhibits, any agreement negotiated between the Parties in connection with or regarding the Settlement or the Settlement Agreement, any negotiations or communications relating to this Settlement Agreement, or any motion seeking approval of the Settlement or Settlement Agreement in connection with any other proceeding in the Action.

## 12.    OTHER PROVISIONS OF THE SETTLEMENT

12.1 <u>Public Communications</u>.   The Settling Parties agree that any communications regarding the Settlement will be consistent with what the Settling Parties have advised the Court in public filings. The Settling Parties and their counsel further agree not to disparage each other.

12.2 <u>Stay of Proceedings</u>.   The Settling Parties anticipate that the Order granting Preliminary Approval of this Settlement Agreement will include a provision enjoining members of the Classes from bringing or continuing to pursue or prosecute Released Claims while the Court considers whether to grant Final Approval to the Settlement Agreement. The sole anticipated exception to this injunction is that it would not apply to any governmental entity suing in its law enforcement capacity rather than in a *parens patriae* capacity on behalf of Class Members.

12.3 <u>Best Efforts and Cooperation</u>. The Settling Parties acknowledge that it is their intent to consummate this Settlement Agreement. Accordingly, the Settling Parties agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Settlement

Agreement and exercise their best efforts to establish the foregoing terms and conditions of the Settlement Agreement. The Settling Parties further agree to cooperate in securing the Court's approval of the Settlement; provided, however, that Defendant shall have no obligation to pay any additional amount of money beyond its contribution to the Settlement Fund, as defined in paragraph 1.31, or undertake any unreasonably burdensome tasks in connection with such cooperation.

12.4 <u>Entire Agreement</u>. This Settlement Agreement constitutes the entire agreement among the Settling Parties and supersedes any prior agreements or understandings between them. Other than as set forth in paragraph 12.9, all terms of this Settlement Agreement are contractual and not mere recitals and shall be construed as if drafted by all Settling Parties. The terms of this Settlement Agreement are and shall be binding upon and inure to the benefit of each of the Settling Parties and Class Members, their agents, attorneys, employees, heirs, successors, and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the parties hereto, including any Plaintiffs or Class Member.

12.5 <u>Amendment</u>. This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their successors in interest. Amendments and modifications may be made without notice to the Classes, unless notice is required by the Court.

12.6 <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts or by facsimile, with each counterpart or facsimile signature having the same force and effect as an original. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the Parties to this Settlement Agreement shall exchange

among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

12.7 <u>Jurisdiction</u>.   The Court shall have exclusive and continuing jurisdiction over the implementation, interpretation, and execution of the Final Judgment and this Settlement Agreement, with respect to all parties hereto, including all Class Members.

12.8 <u>Governing Law</u>.   The rights and obligations of the Parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the laws of the District of Columbia.

12.9 <u>Headings</u>.   The headings and subheadings to this Settlement Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Settlement Agreement.

12.10 <u>Severability</u>.   In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if the Settling Parties all elect in writing, to proceed as if such invalid, illegal, or unenforceable provision had never been included in the Agreement.

IN WITNESS WHEREOF, each of the Settling Parties has caused the Settlement Agreement to be executed on his or her own behalf or on its behalf by its duly authorized representative, all as of the day set forth below.

**APPROVED AND AGREED·**

DATED: January 16, 2020

Scott A. Kamber
KamberLaw, LLC
*Class Counsel*

DATED: January 16, 2020

_____
Elizabeth A. Fegan
Fegan Scott, LLC
*Class Counsel*


DATED: January ___, 2020

_____
Jeffery Schwartz
Vice President, General Counsel & Corporate Secretary
McCormick & Company, Incorporated


DATED: January ___, 2020

_____
David H. Bamberger
DLA Piper LLP (US)
*Counsel* for McCormick & Company, Incorporated

DATED: January 16, 2020

_____
Elizabeth A. Fegan
Fegan Scott, LLC
*Class Counsel*

DATED: January 17, 2020

_____
Jeffery Schwartz
Vice President, General Counsel & Corporate Secretary
McCormick & Company, Incorporated

DATED: January 17, 2020

_____
David H. Bamberger
DLA Piper LLP (US)
*Counsel* for McCormick & Company, Incorporated

# EXHIBIT 1

## Black Pepper Products

**Exhibit 1 – List of Black Pepper Products Subject to Settlement (All products are in metal tins, with the exception of the McCormick® Black Peppercorn Grinder.)**

**McCormick® Brand Black Pepper Products**

| Product Name | Weight | UPC |
|---|---|---|
| McCormick® Ground Black Pepper | 1.5 oz. | 052100029924 |
| McCormick® Ground Black Pepper | 3 oz. | 052100029962 |
| McCormick® Ground Black Pepper | 6 oz. | 052100030104 |
| McCormick® Black Peppercorn Grinder | 1 oz. | 052100030265 |
| McCormick® Black Peppercorn Grinder | 2.5 oz. | 052100030654 |

**Private Label Black Pepper Products**

| Product Name | Weight | UPC |
|---|---|---|
| Always Save® Ground Black Pepper | 3 oz. | 70038641964 |
| Always Save® Ground Black Pepper | 6 oz. | 70038641971 |
| Best Choice® Ground Black Pepper | 3 oz. | 70038641957 |
| Essential Everyday™ Ground Black Pepper | 1.5 oz. | 41303057605 |
| Essential Everyday™ Ground Black Pepper | 3 oz. | 41303057599 |
| Family Gourmet™ Ground Black Pepper | 1.5 oz. | 32251159749 |
| Family Gourmet™ Ground Black Pepper | 3 oz. | 32251159732 |
| Gold Emblem® Ground Black Pepper | 1.5 oz. | 50428520147 |
| Great Value™ Ground Black Pepper | 3 oz. | 78742067100 |
| Great Value™ Ground Black Pepper | 6 oz. | 78742067117 |
| Publix® Ground Black Pepper | 1.5 oz. | 41415067318 |
| Publix® Ground Black Pepper | 3 oz. | 41415068315 |
| Publix® Ground Black Pepper | 6 oz. | 41415066311 |
| Signature Select™ Ground Black Pepper | 1.5 oz. | 21130152643 |
| Signature Select™ Ground Black Pepper | 3 oz. | 21130152650 |
| Southern Home™ Ground Black Pepper | 3 oz. | 60788003806 |
| Special Value® Ground Black Pepper | 6 oz. | 41380296317 |
| Spice Treasures® Ground Black Pepper | 3 oz. | 17300010509 |
| Springfield™ Ground Black Pepper | 1.5 oz. | 41380295020 |
| Springfield™ Ground Black Pepper | 3 oz. | 41380295037 |
| Winn Dixie® Ground Black Pepper | 3 oz. | 21140026798 |
| Winn Dixie® Ground Black Pepper | 6 oz. | 21140026804 |

# **EXHIBIT 2**

**Declaration of Jeanne C. Finegan**

**and Media Plan**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEBBIE ESPARZA, CARMEN PELLITTERI,
HOLLY MARSH and CATHERINE GRINDEL,
on behalf of themselves, and on behalf of each of
the Class Members of the three certified state
classes,

　　　　　　　Plaintiffs,

　　　　v.

MCCORMICK & COMPANY,
INCORPORATED,

　　　　　　　Defendant.

Case No. 15-1825 (ESH)

**DECLARATION OF JEANNE C.
FINEGAN, APR CONCERNING
CLASS MEMBER NOTIFICATION**

Judge: Hon. Ellen Segal Huvelle

I, JEANNE C. FINEGAN declare as follows:

## INTRODUCTION

1.      I am President and Chief Media Officer of HF Media, LLC, Inc. ("HF") a division of Heffler Claims Group LLC ("Heffler"). This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2.      Pursuant to the Settlement Agreement, dated January 16, 2020 §1, ¶ 1.26 Heffler has been engaged by the parties to this litigation to develop and implement a proposed legal notice and claims administration program as part of the parties' proposed class action settlement.

3.      Accordingly, my team and I have crafted a highly targeted Notice Plan, which employs best-in-class tools and technology to reach 72% of Settlement Class Members in California, Florida and Missouri, on average 3 times, through publication media notice through print, online display and social impressions with cross-device targeting on desktop and mobile, a press release, a settlement website and a toll-free number. Attached as **Exhibit A** is a summary of the Notice Plan.

4.      This Declaration also describes my experience in designing and implementing notices and notice programs, as well as my credentials to opine on the overall adequacy of the proposed notice effort.   This Declaration will also describe the proposed notice program and address why this comprehensive proposed program is consistent with other best practicable court-approved notice programs and the requirements of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center ("FJC") guidelines[1] for Best Practicable Due Process notice.

## QUALIFICATIONS

5.      I have more than 30 years of relevant communications and advertising experience. I am a member of the Board of Directors for the Alliance for Audited Media ("AAM"). I am the only Notice Expert accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. Further, I have provided testimony before Congress on issues of notice.  I have lectured, published and been cited extensively on various aspects of legal noticing, product recall, and crisis communications, and I have served the Consumer Product Safety Commission ("CPSC") as an expert to determine ways in which the CPSC can increase the

---

[1] Notice Checklist and Plain Language Guide (2010) ("Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide").

DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING CLASS MEMBER NOTIFICATION

effectiveness of its product recall campaigns.  More recently, I have been extensively involved as a contributing author for *"Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions"* published by Duke University School of Law.

6.      I have been appointed as Media Notice Administrator in court approved matters including *Warner v. Toyota Motor Sales, U.S.A. Inc.,* Case No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017) and *In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012).

7.      I have served as an expert, with day-to-day operational responsibilities and direct responsibilities for the design and implementation of hundreds of class action notice programs, some of which are the largest and most complex programs ever implemented in both the United States and Canada. My work includes a wide range of class actions and regulatory and consumer matters, the subject matters of which has included product liability, construction defect, antitrust, asbestos, medical, pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

8.      Additionally, I have been at the forefront of modern notice, including plain language as noted in a RAND study[2], and importantly, I was the first Notice Expert to integrate digital media and social media into court approved legal notice programs. My recent work includes:

- *Simerlein et al., v. Toyota Motor Corporation,* Case No. 3:17-cv-01091-VAB (District of CT 2019).
- *Fitzhenry- Russell et al., v Keurig Dr. Pepper Inc.,* Case No. :17-cv-00564-NC, (ND Cal 2019).
- *Pettit et al., v. Procter & Gamble Co.,* Case No. 15-cv-02150-RS (ND Cal 2019).
- *In re: The Bank of New York Mellon ADR FX Litigation*, 16-CV-00212-JPO-JLC (S.D.N.Y. 2019).
- *Chapman v. Tristar Products,* Case No. 1:16-cv-1114, JSG (N.D. Ohio 2018)
- *Cook et. al v. Rockwell International Corp. and the Dow Chemical Co.,* No. 90-cv-00181- KLK (D.Colo. 2017).
- *Warner v. Toyota Motor Sales, U.S.A. Inc.,* Case No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017).

9.      As further reference, in evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an expert.  For example, in:

---

2 Deborah R. Hensler et al., CLASS ACTION DILEMMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN. RAND (2000).

a) ***Simerlein et al., v. Toyota Motor Corporation,*** Case No. 3:17-cv-01091-VAB (District of CT 2019). In the Ruling and Order on Motion for Preliminarily Approval, dated January 14, 2019, p. 30, the Honorable Victor Bolden stated:

*"In finding that notice is sufficient to meet both the requirements of Rule 23(c) and due process, the Court has reviewed and appreciated the high-quality submission of proposed Settlement Notice Administrator Jeanne C. Finegan. See Declaration of Jeanne C. Finegan, APR, Ex. G to Agrmt., ECF No. 85-8."*

b) ***Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.,*** Case No. 1:13-CV-24583 PAS (S.D. Fla. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

*"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. ...There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers... Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. ...The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

Additionally, in the January 20, 2016, ***Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.,*** Case No. 1:13-CV-24583 PAS (S.D. Fla. 2016), transcript of Class Notice Hearing, p. 5 Judge Seitz, noted:

*"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

c) ***In Re:  Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation***, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015), (Hearing for Final Approval, May 19, 2016 transcript p. 49).  During the Hearing for Final Approval, the Honorable Rodney Sippel said:

*"It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations."*

d) ***In re: Skechers Toning Shoes Products Liability Litigation***, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

*"... The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement."*

10.     Additionally, I have published extensively on various aspects of legal noticing, including the following publications and articles:

(a)   Co-Author, Digital Ad Fraud, Impact on Class Action Settlements, SlideShare, October 2018. https://bit.ly/2SHqB5D.

(b)   Author, "Creating a Class Notice Program that Satisfies Due Process" Law360 New York (February 13, 2018 12:58 PM ET).

(c)   Author, "3 Considerations for Class Action Notice Brand Safety," Law360 New York (October 2, 2017 12:24 PM ET).

(d)   Author, "What Would Class Action Reform Mean for Notice?" Law360, New York, (April 13, 2017 11:50 AM ET).

(e)   Author, "Bots Can Silently Steal your Due Process Notice." Wisconsin Law Journal, April 2017.

(f)   Author, "*Don't Turn a Blind Eye to Bots*. Ad Fraud and Bots are a Reality of the Digital Environment." LinkedIn article March 6, 2107.

(g)   Co- Author, "Modern Notice Requirements Through the Lens of Eisen and Mullane" – *Bloomberg BNA Class Action Litigation Report*. 17 CLASS 1077. (October 14, 2016).

(h)   Author, "Think All Internet Impressions are the Same? Think Again" – Law360.com, New York (March 16, 2016).

(i)   Author, "Why Class Members Should See An Online Ad More Than Once" – Law360.com, New York (December 3, 2015).

(j)   Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

(k)   Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, November 2011.

(l)   Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review, (2011), 53 S.C.L.R. (2d).

(m)   Co-Author, with Hon. Dickran Tevrizian, "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, 5/27/11.

(n)   Co-Author, with Hon. Dickran Tevrizian, "Your Insight: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape, TXLR, Vol. 26, No. 21, 5/26/2011.

(o)   Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, 4/9/10 Vol. 11, No. 7 p. 343.

(p)   Quoted: Technology Trends Pose Novel Notification Issues for Class Litigators, BNA Electronic Commerce and Law Report, 15, ECLR 109, 1/27/10.

(q)   Author, Legal Notice: R U ready 2 adapt?  BNA Class Action Litigation Report, Vol. 10, No. 14, 7/24/2009, pp. 702-703.

(r)   Author, On Demand Media Could Change the Future of Best Practicable Notice, BNA Class Action Litigation Report, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

(s)   Quoted in, Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty, Warranty Week, February 28, 2007, available at www.warrantyweek.com/archive/ww20070228.html.

(t)   Co-Author, Approaches to Notice in State Court Class Actions, For The Defense, Vol. 45, No. 11, November, 2003.

(u)   Author, The Web Offers Near, Real-Time Cost Efficient Notice, American Bankruptcy Institute Journal, Vol. XXII, No. 5, 2003.

(v)   Author, Determining Adequate Notice in Rule 23 Actions, For The Defense, Vol. 44, No. 9, September, 2002.

(w)   Co-Author, The Electronic Nature of Legal Noticing, American Bankruptcy Institute Journal, Vol. XXI, No. 3, April, 2002.

(x)   Author, Three Important Mantras for CEO's and Risk Managers in 2002, International Risk Management Institute, irmi.com/, January, 2002.

(y)   Co-Author, Used the Bat Signal Lately, The National Law Journal, Special Litigation Section, February 19, 2001.

(z)   Author, How Much is Enough Notice, Dispute Resolution Alert, Vol. 1, No. 6, March, 2001.

(aa)  Author, High-Profile Product Recalls Need More Than the Bat Signal, International Risk Management Institute, irmi.com/, July 2001.

(bb)  Author, The Great Debate - How Much is Enough Legal Notice? American Bar Association -- Class Actions and Derivatives Suits Newsletter, Winter 1999.

(cc)  Author, What are the best practicable methods to give notice? Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated, November 1, 2001.

11.   In addition, I have lectured or presented extensively on various aspects of legal noticing.  A sample list includes the following:

a) Webinar Rule 23 Changes: Are You Ready for the Digital Wild, Wild West?" CLE broadcast October 23, 2018.

b) American Bar Association Faculty Panelist, 4th Annual Western Regional CLE Class Actions: "Big Brother, Information Privacy, and Class Actions: How Big Data and Social Media are Changing the Class Action Landscape," San Francisco, CA, June, 2017.

c) Miami Law Class Action & Complex Litigation Forum, Faculty Panelist, "Settlement and Resolution of Class Actions." Miami. FL, December 2, 2016.

d) The Knowledge Group, Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org/, October 2016.

e) American Bar Association National Symposium, Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA March 2016.

f) SF Banking Attorney Association, Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA May 2015.

g) Perrin Class Action Conference, Faculty Panelist, "Being Media Relevant, What it Means and Why It Maters – The Social Media Evolution: Trends Challenges and Opportunities," Chicago, IL May 2015

h) Bridgeport Continuing Ed.  Faculty Panelist, "Media Relevant in the Class Notice Context," April 2014.

i) CASD 5th Annual Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012.

i) Law Seminars International, Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media." Chicago, IL, October 2011.

(j) CLE International, Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011.

(k) Consumer Attorneys of San Diego (CASD), Faculty Panelist, "21st Century Class Notice and Outreach," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010.

(l) Consumer Attorneys of San Diego (CASD), Faculty Panelist, "The Future of Notice," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2009.

(m) American Bar Association, Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard."

(n) American Bar Association, Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

(o) Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action."  Los Angeles, CA, February 2008.

(p) Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation.  Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age."  New York/Boston (simulcast) March, 2006; Chicago, April, 2006; and San Francisco, May 2006.

(q) Expert Panelist, U.S. Consumer Product Safety Commission.  I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process.  As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.  Bethesda, MD, September 2003.

(r.) Expert Speaker, American Bar Association.  Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

12.    A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice programs is attached as **Exhibit B**.

## NOTICE PROGRAM SUMMARY

13.    The proposed notice program for this settlement is designed to inform Class Members of the proposed class action settlement between Plaintiffs and Defendant McCormick & Company, Incorporated.  Pursuant to the Settlement Agreement, §1, ¶ 1.29, the Settlement Class is defined as:

> "All persons residing in California, Florida or Missouri who purchased any McCormick® brand or Private Label Brand Black Pepper Product(s) within the Settlement Class Period."

14.    The proposed notice program includes the following components:

- Print publication once in the state editions of a generally circulated magazine targeted to reach Class Members;
- Online display banner advertising specifically targeted to reach Class Members;
- Keyword Search targeting Class Members;
- Social media through Facebook, Instagram and Pinterest:
- An informational website will be established on which the notices and other important Court documents will be posted; and

- A toll-free information line will be established by which Class Members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice or Claim Form.

## METHODOLOGY FOR PUBLICATION/INTERNET NOTICE

15.    To appropriately design and target the publication component of the notice program, described in detail below, HF Media utilized a methodology accepted by the advertising industry and embraced by the courts.

16.    Accordingly, we are guided by well-established principles of communication and utilize best-in-class nationally syndicated media research data provided by GfK Mediamark Research and Intelligence, LLC,[3] ("MRI") and online measurement currency comScore[4], among others, to provide media consumption habits and audience delivery verification of the potentially affected population.  Based on this research, our cutting-edge approach to notice focuses on the quality of media exposure, engagement, and appropriate media environment.

17.    These data resources are used by advertising agencies nationwide as the basis to select the most appropriate media to reach specific target audiences. The resulting key findings are instrumental in our selection of media channels and outlets for determining the estimated net audience reached through this legal notice program.  Specifically, this research identifies which media channels are favored by the target audience (*i.e.*, the Class Members).  For instance, browsing behaviors on the Internet, social media channels that are used, and which magazines Class Members are reading.

18.    For this program, HF Media employs the best-in-class tools and technology in order to appropriately target Class Members and appropriately measure and validate audience delivery using Media Ratings Counsel accepted third-party validation of media.  By utilizing these media research tools, we can create target audience characteristics or segments, and then select the most appropriate media and communication methods to best reach them.

19.    This media research technology allows us to fuse data and accurately report to the Court the percentage of the target audience that will be reached by the notice component and how many times the target audience will have the opportunity to see the message.  In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated

---

[3] GfK MRI's *Survey of the American Consumer*® ("MRI") is the industry standard for magazine audience ratings in the U.S. and is used in the majority of media and marketing agencies in the country. MRI provides comprehensive reports on demographic, lifestyle, product usage and media exposure.

[4] comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data.

DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING CLASS MEMBER NOTIFICATION

percentage of the unduplicated audience exposed to the campaign, and "Frequency" refers to how many times, on average, the target audience had the opportunity to see the message. The calculations are used by advertising and communications firms worldwide and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

## ACTIVE CAMPAIGN MANAGEMENT TO MITIGATE DIGITAL AD FRAUD

20.     Additionally, we are the first notice experts to actively monitor, mitigate and cull non-human counterfeit impressions (ad fraud bot traffic) from digital notice programs[5].   The primary purpose of this is to ensure that our ads are being targeted to real websites where actual (human) Settlement Class Members are likely to visit, rather than serving ads to websites and fraudsters attempting to fraudulently earn advertising revenue from the campaign.

21.     To this end, online ads will be tagged with specific codes through Integral Ad Science ("IAS") plus analysis will be provided by our independent Cybersecurity Expert. Ad logs will be examined for fraudulent anomalies such as ads being called to data centers, uncommon browser sizes, and outdated browser versions as well as other parameters that indicate non-human traffic. In addition, through these efforts, we will identify which websites are generating validated human click-throughs to the Settlement website and redirect traffic to those sites. Any online impressions identified as invalid will be culled from the final reach calculation reported to the Court.

## TARGET AUDIENCE MEDIA USE AND KEY INSIGHTS

25. According to MRI, there are over 18,820,000 McCormick seasoning and spices users[6] in California, Florida and Missouri. Of these users, MRI reports that 67% percent of primary users are 18 to 54 years old and users have a median household income of $77,000. Of the overall target, 86% have gone online in the last 30 days, with nearly 81% using their smartphone to access the Internet. Additionally, 79% use social media with over 65% reporting that they have visited Facebook in the last 30 days.

---

[5] Finegan, "Creating a Class Notice Program that Satisfies Due Process" Law360, New York, (February 13, 2018 12:58 PM ET). Also see: CLE Webinar: "Rule 23 Changes, Are you Ready for the Digital Wild, Wild West?" https://bit.ly/2PfuGvJ

[6] MRI does not provide a specific target audience definition for users of black pepper. Therefore, we are using a slightly broader target available in MRI of "McCormick seasoning and spice users."

DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING CLASS MEMBER NOTIFICATION

**MAGAZINES**

26.     Based on the key insight data MRI summarized above, the magazine below was selected for its coverage and index[7] against the target audience characteristics.

27.     *People Magazine* is a weekly magazine with a circulation in California, Florida and Missouri of 505,300 with more than 5,654,307 readers[8]. Alone, this magazine reaches 17% of all McCormick seasoning and spices primary users in California, Florida and Missouri, and these readers are 8% more likely than the general population to read this title. The summary notice will be published <u>once</u> as full-page, black and white ad.

**PUBLICATION ELEMENTS – ONLINE DISPLAY AND SOCIAL MEDIA**

28.     This campaign will employ a programmatic approach[9] across multi-channel and inventory sources including a collection of premium quality partner web properties targeting *"McCormick seasoning and spices purchasers in California, Florida and Missouri."* Nearly 20 million online display and social media impressions will be served to this target group across a whitelist[10] of pre-vetted websites, multiple exchanges, class action blogs and the social media platforms Facebook, Instagram and Pinterest.

29.     Keyword search targeting will be employed to show advertisements to users in California, Florida and Missouri in their Google search results. A list of search topics including McCormick settlement, pepper class action, McCormick black pepper, McCormick recipes and McCormick coupons, among others, will be applied. We also intend to use pixel retargeting to provide additional reminders for those who have visited the website and did not complete a claim form.

---

[7] Index is a media metric that describes a target audience's inclination to use a given outlet. An index over 100 suggests a target population's inclination to use a medium to a greater degree than the rest of the population. For example, an index of 110 would mean that the target is 10 percent more likely than the rest of the population to use a medium.

[8] Magazines report pass-along factors. These are individuals in addition to the subscriber that read a given title.  Each magazine has specific pass-along factor.  *People Magazine* reports a pass along factor of 11.19.

[9] Programmatic refers to computerized media buying of advertising inventory. The mechanics of programmatically serving an online ad are as follows:  A user visits a website and the browser sends a request to the publisher's web server asking for the page's content (*i.e.*, HTML). An invocation code placed on the page loads an external static ad tracker code. The ad tracker makes a request to the ad server querying for an ad markup (also called creative tag) to be loaded into the ad slot. The ad server responds with the ad markup code (before it's returned, the ad server executes all targeting/campaign matching logic). Finally, the publisher's web server returns the information rendering the page's content with specifically targeted ads to that user.

[10] A whitelist is a custom list of acceptable websites where ad content may be served. Creating a whitelist helps to mitigate ad fraud, ensure ads will be served in relevant digital environments to the target audience and helps to ensure that ads will not appear next to offensive or objectionable content.

### SOCIAL MEDIA:  FACEBOOK, INSTAGRAM AND PINTEREST

30.    On Facebook and Instagram, We will target those who have liked or followed McCormick pages as well as cooking and recipe pages such as MyRecipes and Allrecipes.  On Pinterest, we will target relevant search terms such as McCormick black pepper, McCormick Grill Mates and McCormick Slow Cookers, among others.. Further, the social media campaign will include retargeting to users who visit the Settlement website.

### PRESS RELEASE

31.    A news release will be released over PR Newswire's California, Florida and Missouri state Newslines. PR Newswire delivers to thousands of print and broadcast newsrooms nationwide, as well as websites, databases and online services including featured placement in news sections of leading portals.

### MEDIA MONITORING

32.    HF Media intends to monitor various media channels for subsequent news articles and various social mentions as a result of the press release efforts. A complete report on the results will be filed with the Court upon completion of the notice program.

### OFFICIAL SETTLEMENT WEBSITE

33.    An informational website will be established and maintained by Heffler. All of the aforementioned methods of notice will direct class members to this website. The website will serve as a "landing page for the banner advertising," where Class Members may get information about the Settlement and obtain and/or submit a Claim Form, along with other information which includes information about the class action, their rights, the Long Form Notice, answers to frequently asked questions, contact information that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel, and a downloadable and online version of the Claim Form,; and related information, including the Settlement Agreement, Court Orders, and Plaintiff's Motion for Approval of Fees, Expenses, and Class Representative incentive compensation.

### TOLL FREE INFORMATION LINE

34.    Additionally, Heffler will establish and maintain a 24-hour toll-free Interactive Voice Response ("IVR") telephone line, where callers may obtain information about the class action, including, but not limited to, requesting copies of the Long Form Notice or Claim Form.

DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING CLASS MEMBER NOTIFICATION

## **CONCLUSION**

35.    In my opinion, the outreach efforts described above reflect a particularly appropriate, highly targeted, and contemporary way to employ notice to this class. Through a multi-media channel approach to notice, which employs print, digital, and social and mobile media, an estimated 72 percent of targeted Class Members will be reached by the media program, on average, 3 times.  In my opinion, the efforts to be used in this proposed notice program are of the highest modern communication standards, are reasonably calculated to provide notice, and are consistent with best practicable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach.

36.    I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Executed on January 20, 2020 in Tigard, Oregon.

_Jeanne C. Finegan_

Jeanne C. Finegan, APR

DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING CLASS MEMBER NOTIFICATION

# Exhibit A



**HF Media LLC**
An affiliate of Heffler Claims Group

| Target | Reach | Frequency |
|---|---|---|
| McCormick Seasoning & Spices Users in CA, FL and MO | **72%** | **3x** |

### Program Parameters

*Plan Includes Expert Opinion*

**Geography:** California, Florida & Missouri
**Notice Program Length:** 30 Days
**Lead Time:** Approximately 30 Days depending on final PAO

### Print – MAX Word Count of 800 Words

| Title | Circulation | Unit Size | Frequency | Insertions |
|---|---|---|---|---|
| People | 505,300 | Full Page | Weekly | 1 |

### Internet - *Cross-device Targeting on desktop and mobile . Display ads in both English and Spanish.*

| Site/Network | Description | Targeting |
|---|---|---|
| Multiple Inventory Exchanges | Display, Mobile, and Keyword Search on a programmatic platform across multi-channel and inventory sources including a collection of premium quality partner web properties. Brand Safety measures in place to cull unsuitable websites. | Targeting McCormick seasoning & spices purchasers in CA, FL & MO. Retargeting to users who visit the Settlement Website. |
| Google AdWords | Keyword Search on Google Ads Links appear on the search result pages of keyword/phrase searches. | Targeting keyword search topics in CA, FL & MO including McCormick settlement, pepper class action, McCormick black pepper, McCormick recipes, McCormick coupons, among others. |
| facebook Instagram | Facebook is a free social networking website used to stay connected with friends and family, and discover what's going on in the world. Instagram is a popular social media photo sharing site. | Targeting people who have liked or followed McCormick pages and cooking/recipe pages in CA, FL & MO. McCormick Spice Facebook: 2.1M people like this McCormick Grill Mates Facebook: 1.3M people like this MyRecipes Facebook: 4.7M people like this Allrecipes Facebook: 3.3M people like this Retargeting to users who visit the Settlement Website. |
| Pinterest | Pinterest is a visual discovery tool that you can use to find ideas for all your projects and interests. Pins are visual bookmarks that people collect on virtual pinboards. | Promoted pins targeting relevant search terms such as McCormick black pepper, McCormick Grill Mates, McCormick Slow Cookers, among others. |

### Press Release



**PR Newswire**
PR Newswire delivers to thousands of print and broadcast newsrooms nationwide, as well as websites, databases and online services including featured placement in news sections of leading portals.

*Press Release of up to 800 words will be distributed over PR Newswire's California, Florida and Missouri state Newslines.*

# Exhibit B



**Heffler Claims**
Group

# JEANNE C. FINEGAN, APR

**BIOGRAPHY**

Jeanne Finegan, APR, is Vice President of Notice Media Solutions of Prime Clerk. She is a member of the Board of Directors for the prestigious Alliance for Audited Media (AAM), and was named by *Diversity Journal* as one of the "Top 100 Women Worth Watching." She is a distinguished legal notice and communications expert with more than 30 years of communications and advertising experience.

She was a lead contributing author for Duke University's School of Law, *"Guidelines and Best Practices  Implementing  Amendments to Rule 23 Class Action Settlement Provisions."*  And more recently, she has been involved with New York School of Law and The Center on Civil Justice (CCJ) assisting with a class action settlement data analysis and comparative visualization tool called the *Aggregate Litigation Project*, designed to help judges make decisions in aggregate cases on the basis of data as opposed to anecdotal information. Moreover, her experience also includes working with the Special Settlement Administrator's team to assist with the outreach strategy for the historic Auto Airbag Settlement, In re: *Takata Airbag Products Liability Litigation* MDL 2599.

During her tenure, she has planned and implemented over 1,000 high-profile, complex legal notice communication programs.  She is a recognized notice expert in both the United States and in Canada, with extensive international notice experience spanning more than 170 countries and over 40 languages.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications. She has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns. Further, she has planned and implemented large-scale government enforcement notice programs for the Federal Trade Commission (FTC) and the Securities and Exchange Commission (SEC).

Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, which is a program administered by the Public Relations Society of America (PRSA), and is also a recognized member of the Canadian Public Relations Society (CPRS). She has served on examination panels for APR candidates and worked *pro bono* as a judge for prestigious PRSA awards.

Ms. Finegan has provided expert testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns. She has conducted

numerous media audits of proposed notice programs to assess the adequacy of those programs under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.

She was an early pioneer of plain language in notice (as noted in a RAND study,[1]) and continues to set the standard for modern outreach as the first notice expert to integrate social and mobile media into court approved legal notice programs.

In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans. She has designed legal notices for a wide range of class actions and consumer matters that include product liability, construction defect, antitrust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, government enforcement actions, securities, banking, insurance, mass tort, restructuring and product recall.

## JUDICIAL COMMENTS AND LEGAL NOTICE CASES

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized her excellent work. The following excerpts provide some examples of such judicial approval.

**In Re: PG&E Corporation Case** No . 19-30088 Bankr. N.D. Cal. 2019). Hearing Establishing, Deadline for Filing Proofs of Claim, (II) establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to all Creditors and Potential Creditors PG&E. *June 26, 2019, Transcript of Hearing p. 21:1, the Honorable Dennis Montali stated:*
> *...the technology and the thought that goes into all these plans is almost incomprehensible. He further stated, p. 201:20 ... Ms. Finegan has really impressed me today...*

***In re: The Bank of New York Mellon ADR FX Litigation***, 16-CV-00212-JPO-JLC (S.D.N.Y. 2019). In the Final Order and Judgement, dated June 17, 2019, para 5, the Honorable J. Paul Oetkin stated:
> *"The dissemination of notice constituted the best notice practicable under the circumstances."*

***Simerlein et al., v. Toyota Motor Corporation,*** Case No. 3:17-cv-01091-VAB (District of CT 2019). In the Ruling and Order on Motion for Preliminarily Approval, dated January 14, 2019, p. 30, the Honorable Victor Bolden stated:

> *"In finding that notice is sufficient to meet both the requirements of Rule 23(c) and due process, the Court has reviewed and appreciated the high-quality submission of*

---

[1] Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN. RAND (2000).



*proposed Settlement Notice Administrator Jeanne C. Finegan. See Declaration of Jeanne C. Finegan, APR,  Ex. G to Agrmt., ECF No. 85-8."*

***Fitzhenry- Russell et al., v Keurig Dr. Pepper Inc.,*** Case No. :17-cv-00564-NC, (ND Cal). In the Order Granting Final Approval of Class Action Settlement, Dated April 10, 2019, the Honorable Nathanael Cousins stated:

> *"…the reaction of class members to the proposed Settlement is positive. The parties anticipated that 100,000 claims would be filed under the Settlement (see Dkt. No. 327-5 ¶ 36)—91,254 claims were actually filed (see Finegan Decl ¶ 4). The 4% claim rate was reasonable in light of Heffler's efforts to ensure that notice was adequately provided to the Class."*

***Pettit et al.,  v.  Procter & Gamble Co.,*** Case No. 15-cv-02150-RS ND Cal*.* In the Order Granting Final Approval of the Class Action Settlement and Judgement, Dated March 28, 2019, p. 6,  the Honorable Richard Seeborg stated:

> *"The Court finds that the Notice Plan set forth in the Settlement Agreement, and effectuated pursuant to the Preliminary Approval Order, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Settlement Class. …the number of claims received equates to a claims rate of 4.6%, which exceeds the rate in comparable settlements."*

***Carter v Forjas Taurus S.S., Taurus International Manufacturing***, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

> *"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. …There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers… Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. …The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, noted:

> *"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*



*Cook et. al v. Rockwell International Corp. and the Dow Chemical Co.,* No. 90-cv-00181- KLK *(D.Colo. 2017)., aka, Rocky Flats Nuclear Weapons Plant Contamination*. In the Order Granting Final Approval, dated April 28, 2017, p.3, the Honorable John L. Kane said:

> *The Court-approved Notice Plan, which was successfully implemented by [HF Media- emphasis added] (see Doc. 2432), constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice Plan that was implemented, as set forth in Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class Member Notification (Doc. 2432), provided for individual notice to all members of the Class whose identities and addresses were identified through reasonable efforts, … and a comprehensive national publication notice program that included, inter alia, print, television, radio and internet banner advertisements. …Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court finds that the Notice Plan provided the best notice practicable to the Class.*

*In re: Domestic Drywall Antitrust Litigation,* MDL. No. 2437, in the U.S. District Court for the Eastern District of Pennsylvania. For each of the four settlements, Finegan implemented and extensive outreach effort including traditional, online, social, mobile and advanced television and online video. In the Order Granting Preliminary Approval to the IPP Settlement, Judge Michael M. Baylson  stated:

> *"The Court finds that the dissemination of the Notice and summary Notice constitutes the best notice practicable under the circumstances; is valid, due, and sufficient notice to all persons… and complies fully with the requirements of the Federal rule of Civil Procedure."*

*Warner v. Toyota Motor Sales, U.S.A. Inc., Case No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017).* In the Order Re: Final Approval of Class Action Settlement; Approval of Attorney's Fees, Costs & Service Awards, dated May 21, 2017, the Honorable Fernando M. Olguin stated:

> *Finegan, the court-appointed settlement notice administrator, has implemented the multiprong notice program. …the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (See Dkt. 98, PAO at 25-28).*

*Michael Allagas, et al., v. BP Solar International, Inc., et al., BP Solar Panel Settlement*, Case No. 3:14-cv-00560- SI (N.D. Cal., San Francisco Div. 2016). In the Order Granting Final Approval, Dated December 22, 2016, The Honorable Susan Illston stated:

> *Class Notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and d. fully satisfied the requirements of*



*the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(2) and (e), the*
*United States Constitution (including the Due Process Clause), the Rules of this Court,*
*and any other applicable law.*

**Foster v. L-3 Communications** *EOTech*, Inc. et al (6:15-cv-03519), Missouri Western District
Court.

> *In the Court's Final Order, dated July 7, 2017, The Honorable Judge Brian Wimes*
> *stated: "The Court has determined that the Notice given to the Settlement Class fully*
> *and accurately informed members of the Settlement Class of all material elements of*
> *the Settlement and constituted the best notice practicable."*

**In re: Skechers Toning Shoes Products Liability Litigation**, No. 3:11-MD-2308-TBR (W.D. Ky.
2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of
Settlement, the Honorable Thomas B. Russell stated:

> *… The comprehensive nature of the class notice leaves little doubt that, upon receipt,*
> *class members will be able to make an informed and intelligent decision about*
> *participating in the settlement.*

**Brody v. Merck & Co., Inc., et al,** No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App,
Sept. 27, 2012, transcript page 34). During the Hearing on Joint Application for Preliminary
Approval of Class Action, the Honorable Peter G. Sheridan acknowledged Ms. Finegan's work,
noting:

> *Ms. Finegan did a great job in testifying as to what the class administrator will do. So,*
> *I'm certain that all the class members or as many that can be found, will be given*
> *some very adequate notice in which they can perfect their claim.*

**Quinn v. Walgreen Co., Wal-Mart Stores Inc.,** 7:12 CV-8187-VB (NYSD) (Jt Hearing for Final
App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class
Action, the Honorable Vincent L. Briccetti stated:

> *"The notice plan was the best practicable under the circumstances. … [and] "the proof*
> *is in the pudding. This settlement has resulted in more than 45,000 claims which is*
> *10,000 more than the Pearson case and more than 40,000 more than in a glucosamine*
> *case pending in the Southern District of California I've been advised about. So the*
> *notice has reached a lot of people and a lot of people have made claims."*

**In Re: TracFone Unlimited Service Plan Litigation,** *No. C-13-3440 EMC (ND Ca).* In the Final
Order and Judgment Granting Class Settlement, July 2, 2015, the Honorable Edward M. Chen
noted:

> *"…[D]epending on the extent of the overlap between those class members who will*



*automatically receive a payment and those who filed claims, the total claims rate is estimated to be approximately 25-30%. This is an excellent result...*

*In Re:  Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation*, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015),  (Hearing for Final Approval, May 19, 2016 transcript p. 49). During the Hearing for Final Approval, the Honorable Rodney Sippel said:

> *It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations.*

*DeHoyos, et al. v. Allstate Ins. Co.*, No. SA-01-CA-1010 (W.D.Tx. 2001).  In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members.  Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts.  Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

*In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA. 2011).  The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

> *The Court finds that the dissemination of the Class Notice, the publication of the Summary Settlement Notice, the establishment of a website containing settlement-related materials, the establishment of a toll-free telephone number, and all other notice methods set forth in the Settlement Agreement and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order… constituted the best practicable notice to Class Members under the circumstances of the Actions.*

**Bezdek v. Vibram USA and Vibram FiveFingers** LLC, No 12-10513 (D. MA) The Honorable Douglas P. Woodlock stated in the Final Memorandum and Order:
> *…[O]n independent review I find that the notice program was robust, particularly in its online presence, and implemented as directed in my Order authorizing notice. …I find that notice was given to the Settlement class members by the best means "practicable under the circumstances." Fed.R.Civ.P. 23(c)(2).*

*Gemelas v. The Dannon Company Inc.,* No. 08-cv-00236-DAP (N.D. Ohio).  In granting final approval for the settlement, the Honorable Dan A. Polster stated:

> ***In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, [Ms. Finegan] caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. … The distribution of Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.***

***Pashmova v. New Balance Athletic Shoes, Inc.***, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

> ***The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of [Ms Finegan], and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the Settlement and their rights under the settlement … met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.***

***Hartless v. Clorox Company***, No. 06-CV-2705 (CAB) (S.D.Cal.). In the Final Order Approving Settlement, the Honorable Cathy N. Bencivengo found:

> ***The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class. The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.***

***McDonough et al v. Toys 'R' Us et al,*** No. 09:-cv-06151-AB (E.D. Pa.). In the Final Order and Judgment Approving Settlement, the Honorable Anita Brody stated:

> ***The Court finds that the Notice provided constituted the best notice practicable under the circumstances and constituted valid, due and sufficient notice to all persons entitled thereto.***

***In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation,*** No. 4:09-md-02086-GAF (W.D. Mo.) In granting final approval to the settlement, the Honorable Gary A. Fenner stated:



> *The notice program included individual notice to class members who could be identified by Ferrellgas, publication notices, and notices affixed to Blue Rhino propane tank cylinders sold by Ferrellgas through various retailers. ... The Court finds the notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process and provided to the Class the best notice practicable under the circumstances.*

***Stern v. AT&T Mobility Wireless***, No. 09-cv-1112 CAS-AGR (C.D.Cal. 2009).  In the Final Approval Order, the Honorable Christina A. Snyder stated:

> *[T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*

***In re: Processed Egg Prods. Antitrust Litig.***, MDL No. 08-md-02002 (E.D.P.A.).  In the Order Granting Final Approval of Settlement, Judge Gene E.K. Pratter stated:

> *The Notice appropriately detailed the nature of the action, the Class claims, the definition of the Class and Subclasses, the terms of the proposed settlement agreement, and the class members' right to object or request exclusion from the settlement and the timing and manner for doing so.… Accordingly, the Court determines that the notice provided to the putative Class Members constitutes adequate notice in satisfaction of the demands of Rule 23.*

***In re Polyurethane Foam Antitrust Litigation***, 10- MD-2196 (N.D. OH). In the Order Granting Final Approval of Voluntary Dismissal and Settlement of Defendant Domfoam and Others, the Honorable Jack Zouhary stated:

> *The notice program included individual notice to members of the Class who could be identified through reasonable effort, as well as extensive publication of a summary notice. The Notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreements, and constituted due and sufficient notice for all other purposes to all persons and entities entitled to receive notice.*

***Rojas v Career Education Corporation***, No. 10-cv-05260 (N.D.E.D. IL) In the Final Approval Order dated October 25, 2012, the Honorable Virgina M. Kendall stated:

> *The Court Approved notice to the Settlement Class as the best notice practicable under the circumstance including individual notice via U.S. Mail and by email to the class members whose addresses were obtained from each Class Member's wireless carrier or from a commercially reasonable reverse cell phone number look-up service, nationwide magazine publication, website publication, targeted on-line advertising, and a press release.  Notice has been successfully implemented and satisfies the requirements of the Federal Rule of Civil Procedure 23 and Due Process.*



*Golloher v Todd Christopher International, Inc. DBA Vogue International (Organix), No. C 1206002 N.D CA.*  In the Final Order and Judgment Approving Settlement, the Honorable Richard Seeborg stated:

> *The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

*Stefanyshyn v. Consolidated Industries*, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:

> *The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. … The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.*

*McGee v. Continental Tire North America, Inc. et al*, No. 06-6234-(GEB) (D.N.J.).

> *The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices,*

*Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al*., No. 04-2702 (JLL) (D.N.J.).  The Court stated that:

> *[A]ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's*



*firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members. (Preliminary Approval Order at p. 9). . . . The Court agrees with Class Counsel that this was more than adequate. (Id. at § 5.2).*

*In re: Nortel Network Corp., Sec. Litig.*, No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.).  Ms. Finegan designed and implemented the extensive United States and Canadian notice programs in this case.  The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada.  *See* www.nortelsecuritieslitigation.com.  Of the U.S. notice program, the Honorable Loretta A. Preska stated:

> *The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

Regarding the B.C. Canadian Notice effort: *Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

> *The efforts to give notice to potential class members in this case have been thorough. There has been a broad media campaign to publicize the proposed settlement and the court processes.  There has also been a direct mail campaign directed at probable investors.  I am advised that over 1.2 million claim packages were mailed to persons around the world.  In addition, packages have been available through the worldwide web site nortelsecuritieslitigation.com on the Internet.  Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.*

*Mayo v. Walmart Stores and Sam's Club*, No. 5:06 CV-93-R (W.D.Ky.).  In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

> *According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail. The Settlement Administrator … has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.*



***Fishbein v. All Market Inc***., (d/b/a **Vita Coco**) No. 11-cv-05580  (S.D.N.Y.).  In granting final approval of the settlement, the Honorable J. Paul Oetken stated:

> *"The Court finds that the dissemination of Class Notice pursuant to the Notice Program…constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation … and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to such notice, and fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rules 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable laws."*

***Lucas, et al. v. Kmart Corp***., No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

> *The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).*

***In re: Johns-Manville Corp.* (Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.). The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company.  In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:

> *As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves.*

***Pigford v. Glickman and U.S. Department of Agriculture***, No. 97-1978. 98-1693 (PLF) (D.D.C.). This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination.  In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

> *The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations. . . . The Court concludes that class members have received*



*more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

***In re: Louisiana-Pacific Inner-Seal Siding Litig.***, Nos. 879-JE, and 1453-JE (D.Or.).  Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years.  In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program.  In approving the legal notice communication plan, the Honorable Robert E. Jones stated:

> *The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

> *…well formulated to conform to the definition set by the court as adequate and reasonable notice.  Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs.  Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

***In re: Expedia Hotel Taxes and Fees Litigation***, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County).  In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

> *The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances.  All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement.  The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

***Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation***, No. 95-151-M (Cir. Ct., Choctaw County, Ala.).  This litigation focused on past and present owners of structures sided with Abitibi-Price siding.  The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:

> *The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified*



*through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action.  This finding is based on the overwhelming evidence of the adequacy of the notice program.  … The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*

***Wilson v. Massachusetts Mut. Life Ins. Co.***, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com.  In granting preliminary approval to the settlement, the Honorable Art Encinias found:

> [*T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action.  …[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.*

***Sparks v. AT&T Corp.***, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States.
In granting final approval to the settlement, the Court found:

> *The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.*

***In re: Georgia-Pacific Toxic Explosion Litig.***, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio).  Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper.  The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement.  In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:

> *[N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified*



*through reasonable effort.  The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).*

**In re: American Cyanamid**, No*.* CV-97-0581-BH-M (S.D.Al.).  The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid. In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:

> *The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

**In re: First Alert Smoke Alarm Litig.**, No. CV-98-C-1546-W (UWC) (N.D.Al.).  Ms. Finegan designed and implemented a nationwide legal notice and public information program.  The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection.  The media program included network and cable television, magazine and specialty trade publications.  In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

> *…constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

**In re: James Hardie Roofing Litig.,** No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet.  The program was designed to reach all persons who own any structure with JHBP roofing products.  In the Final Order and Judgment, the Honorable Steven Scott stated:

> *The notice program required by the Preliminary Order has been fully carried out… [and was] extensive.  The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

**Barden v. Hurd Millwork Co. Inc., et al,** No. 2:6-cv-00046 (LA) (E.D.Wis.) (**"The Court approves, as to form and content, the notice plan and finds that such notice is the best practicable under the circumstances under Federal Rule of Civil Procedure 23(c)(2)(B) and constitutes notice in a reasonable manner under Rule 23(e)(1)."**)



*Altieri v. Reebok*, No. 4:10-cv-11977 (FDS) (D.C.Mass.) (*"The Court finds that the notices … constitute the best practicable notice... The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices."*)

*Marenco v. Visa Inc.,* No. CV 10-08022 (DMG) (C.D.Cal.) (*"[T]he Court finds that the notice plan…meets the requirements of due process, California law, and other applicable precedent. The Court finds that the proposed notice program is designed to provide the Class with the best notice practicable, under the circumstances of this action, of the pendency of this litigation and of the proposed Settlement's terms, conditions, and procedures, and shall constitute due and sufficient notice to all persons entitled thereto under California law, the United States Constitution, and any other applicable law."*)

*Palmer v. Sprint Solutions, Inc.,* No. 09-cv-01211 (JLR) (W.D.Wa.) (*"The means of notice were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to be provide3d with notice."*)

*In re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. 1:08-md-01982 RDB (D. Md. N. Div.) (*"The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*)

*Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation*, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara) (*"Notice provided was the best practicable under the circumstances."*).

*Deke, et al. v. Cardservice Internat'l,* Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles) (*"The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*).

*Levine, et al. v. Dr. Philip C. McGraw, et al*., Case No. BC 312830 (Los Angeles County Super. Ct., Cal.) (*"[T]he plan for notice to the Settlement Class … constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."*).

*In re: Canadian Air Cargo Shipping Class Actions*, Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court (*"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA and the proposed method of notice is appropriate."*).



*Fischer et al v. IG Investment Management, Ltd. et al*, Court File No. 06-CV-307599CP, Ontario Superior Court of Justice.

*In re: Vivendi Universal, S.A. Securities Litigation*, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

*In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

*Berger, et al., v. Property ID Corporation, et al.*, No. CV 05-5373-GHK (CWx) (C.D.Cal.).

*Lozano v. AT&T Mobility Wireless*, No. 02-cv-0090 CAS (AJWx) (C.D.Cal.).

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,* No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Royal Dutch/Shell Transport Securities Litigation,* No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

*In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding*, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

*UAW v. General Motors Corporation*, No: 05-73991 (E.D.MI).

*Wicon, Inc. v. Cardservice Intern'l, Inc.*, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

*In re: SmithKline Beecham Clinical Billing Litig.*, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.).  Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

*MacGregor v. Schering-Plough Corp.,* No. EC248041 (Sup. Ct. Cal., County of Los Angeles).  This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough.  Because no mailing list was available, notice was accomplished entirely through the media program.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, No. CV-96-4849 (E.D.N.Y.).  Ms. Finegan managed the design and implementation of the Internet site on this historic case.  The site was developed in 21 native languages.  It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.

*In re: Exxon Valdez Oil Spill Litig.*, No. A89-095-CV (HRH) (Consolidated) (D. Alaska).  Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.



*In re: Johns-Manville Phenolic Foam Litig.*, No. CV 96-10069 (D. Mass).  The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

*Bristow v Fleetwood Enters Litig.*, No Civ 00-0082-S-EJL (D. Id).  Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

*In re: New Orleans Tank Car Leakage Fire Litig.*, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000). This case resulted in one of the largest settlements in U.S. history.  This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

*Garria Spencer v. Shell Oil Co.*, No. CV 94-074(Dist. Ct., Harris County, Tex.).  The nationwide notification program was designed to reach individuals who owned real property or structures in the United States, which contained polybutylene plumbing with acetyl insert or metal insert fittings.

*In re: Hurd Millwork Heat Mirror™ Litig.*, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara).  This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

*Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc*, No. CV–97-C-629-W (N.D. Ala.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

*In re: StarLink Corn Prods. Liab. Litig.*, No. 01-C-1181 (N.D. Ill)..  Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

*In re: MCI Non-Subscriber Rate Payers Litig.*, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.). The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.



*In re: Albertson's Back Pay Litig.*, No. 97-0159-S-BLW (D.Id.).  Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

*In re: Georgia Pacific Hardboard Siding Recovering Program*, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.).  Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements, which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., Nos. 1203, 99-20593.  Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues.   The resulting notice program was described and complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement,

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., 2000 WL 1222042, Nos. 1203, 99-20593 (E.D.Pa. Aug. 28, 2002).

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation.  In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software.  The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

*In re: Florida Microsoft Antitrust Litig. Settlement*, No.  99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Montana Microsoft Antitrust Litig. Settlement*, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

*In re: South Dakota Microsoft Antitrust Litig. Settlement*, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

*In re: Kansas Microsoft Antitrust Litig. Settlement*, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.) ("The Class Notice provided was the best notice practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3.").

*In re: North Carolina Microsoft Antitrust Litig. Settlement*, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).



*In re: ABS II Pipes Litig.*, No. 3126 (Sup. Ct. of Cal., Contra Costa County). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

*In re: Avenue A Inc. Internet Privacy Litig.*, No: C00-1964C (W.D. Wash.).

*In re: Lorazepam and Clorazepate Antitrust Litig.*, No. 1290 (TFH) (D.C.C.).

*In re: Providian Fin. Corp. ERISA Litig.*, No C-01-5027 (N.D. Cal.).

*In re: H & R Block., et al Tax Refund Litig.*, No. 97195023/CC4111 (MD Cir. Ct., Baltimore City).

*In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.*, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

*In re: Sprint Corp. Optical Fiber Litig.*, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan).

*In re: Shelter Mutual Ins. Co. Litig.*, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

*In re: Conseco, Inc. Sec. Litig.*, No: IP-00-0585-C Y/S CA (S.D. Ind.).

*In re: Nat'l Treasury Employees Union, et al.*, 54 Fed. Cl. 791 (2002).

*In re: City of Miami Parking Litig.*, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.*, No. L 1:01CV658 (E.D. Tx.).

*Alsea Veneer v. State of Oregon A.A*., No. 88C-11289-88C-11300.



**INTERNATIONAL EXPERIENCE**

***Bell v. Canadian Imperial Bank of Commerce***, *et al, Court File No.: CV-08-359335 (Ontario Superior Court of Justice); (2016).*

***In re: Canadian Air Cargo Shipping Class Actions*** *(Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia.*

***In re: Canadian Air Cargo Shipping Class Actions (****Québec Superior Court).*

***Fischer v. IG Investment Management LTD.***, *No. 06-CV-307599CP (Ontario Superior Court of Justice).*

***In Re Nortel I & II Securities Litigation***, *Civil Action No. 01-CV-1855 (RMB), Master File No. 05 MD 1659 (LAP) (S.D.N.Y. 2006).*

***Frohlinger v. Nortel Networks Corporation*** *et al., Court File No.: 02-CL-4605 (Ontario Superior Court of Justice).*

***Association de Protection des Épargnants et Investissuers du Québec v. Corporation Nortel Networks***, *No.: 500-06-0002316-017 (Superior Court of Québec).*

***Jeffery v. Nortel Networks Corporation*** *et al., Court File No.: S015159 (Supreme Court of British Columbia).*

***Gallardi v. Nortel Networks Corporation***, *No. 05-CV-285606CP (Ontario Superior Court).*

***Skarstedt v. Corporation Nortel Networks***, *No. 500-06-000277-059 (Superior Court of Québec).*


**SEC ENFORCEMENT NOTICE PROGRAM EXPERIENCE**

***SEC v. Vivendi Universal, S.A., et al.,*** *Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.).*
The Notice program included publication in 11 different countries and eight different languages.

***SEC v. Royal Dutch Petroleum Company***, *No.04-3359 (S.D. Tex.)*



## FEDERAL TRADE COMMISSION NOTICE PROGRAM EXPERIENCE

*FTC v. TracFone Wireless, Inc.*, Case No. 15-cv-00392-EMC.

*FTC v. Skechers U.S.A., Inc.,* No. 1:12-cv-01214-JG (N.D. Ohio).

*FTC  v. Reebok International Ltd.*,  No. 11-cv-02046 (N.D. Ohio)

*FTC v. Chanery and RTC Research and Development LLC [Nutraquest]*, No :05-cv-03460 (D.N.J.)

## BANKRUPTCY EXPERIENCE

Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

**In Re: PG&E Corporation Case**  No . 19-30088 Bankr. N.D. Cal. 2019). Hearing Establishing, Deadline for Filing Proofs of Claim, (II) establishing the  Form and Manner of  Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar  Date and Other Information to all Creditors and Potential  Creditors PG&E. *June 26, 2019,  Transcript of Hearing  p. 21:1, the Honorable Dennis Montali stated: …the technology and the thought that goes into all these plans is almost incomprehensible.  He further stated,   p. 201:20 … Ms. Finegan has really impressed me today…*

*In re AMR Corporation [American Airlines], et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y.) *("due and proper notice [was] provided, and … no other or further notice need be provided.")*

*In re Jackson Hewitt Tax Service Inc.*, et al., No 11-11587 (Bankr. D.Del.) (2011). The debtors sought to provide notice of their filing as well as the hearing to approve their disclosure statement and confirm their plan to a large group of current and former customers, many of whom current and viable addresses promised to be a difficult (if not impossible) and costly undertaking. The court approved a publication notice program designed and implemented by Finegan and the administrator, that included more than 350 local newspaper and television websites, two national online networks (24/7 Real Media, Inc. and Microsoft Media Network), a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo. These online efforts supplemented the print publication and direct-mail notice provided to known claimants and their attorneys, as well as to the state attorneys general of all 50 states. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising.

*In re: Nutraquest Inc.*, No. 03-44147 (Bankr. D.N.J.)

*In re: General Motors Corp. et al*, No. 09-50026 (Bankr. S.D.N.Y.).  This case is the 4th largest bankruptcy in U.S. history.   Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.



*In re: ACandS, Inc.,* No. 0212687 (Bankr. D.Del.) (2007) (*"Adequate notice of the Motion and of the hearing on the Motion was given."*).

*In re: United Airlines*, No. 02-B-48191 (Bankr. N.D Ill.).  Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs.  The notice was published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, No. 01-16034 (Bankr. S.D.N.Y.).   Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.).   Ms. Finegan originally designed the information website.  This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Inds.*, No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.).  Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

*In re: Keene Corp.*, No. 93B 46090 (SMB), (Bankr. E.D. MO.).   Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

*In re: Lamonts*, No. 00-00045 (Bankr. W.D. Wash.).   Ms. Finegan designed an implemented multiple bankruptcy notice programs.

*In re: Monet Group Holdings*, Nos. 00-1936 (MFW) (Bankr. D. Del.).  Ms. Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Co.*, No. 98-53121-399 (Bankr. E.D. MO.).   Ms. Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corp.*, No. 91-804 (Bankr. S.D.N.Y.).  Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corp. of New York, et al*. (Bankr. S.D.N.Y).  Ms. Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Prods. Co., Inc.,* No. 96-35267-T, (Bankr. E.D. Va.). Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.



*In re: Lodgian, Inc., et al.*, No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y.).

*In re: Internat'l Total Servs, Inc., et al.*, Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y.).

*In re: Decora Inds., Inc. and Decora, Incorp.*, Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).

*In re: Genesis Health Ventures, Inc., et al*, No. 002692 (PJW) (Bankr. D. Del.).

*In re: Tel. Warehouse, Inc., et al*, No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

*In re: United Cos. Fin. Corp., et al*, No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

*In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.*, No. 95-B44080 (JLG) (Bankr. S.D.N.Y.).

*In re: Physicians Health Corp., et al.*, No. 00-4482 (MFW) (Bankr. D. Del.).

*In re: GC Cos., et al.*, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

*In re: Heilig-Meyers Co., et al.*, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).

## PRODUCT RECALL AND CRISIS COMMUNICATION EXPERIENCE

***Reser's Fine Foods.***  Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols.   Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

***Gulf Coast Claims Facility Notice Campaign.*** Finegan coordinated a massive outreach effort throughout the Gulf Coast region to notify those who have claims as a result of damages caused by the Deep Water Horizon Oil spill.  The notice campaign included extensive advertising in newspapers throughout the region, Internet notice through local newspaper, television and radio websites and media relations. The Gulf Coast Claims Facility (GCCF) was an independent claims facility, funded by BP, for the resolution of claims by individuals and businesses for damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010.



***City of New Orleans Tax Revisions, Post-Hurricane Katrina***.  In 2007, the City of New Orleans revised property tax assessments for property owners.  As part of this process, it received numerous appeals to the assessments.  An administration firm served as liaison between the city and property owners, coordinating the hearing schedule and providing important information to property owners on the status of their appeal.  Central to this effort was the comprehensive outreach program designed by Ms. Finegan, which included a website and a heavy schedule of television, radio and newspaper advertising, along with the coordination of key news interviews about the project picked up by local media.

### ARTICLES/ SOCIAL MEDIA

Tweet Chat: Contributing Panelist *#Law360SocialChat*, A live Tweet workshop concerning the benefits and pit-falls of social media, Lexttalk.com, November 7, 2019.

Author, "Top Class Settlement Admin Factors to Consider in 2020" Law360, New York, (October 31, 2019, 5:44 PM ET).

Author, "Creating a Class Notice Program that Satisfies Due Process" Law360, New York, (February 13, 2018 12:58 PM ET).

Author, "3 Considerations for Class Action Notice Brand Safety" Law360, New York, (October 2, 2017  12:24 PM ET).

Author, "What Would Class Action Reform Mean for Notice?"  Law360, New York, (April 13, 2017 11:50 AM ET).

Author, "Bots Can Silently Steal your Due Process Notice."  Wisconsin Law Journal, April 2017.

Author, "*Don't Turn a Blind Eye to Bots*. Ad Fraud and Bots are a Reality of the Digital Environment." LinkedIn article March 6, 2107.

Co-Author,  "Modern Notice Requirements Through the Lens of *Eisen* and *Mullane*" – Bloomberg - BNA Class Action Litigation Report, 17 CLASS 1077, (October 14, 2016).

Author, "Think All Internet Impressions Are The Same? Think Again" – Law360.com, New York (March 16, 2016, 3:39 ET).

Author, "Why Class Members Should See an Online Ad More Than Once" – Law360.com, New York, (December 3, 2015, 2:52 PM ET).

Author, 'Being 'Media-Relevant' — What It Means and Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).



Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, (November 2011).

Quoted Expert,  "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review,  (2011), 53 S.C.L.R. (2d).

Co-Author, with Hon. Dickran Tevrizian – "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, May 27, 2011.

Co-Author, with Hon. Dickran Tevrizian, Your Insight, "Expert Opinion: It's More Than Just a Report -Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," TXLR, Vol. 26, No. 21, May 26, 2011.

Quoted Expert, "Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide:  A New Roadmap to Adequate Notice and Beyond," BNA Class Action Litigation Report, 12 CLASS 165, February 25, 2011.

Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, April, 9, 2010 Vol. 11, No. 7 p. 343.

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 January 27, 2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, July 24, 2009.

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Report, Vol. 9, No. 7, April 11, 2008, pp. 307-310.

Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.



Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9 September, 2002.

Author, "Legal Notice, What You Need to Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers," - International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," - International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, winter edition 1999.

## SPEAKER/EXPERT PANELIST/PRESENTER

| | |
|---|---|
| Chief Litigation Counsel Association (CLCA) | Speaker, "Four Factors Impacting the Cost of Your Class Action Settlement and Notice," Houston TX, May 1, 2019 |
| CLE Webinar | "Rule 23 Changes to Notice, Are You Ready for the Digital Wild, Wild West?" October 23, 2018,  https://bit.ly/2RIRvZq |
| American Bar Assn. | Faculty Panelist, 4th Annual Western Regional CLE Class Actions, "Big Brother, Information Privacy, and Class Actions: How Big Data and Social Media are Changing the Class Action Landscape" San Francisco, CA  June, 2018. |
| Miami Law Class Action | Faculty Panelist, " Settlement and Resolution of Class Actions," |



| | |
|---|---|
| & Complex Litigation Forum | Miami, FL December 2, 2016. |
| The Knowledge Group | Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org, October 2016. |
| ABA National Symposium | Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA, March 2016. |
| S.F. Banking Attorney Assn. | Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA, May 2015. |
| Perrin Class Action Conf. | Faculty Panelist, "Being Media Relevant, What It Means and Why It Matters – The Social Media Evolution: Trends, Challenges and Opportunities," Chicago, IL May 2015. |
| Bridgeport Continuing Ed. | Speaker, Webinar "Media Relevant in the Class Notice Context." July, 2014. |
| Bridgeport Continuing Ed. | Faculty Panelist, "Media Relevant in the Class Notice Context." Los Angeles, California, April 2014. |
| CASD 5th Annual | Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012. |
| Law Seminars International | Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable... What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011. ***Voted by attendees as one of the best presentations given.*** |
| CASD 4th Annual | Faculty Panelist, "Reasonable Notice - Insight for practitioners on the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, October 2011. |
| CLE International | Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011. |
| CASD | Faculty Panelist, "21st Century Class Notice and Outreach." 3nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010. |

**Heffler Claims**
Group

| | |
|---|---|
| CASD | Faculty Panelist, "The Future of Notice." 2nd Annual Class Action Symposium CASD Symposium, San Diego California, October 2009. |
| American Bar Association | Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard."<br>Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008. |
| Women Lawyers Assn. | Faculty Panelist, Women Lawyers Association of Los Angeles "The Anatomy of a Class Action." Los Angeles, CA, February, 2008. |
| Warranty Chain Mgmt. | Faculty Panelist, Presentation Product Recall Simulation.  Tampa, Florida, March 2007. |
| Practicing Law Institute. | Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age.  New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA, May 2006. |
| U.S. Consumer Product Safety Commission | Ms. Finegan participated as an invited expert panelist to the CPSC to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.  Bethesda, MD, September 2003. |
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law | Faculty, CLE White Paper: "What are the best practicable methods to Center Mass Tort Litigation give notice? Dispelling the communications myth – A notice Institute disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November, 2001. |



| | |
|---|---|
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| McCutchin, Doyle, Brown | Speaker to litigation group in San Francisco and simulcast to four other McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice.  San Francisco, CA, June 2001. |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |
| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice.  San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

## BACKGROUND

Ms Finegan's past experience includes working in senior management for leading Class Action Administration firms including The Garden City Group ("GCG") and Poorman-Douglas Corp., ("EPIQ"). Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications.  After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm).  As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs.  During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.



Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming.  She was also the program/promotion manager at KECH-22 television.

Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

### MEMBERSHIPS, PROFESSIONAL CREDENTIALS

**APR**     Accredited. Universal Board of Accreditation Public Relations Society of America
- **Member of the Public Relations Society of America**
- **Member Canadian Public Relations Society**

**Board of Directors - Alliance for Audited Media**
Alliance for Audited Media ("AAM") is the recognized leader in cross-media verification. It was founded in 1914 as the Audit Bureau of Circulations (ABC) to bring order and transparency to the media industry. Today, more than 4,000 publishers, advertisers, agencies and technology vendors depend on its data-driven insights, technology certification audits and information services to transact with trust.

### SOCIAL MEDIA

*LinkedIn:* **_www.linkedin.com/in/jeanne-finegan-apr-7112341b_**

# EXHIBIT 3

## Publication Notice

<u>LEGAL NOTICE</u>

Did you purchase McCormick® brand and/or private label brand Black Pepper Products between
January 1, 2015 and January 27, 2020?
You may get a payment from a class action settlement.

*Versiones en idioma espanol estan disponibles en el sitio web.*

_____

A multi-district class action lawsuit is currently pending in the United States District Court for the District of Columbia against McCormick & Company, Incorporated ("Defendant" or "McCormick"). This lawsuit claims that McCormick improperly implemented a price increase by decreasing the quantity of black pepper in certain McCormick® brand pepper containers and certain store-branded pepper containers which were supplied by McCormick (collectively "Black Pepper Products"), while keeping the non-transparent containers the same size. McCormick denies all of the Plaintiffs' claims and denies that it engaged in any unlawful or improper conduct. The Court has not decided who is right and who is wrong. Instead, both sides agreed to a settlement.

**Am I a Class Member?** The Parties have asked the Court to approve a settlement involving the following class:

> All persons residing in California, Florida, or Missouri who purchased any McCormick® brand or private label brand Black Pepper Product(s) between January 1, 2015 and January 27, 2020.

A list of the specific Black Pepper Products included in the settlement may be found on the settlement website. If you are still not sure whether you are a Class Member, you can visit the website, www.BlackPepperSettlement.com, call 844-702-2783, or write to Heffler Claims Group, P.O. Box #58238, Philadelphia, PA 19102-8238 for more information.

**What am I Eligible to Receive?**

If you have proof that you purchased one or more listed Black Pepper Products between January 1, 2015 and January 27, 2020 (such as a receipt, or the container itself), you may receive the greater of Four Dollars ($4.00) per container or the actual cost per container purchased during this time period.

If you do not have proof that you purchased one or more Black Pepper Products between January 1, 2015 and Janauary 27, 2020, you may receive Four Dollars ($4.00) per container for up to two (2) containers of Black Pepper Products that you claim to have purchased.

Depending upon the number of claims submitted, the target payment of $4.00 per container may be increased or decreased pro rata.

**What are My Options?**

**Submit Claim Form** – This is the only way to get money from the settlement. By submitting a Claim Form and receiving money, you will be giving up your right to sue, or continue to sue, Defendant about the same or similar legal claims that are involved in this case, now or in the future. You will be legally bound by the Court's judgment in these class actions. Go to www.BlackPepperSettlement.com to learn how to file a Claim Form.

**Exclude Yourself From the Class** – If you exclude yourself from the Class, you will not get any money from the settlement nor will you be able to object to the settlement. However, you may sue or continue to sue Defendant about the same or similar legal claims that are involved in this case, now or in the future. You will not be legally bound by the Court's judgment in these class actions. Go to www.BlackPepperSettlement.com to learn how to exclude yourself from the Class.

**Object to the Settlement** – You can write to the Claims Administrator about why you don't like the settlement. You must remain a Class Member to object to the Settlement. If the Court approves the settlement in spite of your objection, you may receive money from the settlement. You will also be giving up your right to sue, or continue to sue, Defendant about the same or similar legal

claims that are involved in this case, now or in the future.  You will be legally bound by the Court's judgment in these class actions.  Go to www.BlackPepperSettlement.com to learn how to object to the settlement.

**Go to the Hearing** – You can ask to speak in Court about the fairness of the settlement.  You must remain a Class Member to speak at a hearing concerning the settlement.  If the Court approves the settlement, you may receive money from the settlement.  You will also be giving up your right to sue, or continue to sue, Defendant about the same or similar legal claims that are involved in this case, now or in the future.  You will be legally bound by the Court's judgment in these class actions.  Go to www.BlackPepperSettlement.com to learn how to request permission to speak at the hearing.

**Do Nothing** – By doing nothing, you will not get any money from the settlement.  However, you will remain a member of the Class and will be giving up your right to sue, or continue to sue, Defendant about the same or similar legal claims that are involved in this case, now or in the future.  You will be legally bound by the Court's judgment in these class actions.

**This is only a summary.  For more detailed information, please visit or call:**

www.BlackPepperSettlement.com                    844-702-2783 (toll free)

# EXHIBIT 4

## Settlement Notice

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**<u>NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT</u>**

*A federal court authorized this notice.*
*You are <u>not</u> being sued.  This is <u>not</u> a solicitation from a lawyer.*

This Notice relates to a proposed Settlement of a lawsuit (the "Lawsuit") filed against McCormick & Company, Incorporated ("McCormick").

- This settlement will provide $2,500,000.00 to pay valid claims to individuals who live in California, Florida and Missouri who purchased certain McCormick® and/or private label brand Black Pepper Products.
- To qualify, you must have purchased at least one listed McCormick® and/or private label brand Black Pepper Product between January 1, 2015 and January 27, 2020.

**<u>This Notice explains important legal rights you may have. Your legal rights will be affected regardless of whether you do or do not act.</u>**  The following rights and options—**<u>and the deadlines to exercise them</u>**—are explained in this Notice.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT CLAIM FORM** | The only way to get a payment. |
| **DO NOTHING** | Accept the terms of this Settlement and thereby give up your rights to sue McCormick about the same legal claims as are made in this case. |
| **EXCLUDE YOURSELF** | This is the only option that allows you to bring your own, or be part of any other, lawsuit against McCormick about the legal claims resolved in this Settlement. |
| **OBJECT** | Write to the Settlement Administrator about why you think the Settlement should not be approved. |
| **GO TO HEARING** | Ask to speak in Court about the fairness of the Settlement. |

The Court in charge of this Lawsuit has preliminarily approved the Settlement and will hold a hearing to make a final decision to approve it. The relief provided to Class Members will be provided only if the Court gives final approval to the Settlement and, if there are any appeals, after the appeals are resolved in favor of the Settlement.

## WHAT THIS NOTICE CONTAINS

### BASIC INFORMATION

1.  Why did I get this Notice?
2.  What is this case about?
3.  Why is there a Settlement?
4.  Why is this a class action, and how do I know if I am part of the Settlement?

### THE SETTLEMENT BENEFITS

5.  What does this Settlement provide?
6.  What am I giving up as part of the Settlement?
7.  Will the Class Representatives receive any compensation for their efforts in bringing this Lawsuit?

### HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

8.   How can I get a payment?
9.   When would I get a payment?
10.  What am I giving up to get a payment or stay in the Class?

### EXCLUDING YOURSELF FROM THE SETTLEMENT

11. How do I exclude myself from the Settlement?
12. If I do not exclude myself, can I sue later?
13. What happens if I do nothing at all?

### THE LAWYERS REPRESENTING YOU

14. Do I have a lawyer in the case?
15. How will the lawyers be paid?

### OBJECTING TO THE SETTLEMENT

16. How do I tell the Court that I do not like the Settlement?
17. What is the difference between objecting and asking to be excluded?

### THE COURT'S FAIRNESS HEARING

18. When and where will the Court decide whether to approve the Settlement?
19. Do I have to come to the hearing?

20. May I speak at the hearing?

GETTING MORE INFORMATION

21. How do I get more information about the Settlement?

# BASIC INFORMATION

### 1. Why did I get this Notice?

A Court authorized this Notice to inform people who may be Class Members about a proposed Settlement of this class action, This Notice explains the nature of the lawsuits and claims being settled, your legal rights, and the benefits to the Class.

Judge Ellen S. Huvelle of the United States District Court for the District of Columbia is overseeing this class action. The case is known as *In re: McCormick & Company, Inc., Pepper Products Marketing and Sales Practices Litigation*.   The people who sued are called the "Plaintiffs," and the company they sued, McCormick, is called the "Defendant."

### 2. What is this case about?

McCormick sells a wide variety of items, including black pepper products. McCormick also supplies private-label (store-branded) black pepper products to some of its retail customers. The Plaintiffs who filed this case allege that McCormick improperly implemented a price increase by decreasing the quantity of pepper in certain McCormick® brand pepper containers and certain store-branded containers which were also supplied by McCormick, while keeping the non-transparent containers the same size.  The Plaintiffs presently bring claims against McCormick for violations of state consumer protection statutes in California, Florida, and Missouri.

McCormick denies the allegations of wrongdoing and denies that it engaged in any unlawful or improper conduct or that it caused any harm as alleged in the Lawsuit.

To obtain more information about this case and Settlement, please see Section 21.

### 3. Why is there a Settlement?

The Court did not decide in favor of the Plaintiffs or McCormick.  Instead, both sides agreed to settle this case. That way, they avoid the costs and risk of a trial, and the Class will receive relief when the Settlement is final, rather than years from now, if at all.

### 4. Why is this a class action, and how do I know if I am part of the Settlement?

In a class action, one or more people called "class representatives" (Debbie Esparza, Carmen Pellitteri, Holly Marsh, and Catherine Grindel in this case,) sue on behalf of people who have

3

similar claims. All of these people who may have similar claims form a "Class" and are "Class Members." The Settlement resolves the issues for all Class Members, except those who exclude themselves from the Class, as explained in Section 11.

To know if you will be affected by this Settlement, you first have to determine if you are a Class Member. The Court decided that the Class includes all persons residing in California, Florida, or Missouri who purchased certain McCormick® brand or private label brand Black Pepper Products in the United States from January 1, 2015 through January 27, 2020.  A list of the specific products that qualify can be found online at www.BlackPepperSettlement.com.  If you are not sure whether you are in the Class or have any other questions about the Settlement, you may visit that website or write with questions to Heffler Claims Group, P.O. Box #58238, Philadelphia, PA 19102-8238.

# THE SETTLEMENT BENEFITS

## 5. What does this Settlement provide?

If the proposed Settlement is finally approved by the Court, and after any appeals are resolved, McCormick has agreed to establish a Settlement Fund in the amount of $2,500,000, from which cash payments may be made for amounts of approximately $4.00 per container for all valid claims. The amount of the cash payments may be increased or decreased pro rata, depending upon the number of claims made.  In other words, if there are a large number of valid claims, such that there are not sufficient funds to pay all claimants $4.00 per container, the amount per container that you may recover would be reduced pro rata. On the other hand, if there are not many valid claims, you may recover more than $4.00 per container, as the amount paid per container may be increased pro rata.

The deadline to make a valid claim is May 15, 2020. To make a claim, please visit www.BlackPepperSettlement.com.

## 6. What am I giving up as part of the Settlement?

If the Settlement becomes final, Class Members will be releasing McCormick (and certain others related to McCormick, such as its directors, officers and employees) and all stores that sold the Black Pepper Products from all of the settled claims. This means that you will no longer be able to sue McCormick (or the other released parties) regarding any of the settled claims if you are a Class Member and do not timely and properly exclude yourself from the Class.

The settled claims are any known or unknown claims that any Class Member may at any time have up to January 27, 2020, arising out of the subject matter giving rise to the claims in the lawsuits that were consolidated into this Lawsuit. In addition, Class Members expressly waive and relinquish the provisions of California Civil Code § 1542 (and all other similar provisions of law) to the full extent that these provisions may be applicable to this release. California Civil Code § 1542 provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN TO HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The full text of the Settlement Agreement, which includes all the provisions about settled claims and releases, is available at www.BlackPepperSettlement.com.

**7.  Will the Class Representatives receive any compensation for their efforts in bringing this Lawsuit?**

Debbie Esparza, Carmen Pellitteri, Holly Marsh, and Catherine Grindel will request an incentive award of up to $5,000.00 each, for their services as class representatives and their efforts in bringing the Lawsuit. The Court will make the final decision as to the amount, if any, to be paid to the Class Representatives.

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

**8.  How can I get a payment?**

To qualify for payment, you must submit a claim form.  Claim forms shall be available at www.BlackPepperSettlement.com.   Hard copy claim forms shall also be available to Class Members who request them.

Completed claim forms shall be due to the Claims Administrator by **May 15, 2020**.  If submitted electronically, the claims forms must be submitted by 11:59 p.m. EST on May 15, 2020.   If submitted in hard copy, the claim form must be postmarked by May 15, 2020.

**9.  When would I get a payment?**

The Court will hold a hearing on June 3, 2020 to decide whether to approve the settlement.  If Judge Huvelle approves the settlement after that hearing, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  The settlement funds also will not be distributed to Class Members until payment is authorized by the Court and the Lawsuit has been fully and finally concluded.  This means that claims may not be paid until a year or more after the settlement is approved.  Everyone who submits a claim form will be informed of the progress of the settlement.  Please be patient.

**10.  What am I giving up to get a payment or stay in the Class?**

Unless you exclude yourself, you are staying in the Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant about the legal issues in these

cases.  It also means that all of the Court's orders will apply to you and legally bind you.  If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 11.  How do I exclude myself from the Settlement?

Class Members who do not want to be part of the Settlement must send a letter by mail requesting to be excluded from *In re: McCormick & Company, Inc. Pepper Products Marketing and Sales Practices Litigation*, MDL Docket No. 2665, Case No. 15-1825(ESH).  Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request and it be postmarked on or before **May 4, 2020** to: Heffler Claims Group, P.O. Box #58238, Philadelphia, PA 19102-8238.

You cannot exclude yourself by phone.  If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  You will not be legally bound by anything that happens in these lawsuits.  However, you may be able to sue (or continue to sue) the Defendant in the future.

### 12.  If I do not exclude myself, can I sue later?

No.  If you do not exclude yourself, you forever give up the right to sue McCormick for all of the claims that this Settlement resolves.

If you submit a valid and timely request to be excluded, you cannot object to the proposed Settlement.  However, if you ask to be excluded, you may sue or continue to sue McCormick about the same claims resolved by this Settlement in the future.  You will not be bound by anything that happens in this Lawsuit.  Remember, the exclusion deadline is May 4, 2020.

### 13.  What happens if I do nothing at all?

If you are a Class Member and do nothing, you will be subject to the terms of the Settlement Agreement.  If you do not exclude yourself, you will not be able to start or proceed with a lawsuit, or be part of any other lawsuit against McCormick and the other released parties about the settled claims in this case at any time.

## THE LAWYERS REPRESENTING YOU

### 14.  Do I have a lawyer in the case?

The Court has ordered that Beth Fegan of Fegan Scott, LLC and Scott A. Kamber of KamberLaw LLC (together, "Class Counsel") will represent the interests of all Class Members. Class Members

will not be separately charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### 15.  How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses in an amount to be determined by the Court as a percentage of the entire value of the settlement, as well as payment to the Class Representatives, Debbie Esparza, Carmen Pellitteri, Holly Marsh, and Catherine Grindel, not to exceed $5,000 each.  To see a copy of Class Counsel's application for attorneys' fees and costs, which will be available prior to the Fairness Hearing, please visit www.BlackPepperSettlement.com.  The Court will make the final decisions as to the amounts to be paid to Class Counsel, and may award less than the amounts requested by Class Counsel.  The cost of administering the settlement will also come out of the settlement fund.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

### 16.  How do I tell the Court that I do not like the Settlement?

You can object to the Settlement if you do not like any part of it.  You must give the reasons why you think the Court should not approve the Settlement.  The Court will consider your views.  To object, you must send a letter to the Claims Administrator saying that you object to *In re: McCormick & Company, Inc. Pepper Products Marketing and Sales Practices Litigation*, MDL Docket No. 2665, Case No. 15-1825 (ESH), including a written statement of your objection(s). The written statement must include (i) your full name, address, telephone number and signature; (ii) the name of the Lawsuit; (iii) the specific reasons why you object to the Settlement; (iv) copies of any evidence and legal authority you would like the Court to consider; (v) information demonstrating that you are a Class Member; (vi) whether you or your attorney will appear at the fairness hearing (see Sections 19-20); and (vii) information identifying any prior class action objections filed by you or your counsel.  Mail the objection to the Claims Administrator at Heffler Claims Group, P.O. Box #58238, Philadelphia, PA 19102-8238, **postmarked no later than May 4, 2020**.

**If you fail to comply with these requirements, or fail to submit your objection before the deadline, you will be deemed to have waived all objections and will not be entitled to speak at the fairness hearing.**

### 17.  What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you don't like something about the Settlement (e.g. the proposed Settlement, the entry of Final Approval, attorneys' fees, etc.).  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you don't want to be part of the

Class.  If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement.  You may attend and you may ask to speak, but you don't have to.

### 18.  When and where will the Court decide whether to approve the Settlement?

The Court has preliminarily approved the Settlement and will hold a hearing to determine whether to give final approval to the Settlement.  The purpose of the Fairness Hearing is for the Court to determine whether the Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Class, to consider the award of attorneys' fees and expenses to Class Counsel, and to consider the request for incentive awards to the Class Representatives.

The Court will hold the **Fairness Hearing at 2:00 p.m. on June 3, 2020** in Courtroom 23A, at the U.S. District Court, 333 Constitution Ave NW, Washington, DC 2000.  The hearing may be postponed to a different time or location without additional notice, so it is recommended that you periodically check www.BlackPepperSettlement.com for updated information.

### 19.  Do I have to come to the hearing?

No, you are not required to come to the Fairness Hearing.  However, you are welcome to attend the hearing at your own expense.  If you send a written objection, you do not have to come to the hearing to talk about it.  As long as you submitted the written objection and it was received on time, the Court will consider it.  You also may pay your own lawyer to attend the Fairness Hearing, but it's not necessary.

### 20.  May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing only if (a) you have timely served and filed an objection, and (b) followed the procedures set forth in Section 16 for notifying the Court and the parties that you intend to speak at the Fairness Hearing.  You cannot speak at the hearing if you exclude yourself from the Settlement.

# GETTING MORE INFORMATION

### 21.  How do I get more information about the Settlement?

This Notice summarizes the proposed Settlement.

To see a copy of the actual Settlement Agreement, the complaints filed in this Lawsuit, the Court's Preliminary Approval Order, Class Counsel's application for attorneys' fees and costs, other

pertinent information, **and to check the status of the Settlement or if the Settlement has been approved by the Court,** please visit www.BlackPepperSettlement.com.

You may also contact the Claims Administrator at 844-702-2783; write to Heffler Claims Group, P.O. Box #58238, Philadelphia, PA 19102-8238; or visit the website at www.BlackPepperSettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

**PLEASE DO <u>NOT</u> CALL OR WRITE TO THE COURT OR THE CLERK'S OFFICE FOR INFORMATION ABOUT THE SETTLEMENT OR LITIGATION.  THE COURT CANNOT ANSWER ANY QUESTIONS.**

Dated January _____, 2020

# EXHIBIT 5

## Claim Form

**IMPORTANT LEGAL MATERIALS**

*In re: McCormick & Company, Inc., Pepper Products*
*Marketing and Sales Practices Litigation*
**MDL Docket No. 2665, Case No. 15-1825 (ESH),**
**United States District Court for the**
  **District of Columbia**

For use by purchasers of certain McCormick® brand or private label brand Black Pepper Products within the following dates:  between January 1, 2015 and January 27, 2020.

## CLAIM FORM

### GENERAL INSTRUCTIONS

**Settlement Class Members who seek payment from the Settlement must complete and return this Claim Form.** Completed Claim Forms must be mailed to the Settlement Administrator at Heffler Claims Group, P.O. Box XXXX, Philadelphia, PA 19102-XXXX or can be submitted online via the Settlement Website, www.BlackPepperSettlement.com. **Claim Forms submitted via mail must be POSTMARKED BY May 15, 2020 OR SUBMITTED ONLINE NO LATER THAN 11:59 pm, Eastern Standard Time on May 15, 2020.**

Before you complete and submit this Claim Form by mail or online, you should read and be familiar with the Notice of Proposed Class Action Settlement (the ''Notice'') available at www.BlackPepperSettlement..com. Defined terms (with initial capitals) used in these General Instructions have the same meaning as set forth in the Settlement Agreement. By submitting this Claim Form, you acknowledge that you have read and understand the Notice, and you agree to the Release(s) included as a material term of the Settlement Agreement.

If you fail to submit a timely Claim Form, your Claim may be rejected and you may be precluded from any recovery from the Settlement fund. If you are a member of the Settlement Class and you do not timely and validly request to Opt-Out from the Settlement Class, you will be bound by any judgment entered by the Court approving the Settlement regardless of whether you submit a Claim Form. You can elect one Benefit per Household. To receive the most current information, receive updates, and to file your Claim please visit the Settlement Website at www. BlackPepperSettlement.com.

**Claimant Information**

Claimant Name: _____
                First Name                                 MI    Last Name

Street Address: _____

Street Address2: _____

City: _____   State: _____   Zip Code: _____

Daytime Phone Number: ( _____ ) _____ - _____

Evening Phone Number: ( _____ ) _____ - _____

E-mail Address: _____

*Phone numbers and are requested solely for purposes of claim verification, or to resolve questions about submitted claim forms, and will not be shared with third parties.

**Please complete only ONE of the two options below. Completing more than one option below will invalidate your claim.**

## For use with No Proof-of-Purchase Claims

No Proof benefits are available for Settlement Class Members who purchased the Black Pepper Products during the Class Period and do not have valid Proof of Purchase. You may recover a maximum of $4.00 per Black Pepper Product, for up to 2 containers, for a maximum of $8.00 per Household, or less, depending on a number of factors.

| Purchase Information |
|---|

1. Please identify the brand name of the Product(s) you purchased: _____

2. Please identify the name(s) and size(s) of the container (by ounces) you purchased: _____

3. How many Black Pepper containers did you purchase? _____

4. Please identify the approximate date(s) of purchase(s): **_____**

## For use with Proof-of-Purchase Claims

Proof-of-Purchase benefits are available for Settlement Class Members who purchased the Black Pepper Products during the Class Period and who elect to provide a valid Proof of Purchase showing, at a minimum, the purchase of a Black Pepper Product, the purchase price, purchase date, and place of purchase. You may recover the greater of $4.00 per container or the actual cost per container for each container purchased, and recovery may vary depending upon a number of factors. **Proof of Purchase must be attached and submitted with this Claim.**

| **Purchase Information** |
|---|

1. Please identify the brand name of the Product(s) you purchased: _____

2. Please identify the name(s) and size(s) of the container(s) (by ounces) you purchased: _____

3. How many Black Pepper containers did you purchase? _____

4. Please identify the approximate date(s) of purchase: **_____**

5. Attach Proof of Purchase. Examples of proofs of purchase may include a receipt, a record of retailer loyalty-club purchases, or a photo of the container and UPC code.

**Submission to the Court**

By signing below, you are submitting to the jurisdiction of the United States District Court for the District of Columbia.

**Certification under Penalty of Perjury**

**I hereby certify under penalty of perjury that:**

1.  I have read the Settlement Agreement and agree to its terms, including the Release(s);
2.  The information provided in this Claim Form is accurate and complete to the best of my knowledge, information and belief;
3.  The additional information provided to the Settlement Administrator to support my Claim is an original or a complete and true copy of the original document;
4.  I am a member of the Settlement Class and did not request to Opt-Out from the Settlement Class;
5.  I have not entered into a Settlement for any of the Claims set forth in this Claim Form;
6.  I am neither (a) a Person who purchased or acquired the Product for resale; (b) an employee, principal, legal representative, successor, or and assign of Defendant or its affiliated entities; (c) a government entity; nor (d) a judge to whom this Action is assigned, or any member of the judge's immediate family or staff;
7.  I have not submitted any other Claim for the same purchases and have not authorized any other Person or entity to do so, and know of no other Person or entity having done so on my behalf;
8.  I will timely provide any additional information requested by the Settlement Administrator to validate my Claim;
9.  I understand that by submitting this Claim Form, I am deemed to have given a complete Release of all settled claims; and
10. I understand that Claims will be audited for veracity, accuracy and fraud.  Illegible Claims Forms can be rejected.  If a Claim Form is determined not to be a Valid Claim, it will be rejected.

Signature: _____   Dated: ___ / ___ / 2020