**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: MCCORMICK & COMPANY, INC., PEPPER PRODUCTS MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 2665 Case No. 15-1825 (ESH) |
| *This Document Relates To*: ALL CLASS ACTIONS | |

**UNOPPOSED  MOTION AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND ENTRY OF THE PROPOSED FINAL ORDER AND JUDGMENT**

## MOTION

Pursuant to Fed. R. Civ. P. 23, Plaintiffs respectfully submit this motion and memorandum of points and authorities in support of final approval of the proposed settlement agreement reached between the Plaintiffs, Debbie Esparza, Carmen Pellitteri, Holly Marsh, and Catherine Grindel (hereinafter "Plaintiffs" or "Representative Plaintiffs"), and Defendant McCormick & Company, Incorporated (hereinafter "Defendant" or "McCormick") (collectively the "Parties").

Defendant has reviewed this Motion and the Proposed Order, and consents to Final Approval on the basis sought herein. Plaintiffs therefore move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order granting final approval of the class action settlement.

*     *     *

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Debbie Esparza, Carmen Pellitteri, Holly Marsh, and Catherine Grindel, individually and on behalf of the Classes, submit this Memorandum of Points and Authorities in Support of their Motion for Final Approval of the Class Action Settlement and Entry of the Proposed Final Judgment Order.[1]  Final approval of this Settlement is appropriate because it is the excellent result of extensive arm's-length negotiations, and is fair, reasonable and adequate.  The Settlement includes a $2,500,000.00 non-revisionary Settlement Fund.

The Settlement meets all factors this Court considers at final approval.  First, the Settlement is the result of substantial arm's length negotiations conducted over a period of years. *See* Dkt. No. 224-1, Ex. A, Settlement Agreement ¶3.2.  Second, the Settlement provides significant substantive relief to the Class Members, particularly when viewed in light of the substantial risks faced by Plaintiffs should the case have gone forward.   Third, through extensive examination and investigation of the facts and law relating to the matters in this Action, Class Counsel had sufficient information to assess the risks of continuing the litigation and evaluate the fairness of the Settlement. *See* Dkt. No. 224-2, ¶¶18-19.  Fourth, and perhaps most important, the reaction of the Classes, elicited by a comprehensive and effective Notice program, has been overwhelmingly positive.  As of May 15, 2020, the close of the Claims Period, the Claims Administrator had received a total of 112,442 claims.[2]  Ex. B, Declaration of Jeanne C. Finegan ("Finegan Decl."), ¶18.  Conversely, the Claims Administrator received only one purported exclusion request, and

---

[1] All references to the "Settlement" or "Settlement Agreement" refer to the Settlement Agreement filed with the Court on January 24, 2020.  *See* Dkt. No. 224-1, Ex. A, Settlement Agreement.  Unless otherwise noted, all capitalized terms have the same meaning as in the Settlement Agreement.

[2] Additional valid claims, post-marked by May 15, 2020, may continue to trickle in.  The 112,442 claims are only the number of claims actually submitted to the Claims Administrator, and does not reflect the additional class members to be identified for direct payment through the retailer data.

zero Class Members timely submitted objections to the Claims Administrator.[3]  For all the forgoing reasons, experienced Class Counsel believe the Settlement is more than fair and adequate.

## II.    BACKGROUND

A full discussion of the history of the litigation is included in the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law filed on January 24, 2020 (Dkt. No. 224), and Plaintiffs' Motion for Attorney Fees and Costs, and Incentive Awards for the Settlement Class Representatives filed on April 20, 2020 (Dkt. No. 236).  Plaintiffs briefly summarize that history here for the Court's convenience.

*December 8, 2015*. The United States Judicial Panel on Multidistrict Litigation ordered the then-pending cases in this Action to be centralized for pretrial purposes in the United States District Court for the District of Columbia:

- o  *Dupler v. McCormick & Company, Inc.,* No. 2:15-cv-3454 (E.D.N.Y.)

- o  *Jung v. McCormick & Company, Inc.,* No. 1:15-cv-01148 (D.D.C.)

- o  *Bunting v. McCormick & Company, Inc.,* No. 3:15-cv-1648 (S.D. Cal.)

- o  *Marsh v. McCormick & Company, Inc.,* No. 2:15-cv-1625 (E.D.N.Y.)

- o  *Pellitteri v. McCormick & Company, Inc.,* No. 9:15-cv-81521 (S.D. Fl.)

- o  *Vladimirsky v. McCormick & Company, Inc.,* No. 1:15-cv-08102 (N.D. Ill.)

- o  *Bittle v. McCormick & Company, Inc.,* No. 3:15-cv-00989 (S.D. Ill.)

- o  *Barnes v. McCormick & Company, Inc.,* No. 3:15-cv-01224 (S.D. Ill.)

---

[3] The Notice required objections to be sent to the Claims Administrator.  Although the Claims Administrator received no objections, four purported objections were received directly by Class Counsel. However, none of the four purported objections received by Class Counsel—including two from the same household—appear to be from actual class members.  *See* Group Ex. D. The purchasers who purport to object reside in Alabama, Ohio, and Pennsylvania, which states' residents are not included within the Class Definition. *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 942 (E.D. La. 2012) ("These persons thus do not have standing to object."). Similarly, with regard to the sole purported opt-out received by the Claims Administrator, the request for exclusion was from a North Carolina resident, who does not appear to be a Class Member because North Carolina residents are not included in the Class Definition.

- *Theis v. McCormick & Company, Inc.,* No. 3:15-cv-01228 (S.D. Ill.)

- *Linker v. McCormick & Company, Inc.,* No. 4:15-cv-01340 (E.D. Mo.)

- *Thornton v. McCormick & Company, Inc.,* No. 3:15-cv-00566 (Nev.)

- *Ferreri v. McCormick & Company, Inc.,* No. 7:15-cv-06760 (S.D.N.Y.)

- *Marron v. McCormick & Company, Inc.*, No. 1:16-cv-0104 (D.D.C.)

- *Fernandez v. McCormick & Company, Inc.*, No. 1:16-cv-0117 (D.D.C.)

- *Gerstnecker v. McCormick & Company, Inc.*, No. 2:15-cv-01671 (W.D. Pa.)

*See* December 8, 2015 Transfer Order. *See* Dkt. No. 1.

***March 2, 2016.*** Plaintiffs filed their Consolidated Amended Class Action Complaint, asserting that McCormick improperly implemented a price increase by decreasing the quantity of pepper in both certain McCormick®-branded pepper containers and certain store-branded pepper containers that were supplied by McCormick. Dkt. No. 34. Plaintiffs also asserted that McCormick misled them about the reduction in quantity by keeping the non-transparent containers the same size in violation of the Sherman Act (15 U.S.C. § 1); violations of the Federal Food, Drug and Cosmetic Act (FDCA) Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 403(d); the Code of Federal Regulations Title 21 part 100, *et seq.*; the Lanham Act, 15 U.S.C. § 1125, and those similar deceptive and unfair practices and/or consumer protection state laws in twenty-five states; and Unjust Enrichment. *Id*.

***March 30, 2016.*** McCormick filed its Motion to Dismiss the Consolidated Amended Class Action Complaint filed by Plaintiffs. Dkt. No. 38. In addition, then-Defendant Wal-Mart also filed its Motion to Dismiss the Consolidated Amended Class Action Complaint filed by Plaintiffs. Dkt. No. 40.

***November 11, 2016.*** The Court granted-in-part and denied-without-prejudice-in-part Defendants' Motions to Dismiss. Specifically, the Court dismissed with prejudice Count I, which alleged violations of the Sherman Act. Dkt. Nos. 97 and 98.

***December 9, 2016.*** Plaintiffs filed their Motion for Reconsideration of the Court's Order on the Defendants' Motions to Dismiss, with the matter being fully briefed by the Parties. Dkt. Nos. 105, 110, 112, 116.

***March 21, 2017.*** The Court granted Plaintiffs' Motion for Reconsideration, and amended its Order to reflect Count I is dismissed *without* prejudice and allowing Plaintiffs to file their Second Amended Consolidated Class Action Complaint ("Second ACC") (Dkt. Nos. 126 and 127), which Plaintiffs did that same day. Dkt. Nos. 128 and 129.

***April 7, 2017.*** McCormick and Wal-Mart moved to dismiss the Second ACC. Dkt. Nos. 132 and 134. Plaintiffs filed their Opposition on May 5, 2017 (Dkt. No. 138), and the Defendants filed their Replies on May 19, 2017. Dkt. Nos. 140 and 141.

***June 13, 2017.*** The Court dismissed Count 1, the Sherman Act claim, with prejudice. Dkt. No. 148.

***July 10, 2019.*** After extensive briefing of the issue of class certification by the Parties, the Court granted class certification to three single-state consumer protection classes, for the States of California, Florida, and Missouri, leaving McCormick the only remaining Defendant. Dkt. No. 212.

***July 24, 2019.*** Defendant McCormick filed its Petition for Interlocutory Appeal from the Court's July 10, 2019 Order to the United States Court of Appeals for the District of Columbia Circuit and a Motion to Stay the proceedings. Dkt. No. 215.

***September 20, 2019.*** The United States Court of Appeals denied Defendant McCormick's petition. Dkt. No. 220.

***January 24, 2020.*** The parties filed their Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law. Dkt. No. 224.

***January 27, 2020.*** The Court granted preliminary approval. Dkt. No. 225.

***April 20, 2020.*** Plaintiffs filed their Motion for Attorneys' Fees and Costs, and Incentive Awards for the Settlement Class Representatives. Dkt. No. 236.

### III.   MATERIAL TERMS OF THE SETTLEMENT

### A.   Benefits to Class Members

The Settlement provides valuable monetary relief for Class Members in the three certified states, California, Florida, and Missouri, who purchased any McCormick® brand or Private Label Brand Black Pepper Product(s) (as defined by the Settlement) within the Class Period.[4] McCormick paid into a Settlement Fund the sum of $2,500,000.00, out of which payment will be made to each Class Member who submitted a timely and complete proof of claim form that is verified and approved (and/or Class Members who participated in loyalty programs at Target and/or Safeway for whom sufficient data exists, who will receive payment without the need to file a claim[5]). There is no potential reversion of funds to McCormick. After payment of notice and

---

[4] The Class is defined as "all persons residing in California, Florida, or Missouri who purchased any McCormick® brand or Private Label Brand Black Pepper Product(s) within the Class Period. Excluded from the Classes are (a) Defendant and all of its present and former, direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated entities, divisions, groups, joint ventures, partnerships, and all of its and their present and former officers, directors, shareholders, partners, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives;(b) all persons and entities who sold Black Pepper Products, whether McCormick® brand or Private Label Brand, to any persons residing in the states of California, Florida or Missouri during the Class Period;(c) the Court, and its personnel; and (d) any person who timely and properly excludes himself or herself from the Classes in accordance with the procedures approved by the Court., " Dkt. No. 224, Ex. A, Settlement Agreement ¶1.29.

[5] On May 8, 2020, Target provided to the Claims Administrator 3 data files (one each for California, Florida and Missouri) which contained anomalies. Heffler sought clarification from Target, and received 3 new data sets on May 20, 2020. The analysis of that data, to identify and verify Class Member data that are sufficient to allow direct payments, is still in process. Finegan Decl. ¶21. In addition, on May 19, 2020, Safeway provided one, nation-wide

other administration costs, attorneys' fees, costs, and expenses, and any court-approved incentive compensation to Representative Plaintiffs, the Settlement contemplates that all available funds will be distributed to the Class Members. Each Class Member had an opportunity to submit a claim that would, if timely and valid, entitle the Class Member to a substantial cash payment. Subject to the pro rata adjustments contemplated in the Settlement (see ¶4.2.4), monies will be distributed to Class Members pro rata based on the amounts apportioned to each Class Member by the claims process detailed in the Preliminary Approval Order and Notice. *See* Dkt. No. 225.

### B. Incentive Awards and Attorneys' Fees

Under the Settlement, McCormick has agreed to the payment of reasonable incentive awards from the Settlement Fund, not to exceed $5,000, to each named class representative. *See* Settlement Agreement, Dkt. No. 224, Ex. A ¶10.3. Class Counsel has requested fees in the amount of $625,000, an amount equal to twenty-five percent (25%) of the gross settlement fund, in addition to reimbursement of reasonable litigation costs and expenses. A separate motion for fees and costs, and incentive awards was filed on April 20, 2020. *See* Dkt. No. 236.

### C. The Notice Program

Constitutional due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action and affording them the opportunity to object. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985); Fed. R. Civ. P. 23(c)(2)(B). The mechanics of the notice process, however, "are left to the discretion of the court subject only to broad 'reasonable' standard imposed by due process." *Thomas v. Christopher*, 169 F.R.D. 224, 231 (D.D.C. 1996) *rev'd in part on other grounds,* 139 F.3d 227 (D.C. Cir. 1998) (quoting *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 121 (8th Cir. 1975)). The purpose of

---

data file that contains 1,130,575 transaction records. The Claims Administrator is still in the process of determining which of those transactions were Class Member purchases. Finegan Decl. ¶22.

notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v Carlisle and Jacquelin*, 417 U.S. 156, 173-74 (1974)). Further, notice must fairly describe the litigation and the proposed settlement and its legal significance. *See, e.g., Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member[.]"); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd* 737 F.2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained").

The Court approved Heffler Claims Group ("HCG") as Claims Administrator, as well as the Notice and Media plan it developed, which was described in the Finegan Decl., and was attached to the Settlement Agreement, and posted on the Settlement Website. *See* Dkt. No. 224-1, Ex. 2. The state-of-the-art notice campaign, executed precisely in conformance with the terms of the Preliminary Approval Order, was extensive, and included print publication once in the state editions of a generally circulated magazine targeted to reach Class Members; Online display banner advertising specifically targeted to reach Class Members; Keyword Search targeting Class Members; Social media through Facebook, Instagram and Pinterest; An informational website established on which the notices and other important Court documents were posted; and A toll-free information line by which Class Members can call 24/7 for more information about the

Settlement, including, but not limited to requesting copies of the Long Form Notice or Claim Form. *Id.* ¶14.

Notice was posted on the Settlement Website, *www.blackpeppersettlement.com*. The Settlement Website allows Class Members to view information about the Settlement, including copies of the (1) Settlement Agreement, (2) Long Form Notice, (3) Court's Preliminary Approval Order, (4) Second Amended Complaint in *In re: McCormick & Company, Inc., Pepper Products Marketing and Sales Practices Litigation,* No. 1:15 mc 01825-ESH, dated 3/21/2017 (D.D.C.), (5) List of Applicable Black Pepper Products, and (6) Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards. Finegan Decl., ¶16. The Settlement Website also listed the "Important Dates" including the deadline of May 4, 2020 to opt out or file an objection, May 15, 2020 as the deadline to submit a Claim Form, and June 3, 2020 as the date for the Final Approval Hearing. *Id.* The Settlement Website also contains answers to frequently asked questions and the contact information for the Claims Administrator. *Id.* In addition, the Settlement Website provides a method for Class Members to electronically submit a Claim Form. *Id.* As of May 15, 2020, the website had received 262,345 unique visits and 468,530 page views. *Id.*

The Claims Administrator also established a toll-free telephone number. Finegan Decl., ¶17. The telephone number allowed Class Members to speak with an agent and ask specific questions about the Settlement. A Class Member could also listen to answers to frequently asked questions and/or request that a copy of the Claim Form or Long Form Notice be mailed to them. *Id.* As of May 20, 2020, the toll-free telephone number has received 257 calls, 132 of which were transferred to live phone agents and 64 Long Form Notices have been requested and mailed. *Id.*

**D. Opting Out**

The Notice clearly explained that any member of the Classes who wished to opt out of the Class must mail a notice of intention to opt out to the Claims Administrator by May 4, 2020.

Finegan Decl., ¶16. However, no Class Member requested to be excluded from the Settlement, although HCG did receive one purported exclusion request from a North Carolina resident, who does not appear to be a Class Member. See Ex D; and Finegan Decl., ¶19.

### E. Objecting

The Notice also clearly explained that any member of the Classes who wished to object to the settlement must mail a notice of objection to the Claims Administrator by May 4, 2020. Thus, Class Members were provided with ample time to submit any objections. *See Maywalt v. Parker and Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2nd Cir. 1995); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374-75 (9th Cir. 1993), *cert. denied sub nom. Reilly v Tucson Elec. Power Co.*, 512 U.S. 1220 (1994). No Class Members have mailed timely objections to the Settlement to HCG. Finegan Decl., ¶20.[6]

Overall, the Claims Administrator believes the notice program as a whole reached an estimated 72% of the class with average frequency of 3 times. *Id.* ¶2. The Notice provided for in the Settlement Agreement satisfies the requirements of Rule 23 and all relevant Due Process concerns.

The lack of objections from Class Members, in light of the reach of the Notice Program, speaks highly of the quality and fairness of the Settlement.

### F. The Claims Process

"Class actions often require a claims process to ensure money is fairly distributed for valid claims." *Bynum v. Gov't Dist. Of Columbia*, 384 F.Supp.2d 342, 363 (D.D.C. 2005); *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.,* 266 F. Supp. 2d 44, 47 (D.D.C. 2003); *In re*

---

[6] As explained in the accompanying Kamber Declaration (see Ex. A), Class Counsel received four purported objections from individuals who are not Class Members. Two purported objections were received from the same address from residents of Alabama, one was received from a resident of Ohio, and one from a Pennsylvania resident. Kamber Decl., ¶9.

*Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 381 (D.D.C. 2002). Under the Settlement Agreement, Class Members were able to submit a Claim Form either by mail or via the Internet. Finegan Decl., ¶16. The Claim Form is short, clear, and straightforward, only requiring basic information from Class Members such as name, address, phone number and email address and that they then sign the form under penalty of perjury.

The response to the Settlement has been extremely positive. As of the Claim deadline of May 15, 2020, 112,442 claims have been received by HCG. Finegan Decl., ¶18.   Heffler will continue to analyze the additional just-received retailer data, and Class Counsel will endeavor to provide the Court with supplemental data, including a claims analysis and estimated distribution that incorporates the retailer data, prior to the Final Approval hearing on June 3, 2020.

## IV.   ARGUMENT

Approval of the Settlement "lies within the discretion of this Court." *E.g., In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004).  Courts in this Circuit favor the settlement of class action litigation. *Id.* (expressing a "principle of preference" favoring and encouraging settlements); see also *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993) (policy of encouraging settlements is particularly appropriate in class actions, which are often complex, protracted, and demanding of limited judicial resources).  In ruling on a motion to approve a class action settlement, it is not this Court's duty to undertake the "detailed and thorough investigation that it would undertake if it were actually trying the case." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 103 (internal citation omitted). The Court's inquiry "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

After preliminary approval and notice has been provided to the class, the court considers final approval of the settlement.  While there is no single test in this Circuit that courts use to

determine whether the proposed settlement of a class action should be approved, courts consider the facts and circumstance of each case, identify the most relevant factors under the circumstances, and exercise their discretion in deciding whether the proposed settlement is "fair, adequate and reasonable." *Radosti v. Envision Emi, LLC*, 717 F. Supp. 2d 37, 54 (D.D.C. 2010) (quoting *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998)). This inquiry may be performed by evaluating: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of plaintiffs' case; (3) the status of the litigation at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel. *Hardy v. District of Columbia*, 49 F. Supp. 3d 48, 49-50 (D.D.C. 2014). As discussed fully in the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and below, this Settlement meets and exceeds all of the factors used to judge class action settlements in this Circuit and weigh in favor of finally approving Settlement here.

### A. The settlement is the product of arm's length negotiations by experienced settlement counsel.

 "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *E.g., Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49 (D.D.C. 2008) (citing *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104). "Absent evidence of fraud or collusion, [class action] settlements are not to be trifled with." *Osher v. SCA Realty I, Inc.*, 945 F. Supp. at 304 (internal citation omitted). These presumptions apply here, where the Settlement Agreement was negotiated at arm's length by Class Counsel well-versed in class actions, with a perspective from both the plaintiffs' and defendants' bar.

The Parties litigated the viability of Plaintiffs' claims for over four years, from the trial court up to the D.C. Circuit and back to the trial court again. The Parties also litigated the merits

and class certification issues. The Settlement Agreement was reached with the assistance of two neutral, third-party mediators (Hon. James Robertson (Ret.) of JAMS and Nancy Lesser of PAX ADR). Over the course of four mediation sessions in three years, with the assistance of both Judge Robertson and Ms. Lesser, the parties eventually were able to reach, at arm's length, the negotiated compromise memorialized in the Settlement Agreement. *See Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. Apr. 21, 2011) ("[T]he settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of an experienced mediators at JAMS ... In sum, the court finds that viewed as a whole, the settlement is sufficiently 'fair, adequate, and reasonable' such that approval of the settlement is warranted").

In granting Preliminary Approval of the Settlement on January 27, 2020, the Court found that the Settlement was "the result of arm's-length negotiations between experienced class action attorneys." Dkt. No. 225. These experienced Class Counsel strongly believe that the Settlement in this action is fair, adequate, and reasonable (Kamber Decl., ¶7), and their opinion "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Lorazepam v. Mylan Laboratories, Inc.*, MDL No. 1290, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003).

In sum, the Settlement Agreement was arrived via arm's length negotiations between capable and experienced counsel who zealously represented the Class Members' interests.

### B. Plaintiffs' recovery is significant in relation to the strength of their case.

In judging the strength of the Class's recovery, the Court must weigh both the Classes' chances of prevailing at trial and the percentage of the recovery procured in the Settlement. *See Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 9-10 (D.D.C. 2006) ("The most important factor in the Court's evaluation of a proposed class action settlement is how the relief secured by the settlement compares to the class members' likely recovery had the case gone to trial.");

*Schweizer, supra*, at *12 (quoting *In re LivingSocial Mktg.*, 2013 WL 1181489, at *9) (The benefits to the class members must be "considered in juxtaposition with the risks attendant to continued litigation of this matter." ); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 369, 377 ("The fact that this settlement amount is less than the total estimated damages is not surprising and ultimately does not render the terms of the settlement unfair, unreasonable, or inadequate in the Court's opinion, as several additional factors should be taken into consideration. Continued litigation of these lawsuits would undoubtedly require substantial additional pretrial preparation and expense, as the defendants have denied all liability ... Further litigation also entails substantial risks[.]")

While Plaintiffs remain confident in the merits of their claims, they nonetheless faced significant obstacles to prevailing in this case. Weighing the risks of litigation against the expected recovery to Class Members also favors final approval. Plaintiffs would have to overcome issues associated with prevailing on an inevitable Motion for Summary Judgment, trial and appeals – all of which offer potential stumbling blocks to securing a recovery for the Class Members. At all times, McCormick has denied liability, objected to the merits of Plaintiffs' case, and asserted multiple affirmative defenses.

As such, the Settlement in this case is substantial when considering the range of possible recoveries for the Class Members, the Defendant's affirmative defenses, and the number of procedural hurdles between Plaintiffs and a final judgment. Were the Class to forego settlement, it is uncertain whether they would recover anything at all. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the

potential recovery") *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

For all of the reasons discussed in requesting preliminary approval, the proposed Settlement provides the Classes with an outstanding opportunity to obtain significant relief, while abrogating the risks that might prevent them from obtaining relief should the litigation continue, and it should be approved.

### C. Class counsel had sufficient information to make a reasonable assessment of the risks of litigation and to evaluate the settlement.

"In evaluating the fairness and adequacy of a settlement, it is important to consider whether the settlement was reached after extensive factual development, so that counsel on both sides would have had information sufficient to make a reasonable assessment of their risks of litigation." *Luevano,* 93 F.R.D. at 86. Class Counsel, devoted substantial time and resources to investigating, litigating, and resolving this case. *See* Dkt. No. 224-2, ¶¶24-25. As a result, there has been a great deal of factual development and analysis to date, whereby counsel for both Parties had ample foundation upon which to evaluate the proposed Settlement Agreement. Each party, therefore, possessed the necessary information to evaluate the strengths and weaknesses of their respective cases in order to discuss settlement effectively and "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *In re Lorazepam*, 2003 WL 22037741 at *6; *see also Radosti, Envision Emi, LLC*, 717 F. Supp. 2d 37, 57 (D.D.C. 2010).

### D. The Class has overwhelmingly supported the settlement.

Another factor considered in determining the reasonableness of a settlement is the reaction of the class. *Thomas*, 139 F.3d at 231-33; *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. at 155; *Osher*, 945 F. Supp. at 305; *Stewart*, 948 F. Supp. at 1057. Here, the overwhelmingly positive reaction of Class Members strongly supports final approval. As of May 15, 2020, the Claims Administrator

received a total of 112, 442 Claim Forms.  Finegan Decl., ¶18.  The Claims Administrator has received <u>no</u> timely (or untimely) objections from Class Members and no requests for exclusion from the Settlement from Class Members, although one purported exclusion request was received from a North Carolina resident who is not a Class Member.  *Id.* ¶¶19-20; and *see* Ex. D.[7]

This robust claim response and lack of Class Member objections is a strong sign that Class Members support this Settlement, and is a powerful indication of its fairness and adequacy.  *See Osher*, 945 F. Supp. at 305 ("the Court concludes that the reaction of the Class members is overwhelmingly in favor of the proposed settlement. Only 30 Class members have requested to be excluded from the Settlement Class out of the approximately 14,000 Class members given Notice of the proposed settlement. Furthermore, only one objection to the proposed settlement has been received by Class and Derivative Counsel."); *Luevano v. Campbell*, 93 F.R.D. at 91 ("The fact that only one-sixth of one percent of the class has chosen to object to the settlement is an important indication of its fairness and adequacy.").  All of the Class Representatives reviewed and approved the Settlement Agreement prior to its execution.  None of the Class Representatives objected. Kamber Decl., ¶15.

On January 29, 2020, counsel for Defendant also issued notices to governmental officials, including each of the state attorneys general of California, Florida, and Missouri, as required by the Class Action Fairness Act.  *See* Ex, C., Declaration of David H. Bamberger, ¶2; 28 U.S.C. § 1715.  As of May 13, 2020, no recipients of CAFA notice have objected, further favoring final approval.  *Id.*, ¶3.

---

[7] As referenced *supra* at n. 3 & 6, Class Counsel received four purported objections from individuals who are not Class Members.

### E. Experienced Class Counsel believe that the proposed settlement is fair, reasonable, and adequate and that the settlement provides excellent relief for Class Members.

When, as is the case here, the Parties are represented by counsel who have significant experience in class action litigation and settlements, and there is no evidence of collusion or bad faith, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996) (the trial court should "defer to the judgment of experienced counsel who have competently evaluated the strength of the proof"); *In re Vitamins Antitrust Litig.,* 305 F. Supp. 2d at 106 ("although the Court will not defer blindly to the views of counsel with regard to the adequacy of a settlement, it must consider that the Settlements were reached after several months of arm's length negotiation by experienced counsel and that both counsel and all parties involved view the settlements as reasonable").

The Settlement Agreement provides desirable relief for Class Members. McCormick agreed to create a non-reversionary Settlement Fund of $2,500,000 Settlement Fund to reimburse Class Members for the purchase of Black Pepper Products, whether McCormick® brand or Private Label Brand from January 1, 2015 through the Preliminary Approval Date of the Settlement Agreement *pro rata.* The monetary relief provided by the Settlement is more than one third of the total compensatory damages that Plaintiffs calculated would be due to Class Members in the three certified states (*see* Dkt. No. 224-2, ¶28 and Dkt. No. 157-100 (Levy Declaration, under seal)) and is therefore certainly fair and more than adequate. *See, e.g., In re Fed. Nat'l Mortg. Assoc. Sec., Derivative, & ERISA Litig.*, 4 F. Supp. 3d 94, 103- 04 (D.D.C. 2013) (approving settlement that represented between four and eight percent of plaintiffs' estimated best recovery); *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d. 20, 25-26 (D.D.C. 2011) (finding settlement that represented between 17% and 24% of estimated trial recovery to be reasonable); *In re Baan Co. Sec. Litig.*,

284 F. Supp. 2d 62, 65-66 (D.D.C. 2003) (approving settlement that represented 16% of plaintiffs' best-case-scenario damages, and between 32.5 and 54% of defendants' damages estimate).

The proposed fund distribution is also fair, adequate and reasonable. Pursuant to the Settlement Agreement, a Class Member may easily make a claim by submitting a claim form either by mail or electronically on the Settlement Website. There are no flaws in the settlement or distribution plan, and no segment of the Classes is unduly favored over any other. *See In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 205 (5th Cir. 1981).

As discussed above, Class Counsel are qualified, experienced, and have substantial credentials representing plaintiffs in class actions. The firms are currently lead or co-lead counsel in state and federal courts across the country. Likewise, McCormick is represented by David H. Bamberger, an experienced and skilled attorney from DLA Piper LLP (US), including extensive experience representing corporations in class actions.

The skill and standing of counsel on both sides are substantial, and the fact that they support the Settlement here weighs in its favor.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs request that this Court: (1) Grant final approval of the Class Action Settlement; and (2) Enter the proposed Final Order and Judgment.

DATED: May 20, 2020                 Respectfully submitted,

                                    KAMBERLAW, LLC

        By:         */s/* Scott A. Kamber

                    Scott A. Kamber
                    KAMBERLAW LLC
                    201 Milwaukee St., Ste 200
                    Denver, CO 80206
                    (212) 920-3072
                    (212) 202-6364 (fax)
                    skamber@kamberlaw.com

                    Deborah Kravitz
                    KAMBERLAW LLP
                    401 Center Street, Suite 111
                    Healdsburg, CA 95448
                    (707) 820-4247
                    dkravitz@kamberlaw.com

                    Elizabeth A. Fegan
                    FEGAN SCOTT, LLC
                    150 S. Wacker Dr., 24th Floor
                    Chicago, IL 60606
                    Telephone: (312) 741-1019
                    Facsimile: (312) 264-0100
                    beth@feganscott.com

                    *Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on May 20, 2020. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.


By: Scott A. Kamber
Scott A. Kamber