# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MCCORMICK & COMPANY, INC., PEPPER PRODUCTS MARKETING AND SALES PRACTICES LITIGATION<br><br>*This Document Relates To*:<br>ALL CLASS ACTIONS | MDL Docket No. 2665<br>Case No. 15-mc-1825 (ESH) |

## FINAL ORDER AND JUDGMENT

Before the Court is Plaintiffs' Motion for Final Approval of the Class Action Settlement, ECF No. 237.  After conducting a fairness hearing on June 3, 2020, and considering all arguments in support of and/or in opposition to the Settlement Agreement, the Court finds and/or orders the following:

1. The Court has personal jurisdiction over the Class Representatives and all members of the Classes.[1]  The Court also possesses subject matter jurisdiction to approve the Settlement Agreement and all Exhibits thereto.

2. The Court previously certified the following Classes, finding that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied.  The "Classes" are defined as follows:

> All persons residing in California, Florida, or Missouri who purchased any McCormick® brand or Private Label Brand Black Pepper Product(s) within the Class Period.

3. Specifically excluded from the Classes are the following:

   a. Defendant and all of its present and former, direct and indirect, subsidiaries, parents, affiliates, incorporated or unincorporated

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement (ECF No. 224-1, Ex. A).

            entities, divisions, groups, joint ventures, partnerships, and all of its and their present and former officers, directors, shareholders, partners, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives;

    b. all persons and entities who sold Black Pepper Products, whether McCormick® brand or Private Label Brand to any persons residing in the states of California, Florida or Missouri during the Class Period;

    c. the Court, and its personnel; and

    d. any person who timely and properly excludes himself or herself from the Classes in accordance with the procedures approved by the Court.

4.     The Court grants final approval to the Settlement Agreement as being fair, reasonable and adequate as to all parties and in compliance with all requirements of due process and applicable law.

5.     Notice was provided to Class Members in the manner directed by the Court.[2] The Class Notice implemented pursuant to the Settlement Agreement and the Court's Preliminary Approval Order: (a) constituted the best practicable notice, (b) constituted notice that was reasonably calculated under the circumstances to apprise Class Members of the pendency of the Litigation, of their right to object to or exclude themselves from the proposed Settlement, of their right to appear at the Fairness Hearing and of their right to seek monetary and other relief, (c)

---

[2] Notice was effected through print publications, online display and social impressions with cross-device targeting on desktop and mobile, a press release, a settlement website and a toll-free number. Finegan Decl. ¶ 2. It was estimated to have reached 72 percent of Settlement Class Members in California, Florida and Missouri. *Id.*

constituted reasonable, due, adequate and sufficient notice to all persons entitled to receive notice, and (d) met all applicable requirements of due process and any other applicable law.[3]

6. There have been no objections from Class Members, which speaks well of class reaction to the Settlement. Likewise, there have been no requests for exclusion from Class Members.

7. The four purported objections received by Class Counsel (two from Alabama residents, and one each from Ohio and Pennsylvania residents) are from individuals who are not members of the Classes, which are limited to residents of California, Florida, and Missouri. As a result, residents of Alabama, Ohio, and Pennsylvania have no standing to object to the Settlement.

8. Similarly, the single purported request for exclusion received by the Claims Administrator (from a North Carolina resident) is from an individual who is not a member of the Classes, which are limited to residents of California, Florida, and Missouri. As a result, the individual requesting exclusion request was never included in the Settlement.

9. Although there is no single test in this Circuit that courts use to determine whether the proposed settlement of a class action should be approved, courts consider the facts and circumstance of each case, identify the most relevant factors under the circumstances, and exercise their discretion in deciding whether the proposed settlement is "fair, adequate and reasonable." *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 54 (D.D.C. 2010) (quoting

---

[3] Notice was also given to each of the each of the state attorneys general of California, Florida, and Missouri, as required by the Class Action Fairness Act. *See* Pls.' Ex, C., Declaration of David H. Bamberger, ¶ 2; 28 U.S.C. § 1715. Defendant also transmitted by USPS Priority Mail a notice of the Proposed Class Action Settlement to William Barr, Attorney General of the United States. As of May 13, 2020, no recipients of CAFA notice have objected. *Id*. ¶ 3.

*Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998)). The factors identified in this circuit for assessing fairness of the Settlement have all been considered. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *E.g., Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 565 F. Supp. 2d 49 (D.D.C. 2008) (internal quotations omitted). "Absent evidence of fraud or collusion, [class action] settlements are not to be trifled with." *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) (internal citation omitted); *see also Thieriot v. Celtic Ins. Co.*, No. C 10-04462, 2011 WL 1522385 at *5 (N.D. Cal. Apr. 21, 2011) ("[T]he settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of an experienced mediator at JAMS. . . . In sum, the court finds that viewed as a whole, the settlement is sufficiently fair, adequate, and reasonable such that approval of the settlement is warranted. (internal quotations omitted)"). Here, the Settlement Agreement was the result of arm's-length negotiations, reached with the assistance of two neutral, third-party mediators (Hon. James Robertson (Ret.) of JAMS and Nancy Lesser of PAX ADR).

10. There is no evidence in the record calling McCormick's financial condition into question, and indeed, McCormick has already deposited $2.5 million into the Settlement Fund.

11. Having taken the risks and benefits into consideration, the parties and their counsel agree that the Settlement is fair and reasonable, and these views are entitled to considerable weight. *Radosti*, 77 F. Supp. 2d at 54. The Court likewise has considered that no objections were asserted by Class Members.

12. This Court finds that the relief provided to the class is fair, reasonable and adequate. The Claims Administrator received 44,764 valid compensable claims submitted

directly by Class Members. It has also identified an additional 768,686 possible class members through sales data received from Safeway and Target. It is anticipated that there will be sufficient information to directly send an e-payment to approximately 20% of the Safeway and Target customers (approximately 153,000 retail customers). Based on the above, the total number of payable claims is anticipated to be around 200,000. The extensive notice efforts combined with the Safeway and Target data resulted in more payable claims than anticipated. But it is estimated that the Settlement Fund (after reduction for administrative costs, notice costs, data acquisition costs, attorneys' fees and expenses, and incentive awards)[4] will have approximately $832,000 available to pay claims, (*see* Hamill Decl, ¶ 19), and that amount will result in payments between $3.40 and $4.25 for each customer, a rate that exceeds each customer's actual damages (25% of the purchase price). The relief obtained here, when weighed against the complexities and uncertainties of the litigation and the certainty of lengthy litigation in the absence of a settlement, support the Settlement, which avoids significant risk and delay and affords meaningful relief to Class Members. Upon consideration of all relevant factors, the Court finds that the Settlement is in the best interests of the Classes as a whole.

13.   The Court finds that Class Counsel and the Representative Plaintiffs adequately represented the Classes for purposes of entering into and implementing the Settlement Agreement.

---

[4] The attorneys' fees and expenses and the incentive awards for the class representatives are the subject of a separate order, also filed today. The notice and administrative costs are paid to the Claims Administrator, Heffler Claims Group. The administrative costs are set at $1.50 per claim but are capped at $350,000 (effectively a 73% discount). (*See* Hamill Decl. ¶ 16.) The notice costs totaled $200,000, and Class Counsel has reviewed these costs and the backup documentation and filed an affidavit attesting to their legitimacy. (*See* Kamber Supp. Decl. ¶ 4.) Finally, the data acquisition costs (incurred in order to acquire the data from Target) totaled $4,000.

14. The Court orders the Parties and their counsel to implement and consummate the Settlement Agreement in accordance with its terms and provisions. The Parties, without further approval from the Court, are authorized to agree to and adopt such amendments, modifications and expansions of the Settlement and all Exhibits thereto as (a) shall be consistent in all material respects with the Final Order and Judgment and (b) do not limit the rights of the Parties or Classes.

15. The Settlement Agreement and this Final Order and Judgment are binding on and have res judicata and preclusive effect in all pending and future lawsuits and other proceedings asserting or involving Released Claims (as set forth in Section 8 of the Settlement Agreement).

16. Under the Settlement Agreement there is no reversion of settlement funds to McCormick. The Court is advised that it is the intent and goal of the Parties to distribute all of the Settlement Fund (after reduction for administrative costs, notice costs, data acquisition costs, attorneys' fees and expenses, and incentive awards) to Class Members as feasible.

17. Upon the Effective Date, the Representative Plaintiffs and all Class Members, whether or not they return a Claim Form within the time and in the manner provided for, shall be barred from asserting any released Claims against Defendant and/or any Released Persons, and any such Class Members shall have released any and all released Claims as against Defendants and all Released Persons as provided in the Settlement Agreement.

18. The Court enjoins all Class Members who did not timely exclude themselves from the Settlement Class from: (a) filing, commencing, prosecuting, intervening in or participating as plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action; (b) filing, commencing

or prosecuting a lawsuit or administrative, regulatory, arbitration or other proceeding as a class action on behalf of any Class Members who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action; and (c) attempting to effect exclusion, or Opt-Outs, of a class of individuals in any lawsuit or administrative, regulatory, arbitration or other proceeding based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action.

19.  Any Class Member who did not submit a timely, written request for exclusion from the Classes (*i.e.*, become an Opt-Out) is bound by all proceedings, orders and judgments in the Action, even if such Class Member has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Settlement Agreement release.

20.  Without affecting the finality of this Final Order and Judgment for purposes of appeal, the Court reserves jurisdiction over the Claims Administrator, Defendant, the Representative Plaintiffs and the Classes as to all matters relating to the administration, consummation, enforcement and interpretation of the terms of the Settlement and Final Order and Judgment, and for any other necessary purposes.

21.  The Court dismisses this lawsuit and the related underlying cases that were transferred to this Court[5] on the merits and with prejudice and without fees or costs except as provided herein or any other Order entered by the Court, in accordance with the terms of this

---

[5] The three remaining cases that are hereby dismissed are *Marsh v. McCormick*, No. 15-cv-2153 (D.D.C.), *Bunting v. McCormick*, 15-cv-2154 (D.D.C.), and *Pellitteri v. McCormick*, 15-cv-2209 (D.D.C.).

Final Order and Judgment. The Representative Plaintiffs and the Classes have conclusively compromised, settled, dismissed and released any and all Claims against Defendant and the Released Persons.

22. The Court will address Attorneys' Fees and Costs, and Incentive Awards in a separate Order.

23. Pursuant to the Court's continuing jurisdiction over this matter, prior to distribution of funds to Class Members, Class Counsel will submit a proposed final distribution order to the Court setting forth payments to be made to Class Members and the Claims Administrator for associated claims administration.



ELLEN S. HUVELLE
United States District Judge

Date: June 5, 2020